IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FOX CORPORATION, FOX MEDIA LLC, and FOX SPORTS EN ESPAÑOL LLC, §§§§§§§§§§§§§ Plaintiffs, V. LAURA POALA ARROYO RODRIQUEZ, Defendant. | CAUSE NO. 4:25-CV-4650 |

**PLAINTIFFS' ORIGINAL COMPLAINT, APPLICATION FOR EMERGENCY EX PARTE TEMPORARY RESTRAINING ORDER, AND MOTION FOR <u>INJUNCTIVE RELIEF</u>**

Plaintiffs Fox Corporation, Fox Media LLC, and Sports En Español LLC (collectively "Plaintiffs" or "Fox") file this Original Complaint, Application for Emergency Ex Parte Temporary Restraining Order, Motion for Preliminary Injunction, and Request for Permanent Injunction against Defendant Laura Poala Arroyo Rodriquez ("Rodriquez" or "Defendant").

**I.
<u>Nature of the Case</u>**

1.1     This action is brought under the Texas Uniform Fraudulent Transfer Act ("TUFTA") to void the fraudulent transfer of real property in Montgomery County, Texas by Manuel Arroyo ("Arroyo"), the president of a media company in Mexico, to his sister, Defendant Laura Paolo Arroyo Rodriquez ("Rodriquez"). That real property has the legal description Woodlands Village of Carlton Woods 13, Block 1, Lot 10, with Property ID 300698, Geographic ID 9600-13-01000, Tax Office ID

9600-13-01000, and otherwise known as 3 Philbrook Way, Spring, Texas 77382-1377 (the "real property" or the "Philbrook Way property"). Exhibit A, Declaration of Sergio Munoz, ¶ 8.

1.2　This action arises out of litigation filed by Plaintiffs Fox Corporation, Fox Media LLC, and Sports En Español LLC, in the United States District Court for the Southern District of New York ("SDNY") against Media Deportes Mexico, S. de R.L. de C.V. ("MDM"), the company for whom Manuel Arroyo serves as president, as a result of MDM's misappropriation of Plaintiffs' intellectual property, pursuit of bad faith litigation in Mexico, and interference with Fox's business relationships. That litigation is *Fox Corporation et al. v. Media Deportes Mexico*, Case No. 25-cv-6703 (S.D.N.Y.) (the "SDNY Litigation"). Exhibit A, ¶ 2; Ex. 1 to Ex. A, ¶ 2.

1.3　The United States District Court in the SDNY Litigation entered a Contempt Order on August 29, 2025 holding Arroyo in contempt based on his actions in active concert with MDM's violations of a Temporary Restraining Order, which included the continued pursuit of litigation in Mexico. The Contempt Order imposed a fine of $200,000 per day against Arroyo and others. *See* SDNY Litigation, Dkt. No. 45; Ex. A, ¶ 5; Ex. 4 to Ex. A, ¶ 5. Arroyo received notice of the contempt order against him the same day. *See* SDNY Litigation, Dkt. No. 55. The fine has currently accrued to an amount of $4.4 Million.

1.4　Within three days of the entry of the Contempt Order, with full knowledge that the Contempt Order had been issued, Arroyo fraudulently transferred real property in Montgomery, Texas in violation of TUFTA by executing

a Special Warranty Deed on or about September 2, 2005, transferring ownership of the property to Rodriquez.  Ex. A, ¶ 9. In the Special Warranty Deed, which was recorded on or about September 3, 2025, Arroyo identified the consideration for the conveyance of the real property valued in excess of $3,800,000 as, "Love and affection and other good and valuable consideration".  Ex. 8 attached to Ex. A, ¶ 9; Ex. 9 attached to Ex. A, ¶ 10.

  1.5 This fraudulent transfer was made in violation of TUFTA with the intent to hinder, delay, and defraud Plaintiffs, and evade the contempt sanction issued by the United States District Court in the SDNY Litigation, based on the number of "badges of fraud" listed in TUFTA, including but not limited to:  a) the transfer was made to an insider, Arroyo's sister.  TEX. BUS. & COM. CODE. § 24.005(b)(1); b) Before the transfer was made, MDM and Arroyo were held in contempt for not complying with the Temporary Restraining Order. TEX. BUS. & COM. CODE. § 24.005(b)(4); c) The transfer occurred on September 2, 2025 shortly after a substantial debt by Arroyo was incurred by issuance of the Contempt Order on August 29, 2025, which imposed a daily fine of $200,000. TEX. BUS. & COM. CODE. § 24.005(b)(10); d) The transfer likely was not for reasonably equivalent value. TEX. BUS. & COM. CODE. §§ 24.005(b)(8) and 24.004; d) the transfer likely involved most if not all of Arroyo's assets in Texas. TEX. BUS. & COM. CODE. § 24.005(b)(5); and e) Arroyo is in Mexico and has absconded from Texas. TEX. BUS. & COM. CODE. § 24.005(b)(6).

1.6     Plaintiffs now ask the Court to enter an Ex Parte Emergency Temporary Restraining Order requiring the reconveyance of the real property in Montgomery, Texas from Arroyo to Rodriquez and/or the avoidance of the transfer of the real property from Arroyo to Rodriquez, or, in the alternative, the prohibition of the further transfer of the real property to prevent dissipation of the fraudulently transferred asset, and the preservation of the property in constructive trust for the benefit of Plaintiffs.  Upon final disposition, the Plaintiffs also ask for the issuance of an order and/or judgment consistent with the relief requested above in accordance with TEX. BUS. & COM. CODE. §§ 24.008(a)(1) and (3) of the TUFTA.

1.7     Plaintiffs request ex parte emergency relief, because, if notice is provided, Arroyo and Rodriquez are likely to further transfer the real property just like Arroyo has done previously.  Exhibit B, Declaration of Christopher T, Berg, ¶ 6.  Notice should be excused, since a further transfer or encumbrance to the real property will cause immediate, irreparable harm to Plaintiffs by dissipating most if not all of Arroyo's assets in Texas or in the U.S. to satisfy the contempt sanctions imposed against him. Ex. A, ¶ 11; Ex. B, ¶ 6.  This immediate and irreparable harm will occur if an emergency ex parte TRO is not granted.

## II.
## Parties

2.1     Plaintiff Fox Corporation is incorporated in Delaware and maintains its principal place of business in New York, and therefore pursuant to 28 U.S.C. § 1332(c) is a citizen of Delaware and New York.

2.2     Plaintiff Fox Media LLC is a limited liability company whose sole member is Foxcorp Holdings LLC, a Delaware limited liability company.  Foxcorp Holdings' sole member is Fox Corporation.  Fox Media is therefore a citizen of Delaware and New York.

2.3     Plaintiff Fox Sports en Español LLC is a limited liability company whose sole member is Fox Sports Holdings, LLC, a Delaware limited liability company.  Fox Sports Holdings' sole member is Foxcorp Holdings LLC, a Delaware limited liability company.  Foxcorp Holdings' sole member is Fox Corporation, a Delaware corporation.  Fox Sports en Español LLS is therefore a citizen of Delaware and New York.

2.4     Defendant Laura Poala Arroyo Rodriquez is a citizen of Mexico.  Rodriquez's location in Mexico is unknown.  Fox will seek service upon Rodriquez by e-mail under Federal Rule of Civil Procedure 4(f)(3) which permits service by other means not prohibited by international agreement as the Court orders.

### III.
### Jurisdiction and Venue

3.1     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees.

3.2     This Court has personal jurisdiction over the Defendant because she has purposefully availed herself of the privilege of conducting activities in Texas by owning, transferring, and purchasing real property located in Texas.  In addition to

receiving the Philbrook Way property, Defendant also owns real property in Texas located at Lot 13, in Block 2, of the Woodlands Village of Creekside Park Section 2, a subdivision in Harris County, Texas, otherwise known as 63 E. Hullwood Circle, Spring, TX 77389. Ex. A, ¶ 13. Furthermore, there is a substantial connection between Defendant's contacts with Texas and the operative facts of this litigation to determine whether real property in Texas was fraudulently transferred. In addition, jurisdiction over Defendant comports with traditional notions of fair play and substantial justice given the interest of Texas in resolving this controversy involving real estate within its borders.

3.3    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a) as this action arises out of events that occurred in this Judicial District.

## IV.
## Factual Background

### A.    *The Southern District of New York Litigation*

4.1    Fox brought an action in the United States District Court for the Southern District of New York to prevent and seek recovery from MDM for misappropriating Fox's intellectual property, pursuing litigation before a foreign tribunal in Mexico in breach of an exclusive jurisdiction clause, misleading that tribunal in ex parte proceedings, and weaponizing the fruit of that bad-faith litigation to interfere with Fox's business relationships. Exhibit A, ¶ 2.

4.2    MDM used to hold a non-exclusive license to use Fox Sports trademarks in Mexico. Exhibit A, ¶ 2.

4.3 Fox terminated MDM's non-exclusive license because of the severe damage that MDM caused to the reputation and goodwill associated with the Fox Sprots trademarks. Exhibit A, ¶ 2.

4.4 MDM has nevertheless continued to use the Fox Sports trademarks without authorization or legal right. Exhibit A, ¶ 2.

4.5 MDM has gone so far as to obtain a bad-faith, no-notice injunction in a Mexican court based on the premise that MDM had an exclusive license to Fox Sports marks and used the no-notice injunction to prevent Fox and its business partners from using the Fox Sports marks in Mexico. Exhibit A, ¶ 2. It also weaponized the bad-faith injunction by causing officials from the Mexican Trademark Office to raid and shut down the production facilities of one of Fox's business partners in Mexico, MediaPro, and to otherwise disrupt and interfere with Fox's business partners. Exhibit A, ¶ 2.

B. *Temporary Restraining Order and Contempt Orders in the SDNY Litigation*

4.6 By Order dated August 14, 2025, the United States District Court in the SDNY (the "District Court in the SDNY") issued a Temporary Restraining Order and Order to Show Cause for Preliminary Injunction Under Federal Rule of Civil Procedure 65(b) prohibiting MDM from using Fox Sports Trademarks in Mexico, using U.S. Fox Sports marks in the U.S., pursuing legal or regulatory action relating to the trademark containing the work "Fox" in Mexico and disrupting Fox's business relationships with certain business partners and requiring MDM to show cause at a hearing scheduled for August 28, 2025 as to why a preliminary injunction should not

be granted. SDNY Litigation, Dkt. No. 29; Ex. 2 to Ex. A, ¶ 3. The District Court later postponed the show cause hearing with respect to the preliminary injunction until September 5, 2025. SDNY Litigation, Dkt. No. 39.

4.7     On August 19, 2025, Fox moved for an Order to show why MDM should not be held in contempt for violating the Temporary Restraining Order issued by the Court on August 14, 2025. SDNY Litigation, Dkt. No. 35.

4.8     On August 20, 2025, the District Court in the SDNY issued Orders requiring MDM to show cause why MDM should not be held in contempt for violating the Temporary Restraining Order that the Court issued on August 14, 2025 and requiring MDM to show cause at a hearing on September 5, 2025 as to why a contempt order should not be issued. SDNY Litigation, Dkt. Nos. 38, 39.

4.9     On August 29, 2025, the District Court in the SDNY issued an Order modifying the Temporary Restraining Order to specifically prohibit MDM from seeking to enforce an injunction issued on August 27, 2025, by the Civil Department 42 of the Superior Court of Justice of Mexico City. SDNY Litigation, Dkt. No. 41; Ex. 3 to Ex. A, ¶ 4.

4.10    On August 29, 2025, the District Court in the SDNY issued Orders finding that MDM, Manuel Arroyo, and two other non-parties, Mexico Sports Distribution LLC ("MSD") and Grupo Lauman Holdings, S. de R.L. de C.V. ("Grupo Lauman"), finding that MDM, Arroyo, MSD, and Grupo Lauman had had acted in civil contempt of the Temporary Restraining Order with Arroyo, MSD and Grupo Lauman acting in concert with MDM's violations of the Temporary Restraining

Order, including MDM's refusal to cease using the trademarks indemnified in the Temporary Restraining Order and MDM's pursuit of the injunction dated August 27, 2025 in the court in Mexico. As a result, the Court ordered civil contempt sanctions, jointly and severally, against MDM, Arroyo, MSD and Grupo Lauman by imposing a fine of $200,000 per day to be paid daily to the Clerk of Court of the Southern District of New York beginning September 6, 2025 and continuing until MDM and those acting in concert with it, including Arroyo, MDM and Grupo Lauman, ceased violating the Temporary Restraining Order and withdrew the injunction dated August 27, 2025 issued by the court in Mexico. The Court also provided all the foregoing with the opportunity to present an opposition at the hearing on September 5, 2025. SDNY Litigation, Dkt. Nos. 44, 45; Ex. 4 and Ex. 5 to Ex. A, ¶ 5.

4.11   All of the foregoing Orders were properly served upon MDM's Mexico counsel by e-mail based on authority granted by the District Court. SDNY Litigation, Dkt. No. 55. In each Order, the District Court expressly deemed service by electronic mail to be good and sufficient service. Arroyo received the Contempt Order on August 29, 2025 when it was served upon MDM's counsel by e-mail. The fine has currently accrued to an amount of $4.4 Million.

4.12   On September 5, 2025, the District Court in the SDNY issued a preliminary injunction with respect to MDM consistent with the Temporary Restraining Order. SDNY Litigation, Dkt. No. 49. MDM, Arroyo and Grupo Lauman did not appear. Ex. 6 to Ex. A, ¶ 6.

4.13   On September 9, 2025, the District Court in the SDNY issued a Memorandum Order modifying the Contempt Order to make the contempt sanction payable to Plaintiffs and enjoining Arroyo, MDM and Grupo Lauman from transferring, conveying or otherwise dissipating any assets, or causing anyone else from doing the same in the United States that they possess, own, or otherwise control. SDNY Litigation, Dkt. No. 73; Ex. 7 to Ex. A, ¶ 7.

### C.   Arroyo's Fraudulent Conveyance of Real Property in Montgomery County, Texas

5.0   On September 2, 2025, with full knowledge of the Contempt Order, Arroyo conveyed a real property in Montgomery County, Texas by way of a Special Warranty Deed transferring ownership of the Philbrook Way property to his sister, Rodriquez.  Ex. A, ¶ 9; Ex. 8 attached to Ex. A, ¶ 9.

5.1   On September 3, 2025, the Special Warranty Deed was recorded in the official public records of Montgomery County, Texas.  Ex. 8 attached to Ex. A, ¶ 9.

5.2   The Montgomery County Appraisal District states that the value of the real property in Montgomery County, Texas is $3,800,000 , but the Special Warranty Deed identifies the consideration for transfer of the property as "Love and affection and other good and valuable consideration."   Ex. 8 attached to Ex. A, ¶ 9; Ex. 9 attached to Ex. A, ¶ 10.

## V.
## Causes of Action

### Fraud under the Texas Uniform Fraudulent Transfer Act

6.0   Plaintiffs re-allege, as if fully set forth herein, each allegation in the preceding paragraphs.

6.1     Under the Texas Uniform Fraudulent Transfer Act, Arroyo's fraudulent transfer of the Philbrook Way property in Montgomery County, Texas must be conveyed back to Arroyo and/or voided.  Arroyo made the transfer in violation of TEX. BUS. & COM. CODE. § 24.005(a)(1) with the actual intent to hinder, delay, or defraud Plaintiffs and TEX. BUS. & COM. CODE. § 24.005(a)(2) without receiving a reasonably equivalent value in exchange for the transfer. Specifically, TEX. BUS. & COM. CODE. § 24.005(a)(1) and (2) provide as follows:

> (a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1)     with the actual intent to hinder, delay, or defraud any creditor of the debtor; or
> > (2)     without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A)     was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > > (B)     intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

6.2     Under TEX. BUS. & COM. CODE. § 24.005(b), Arroyo's actual intent to hinder, delay, or defraud Plaintiffs is established by Arroyo's actions which constitute fraud based on the following non-exclusive "badges of fraud" listed in TUFTA:

a)     The transfer was made to an insider, Arroyo's sister.  Ex. A, ¶ 9. TEX. BUS. & COM. CODE. § 24.005(b)(1);

    b)  Before the transfer was made, MDM and Arroyo were threatened with contempt if they did not comply with the Temporary Restraining Order. SDNY Litigation, Dkt. No. 35, 42. TEX. BUS. & COM. CODE. § 24.005(b)(4);

    c)  The transfer occurred on September 2, 2025 shortly after Arroyo incurred a substantial debt based on the issuance of the Contempt Order on August 29, 2025 and shortly before the issuance of a Court Order prohibiting the transfer of the property on September 9, 2025. Ex. A, ¶ 9; Ex. 8 attached to Ex. A, ¶9; Ex. 7 to Ex. A, ¶7; SDNY Litigation, Dkt. Nos. 45, 73. TEX. BUS. & COM. CODE. § 24.005(b)(10);

    d)  The transfer was likely not for reasonably equivalent value with the Philbrook Way property in Montgomery County, Texas valued at $3,800,000 and the consideration stated in the Special Warranty Deed as "Love and affection and other good and valuable consideration." Ex. 8 attached to Ex. A, ¶ 9; Ex. 9 attached to Ex. A, ¶ 10. TEX. BUS. & COM. CODE. §§ 24.005(b)(8) and 24.004;

    e)  The transfer likely involved most if not all of Arroyo's assets in Texas. Ex. A, ¶ 11. TEX. BUS. & COM. CODE. § 24.005(b)(5); and

    f)  Arroyo is in Mexico and has absconded from Texas. Ex. A, ¶ 12. TEX. BUS. & COM. CODE. § 24.005(b)(6).

  6.3  Under TEX. BUS. & COM. CODE. § 24.008(a)(1), Plaintiffs are entitled to an order requiring the transfer of the real property in Montgomery County, Texas back into the name of Arroyo and/or voiding the transfer of the property in Montgomery County, Texas from Arroyo to Rodriquez.

6.4    It is well settled under Texas law that courts may impose the equitable remedy of constructive trust upon a party who receives property through fraud. Such a remedy is appropriate in this situation because Rodriquez obtained the real property as a result of a fraudulent transfer by Arroyo. Because the property was obtained as a result of the fraudulent transfer, the real property in Montgomery County, Texas should, in equity, be held in constructive trust for the benefit of Plaintiffs.

## VI.
## Application for Ex Parte Emergency Temporary Restraining Order, Preliminary Injunctive Relief and Permanent Injunctive Relief

7.0    Plaintiffs re-allege, as if fully set forth herein, each allegation contained in the previous paragraphs.

7.1    As further discussed below, Plaintiffs are entitled to ex parte emergency relief, because if notice is given to Arroyo or Rodriquez the real property will likely be transferred again possibly to a good faith third party purchaser.  Exhibit B, ¶ 6. When Arroyo received notice of the contempt sanction, he transferred the property to his sister.  When notice is given of the TRO, Rodriquez will likely transfer the real property.  An additional transfer or encumbrance likely will cause immediate and irreparable injury to Plaintiffs, since it would result in the dissipation of most if not all Arroyo's assets in Texas or in the U.S. to satisfy the contempt sanction imposed against him.  Ex. A, ¶ 11; Exhibit B, ¶ 6.  This immediate and irreparable harm will occur if an emergency ex parte TRO is not granted.  The only way to stop this harm is to grant this relief.

7.2     Absent immediate restraint, Plaintiffs will suffer irreparable harm. Arroyo transferred the Philbrook Way property in Montgomery County, Texas to insider Rodriquez, his sister, three days after the District Court in the SDNY issued an Order finding Arroyo in contempt and accruing $200,000 per day in sanctions for defying said Court's Temporary Restraining Order. The insider transfer, the timing, and other factors are classic badges of fraud showing a concrete risk of further disposition that would "impair the Court's ability to grant an effective remedy" on the merits. *See Janvey v. Agluire*, 647 F.3d 585, 598-606 (5th Cir. 2011) (affirming preliminary injunction freezing assets where dissipation of the very property at issue would thwart equitable remedies under the Texas Uniform Fraudulent Transfer Act ("TUFTA")). TUFTA expressly authorizes injunctions "against further disposition… of the asset transferred" and "any other relief the circumstances may require." *See* TEX. BUS. & COM. CODE § 24.008(a)(3)(A) and (B), and courts apply standard equitable principles under Federal Rule of Civil Procedure 65 in granting such relief to preserve the property. *Id.* at § 24.008(a).

7.3     Plaintiffs seek equitable relief aimed at the specific property and statutory avoidance of a fraudulent transfer. Preserving the property is necessary to ensure that avoidance, levy, or sale in satisfaction of judgment remains possible and to prevent a subsequent sale or encumbrance that would irretrievably complicate or defeat this relief. Irreparable harm is therefore imminent and non-speculative. *See Janvey*, 647 F.3d at 598-606.

7.4     Furthermore, there is no adequate remedy if the transfer of the real property is not voided, and the property is not returned to Arroyo.  There is substantial risk of further disposition from Rodriquez to a *bona fide* purchaser or lender through a second transfer or otherwise encumbering the property at issue, which would further frustrate avoidance and leave Plaintiffs chasing proceeds.  The failure to undo the transaction also will cause irreparable harm, because Fox has been unable to locate any other significant assets that Arroyo has in Texas or the United States that could be executed upon to satisfy a money judgment, and the transfer will dissipate most if not all of Arroyo's assets that can be used to recover the contempt sanction.  Ex. A, ¶ 11.

7.5     Based on the foregoing, there is a substantial likelihood that Plaintiffs will prevail on the merits of this case. The transfer of the Philbrook Way property in Montgomery County, Texas is clearly a violation of TUFTA for which no reasonable defense can be offered.  In particular, as set forth above, Arroyo is guilty of conduct that satisfies multiple "badges of fraud" under TEX. BUS. & COM. CODE. § 24.005(b) which justifies relief as requested above under TEX. BUS. & COM. CODE. §§ 24.008(a)(1) and (3) of the TUFTA.

7.6     Plaintiffs therefore request a temporary restraining order, and upon hearing and final trial preliminary and permanent injunctions pursuant to Federal Rule of Civil Procedure 65 against Defendant, requiring:

>    (a) the reconveyance of the Philbrook Way property in Montgomery, Texas from Arroyo to Rodriquez; and/or

    (b) the avoidance of the transfer of the Philbrook Way property in Montgomery, Texas from Arroyo to Rodriquez; or in the alternative,

    (c) the prohibition of further transfer or encumbrance of the Philbrook Way property in Montgomery, Texas to prevent dissipation of the fraudulently transferred asset; and

    (d) the preservation of the Philbrook Way property in Montgomery County, Texas in a constructive trust for the benefit of Plaintiffs;

7.7   Defendant would face no significant harm by complying with an injunction, because the relief would return the property to the debtor, maintain the status quo, and preserve the property. In contrast, in the absence of such an injunction, there exists a serious risk of loss of the debtor's assets and significant damage to Plaintiffs.

7.8   The public interest favors issuance of the requested injunctive relief and will be served by the promotion of ethical behavior and the protection of property rights.

7.9   Given the merits are overwhelmingly in Plaintiffs' favor, a de minimis bond, if any, should be ordered.

7.10   Plaintiffs request the Court to set their application for preliminary injunction for hearing and, after hearing the request, to issue a preliminary injunction against Defendant.

7.11   Plaintiffs also request the Court to include the application for permanent injunctive relief in a full trial on the merits of this case and, after the trial, to issue a permanent injunction against Defendant, as well as to provide Plaintiffs with the other relief they have requested.

# VI.
# Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray for the following relief:

a. Entry of a Temporary Restraining Order, and upon hearing, a Preliminary Injunction, thereafter to be made permanent, that, among other things, requires the transfer of the Philbrook Way property in Montgomery County, Texas from Defendant Laura Poala Arroyo Rodriquez to Manual Arroyo and/or the avoidance of the transfer of the Philbrook Way property in Montgomery County, Texas from Manuel Arroyo to Defendant Laura Poala Arroyo Rodriquez, or in the alternative, the prohibition of further transfer or encumbrance of the Philbrook Way property in Montgomery County, Texas to prevent dissipation of the fraudulently transferred asset and the preservation of the Philbrook Way property in Montgomery County, Texas in a constructive trust for the benefit of Plaintiffs;

b. If necessary, entry of a Judgment after trial on the merits that, among other things, requires the transfer of the Philbrook Way property in Montgomery County, Texas from Defendant Laura Poala Arroyo Rodriquez to Manual Arroyo and/or the avoidance of the transfer of the Philbrook Way property in Montgomery County, Texas from Manuel Arroyo to Defendant Laura Poala Arroyo Rodriquez;

c. Attorneys' fees at the trial level and through appeals in accordance with TEX. BUS. & COM. CODE § 24.013;

d. All costs of suit; and

e. Any such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**

/s/ Marcus R. Tucker
Marcus R. Tucker
Federal Bar No. 12769
State Bar No. 20282360
910 Louisiana, Suite 4300
Houston, Texas 77002
Telephone: 713-626-1386
Telecopier: 713-626-1388
Email: marcus.tucker@phelps.com

**ATTORNEY FOR PLAINTIFFS**

**OF COUNSEL:**

**PHELPS DUNBAR LLP**

Ivan Rodriguez
Federal Bar No. 4566982
State Bar No. 24058977
Catherine Gross
Federal Bar No. 3873903
State Bar No. 24120870
Nick Pohl
Federal Bar No. 3368970
State Bar No. 24110230
910 Louisiana, Suite 1300
Houston, Texas 77002
Telephone: 713-626-1386
Telecopier: 713-626-1388
Email:  ivan.rodriguez@phelps.com
　　　　catherine.gross@phelps.com
　　　　nick.pohl@phelps.com

ELLIS GEORGE LLP
Christopher T. Berg (Bar No. 24082682)
cberg@ellisgeorge.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697