**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **FOX CORPORATION, FOX MEDIA LLC, and FOX SPORTS EN ESPAÑOL LLC,** *Plaintiffs* | § | |
| **v.** | § | **CAUSE NO. 4:25-CV-4650** |
| **LAURA PAOLA ARROYO RODRIGUEZ,** *Defendant.* | § | |

**<u>JOINT PRETRIAL ORDER</u>**

## 1. Appearance of Counsel

Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC (the "Plaintiffs") are represented by D. Michael Hurst, Jr., Phelps Dunbar LLP 1905 Community Bank Way, Ste. 200, Flowood, MS 39232, Telephone No. (601) 352-2300; Marcus R. Tucker, Phelps Dunbar LLP, 1001 Fannin, Suite 2200, Houston, TX 77002, Telephone No. (713) 626-1386; and Christoper T. Berg and Katherine A. Petti, Steptoe LLP, 633 West Fifth Street, Suite 1900, Los Angeles, CA 90071, Telephone No. (213) 439-9542.

Defendant Laura Paola Arroyo Rodriguez is represented by Steven R. Shaver and Marcos Ronquillo, Riley Ronquillo Soule, PLLC, Two Lincoln Center, 5420 LBJ Freeway, Suite 220, Dallas, TX 75420, Telephone No. (214)-461-1200.

## 2. Statement of the Case

This action is brought by Plaintiffs under the Texas Uniform Fraudulent Transfer Act ("TUFTA") to determine whether to permanently void a transfer of real

property in Montgomery County by Manuel Arroyo to his sister, Defendant Laura Paola Arroyo Rodriguez. The transfer in question was made just four days after a federal court in the United States District Court for the Southern District of New York ("SDNY") held Manuel Arroyo in contempt in connection with an action in the SDNY against Media Deportes Mexico, S. de R.L. de C.V. ("MDM") seeking to obtain relief for the misappropriation of Plaintiffs' intellectual property.

Plaintiffs contend:

The transfer of the 3 Philbrook Way property by Manuel Arroyo to Rodriguez was intended to improperly place real property beyond the reach of Manuel Arroyo's creditors and, therefore, is voidable under TEX. BUS. & COM. CODE § 24.005(a)(1). Plaintiffs intend to prove the majority of the badges of fraud under TUFTA support their case, including the timing of the transfer. On September 2, 2025, Manuel Arroyo conveyed real property to his sister Rodriguez "for love and affection," only four days after the SDNY court held him in contempt for violating that court's injunction and sanctioned him $200,000 per day until he and his co-contemnors cease violating the injunction. The SDNY court later made the sanction payable to Plaintiffs to compensate them for the harm they have suffered from the ongoing violation of that court's injunction.

The issues requiring resolution at trial arise out of whether Manuel Arroyo fraudulently transferred the subject property to Rodriguez. Plaintiffs seek a permanent injunction that requires the transfer of the subject property from Rodriguez to Manuel Arroyo or an avoidance of the transfer, formation of a

constructive trust to hold the property for the benefit of Plaintiffs, and the prohibition of further transfer or encumbrance of the property by Manuel Arroyo, plus attorneys' fees and court costs. In the alternative, the Plaintiffs seek recovery for the value of the real property.

Rodriguez contends:

The contentions and the issues requiring resolution at trial include whether Manuel Arroyo deeded a house to his sister, the Defendant herein, with actual intent to hinder, delay, or defraud Plaintiffs. The undisputed facts show Mr. Arroyo told his sister in February of 2025 he planned to deed her his house located on Philbrook Way in The Woodlands. This was seven months before Plaintiffs filed a lawsuit in the Southern District of New York, in which ultimately a contempt order and judgment were entered against Mr. Arroyo, a non-party to that lawsuit.

Further, Defendant contends that the entry of an interlocutory injunction, contempt order, and judgment, which form the basis for Plaintiffs' claims under TUFTA, are invalid because the named defendant in the SDNY case and Mr. Arroyo were never properly served; thus, the SDNY never had jurisdiction over them. This renders the interlocutory injunction, contempt order, and judgment invalid.

**3. Jurisdiction**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees.

**4. Claims Remaining**

Plaintiffs are pursuing a fraudulent transfer action under the Texas Uniform Fraudulent Transfer Act against Rodriguez as a result of a transfer of a property in Montgomery County, Texas by her brother, Manuel Arroyo, to Rodriguez. Plaintiffs seek a permanent injunction that requires the transfer of the subject property from Rodriguez to Manuel Arroyo or an avoidance of the transfer, formation of a constructive trust to hold the property for the benefit of Plaintiffs, and the prohibition of further transfer or encumbrance of the property by Manuel Arroyo, plus attorneys' fees and court costs. In the alternative, Plaintiffs seek recovery for the value of the real property.

All claims identified in Defendant's Answer remain; namely:

Plaintiffs' claims are barred, in whole or in part, under the doctrine of unclean hands.

Plaintiffs' conduct in asserting the claims herein is for an improper purpose, which shall preclude their entitlement to equitable relief.

Plaintiffs' claims are barred, in whole or in part, based upon Plaintiffs' fraud.

Plaintiffs' claims are barred, in whole or in part, based upon Plaintiffs' illegality.

Plaintiffs' claims are barred, in whole or in part, based upon Tex. Bus. & Com. Code § 24.009(f)(2).

Plaintiffs' claims are barred, in whole or in part, based upon the invalidity of the New York Judgment that is the basis for the alleged debt herein. The lone

defendant in the New York case was not served and remains unserved even now. Likewise, Mr. Arroyo was not served in the New York case, he was sent email only.

**5. Motions Currently Pending**

Three motions by Plaintiffs are pending: Plaintiffs' Motion to Exclude the Testimony of Defendant's Expert David Lopez; Plaintiffs' Motion to Take Judicial Notice; and Plaintiffs' Motion for Leave to File Motion in Limine to Exclude Certain Evidence.

One motion by Rodriguez is pending: Motion to Void Judgment.

**6. The Parties' Contentions**

**a. Plaintiffs**

**1.** This action is brought under TUFTA to void the fraudulent transfer of real property in Montgomery County, Texas by Manuel Arroyo to Rodriguez, his sister. That real property is located at 3 Philbrook Way, Spring, Texas 77382-1377 (the "real property" or the "Philbrook Way property"). Both Manuel Arroyo and Rodriguez are citizens of Mexico and, according to Rodriguez, reside in Mexico City. Rodriguez does not know Manuel Arroyo's address.

**2.** This action arises out of litigation filed by Plaintiffs in the SDNY against MDM arising from MDM's misappropriation of Plaintiffs' intellectual property, pursuit of bad faith litigation in Mexico, and interference with Fox's business relationships. Plaintiffs initiated that litigation on August 14, 2025. *See Fox Corporation et al. v. Media Deportes Mexico*, Case No. 25-cv-6703 (S.D.N.Y.) (the "SDNY Litigation").

**3.** On August 29, 2025, the SDNY court entered a Contempt Order holding Manuel Arroyo in contempt for acting in concert with MDM's violations of a Temporary Restraining Order, including the continued unauthorized use of Plaintiffs' intellectual property rights and the pursuit of related litigation in Mexico. The Contempt Order imposed a sanction of $200,000 per day against Manuel Arroyo and others.

**4.** Manuel Arroyo executed a Special Warranty Deed on September 2, 2025, purporting to transfer ownership of the Philbrook Way property to Rodriguez. The Philbrook Way property is worth $5.1 million.

**5.** Rodriguez paid nothing for the Philbrook Way property. The Special Warranty Deed identifies the consideration only as "Love and affection and other good and valuable consideration."

**6.** On August 29, 2025—the same day the SDNY court entered the Contempt Order—Manual Arroyo urgently sought to transfer the Philbrook Way property. That same day, Rosaura Rebecca Valdez Chow, Manual Arroyo's real estate agent, contacted the Gutierrez Law Firm at Manuel Arroyo's request at 1:49 pm on the Friday before Labor Day weekend that it was "urgent" to arrange for Manuel Arroyo to execute the Special Warranty Deed that day or as soon as possible. According to Chow, it was "urgent" because Manuel Arroyo told her the matter was urgent. Manuel Arroyo signed the Deed on September 2, 2025, the very next business day after Labor Day, using a virtual notary.

**7**. The transfer of the Philbrook Way property from Manuel Arroyo to his sister, Rodriguez, was made with the intent to hinder, delay, and defraud Manuel Arroyo's creditors in violation of TEX. BUS. & COM. CODE § 24.005(a)(1). For purposes of this action, Manuel Arroyo's creditors include the SDNY court Plaintiffs. The surrounding circumstances—including the insider transfer to his sister, lack of consideration, timing, Manuel Arroyo's continued control of the Philbrook Way property, and simultaneous transfer of his other known Texas property—provide compelling evidence of that intent to evade the contempt sanction and dissipate assets.

**8.** Plaintiffs satisfy the elements of a fraudulent transfer under TUFTA: (1) Plaintiffs are creditors; (2) Manuel Arroyo is a debtor; (3) Manuel Arroyo transferred assets shortly before or after the creditor's claim arose; and (4) Manuel Arroyo made the transfer with actual intent to hinder, delay, or defraud his creditors.

**9.** Plaintiffs are creditors under TUFTA because they have a "claim" against Manuel Arroyo as defined by TUFTA. TUFTA defines a "creditor" as anyone who has a claim. TEX. BUS. & COM. CODE. § 24.002(4). A "claim" includes a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, or undisputed. TEX. BUS. & COM. CODE. § 24.002(3).

**10.** Plaintiffs have a claim, as defined under TUFTA, against Manuel Arroyo because they have a right to payment against him. On September 9, 2025, the SDNY court made Manuel Arroyo's $200,000 daily sanction payable to Plaintiffs.

On October 8, 2025, the SDNY court reduced a portion of those accrued sanctions to a $5.8 million judgment against Manuel Arroyo in favor of Plaintiffs.

**11.** Fox Corporation also has additional claims, as defined under TUFTA, against Manuel Arroyo for inducing MDM to breach its contract with Fox Corporation by causing MDM to continue using Fox Sports trademarks without authorization, as well as for the damages Manuel Arroyo caused Fox Corporation by causing MDM's violations of the injunction in the SDNY Litigation. Those claims arose on or after March 2025.

**12.** Fox Media LLC also has additional claims, as defined by TUFTA, against Manuel Arroyo for inducing MDM to infringe Fox Media LLC's Fox Sports trademarks, as well as for the damages Manuel Arroyo caused Fox Media LLC by causing MDM to violate the injunction in the SDNY Litigation. Those claims arose on or after March 2025.

**13.** Fox Sports en Español LLC also has additional claims, as defined by TUFTA, against Manuel Arroyo for the damages Manuel Arroyo caused Fox Sports en Español LLC by causing MDM to violate the injunction in the SDNY Litigation. That claim arose on or after August 2025.

**14.** Plaintiffs have suffered $200,000 per day in damages as a result of Manuel Arroyo causing MDM to violate the injunction in the SDNY Litigation.

**15.** Plaintiffs obtained a Temporary Restraining Order against MDM on August 14, 2025 for misappropriating their intellectual property rights, breach of contract, and tortious interference. The SDNY court held Manuel Arroyo in contempt

and imposed sanctions of $200,000 per day on August 29. Manuel Arroyo, the debtor, directed his real estate agent to "urgently" transfer the Philbrook Way property on August 29. Manuel Arroyo signed the deed transferring the Philbrook Way property on September 2—four days after the Contempt Order.

**16.** The evidence establishes numerous "badges of fraud" under TUFTA:

**a) Insider Transfer**. Manuel Arroyo transferred the Philbrook Way property to his sister, an insider under TUFTA, *see* TEX. BUS. & COM. CODE. § 24.005(b)(1);

**b) Continued Possession and Control**. Manuel Arroyo retained possession or control of the Philbrook Way property by keeping his possessions at the property, continuing to pay the bills for the utilities and upkeep for the property, and telling Rodriguez that he would reimburse her for property-related expenses, *see* TEX. BUS. & COM. CODE. § 24.005(b)(2);

**c) Concealed Transfer.** The transfer was concealed because Rodriguez did not sign the deed and did not learn about the transfer until after it occurred, *see* TEX. BUS. & COM. CODE. § 24.005(b)(3);

**d) Pending or Threatened Litigation.** Manuel Arroyo was the subject of Fox's Emergency Motion for Contempt and was then held in contempt, all before the transfer of the Philbrook Way property was made, *see* TEX. BUS. & COM. CODE. § 24.005(b)(4);

**e) Transfer of Substantially All Known Assets.** The transfer constituted substantially all of Manuel Arroyo's assets because on the same day as the transfer of the Philbrook Way property, Manuel Arroyo also transferred his only other known Texas real property to a different family member (his daughter), and Fox has been unable to identify any other material assets belonging to Manuel Arroyo in the United States, *see* TEX. BUS. & COM. CODE. § 24.005(b)(5);

**f) No Reasonably Equivalent Value**. The transfer was not for reasonably equivalent value; Rodriguez paid nothing for the transfer even though the Philbrook Way property is worth $5.1 million. The only consideration he received was "love and affection," *see* TEX. BUS. & COM. CODE. §§ 24.005(b)(8) and 24.004;

**g) Timing After Substantial Debt.** The transfer occurred on September 2, 2025 shortly after Manuel Arroyo incurred a substantial debt from the issuance of the SDNY court's contempt order on August 29, 2025, which imposed a daily fine of $200,000 against him, and Manuel Arroyo urgently attempted to notarize the Special Warranty Deed on the same day he was held in contempt in the SDNY Litigation, *see* TEX. BUS. & COM. CODE. § 24.005(b)(10);

**h) Pattern of Divesting Assets.** The transfer was part of a larger "pattern of conduct" divesting assets after incurring a substantial debt evincing actual intent to defraud creditors because, on the same day Manuel Arroyo deeded the Philbrook Way property to Rodriguez, Manuel Arroyo also deeded another house in Texas to his daughter for no consideration, *see In re The Heritage Org., L.L.C.,* 413 B.R. 438, 481 (Bankr. N.D. Tex. 2009) (referring favorably to a court's

"reli[ance] upon the debtor's whole pattern of conduct to establish fraudulent intent"); *Matter of Reed,* 700 F.2d 986, 991–92 (5th Cir. 1983) (recognizing pattern of conduct to divest assets as a factor for assessing fraudulent intent under TUFTA).

**17.** Under TUFTA, a debtor's intent is evaluated at the time the transfer is made. Accordingly, Manuel Arroyo's intent is evaluated based on the circumstances immediately surrounding the September 2, 2025 transfer of the Philbrook Way property. Even if Manuel Arroyo initially contemplated giving the Philbrook Way property to his sister in February 2025, that does not explain what happened on August 29, 2025. On the same day the SDNY court issued its contempt order, Manuel Arroyo directed Rebecca Chow, his real estate agent, to contact the attorneys handling the transfer and "urgently" request its immediate completion. Chow sent her email directive to Manuel Arroyo's Texas lawyers on a Friday before a holiday weekend. The transfer occurred on the very next business day after Labor Day on September 2, 2025—four days after the SDNY court's contempt order—permitting the common-sense inference that Manuel Arroyo transferred the Philbrook Way property with the intent to shield it from his newest creditors.

**18.** Characterizing the conveyance as a "family gift" given "for love and affection" does not explain the urgency or timing of the transfer: Manuel Arroyo—who was purportedly contemplating this gift for months—sought immediate execution of the deed on the very day he was held in contempt and completed the transfer four days later.

**19.** Manuel Arroyo's conduct after the transfer further demonstrates his fraudulent intent. His purported transfer changed nothing with respect to his continued possession and control of the Philbrook Way property. Manuel Arroyo purchased the Philbrook Way property as a second home. The evidence shows it continues to serve that purpose. He continues to pay the utilities and maintenance for it to this day. His furnishings and personal belongings remain at the property. Rodriguez does not stay in, occupy, or keep personal things there. As of her deposition in February 2026, more than six months after Manuel Arroyo's September 2, 2025 transfer, Rodriguez had never stayed at the Philbrook Way property.

**20.** The transfer is independently voidable because Manuel Arroyo did not receive a reasonable equivalent value for the property and had no other assets available to creditors in Texas after the transfer. TEX. BUS. & COM. CODE. §§ 24.005(a)(2) and 24.005(a)(2)(B). Under this provision, without demonstrating actual intent, Plaintiffs can demonstrate a fraudulent transfer on the basis that: 1) the subject property valued at $5.1 Million was transferred for no consideration; and 2) Manuel Arroyo believed or reasonably should have believed that he would incur debts beyond his ability to pay with assets in the United States. The transfer of the Philbrook Way property left Manuel Arroyo with only one other remaining asset in Texas, his other home located at 87 Lakeside Green. But Manuel Arroyo transferred that real property the same day he transferred the Philbrook Way property, leaving him without any other material assets in Texas. As of September 2, 2025 (the date of the transfer), Manuel Arroyo knew or should have known that he could not pay his

debts in the United States because he had no assets available to creditors in the United States.

**21.** Rodriguez asserts as an affirmative defense that the judgment against Manuel Arroyo issued by the SDNY court is void and thus cannot constitute the basis for Plaintiffs' claim as a TUFTA creditor. Rodriguez will likely contend that the SDNY court did not have personal jurisdiction over MDM to issue its injunction or personal jurisdiction over MDM and Manuel Arroyo to hold them in contempt. She is wrong.

**22.** First, Rodriguez cannot challenge the merits of the underlying judgment against Manuel Arroyo. A transferee in a TUFTA action (here, Rodriguez) cannot challenge a final money judgment issued against a TUFTA transferor/debtor. *See Mosaic Baybrook One LP v. Cessor*, No. 14-19-00514-CV, 2021 WL 2656613, at *4 (Tex. App.—Houston [14th Dist.] June 29, 2021, pet. denied) ("the relevant inquiry is whether the [plaintiffs] provided sufficient evidence to show a probable right to relief on their TUFTA claim, not the underlying [suit]"). To demonstrate Plaintiffs are TUFTA creditors, they need only show the existence of a claim; they do not need to show the claim's validity. *See* TEX. BUS. & COM. CODE. § 24.002(3) (a claim under TUFTA includes a claim that is "disputed").

**23.** Moreover, the issue of the SDNY court's jurisdiction over Manuel Arroyo and other foreign defendants has already been argued and ruled on by Judge Rakoff in the SDNY. And that same issue has been re-raised by Manuel Arroyo himself before Judge Ellison in Plaintiffs' judgment registration action, which is

currently pending in the Southern District of Texas. Not only is Rodriguez's anticipated challenge to Judge Rakoff's jurisdiction foreclosed by TUFTA's text and case law, entertaining that challenge here would create the risk of inconsistent judgments with two other federal courts.

**24.** Whether the SDNY court had jurisdiction over Manuel Arroyo is irrelevant to Plaintiffs' status as a creditor under TUFTA. Plaintiffs have claims, as defined under TUFTA, against Manuel Arroyo that are independent of the SDNY court's contempt order, including claims against Manuel Arroyo for inducing MDM to breach its License Assignment Agreement, inducing MDM to infringe Plaintiffs' trademarks, and tortiously interfering with Plaintiffs' prospective business relationships. None of those claims relies on the SDNY court issuing a contempt order against Manuel Arroyo.

**25.** Finally, if, and only if, the Court deems it necessary to address the merits of Judge Rakoff's jurisdiction in the SDNY Litigation, Judge Rakoff correctly ruled that he had personal jurisdiction to issue his injunction against MDM and to hold MDM, Manuel Arroyo, and the other contemnors in contempt for violating the injunction in the SDNY Litigation. Rodriguez will likely argue that the SDNY contempt order is invalid because Manuel Arroyo did not receive service of the contempt papers pursuant to the Convention the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). That is wrong. The Hague Convention does not apply to the contempt papers seeking to hold Manuel Arroyo in contempt or his contempt judgment because they fall under

an exception to formal Hague service enumerated in Article 15(3) of the Hague Convention. Article 15(3) of the Hague Convention "'preserves a judge's authority to 'order, in case of urgency, any provisional or protective measures.'" *Fox Corporation v. Media Deportes Mexico, S. de R.L. de C.V.*, 820 F. Supp. 3d 299, 307 (S.D.N.Y. 2026) (quoting *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 167 (2d Cir. 2025 (quoting Hague Convention, art. 15(3))). In those circumstances, a court has jurisdiction to issue provisional and protective orders against a foreign defendant without going through the formal Hague Service process. As Judge Rakoff concluded in the SDNY Litigation, "Article 15(3) does not impose any requirements regarding the form of service, electronic or otherwise, that is required before a court may order such measures." *Id.* Rather, the Hague Convention "authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances." *Id.* at 307–08 (quoting Fed. R. Civ. P. 4(f)(3), 1993 adv. comm. note). Thus, the SDNY court held "that Mexico has not objected to the authority of a court outside Mexico, in a 'case of urgency,' to impose 'provisional or protective measures' against defendants located in Mexico, even where the Hague Convention's usual service requirements have not been satisfied." *Id.* at 308.

**26.** Here, the SDNY Litigation is a case of urgency; the SDNY court's issuance of the TRO, preliminary injunction, and contempt orders occurred in the context of that case of urgency, and the TRO, preliminary injunction, and contempt orders against Manuel Arroyo, including the SDNY court's judgment against Manuel Arroyo reducing to judgment a portion of his accumulated contempt sanctions, are

provisional or protective measures. The SDNY court authorized Plaintiffs to serve Manuel Arroyo with the contempt order and related papers via email pursuant to Federal Rule of Civil Procedure 4(f)(3). That email service was proper because email service is not prohibited for orders and related papers that fall under Article 15(3) of the Hague Convention.

**27.** Rodriguez's unclean hands affirmative defense fails because the doctrine of unclean hands is inapplicable to this case. An unclean hands defense can be maintained against a litigant whose own conduct in connection with the same matter or transaction has been unconscionable, unjust, marked by want of good faith, or violates the principles of equity and righteous dealing. In this case, Plaintiffs are a stranger to Manuel Arroyo's conveyance of the house to his sister, and the underlying intellectual property dispute is a separate matter in which his sister has no part. The unclean hands doctrine is therefore inapplicable as the equities plainly run against an insider transfer receiving property from her judgment-debtor brother for no consideration and where Plaintiffs had no involvement in that transaction.

**28.** Rodriguez's improper purpose affirmative defense fails because "improper purpose" is not a recognized affirmative defense to a TUFTA action, nor has there been any evidence presented of any "improper purpose" by Plaintiffs.

**29.** Rodriguez's fraud affirmative defense fails because Plaintiffs did not engage in any fraud, including no fraud related to Manuel Arroyo's conveyance of the property at issue in this case. There has been no evidence presented of any fraud by Plaintiffs.

**30.** Rodriguez's illegality affirmative defense fails because Plaintiffs undertook no illegal act, including no illegal act related to Manuel Arroyo's conveyance of the property at issue in this case. There has been no evidence presented of any illegal act by Plaintiffs.

**31.** Rodriguez's affirmative defense based on Tex. Bus. & Com. Code § 24.009(f)(2) fails because Manuel Arroyo's conveyance of the property at issue was not in the ordinary course of business or financial affairs of Manuel Arroyo and Rodriguez.

**32.** Based on the fraudulent transfer, Plaintiffs are entitled to issuance of a permanent injunction and/or judgment consistent with TEX. BUS. & COM. CODE. §§ 24.008(a)(1) and (3) that permits avoidance of the transfer, reconveyance of the Philbrook Way property to Manuel Arroyo, the prohibition of further transfer of the Philbrook Way property by Manuel Arroyo, and placing the property in constructive trust for the benefit of Plaintiffs.

**33.** In the alternative, Plaintiffs seek to recover a judgment for the value of the Philbrook Way property from Rodriguez pursuant to Section 24.009(b)(1) in the amount of $5,100,000.

**34.** With respect to the permanent injunction, the evidence shows that Plaintiffs will suffer imminent, irreparable harm absent the injunction. The evidence of insider transfer, the timing of the transfer, and other classic badges of fraud show a concrete risk of further disposition that would impair a Court's ability to grant an effective remedy on the merits absent a permanent injunction. Preserving

the real property is necessary to ensure that Plaintiffs are able to seek satisfaction of any judgment they procure against Manuel Arroyo against the Philbrook Way property and to prevent a subsequent sale or encumbrance that would irretrievably complicate or defeat this relief. Irreparable harm is therefore imminent and non-speculative. The failure to undo the transaction also will cause irreparable harm, because Plaintiffs have been unable to locate any other significant assets that Manuel Arroyo has in Texas or the United States that could be executed upon to satisfy a money judgment, and the transfer will dissipate most if not all of Manuel Arroyo's assets that can be used to recover the damages associated with Plaintiffs' claims against Manuel Arroyo.

**35.** There is no adequate remedy if the transfer of the real property is not voided, and the property is not returned to Manuel Arroyo. There is substantial risk of further disposition from Rodriguez to a *bona fide* purchaser or lender through a second transfer or otherwise encumbering the property at issue, which would further frustrate avoidance and leave Plaintiffs chasing proceeds.

**36.** The balance of equities and public interest favor issuance of the requested injunctive relief and will be served by the promotion of ethical behavior, ensuring the compliance of orders issuing by the federal courts, and the protection of property rights. Rodriguez has no countervailing interest, as she paid no consideration for the real property.

**37.** Plaintiffs are entitled to attorneys' fees and costs under TUFTA, *see* TEX. BUS. & COM. CODE. §§ 24.013.

**b. Rodriguez**

**1.** This case presents two challenges for Fox to prove. First, that the House was transferred by Mr. Arroyo to his sister with the intent to hinder, delay, and defraud Fox in violation of TEX. BUS. & COM. CODE § 24.005(a)(1). Second, whether the alleged debt by Mr. Arroyo to Fox is a valid and enforceable debt.

**2**. For Fox to proceed with its TUFTA claim against Mr. Arroyo, it must first have a claim, which "means a right to payment or property." (Emphasis supplied). Tex. Bus. & Comm. C. § 24.002(3). When the House was transferred, Fox did not have a right to payment or property from Arroyo; the alleged debt was to the SDNY clerk. Thus, the August 29, 2025, SDNY order is not a basis for Fox's TUFTA claim because it did not confer a right upon Fox to payment or property.

**3**. Further, the August 29, 2025, SDNY contempt order was not known to Mr. Arroyo until it was sent to him eight days later on September 6, 2025. As of September 2, 2025, Mr. Arroyo could not intend to "hinder, delay, and defraud" Fox if he was unaware of the Fox "claim." Even then, there was no alleged debt owed by Mr. Arroyo to Fox because the fines were payable to the court clerk. Mr. Arroyo cannot "intend" to hinder, delay, and defraud Fox if Mr. Arroyo does not owe Fox a payment or property.

**4**. Fox argues that the badges of fraud show Mr. Arroyo's intent to hinder, delay, and defraud Fox because the transfer was to an insider, for less than fair value, and the transaction was concealed. The transfer of the House was to Mr. Arroyo's sister, and it was a gift. But the details and plans for the House's transfer

were arranged and agreed upon more than eight months before any alleged debt by Mr. Arroyo to Fox. The badges, as markers of fraud, simply do not apply here because the plans to transfer the House were known and contemplated long before Fox even filed a lawsuit in the SDNY. "A fraudulent intent must be affirmatively shown and will not be presumed." *Sterquell v. Scott*, 140 SW3d 453, 460 (Tex. App.—Amarillo 2004, no pet.).

**5**. Likewise, Fox argues that the House transaction was concealed because Ms. Rodríguez, the grantee under the deed, did not sign the deed. In Texas, only a grantor's signature to a deed is necessary to transfer real property. Tex. Prop. Code § 12.01. There is no concealment here; as a matter of law, Ms. Rodríguez was not a signatory to the deed transferring the House.

**6**. Also, Fox argues that Mr. Arroyo remained in control of the House because he continues to pay for the utilities and his personal items remain there. Yet, Ms. Rodriguez paid over $60,000 in property taxes on the House in January 2026. And this Court voided the deed to Ms. Rodríguez for the House; since at least November 10, 2025, Ms. Rodríguez has not had an interest in the House.

**7**. Fox cannot meet its burden of showing a claim was owed by Mr. Arroyo to Fox when the House was transferred to Ms. Rodríguez. Fox's claim did not arise from filing the SDNY lawsuit because Mr. Arroyo was not a party to that lawsuit. And the events leading to a "claim" on behalf of Fox did not occur until after the House was transferred.

**8**. Fox cannot meet its burden of showing Mr. Arroyo intended to hinder, delay, and defraud Fox by transferring the House because at the time of the transfer there was no claim owed Fox nor was Mr. Arroyo aware that even the SDNY clerk had a claim.

**9**. The badges of fraud, Fox argues, are literally pointless, since the plan to transfer the House had been known to and shared among Mr. Arroyo, his sister, his brother-in-law, his lawyer, and his real-estate agent since February 2025, seven months before the House was transferred. Also, it was known that in early August 2025, Mr. Arroyo planned and expected the House to be transferred to his sister by the end of August—before Fox's SDNY Case was even filed.

**10**. The party invoking jurisdiction bears the burden of establishing it; that burden does not shift to the party contesting it. *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). The party asserting that a nonparty is bound by a judgment likewise bears that burden. *Taylor v. Sturgell*, 553 U.S. 880, 884–85 (2008). Here, the burden to establish jurisdiction is on Fox.

**11**. The SDNY Case, in which the alleged debt by Mr. Arroyo to Fox arose, does not have personal jurisdiction over MDM, the sole defendant in the case. It is indisputable that MDM, a Mexican company, has not been served under the Hague Apostille Convention. Plaintiffs concede that they did not attempt to serve MDM under the Hague Service Convention until "October 2025" (SDNY ECF No. 163 ¶ 6), which is after the SDNY court entered the injunctions, contempt orders, and the judgment against Mr. Arroyo. To date, MDM remains unserved.

**12.** On August 14, 2025, the SDNY court entered a TRO against MDM (SDNY ECF 29). A "district court is powerless to proceed on a motion for preliminary injunction in the absence of personal jurisdiction." *Cleanspark, Inc., Discovery Growth Fund, LLC*, 485 F. Supp. 3d 494, 500 (S.D.N.Y. 2020). Where it is "not clearly established that the court ha[s] jurisdiction over" a party, an "injunction [i]s improperly entered," because a "court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." 1963 v. Stein, 897 F.2d 653, 658-59 (2d Cir. 1990) (quotations omitted); see also *Antsy Labs LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns* Identified on Schedule A to the Complaint, 2021 U.S. Dist. LEXIS 241185 *4; 2021 WL 5967613 (S.D.N.Y. 2021) ("due process requires that before the Court issues injunctive relief against a defendant, the Court must have personal jurisdiction over that defendant"). "If this Court lacked personal jurisdiction over these defendants, then the injunction would be void as to them." *SEC v. Capital Growth Co., S.A.* (Costa Rica), 391 F. Supp. 593, 600 (S.D.N.Y. 1974). MDM has not even been served by the SDNY court.

**13.** Then, on August 29, the SDNY Court, upon motion by the Plaintiffs, entered contempt orders (SDNY ECF 45, 49 & 73) against MDM and non-parties Mexico Sports Distribution, LLC ("MSD"), Grupo Lauman Holding, and Mr. Arroyo, for allegedly violating the TRO and the Preliminary Injunction (SDNY ECF 47). Notably, the SDNY Court did not find Mr. Arroyo had done anything personally wrong other than his executive position with MDM. (SDNY ECF 73, p.5).

**14**. At the time the SDNY Court entered the contempt order, neither MDM nor Arroyo had been served, and they are still unserved. In other words, when the contempt order was entered, the SDNY did not have personal jurisdiction over MDM or Arroyo, which is a requirement before holding a party in contempt. See *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 n.2 (N.D. Ill. 2008); see also *United States v. Thompson*, 921 F.3d 82, 87-88 (2d Cir. 2019) "Contempt proceedings may move forward upon a showing of actual notice, but only so long as the court making the contempt finding already has personal jurisdiction over the" party to be held in contempt. Id. (Emphasis supplied).

**15**. The result of the SDNY not having obtained personal jurisdiction over MDM, the sole defendant, means that all "derivative" orders, including the contempt order and judgment against Arroyo, must be vacated. *Comverse, Inc. v. Am. Telecommc'ns., Inc. Chile S.A.,* 2009 U.S. Dist. LEXIS 14381, 2009 WL 464446, *2 n.4 (S.D.N.Y. Feb. 24, 2009) (citing *New York State NOW v. Terry*, 961 F.2d 390, 400 (2d Cir. 1992)). See also e.g. *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.,* 2025 U.S. Dist. LEXIS 216454 *4 (S.D.N.Y. Nov. 5, 2025). Specifically:

**16**. "Without personal jurisdiction over a party, a court may not hold that party in contempt." *Cardell*, 2012 U.S. Dist. LEXIS 188295 at *32; 2012 WL 12932049; see also e.g. *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.,* 2025 U.S. Dist. LEXIS 216454 *4 (S.D.N.Y. Nov. 5, 2025) ("a court must have personal jurisdiction over a party before holding that party in contempt"). Only once personal jurisdiction has been established over a defendant can the issue of contempt

by non-parties arise. Even then, the court must have "personal jurisdiction" over non-parties before they can be held in contempt. *Comverse, Inc. v. Am. Telecomms., Inc. Chile,* 2009 U.S. Dist. LEXIS 14381 *8 n.4; 2009 WL 464446 (S.D.N.Y. 2009). (Emphasis supplied)

**17**. This alone requires the TRO, preliminary injunction, contempt order, and judgment against Mr. Arroyo to be vacated.

**18**. With respect to Mr. Arroyo, a Mexican citizen, personal jurisdiction requires compliance with the Hague Service Convention, which is mandatory in every case to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705 (1988). Mexico has objected to Article 10, so alternative service channels are unavailable, and service must proceed through the Central Authority under Article 5; service by mail or its electronic equivalent is permissible only where the receiving state has not objected. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017). Fox "served" Arroyo—located in Mexico—only by unilateral email, with no Central Authority process and no order under Rule 4(f)(3).

**19**. "The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323-24 (S.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59 (2d Cir. 2012)). First, "the plaintiffs service of process upon the defendant must have been procedurally proper." There is no dispute that neither MDM nor Arroyo has been served under the Hague Apostille Convention.

**20**. The Second Circuit, where the SDNY resides, found that email service "is prohibited by the Hague Service Convention," and thus it is "improper under Rule 4(f)(3)." *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 170; ("any method of service not approved by the [Hague Service] Convention is effectively prohibited under Rule 4(f)(3)"). The Smart Study case leaves no doubt regarding the jurisdictional requirements for a United States District Court to exercise personal jurisdiction over a foreign party or a foreign non-party. For Mexican citizens, personal service is required under the Hague Service Convention—email is not an option.

**21**. Since the SDNY Court lacks personal jurisdiction over MDM and Mr. Arroyo, the injunction orders, contempt orders, and the final judgment against Mr. Arroyo are invalid.

**22**. The Court should dismiss Fox's case against Ms. Rodríguez and award her attorneys fees and costs.**23.** The Defendant is entitled to attorneys' fees and costs under TUFTA, *see* TEX. BUS. & COM. CODE. §§ 24.013.

**7. Agreed Admissions of Fact**

**a.** The property that is the subject of this fraudulent conveyance action is: That real property with the legal description Woodlands Village of Carlton Woods 13, Block 1, Lot 10, with Property ID 300698, Geographic ID 9600-13-01000, Tax Office ID 9600-13-01000, and otherwise known as 3 Philbrook Way, Spring, Texas 77382-1377 (the "real property" or the "Philbrook Way property").

**b.** Plaintiff Fox Corporation is incorporated in Delaware with its principal

place of business in New York. Plaintiff Fox Media LLC is a limited liability company whose sole member is Foxcorp Holdings LLC. Foxcorp Holdings' sole member is Fox Corporation.

**c.** Plaintiff Fox Sports en Español LLC is a limited liability company whose sole member is Foxcorp Holdings, LLC. Foxcorp Holdings' sole member is Fox Corporation.

**d.** Manuel Arroyo transferred ownership of real property located in the Southern District of Texas to Rodriguez.

**e.** Manuel Arroyo is a citizen of Mexico.

**f.** Rodriguez is the sister of Manuel Arroyo and a resident of Mexico City.

**g.** Rodriguez is a citizen of Mexico.

**h.** This action arises out of litigation filed on August 14, 2025 by Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC, un the United States District Court for the Southern District of New York ("SDNY") against Media Deportes Mexico, S. de R.L. de C.V. ("MDM"). That litigation is *Fox Corporation et al. v. Media Deportes Mexico*, Case No 25-cv-6703 (S.D.N.Y.) (the "SDNY Litigation" or the "SDNY Case").

**i.** MDM has not appeared in the SDNY Case.

**j.** Manuel Arroy has not appeared in the SDNY Case.

**k.** Also on August 14, 2025, the court in the SDNY Action issued a temporary restraining order against Media Deportes Mexico ("MDM"), the defendant

in the SDNY Action, prohibiting it from, among other things, using certain Fox Sports trademarks in Mexico and the United States, as well as prohibiting it from pursuing any legal or regulatory action relating to certain Fox Sports trademarks in Mexico.

**l.** Also on August 14, 2025, the court in the SDNY Action ruled that "providing a copy via electronic mail of [its August 14, 2025 temporary restraining order], all papers submitted in support of Plaintiffs' Motion [for the temporary restraining order], and the complaint initiating this action upon Defendant or its counsel on or before five o'clock in the afternoon on August 15, 2026, shall be deemed good and sufficient service thereof."

**m.** On August 29, 2025, Plaintiffs filed emergency motions for civil contempt against MDM and non-parties Mexico Sports Distribution LLC ("MSD"), Grupo Lauman Holding ("Grupo Lauman"), and Manuel Arroyo.

**n.** In their motion to hold Manuel Arroyo in civil contempt, on August 29, 2025, Plaintiffs alleged that "Manuel Arroyo is the principal actor directing all of these entities to violate the Court's TRO" and that "Defendant [Media Deportes Mexico] immediately violated the TRO: it did not remove any of the offending marks from its platforms and repeatedly displayed new content bearing those marks" and that "Manuel Arroyo orchestrated the violating conduct perpetuated by Defendant [Media Deportes Mexico], MSD [Mexico Sports Distribution LLC], and Grupo Lauman."

**o.** On August 29, 2025, the court in the SDNY Action ruled, "Accordingly, it is ORDERED that the Court hereby imposes civil contempt sanctions, jointly and

severally, against MSD, Grupo Lauman, and Manuel Arroyo by imposing a fine of $200,000 per day to be paid daily to the Clerk of the Court of the Southern District of New York beginning September 6, 2025, and continuing each day thereafter (1) until Defendant and those acting in concert with it—including MSD [Mexico Sports Distribution LLC], Grupo Lauman, and Manuel Arroyo—cease using the trademarks identified in the Temporary Restraining Order and (2) until Defendant withdraws the August 27, 2025 Mexico Injunction."

**p.** Prior to September 2, 2025, Manuel Arroyo owned the real property located at 3 Philbrook Way, Spring, Texas, 77382-1377.

**q.** On September 2, 2025, Manuel Arroyo signed and notarized a Special Warranty Deed that transferred the real property located at 3 Philbrook Way, Spring, Texas, 77382-1377 to his sister, Rodriguez.

**r.** The transfer of the 3 Philbrook Way property from Manuel Arroyo to Rodriguez was recorded on September 3, 2025 in the official public records of Montgomery County, Texas.

**s.** The Special Warranty Deed transferring the 3 Philbrook Way property identifies the consideration for the transfer of the property as "Love and affection and other good and valuable consideration."

**t.** On September 5, 2025, the court in the SDNY Action issued a preliminary injunction against MDM, in which it ruled: "Accordingly, the Court hereby enjoins MDM [Media Deportes Mexico], its agents, employees, attorneys, and any persons in active concert or participation with it, from doing the following during

the pendency of this litigation: (1) using the 'Fox Sports Trademarks,' as that term is defined in the Temporary Restraining Order, in Mexico; (2) using the 'U.S. Fox Sports marks,' as that term is defined in the Temporary Restraining Order, in the United States; (3) pursuing any legal or regulatory action relating to any trademark containing the word 'Fox' in Mexico, including seeking to enforce the injunction issued on March 26, 2025 by Civil Department 42 of the Superior Court of Justice of Mexico City and seeking to enforce the injunction dated August 27, 2025 (published on August 28, 2025) by Civil Department 42 of the Superior Court of Justice of Mexico City" and the court in the SDNY Action also ruled that Plaintiffs were ordered "to provide a copy of this Order by electronic mail to MDM [Media Deportes Mexico] or its counsel on or before September 8, 2025, which shall be deemed good and sufficient service hereof."

**u.** On September 9, 2025, the court in the SDNY Action ruled: "Pursuant to Federal Rule of Civil Procedure 4, the Court has repeatedly authorized electronic service in this action, including electronic service on Grupo Lauman and Manuel Arroyo of papers related to Plaintiffs motion to hold them in civil contempt."

**v.** On September 9, 2025, the court in the SDNY Action ruled: "The Court orders that MDM [Media Deportes Mexico], Grupo Lauman, and Manuel Arroyo shall pay the civil contempt sanctions for which they are liable – including any unpaid sanctions imposed on MDM that have accrued prior to the date of this Order – to Plaintiffs' rather than the Clerk of the Court."

**w.** On October 8, 2025, the court in the SDNY Action entered a judgment

against Manuel Arroyo in which it ruled: "[I]t is hereby ORDERED, ADJUDGED, and DECREED that judgment is entered against Manuel Arroyo in favor of Plaintiffs in the amount of $5,800,000, representing accumulated civil contempt sanctions from September 9, 2025 to October 8, 2025 (consisting of $200,000 per day)."

**x.** On November 18, 2025, Plaintiffs filed the SDNY judgment against Arroyo for registration in the Southern District of Texas in the action *Fox Corporation, et al. v. Manuel Arroyo*, Case No. 25-mc-2271 (S.D. Tex.)

**8. Agreed Applicable Propositions of Law**

**a.** The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Plaintiffs—Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC—are each citizens of Delaware and New York, Rodriguez is a citizen of Mexico, and the matter in controversy exceeds $75,000.00.

**b.** Venue is proper pursuant to 28 U.S.C. § 1391(a) because this action arises out of events that occurred in the Southern District of Texas.

**c.** The creditor bears the burden of proving a voidable transfer by a preponderance of the evidence. TUFTA does not impose a clear-and-convincing standard. *Sargeant*, 512 S.W.3d at 412; *Mladenka v. Mladenka*, 130 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

**d.** To prevail under Tex. Bus. & Com. Code § 24.005(a)(1), a plaintiff must establish that it is a creditor with a claim against a debtor, the debtor transferred an asset shortly before or within a reasonable time after the claim arose, and the debtor acted with intent to hinder, delay, or defraud any creditor. *In re Life Partners*

*Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019); *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204–05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

**e.** "[T]he plaintiffs' service of process upon defendant must have been procedurally proper." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323-24 (S.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)).

**f.** "If this Court lacked personal jurisdiction over these defendants, then the injunction would be void as to them." SEC v. Capital Growth Co., S.A. (Costa Rica), 391 F. Supp. 593, 600 (S.D.N.Y. 1974).

**9. Exhibits**

See Plaintiffs' Exhibit List attached as Exhibit A and Rodriguez's Exhibit List attached as Exhibit B.

**10. Witnesses**

**a.** Plaintiffs will call the following witnesses:

**1.** Laura Paola Arroyo Rodriguez – Defendant

Expected to testify regarding her knowledge of the transfer of the Philbrook Way property and the current status of that property.

**2.** Justin Lancer – Fox employee c/o Phelps Dunbar, 1001 Fannin, Suite 2200, Houston, Texas 77002

Contingent on the Court's ruling on Plaintiffs' forthcoming Motion to Take Judicial Notice, Mr. Lancer is expected to testify regarding the proceedings in the SDNY relating to the contempt order against Manuel Arroyo, including allegations relevant to Plaintiffs' claims.

**3.** Rosaura Rebecca Chow Valdez - Manuel Arroyo's accountant/real estate



PD.63654765.1

agent, 6806 Sandia Crest St., Spring, Texas 77379

Expected to testify regarding the Philbrook Way property, communications regarding the transfer of the property, and related real estate records and transactions.

**4.** Patricio Gutierrez - Attorney for Manuel Arroyo,

Expected to testify regarding preparation of the Special Warranty Deed, communications concerning the transfer of the Philbrook Way and Lakeside Green properties, the circumstances surrounding the transfers, and related records and transactions.

**5.** Daniel Murphy – Asset Search Expert, StoneTurn Group, LLC, 177 State Street, 2nd Floor, New York, NY 10004

Expert witness expected to testify regarding asset searches, due diligence, and assets held in Texas and the United States by Manuel Arroyo, including his opinion that Manuel Arroyo had no other real estate assets in Texas after the transfers of the Philbrook Way and Lakeside Green properties.

**6.** Mike Brubaker – Real Estate Appraiser, Brubaker & Associates, Inc., 7626 Hammerly Blvd., Houston, Texas 77055.

Real estate appraiser expected to testify regarding the market value of the Philbrook Way property.

**7.** Daniel Gervitz

Husband of Defendant; Mr. Gervitz; expected to testify regarding communications and events relating to the transfer of the 3 Philbrook Way property.

See Plaintiffs' Witness List attached as Exhibit C.

**b.** Rodriguez will call the following witnesses:

**1.** Laura Paola Arroyo Rodriguez – Defendant

Ms. Arroyo is the Defendant and she is expected to testify about the house that was given to her by her brother Manuel Arroyo, the reasons, when, the actions taken by her to receive the house, the actions taken by her brother's realtor and attorney to transfer the house, the actions taken by her brother, the reason for a limited liability company, her and her family's history with the house, and on any other topic testified to by another witness.

**2.** Daniel Gervitz

Mr. Gervitz is Ms. Arroyo's husband and he is expected to testify about the house that was given to his wife by her brother Manuel Arroyo, the reasons, when, the actions taken by her to receive the house, the actions taken by her brother's realtor and attorney to transfer the house, the reason for a limited liability company, the plans to build a portfolio of investment property in Texas, the family's history with the house, and on any other topic testified to by another witness.

**3.** Rebecca Valdez Chow

Ms. Valdez is a real estate agent hired to facilitate the transfer of the house that is the basis of this lawsuit. She is expected to testify about how she knows Manuel Arroyo, when she was hired by him to transfer a house to Mr. Arroyo's sister, what Mr. Arroyo asked her to do to transfer the house, what she did to have the house transferred, Mr. Arroyo's efforts to transfer the house to his sister, Ms. Valdez's understanding of why Mr. Arroyo transferred the house to his sister, Ms. Valdez will explain the communications between her, Mr. Arroyo, Ms. Arroyo, the notary public, and Patricio Gutierrez, and on any other topic testified to by another witness.

**4.** Patricio Gutierrez, Esquire

Mr. Gutierrez, a licensed lawyer, was hired by Ms. Valdez to represent Manuel Arroyo in the transfer of the house to his sister Paola Arroyo. Mr. Gutierrez is expected to testify about why and when he was hired by Mr. Arroyo, his actions and those of his firm to transfer the house to Ms. Arroyo, his understanding of Ms. Arroyo's limited liability company, the process to transfer a Texas house by an owner in Mexico, the communications from and to his firm by Ms. Valdez, Ms. Arroyo, Mr. Arroyo, and representatives of the Jackie Ward Law Firm.

**5.** David Lopez

Mr. Lopez is a licensed and practicing attorney; he has been retained by Defendant to offer expert testimony. Mr. Lopez is expected to testify about the Mexican legal system and, in particular, the application of the national Code of Civil and Family Procedures to Manuel Arroyo and the New York judgment against him. See Mr. Lopez's March 2, 2026 Declaration filed in this case.

**6.** Justin Lancer

Mr. Lancer is a designated witness by Plaintiffs; he is an executive vice-president of Fox Corporation. He is expected to testify about his review of public filings in the Southern District of New York Cause No. 1:25-cv-06703, Fox

Corporation, Fox Media, LLC, and Fox Sports En Español, LLC, v. Media Deportes Mexico, S. de R.L. de C.V

Rodriguez's Witness List is attached as Exhibit D.

If any other witnesses will be called at the trial, their names, addresses, and the subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.

**11. Trial**

The trial will be non-jury. Plaintiffs and Rodriguez anticipate that it will take a total of 16 to 20 hours to present the evidence at trial in this case.

Rodriguez's position is that foreseeable logistical problems include that Ms. Arroyo and her husband are residents of Mexico City, they are both professionals, and parents of two teenage children. Ms. Arroyo has her own public relations company and Mr. Gervitz has his own tax law practice. We request at least four weeks notice for trial so that they may make proper arrangements, including travel, for their children and businesses.

At least three of the witnesses will require Spanish translation: Ms. Arroyo, Mr. Gervitz, and Ms. Valdez.

**12. Additional Required Attachments**

See Plaintiffs' Proposed Findings of Fact and Conclusions of Law attached as Exhibit E and Rodriguez's Proposed Findings of Fact and Conclusions of Law attached as Exhibit F.

It is SO **ORDERED**.

Signed this ___ of ________________, 20__.

_______________________________
Nicholas J. Ganjei
United States District Judge

APPROVED:

August 31, 2026
**Date**

**PHELPS DUNBAR LLP**

By: */s/Marcus Tucker*
Marcus R. Tucker
Federal Bar No. 12769
State Bar No. 20282360
1001 Fannin St., Ste. 2200
Houston, Texas 77002
Telephone: 713-626-1386
Email: marcus.tucker@phelps.com

**ATTORNEYS FOR PLAINTIFFS**

**OF COUNSEL:**

**PHELPS DUNBAR LLP**

D. Michael Hurst, Jr.**
MSB No. 99990
1905 Community Bank Way, Ste. 200
Flowood, MS 39232
Telephone: 601-352-2300
Email: Mike.Hurst@phelps.com
***Admitted Pro Hac Vice*

**STEPTOE LLP**

Katherine A. Petti (CA Bar No. 339052)**
Christopher T. Berg (Bar No. 24082682)
633 W. Fifth Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 439-9543

kpetti@steptoe.com
cberg@steptoe.com
*******Admitted Pro Hac Vice*

August 31, 2026
Date

**RINEY RONQUILLO SOULE, PLLC**

By: */s/Steven Shaver*
Steven R. Shaver
Texas Bar No. 18136550
Marcos G. Ronquillo
Texas Bar No. 17226000
5420 LBJ Freeway, Ste. 220
Dallas, Texas 75240
Telephone: 241-461-1206
Email: sshaver@rrspllc.com
Email: mgronquillo@fjrpllc.com

**ATTORNEYS FOR DEFENDANT**