Exhibit E

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **FOX CORPORATION, FOX MEDIA LLC, and FOX SPORTS EN ESPAÑOL LLC,** *Plaintiffs,* | § § § § § | **CAUSE NO. 4:25-CV-4650** |
| **v.** | § § | |
| **LAURA PAOLA ARROYO RODRIGUEZ,** *Defendant.* | § § § | |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports en Español LLC ("Plaintiffs" or "Fox") respectfully submit these Proposed Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a) and this Court's procedures, and would show the Court as follows:

## I. FINDINGS OF FACT

### A. The Parties and the Property

1. Plaintiff Fox Corporation is a corporation incorporated under the laws of Delaware with its principal place of business in New York, New York. Joint Pretrial Order ("JPTO") (7.b).

2. Plaintiff Fox Media LLC is a limited liability company whose sole member is Foxcorp Holdings LLC, a Delaware limited liability company. Foxcorp Holdings LLC's sole member is Fox Corporation. JPTO (7.b).

3. Plaintiff Fox Sports en Español LLC is a limited liability company whose sole member is Fox Sports Holdings, LLC, a Delaware limited liability company. Fox Sports Holdings' sole member is Foxcorp Holdings LLC, whose sole member is Fox Corporation. JPTO (7.c).

4. Defendant Laura Paola Arroyo Rodriguez ("Rodriguez") is the sister of Manuel Arroyo. JPTO (7.f). She is a citizen of Mexico and resides in Mexico City. JPTO (7.f, g). Rodriguez Dep. at 9:16-21; 12:17-24.

5. Manuel Arroyo is a citizen of Mexico. JPTO (7.e).

6. The real property at the center of this dispute is located at 3 Philbrook Way, Spring, Texas 77382-1377 (the "Philbrook Way property"), legally described as Lot Ten (10), Block One (1), The Woodlands, Village of Carlton Woods, Section 13, a Subdivision in Montgomery County, Texas, recorded in Cabinet Q, Sheets 191–194, Map and Plat Records of Montgomery County, Texas; Property ID 300698, Geographic ID 9600-13-01000. JPTO (7.a). Prior to September 2, 2025, Arroyo owned the Philbrook Way property. JPTO (7.p). Manuel Arroyo transferred ownership of the Philbrook Way property, real property located in the Southern District of Texas, to Rodriguez on September 2, 2025. JPTO (7.q). The Philbrook Way property has a market value of $5.1 Million. Ex. 40, Appraisal Report.

## B. The SDNY Litigation and the Contempt Order

7. On August 14, 2025, Plaintiffs filed *Fox Corporation et al. v. Media Deportes Mexico, S. de R.L. de C.V.*, Case No. 1:25-cv-06703-JSR (S.D.N.Y.) (the "SDNY Litigation") before the U.S. District Court for the Southern District of New

York ("SDNY") against Media Deportes Mexico, S. de R.L. de C.V. ("MDM"). JPTO (7.h). Plaintiffs asserted claims against MDM for breach of contract and Lanham Act trademark infringement, among others. Ex. 1, Temporary Restraining Order, SDNY ECF 29; Ex. 43, Memo. Of Law in Support of Plfs' Ex Parte Motion, SDNY ECF 9.

8. Plaintiffs alleged in the SDNY Litigation that Fox Corporation had a contract with MDM to use the Fox Sports trademarks and that Fox Corporation terminated that contract on March 3, 2025. Ex. 1, SDNY ECF 29; Ex. 43, SDNY ECF 9.

9. Plaintiffs alleged in the SDNY Litigation that Fox Media LLC is the owner of the Fox Sports trademarks covered by the contract between Fox Corporation and MDM, as well as the owner of identical trademarks registered in the United States. Ex. 1, SDNY ECF 29; Ex. 43, SDNY ECF 9. Plaintiffs also alleged in the SDNY Litigation that MDM has infringed, and continues to infringe, those trademarks. Ex. 1, SDNY ECF 29; Ex. 43, SDNY ECF 9.

10. On August 14, 2025, the SDNY issued a Temporary Restraining Order ("TRO") prohibiting MDM from, among other things: using certain Fox Sports trademarks in Mexico and the United States and prohibiting it from pursuing any legal or regulatory action relating to certain Fox Sports trademarks in Mexico. JPTO (7.k).

11. On August 29, 2025, Plaintiffs filed emergency motions for civil contempt against MDM and non-parties Manuel Arroyo, Mexico Sports Distribution LLC ("MSD"), and Grupo Lauman. JPTO (7.m). In their motion to hold Manuel

Arroyo in civil contempt, Plaintiffs alleged Arroyo directed MDM to violate the SDNY court's injunction. JPTO (7.n). They alleged Arroyo did so by directing MDM to (1) continue infringing the Fox Sports trademarks, *id*., and (2) continue to litigate issues related to the Fox Sports trademarks in courts in Mexico Ex. 19, Motion for Contempt Against Nonparties.

12. Plaintiffs also alleged in the SDNY Litigation that, as a result of Arroyo's conduct directing MDM to use the Fox Sports trademarks without authorization and directing MDM to obtain an injunction in Mexico concerning the Fox Sports trademarks, Plaintiffs are suffering approximately $200,000 per day. Ex. 19, Motion for Contempt Against Nonparties; Ex. 22, Response in Support of Plaintiffs' Emergency Contempt Motion, SDNY ECF 42.

13. On August 29, 2025, the SDNY entered an Order holding Manuel Arroyo, Mexico Sports Distribution LLC, and Grupo Lauman in contempt (the "Contempt Order"). JPTO (7.o). The SDNY held Arroyo, MSD, and Grupo Lauman in civil contempt for acting in concert with MDM to violate the TRO, including MDM's refusal to cease using the trademarks identified in the TRO and MDM's pursuit of an injunction in Mexico related to the Fox Sports trademarks. Ex. 4, Order holding non-parties in contempt. The Court imposed civil contempt sanctions on Arroyo, MSD, and Grupo Lauman jointly and severally for $200,000 per day. JPTO (7.o).

14. Arroyo received notice of the contempt proceedings against him in the SDNY Litigation on August 29, 2025 via email sent to MDM and MSD at 5:54 a.m.

Pacific Standard Time. Ex. 6, Memorandum Order, SDNY ECF 73; Ex. 9, Certificate of Service re Contempt Order, SDNY ECF 55.

15. Arroyo received notice of the Contempt Order the same day, August 29, 2025, via email sent to MDM and MSD at 11:58 a.m. Pacific Standard Time. Ex. 6, Memorandum Order, SDNY ECF 73; Ex. 9, Certificate of Service re Contempt Order, SDNY ECF 55.

16. On September 9, 2025, the SDNY made Arroyo's contempt sanctions payable to Plaintiffs rather than the Clerk of Court. JPTO (7.v).

17. On October 8, 2025, the SDNY entered final judgment of $5,800,000 against Arroyo, payable to Plaintiffs, for accumulated civil contempt sanctions from September 9, 2025 to October 8, 2025. JPTO (7.w). Arroyo filed no notice of appeal from that judgment or the underlying Contempt Order. *See* JPTO (7.j).

**C. The Urgent September 2, 2025 Transfer of the Philbrook Way Property**

18. On September 2, 2025—four days after the Contempt Order and the day after Labor Day—Arroyo executed a Special Warranty Deed conveying the Philbrook Way property to Rodriguez. JPTO (7.q). The deed was executed via DocuSign using a virtual notary. Ex. 34, E-mail re virtual appointment.

19. Rodriguez provided no monetary or other financial consideration for the Philbrook Way property. Rodriguez Depo. at 94:9 - 95:12. The only consideration recited in the Deed is: "Love and affection and other good and valuable consideration." JPTO (7.s); Ex. 7, Philbrook Way Transfer Deed.

20. Arroyo through his representative, Rosaura Rebecca Valdez Chow ("Chow"), attempted to arrange to transfer the Philbrook Way property on the same day that the Contempt Order was issued. Chow Depo. at 43:6 - 11; 43:17 - 45:16. On August 29, 2025 at 1:49 p.m. on the Friday before Labor Day weekend, Chow, a real estate agent and accountant assisting Arroyo, emailed the Gutierrez Law Firm at Arroyo's request stating it was urgent to schedule an appointment for Arroyo to execute the deed that day or as soon as possible thereafter. Exs. 24 and 30, Aug. 29 Chow email to Gutierrez Law and English translation of same; Chow Depo. at 43:6 - 11; 43:17 - 45:16. According to Chow, it was urgent because Arroyo told her it was urgent. Chow Depo, at 44: 3–13.

21. Chow also attempted to communicate by e-mail with the Gutierrez Law Firm on Labor Day on September 1, 2025 and received a notification e-mail from the firm that the Gutierrez Law Firm was closed Labor Day and would reopen on September 2, 2025. Ex. 34, p. 12 and 57, E-mail on Labor Day and Automatic Reply; Gutierrez Depo. (June 18, 2021) at 31:9 - 32: 9.

22. Chow then contacted the Gutierrez Law Firm again on September 2, 2025, and the Gutierrez Law Firm arranged another meeting with the virtual notary which resulted in the execution of the Deed transferring the property. Ex. 36, Chow email to Gutierrez Law; Chow Depo. at47:9–15; Gutierrez Depo. (6/18/21) at33:19 - 34:5.

23. The timing of Chow's urgent communication—the same day as the Contempt Order, on a Friday before a holiday weekend and over a holiday weekend—

and the execution of the deed on the first business day thereafter, September 2, 2025, demonstrates that the transfer was precipitated by the entry of the Contempt Order. *See* Findings of Fact Nos. 18–23.

24. Rodriguez did not sign the deed and did not learn of the transfer until after it occurred. Rodriguez Depo. at 36:17-23; 93:25 - 94:8.

25. Plaintiffs retained real estate appraiser, Mike Brubaker of Brubaker & Associates, Inc., who appraised the property at $5,100,000. Testimony of Mike Brubaker; Ex. 40, Appraisal Report.

**D. Arroyo's Simultaneous Transfer of Other Texas Real Property**

26. On the same day he deeded the Philbrook Way property to Rodriguez—September 2, 2025—Arroyo also deeded his only other known Texas real property, located at 87 Lakeside Green, The Woodlands, Texas, to his daughter for no monetary consideration (the "Lakeside Green property"). Ex. 18, Lakeside Green Transfer Deed; Chow Depo. at23:8-22; Gutierrez Depo. (6/18/21), at 10:17-22; 11:22 - 12:2; 14:4 - 16:5.

27. Prior to September 2, 2025, Arroyo owned the real property located at 87 Lakeside Green, The Woodlands, Texas. JPTO (7.p).

28. After the two September 2, 2025 transfers, Arroyo had no other real estate assets in Texas. Testimony of Dan Murphy; Ex. 37, StoneTurn Report. Plaintiffs' asset search expert, Daniel Murphy of StoneTurn Group, LLC, provided undisputed testimony based on asset searches that Arroyo had no other real estate

assets in Texas, and no other real estate assets owned by Arroyo could be found in the United States after the transfers of the Philbrook Way and Lakeside Green properties. *Id.*

**E. Arroyo's Retained Possession and Control of the Philbrook Way Property**

29. After the transfer, Arroyo retained possession and control of the Philbrook Way property. He kept his possessions and furnishings at the property, and continued to pay the utilities, bills, maintenance, and upkeep for the property. Arroyo also discussed reimbursing Rodriguez for expenses related to the Philbrook Way property. Rodriguez Depo. at 104:10 - 106:5; 106:8 - 107:6; Gervitz Depo. at 38:19–21.

30. Rodriguez and her husband own a separate second home in Spring, Texas (63 E. Hullwood Circle), for which they pay utilities, maintenance costs, and taxes. Ex. 13, Hullwood Deed; Rodriguez Depo. at 15:1 - 16:4.

31. Rodriguez and her husband have not moved any furnishings into the Philbrook Way property. Rodriguez Depo. at 105:5–7; Gervitz Depo at 36:17 - 37:1. Rodriguez had never spent the night at the Philbrook Way property as of the time of her deposition in February 2026. Rodriguez Depo. at 104:17–20.

32. Rodriguez paid the 2025 property tax for the Philbrook Way property, but she and Arroyo agreed to address who would be responsible for the property taxes after this lawsuit is resolved. Rodriguez Depo. at 106:8 - 107:6.

33. Rodriguez does not conduct any business or have financial dealings with Arroyo, including none in the ordinary course. She has no loans to him, and he has no loans to her. Rodriguez Depo. at 19:14 - 20:4.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees. Plaintiffs are citizens of Delaware and New York; Rodriguez is a citizen of Mexico. Rodriguez also admits that this Court has subject matter jurisdiction over this action. ECF No. 43, Second Amended Complaint ¶ 12; JPTO (8.a).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the Southern District of Texas and the real property at issue lies within this district. Rodriguez also admits that venue is proper in this judicial district. ECF No. 43, Second Amended Complaint ¶ 14; JPTO (8.b).

3. The Court has personal jurisdiction over Rodriguez because she purposefully availed herself of the privilege of conducting activities in Texas by owning, transferring, and purchasing real property in this State. Ex. 7, Philbrook Way Transfer Deed. In addition to receiving the Philbrook Way property (located in Montgomery County, Texas), Rodriguez owns real property at Lot 13, Block 2,

Woodlands Village of Creekside Park Section 2, Harris County, Texas, known as 63 E. Hullwood Circle, Spring, Texas 77389. Ex. 14, Tax Assessor Info for 63 E. Hullwood. Furthermore, there is a substantial connection between Rodriguez's contacts with Texas and the operative facts of this litigation to determine whether real property in Texas was fraudulently transferred. In addition, jurisdiction over Rodriguez comports with traditional notions of fair play and substantial justice given the interest of Texas in resolving this controversy involving real estate within its borders.

**B. Burden of Proof**

4. The creditor bears the burden of proving a voidable transfer by a preponderance of the evidence. *Sargeant v. Al Saleh*, 512 S.W.3d 399, 412 (Tex. App. 2016); *Mladenka v. Mladenka*, 130 S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

5. The Court concludes that for the reasons set forth below Plaintiffs have met their burden of proof by a preponderance of the evidence as to all claims asserted herein.

**C. TUFTA Legal Standards**

6. The Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code §§ 24.001–24.013, governs Plaintiffs' claims.

7. Under Tex. Bus. & Com. Code § 24.005(a), a transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, if the debtor made the transfer: (1) with

actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer, and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. Tex. Bus. & Com. Code § 24.005(a)(1)–(2).

8. To prevail under § 24.005(a)(1), a plaintiff must establish that it is a creditor with a claim against a debtor, the debtor transferred an asset shortly before or within a reasonable time after the claim arose, and the debtor acted with intent to hinder, delay, or defraud any creditor. *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019); *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204–05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

9. The statutory terms are disjunctive; proof of intent to hinder or delay is sufficient without proof of common-law fraud. *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 461 n.11 (Bankr. N.D. Tex. 2009).

10. Intent may be to hinder, delay, or defraud any creditor, not just the creditor bringing the action. Tex. Bus. & Com. Code § 24.005(a)(1); *The Heritage Org., L.L.C.*, 413 B.R. at 488 ("All that TUFTA requires is that Heritage have acted with the actual intent to hinder, delay or defraud any of its creditors at the time each Transfer at issue here was made.").

11. Actual intent is assessed at the time the transfer is made. *In re Brass*, No. 6:23-cv-00002, 2025 WL 2162300, at *17 (S.D. Tex. July 29, 2025) ("TUFTA focuses on the debtor's intent *at the time the transfer occurred*"); *Roland v. United*

*States*, 838 F.2d 1400, 1402 (5th Cir. 1988) ("We held that under the Texas Fraudulent Transfers Act the debtor's intent at the time of the conveyance was the crucial element."); *United States v. Chapman*, 756 F.2d 1237, 1241 (5th Cir. 1985) (quoting *Cates v. Clark*, 24 S.W.2d 450, 453 (Tex. Civ. App. 1930)); *Sargeant*, 512 S.W.3d at 414).

12. In determining actual intent under § 24.005(a)(1), consideration may be given, among other factors, to the following non-exclusive "badges of fraud" enumerated in Tex. Bus. & Com. Code § 24.005(b): (1) the transfer was to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) the transfer was concealed; (4) before the transfer was made, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received was not reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or became insolvent shortly after the transfer; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

13. No single badge of fraud is required or conclusive; a confluence of several badges supports a reasonable inference of actual intent. *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566–67 (Tex. 2016).

14. Actual intent may be established by circumstantial evidence because direct proof of fraudulent intent is often unavailable. *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008).

15. The statutory badges are non-exclusive; courts may consider other factors and the debtor's whole pattern of conduct. *The Heritage Org., L.L.C.*, 413 B.R. at 480–81; *Matter of Reed*, 700 F.2d 986, 991–92 (5th Cir. 1983).

**D. Plaintiffs Are Creditors and Arroyo Is a Debtor**

16. The Plaintiffs are creditors under TUFTA because they have a "claim" as defined by TUFTA. TUFTA defines a creditor as anyone who has a claim. Tex. Bus. & Com. Code. § 24.002(4). A claim is a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, contingent, matured, or disputed. Tex. Bus. & Com. Code. § 24.002(3).

17. Texas courts give a broad construction to the term "creditor," such that the Act protects holders of unliquidated, unmatured, and contingent claims. "A contingent claim is as fully protected as one that is absolute." *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 248 (5th Cir. 1990) (quoting *Burnett v. Chase Oil & Gas, Inc.,* 700 S.W.2d 737, 743 (Tex. App.—Tyler 1985, no writ)); *Kalkan v. Salamanca*, 672 S.W.3d 725, 730–31 (Tex. App. 2023); *Nat'l Cleaners, LLC v. Aron*, No. 14-21-00549-CV, 2022 WL 3973591, at *6 (Tex. App.—Houston [14 Dist.] Sept. 1, 2022).

18. On August 29, 2025, the SDNY imposed a $200,000 per day fine on Arroyo payable to the SDNY Clerk of Court. Ex. 4, Order holding non-parties in

contempt, SDNY ECF 45. Upon the issuance of the Contempt Order imposing that fine, the SDNY became a creditor of Arroyo. *See* Tex. Bus. & Com. Code. §§ 24.002(3), (4).

19. The Plaintiffs hold a final, executable judgment of $5.8 Million entered by the SDNY on October 8, 2025, with continuing sanctions accruing at $200,000 per day. Ex. 11, Final Judgment against Arroyo. This judgment is a right to payment held by Plaintiffs and thus constitutes a claim under TUFTA, which makes the Plaintiffs creditors under TUFTA.

20. Fox Corporation also has claims, as defined by TUFTA, against Manuel Arroyo for the damages arising from Arroyo causing MDM to breach its contract with Fox Corporation, as well as for the damages Manuel Arroyo caused Fox Corporation by directing MDM to violate the injunction in the SDNY Litigation. Those claims arose no later than March 3, 2025. Ex. 1, Temporary Restraining Order; Ex. 43, SDNY ECF 9; Ex. 19, Motion for Contempt Against Nonparties; *see also United States v. Islip Mach. Works, Inc.*, 179 F. Supp. 585, 590 (E.D.N.Y. 1959) ("[I]f an officer or director acts against the interest of the corporation in inducing the breach [of contract], he can be held liable to the injured party.").

21. Fox Media LLC also has claims, as defined by TUFTA, against Manuel Arroyo for the damages arising from Arroyo inducing MDM to infringe Fox Media LLC's trademarks, as well as for the damages Manuel Arroyo caused Fox Media LLC by directing MDM to violate the injunction in the SDNY Litigation. Those claims arose no later than March 3, 2025. Ex. 1, Temporary Restraining Order, SDNY ECF

29; Ex. 43, Memorandum of Law in Support of Plaintiff's ex parte Motion, SDNY ECF 9, Ex. 19, Motion for Contempt Against Nonparties, SDNY 42; *see also KatiRoll Co., Inc. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014) ("It is well-established in the Second Circuit that 'under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious force behind [the defendant corporation's] infringement.'" (citation omitted)).

22. Fox Sports en Español LLC also has a claim, as defined by TUFTA, against Manuel Arroyo for the damages Manuel Arroyo caused Fox Sports en Español LLC by directing MDM to violate the injunction in the SDNY Litigation. Those claims arose no later than August 14, 2025. Ex. 19, Motion for Contempt Against Nonparties, SDNY 42.

23. Manuel Arroyo is a "debtor" within the meaning of § 24.002(6), because he is a "person who is liable" on the claims described above.

### E. The Transfer Was Made With Actual Intent to Hinder, Delay, or Defraud

24. The Court concludes that Manuel Arroyo made the September 2, 2025 transfer of the Philbrook Way property to Rodriguez with actual intent to hinder, delay, or defraud his creditors in violation of Tex. Bus. & Com. Code § 24.005(a)(1). The evidence establishes that the majority of the eleven statutory badges of fraud, plus additional non-statutory indicators of fraudulent intent, are in Plaintiffs' favor:

a) **Badge (1): Transfer to an Insider:** The transfer was made to Rodriguez, Arroyo's sister, who is an insider within the meaning of Tex. Bus. & Com.

Code § 24.002(7). Tex. Bus. & Com. Code § 24.005(b)(1); Rodriguez Depo. at 18:15-20.

b) **Badge (2): Debtor Retained Possession or Control:** After the transfer, Arroyo retained possession and control of the Philbrook Way property by keeping his personal possessions and furnishings at the property, continuing to pay utilities, bills, maintenance, and upkeep. (Rodriguez Depo. p. 104, l. 10 to p. 106, l. 5.). Rodriguez and her husband moved no furnishings into the property and have not stayed at the Philbrook Way property. Tex. Bus. & Com. Code § 24.005(b)(2); Rodriguez Depo. at 104:17-20; 105:5-7; Gervitz Depo at 36:17 - 37:1.

c) **Badge (3): Transfer Was Concealed:** Arroyo concealed the transfer. Rodriguez did not sign the deed and did not learn about the transfer until after it occurred. Tex. Bus. & Com. Code § 24.005(b)(3); Ex. 7, Philbrook Way Transfer Deed; Rodriguez Depo. at 36:17–23; 93:25 - 94:8.

d) **Badge (4): Debtor Had Been Sued or Threatened With Suit:** Before the transfer was made, Arroyo had been threatened with contempt by the Fox's Emergency Motion for Contempt filed on August 29, 2025 and then held in contempt on the same day before the transfer of the Philbrook Way property was made. Ex. 19, Motion for Contempt Against Nonparties, SDNY ECF 42; Ex. 4, Order holding non-parties in contempt, SDNY 45. Arroyo was on notice of the contempt proceedings and the Contempt Order before the transfer of the Philbrook Way property because those papers were emailed to MDM on August 29, 2025, (Ex. 9, Certificate of Service, SDNY ECF 55), and notice to MDM is imputed to Arroyo (Ex.

6, Memorandum Order, SDNY ECF 73 at 2). Tex. Bus. & Com. Code § 24.005(b)(4); Ex. 4, Order holding non-parties in contempt, SDNY ECF 45.

e) **Badge (5): Transfer of Substantially All of the Debtor's Assets:** The transfer of the Philbrook Way property, together with the simultaneous transfer of the Lakeside Green property to Arroyo's daughter the same day, constituted substantially all of Arroyo's known real property assets in Texas and the United States. Ex. 7, Philbrook Way Transfer Deed; Ex. 18, Lakeside Deed. Fox has been unable to identify any other real property assets belonging to Arroyo in the United States. Testimony of Dan Murphy; Ex. 37, StoneTurn Report; *see* Tex. Bus. & Com. Code § 24.005(b)(5).

f) **Badge (8): Lack of Reasonably Equivalent Value:** The only consideration provided for the Philbrook Way property was "love and affection." Ex. 7, Philbrook Way Warranty Deed. Rodriguez provided no monetary or other financial consideration for the Philbrook Way property. Rodriguez Dep. at 94: 9 - 95:12. This consideration does not constitute reasonably equivalent value for a property valued at $5,100,000 Tex. Bus. & Com. Code § 24.005(b)(8); Testimony of Mike Brubaker; Ex. 40, Appraisal Report.

g) **Badge (10): Transfer Shortly Before or After a Substantial Debt:** The transfer of the Philbrook Way property occurred on September 2, 2025, shortly after Arroyo incurred a substantial debt to the SDNY by the issuance of the Contempt Order on August 29, 2025, which imposed a daily fine of $200,000 against him. Arroyo urgently attempted to notarize the Special Warranty Deed on the same

day he was held in contempt in the SDNY litigation. Tex. Bus. & Com. Code § 24.005(b)(10); Ex. 7, Philbrook Warranty Deed; Ex. 4, Order holding non-parties in contempt; Exs. 24 and 30, Aug. 29 Gutierrez Law email to Chow and English translation of same; Chow Depo. at 43:6-11; 43:17 - 45:16.

25. In addition to the statutory badges of fraud described above, Arroyo's fraudulent intent is further supported by a course of conduct to divest assets. That course of conduct is established by the transfer of the Lakeside Green property to Arroyo's daughter for no consideration on the exact same day as the transfer of the Philbrook Way property. Ex. 18, Lakeside Green Deed. *See The Heritage Org., L.L.C.*, 413 B.R. at 481 (referring favorably to a court's "reli[ance] upon the debtor's 'whole pattern of conduct' to establish fraudulent intent"); *Matter of Reed*, 700 F.2d at 991–92 (recognizing pattern of conduct to divest assets as a factor for assessing fraudulent intent under TUFTA). The badges of fraud delineated in TUFTA are not exclusive, and courts can consider other factors in determining whether fraudulent intent has been established. *The Heritage Org., L.L.C.*, 413 B.R. at 480.

26. Fraudulent intent is also supported by the fact that Rodriguez already owned a second home in Spring, Texas. Ex. 13, Hullwood Deed. Rodriguez pays the utilities, maintenance costs, and taxes for a previously purchased second home owned with her husband, Daniel Gervitz. Ex. 12, Philbrook Way Deed; Rodriguez Depo. at 11:15 - 12:24; 15:12 - 16:6. She does not pay expenses associated with the Philbrook Way property—Arroyo does.

27. The clear presence of so many statutory badges of fraud and the additional non-statutory indicators, considered together, overwhelmingly support a finding of actual intent to hinder, delay, or defraud creditors. The Court concludes that Arroyo made the September 2, 2025 transfer with actual intent to hinder, delay, and defraud his creditors within the meaning of Tex. Bus. & Com. Code § 24.005(a)(1).

28. To determine whether a fraudulent transfer is made under § 24.005(b)(1) of TUFTA, the debtor's intent is evaluated at the time the transfer was made. *Brass*, 2025 WL 2162300, at *17; *Roland*, 838 F.2d at 1402; *Chapman*, 756 F.2d at 1241. Although Rodriguez contends that Arroyo intended to transfer the property to her in February 2025, the fact that Arroyo did not transfer the property until shortly after he was held in contempt on August 29, 2025, coupled with the fact that he pressed his real estate agent to "urgently" transfer the Philbrook Way property and Lakeside Green properties on August 29, 2025, support the conclusion that Arroyo intended to transfer those properties to hinder his creditors, not because he wanted to gift the properties to his family members. Exs. 24 and 30, Aug. 29 Chow email to Gutierrez Law and English translation of same; Chow Depo. at 43:6- 11; 43:17 - 45:16; Ex. 7, Philbrook Way Transfer Deed.

**F. Constructive Fraud — Lack of Reasonably Equivalent Value**

29. Independently and in the alternative, the transfer is also fraudulent under Tex. Bus. & Com. Code § 24.005(a)(2)(B) because Arroyo transferred the Philbrook Way property without receiving a reasonably equivalent value in exchange

for the transfer, and Arroyo intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

30. First, the only consideration for the transfer was "love and affection." Ex. 7, Philbrook Warranty Deed. Rodriguez paid no monetary consideration. Rodriguez deposition at 94:17-20. The property is valued at $5,100,000. Testimony of Mike Brubaker; Ex. 37, StoneTurn report. No rational trier of fact could find that "love and affection" constitutes reasonably equivalent value for a property valued at $5,100,000.

31. Second, as of September 2, 2025 (the date of the transfer), Arroyo was subject to a $200,000 per day contempt sanction imposed on August 29, 2025. Ex. 4, Order holding non-parties in contempt. The only substantial assets Arroyo maintained in the United States that Fox has been able to identify are the Philbrook Way property and Lakeside Green properties, and the Lakeside Green. Testimony of Dan Murphy; Ex. 37, StoneTurn report. After transferring both the Philbrook Way property and Lakeside Green properties on August 29, 2025, Arroyo did not have other material assets in the United States. Testimony of Dan Murphy; Ex. 37, StoneTurn report. Arroyo therefore believed or reasonably should have believed that he would incur debts beyond his ability to pay with assets in the United States as they became due. Tex. Bus. & Com. Code § 24.005(a)(2)(B).

**G. Rodriguez's Defenses Fail**

32. Rodriguez's attempt to contest the Plaintiffs' status as a creditor by arguing that the SDNY did not have jurisdiction over Manuel Arroyo to hold him in

contempt is meritless. Whether the SDNY court had jurisdiction or not is irrelevant to the Plaintiffs' status as a creditor under TUFTA. TUFTA defines "creditor" as "a person who has a claim," and defines "claim" as a right to payment or property whether or not the right is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Tex. Bus. & Com. Code § 24.002(3). TUFTA's text makes clear that the legislature made a creditor's status turn on the existence of a claim, not its validity. A claim that has not been adjudicated—or even matured at all—confers creditor status. *See Royalty Clearinghouse, Ltd. v. CTS Props., Ltd.*, No. 1:16-CV-1342-LY, 2018 WL 5778676, at *6 (W.D. Tex. July 31, 2018), report and recommendation adopted, 2018 WL 5733138 (W.D. Tex. Sept. 19, 2018) ("Texas courts and the Fifth Circuit have recognized that a plaintiff may be a creditor for TUFTA purposes before its cause of action accrues for statute of limitations purposes."); *Zahra Spiritual Trust*, 910 F.2d at 248 ("The Texas courts have given broad construction to the term creditor, so that [TUFTA] protects the holders of unliquidated unmatured contingent claims.") (internal quotations omitted).

33. Therefore, the existence of Plaintiffs' judgment against Arroyo is a claim sufficient to confer creditor status on Plaintiffs regardless of whether Rodriguez disputes the validity of that claim. *See Mosaic Baybrook One LP v. Cessor*, No. 14-19-00514-CV, 2021 WL 2656613, at *4 (Tex. App.—Houston [14th Dist.] June 29, 2021, pet. denied) ("the relevant inquiry is whether the [plaintiffs] provided sufficient

evidence to show a probable right to relief on their TUFTA claim, not the underlying [suit]").

34. The Plaintiffs have claims against Arroyo that are independent of the SDNY court's contempt order, including claims against Arroyo for inducing MDM to breach its license agreement regarding the Fox Sports trademarks, inducing MDM to infringe the Fox Sports trademarks, and causing MDM to violate the SDNY's injunction. None of those claims relies on the SDNY court issuing a contempt order against Manuel Arroyo. Therefore, Rodriguez's argument about the invalidity of the SDNY judgment against Arroyo—even if true—does not defeat Plaintiffs' TUFTA claim.

35. Moreover, the issue of the SDNY court's jurisdiction over Manuel Arroyo and other foreign defendants has already been argued and ruled on by Judge Rakoff in the SDNY. And that same issue has been re-raised by Manuel Arroyo himself before Judge Ellison in Plaintiffs' judgment registration action, which is currently pending before that court. Not only is Rodriguez's anticipated challenge to Judge Rakoff's jurisdiction foreclosed by TUFTA's text and case law, entertaining that challenge here would create the risk of inconsistent judgments with two other federal courts.

36. Even if the Court were to indulge Rodriguez's attack on the SDNY's jurisdiction to issue the Contempt Order and impose the judgment against Arroyo, the Court concludes that the SDNY had jurisdiction over Arroyo for the purpose of holding him in contempt and enforcing contempt sanctions, including by issuing the

judgment against him, because the circumstances of the SDNY's actions fall under Article 15(3) of the Hague Convention. As a result, Plaintiffs' service of the Contempt Order and related papers via email was proper under Federal Rule of Civil Procedure 4(f)(3). *See Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 820 F. Supp. 3d 299, 307 (S.D.N.Y. 2026).

37. Rodriguez asserts an unclean hands defense but has adduced no supporting facts. The doctrine of unclean hands applies to a litigant whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, marked by a want of good faith, or violative of the principles of equity. *Thomas v. McNair*, 882 S.W.2d 870, 880 (Tex. App.—Corpus Christi-Edinburg 1994, no writ). "The unclean hands defense is inapplicable altogether where the plaintiff's sins do not affect or prejudice the defendant." *Midwestern Cattle Mktg., L.L.C. v. Legend Bank*, N.A., 800 F. App'x 239, 246 (5th Cir. 2020). Fox is a stranger to Arroyo's conveyance to his sister; the underlying trademark dispute is a separate matter in which Rodriguez has no part. There is no nexus between Fox's conduct and the challenged transfer. *Cf. Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 27 (Tex. App.—Tyler 2000, pet. denied); *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, No. 3:09-CV-572-L, 2011 WL 5025153, at *5 (N.D. Tex. Oct. 20, 2011) (defense viable only where a direct nexus exists between the creditor's own conduct and the challenged transfer).

38. The transferee defense under § 24.009(f)(2) does not apply. Under Tex. Bus. & Com. Code § 24.009(f)(2), a transfer is not voidable if the transferee took the

property in the ordinary course of business or financial affairs of the debtor and the insider. This defense is unavailable to Rodriguez because she testified that she conducts no business or financial affairs with Arroyo, and thus does not do so in the ordinary course. Rodriguez Depo. at 19:14 - 20:4.

39. Rodriguez's "improper purpose" defense also fails. "Improper purpose" is not a recognized affirmative defense to a TUFTA action. Rodriguez also has presented no evidence of any improper purpose in the prosecution of this action.

40. Rodriguez's fraud and illegality defenses also fail. Rodriguez has adduced no evidence establishing that Plaintiffs obtained the judgment against Arroyo by fraud or illegal means. In any event, Plaintiffs have independent claims against Arroyo that support their TUFTA claim.

**H. Remedies**

41. Under Tex. Bus. & Com. Code § 24.008(a)(1), a creditor may obtain avoidance of a transfer to the extent necessary to satisfy the creditor's claim. Under § 24.008(a)(3)(A) and (C), the Court may issue an injunction against further disposition of the asset transferred and grant any other relief the circumstances may require.

42. Based on the fraudulent transfer, the Court finds that Plaintiffs are entitled to issuance of a permanent injunction and judgment under Tex. Bus. & Com. Code. §§ 24.008(a)(1) and (3) that voids the transfer, reconveys the Philbrook Way property to Arroyo, prohibits further transfer of the Philbrook Way property by

Manuel Arroyo, and places the property in constructive trust for the benefit of Plaintiffs.

43. A permanent injunction shall issue prohibiting Rodriguez, Arroyo, and any person acting in concert with them from further transferring, conveying, or encumbering the Philbrook Way property.

44. In support of the permanent injunction, the evidence shows that the Plaintiffs will suffer imminent, irreparable harm. The evidence of insider transfer, the timing of the transfer, and other classic badges of fraud show a concrete risk of further disposition that would impair a Court's ability to grant an effective remedy on the merits. Preserving the real property is necessary to ensure that the Plaintiffs are able to seek satisfaction of any judgment they procure against Manuel Arroyo against the Philbrook Way property and to prevent a subsequent sale or encumbrance that would irretrievably complicate or defeat this relief. Irreparable harm is therefore imminent and non-speculative. The failure to undo the transaction also will cause irreparable harm, because Fox has been unable to locate any other significant assets that Arroyo has in Texas or the United States that could be executed upon to satisfy a money judgment, and the transfer will dissipate most if not all of Arroyo's assets that can be used to recover the damages associated with the Plaintiffs' claims against Manuel Arroyo.

45. There is no adequate remedy if the transfer of the real property is not voided, and the property is not returned to Arroyo. There is substantial risk of further disposition from Rodriguez to a bona fide purchaser or lender through a second

transfer or otherwise encumbering the property at issue, which would further frustrate avoidance and leave Plaintiffs chasing proceeds.

46. The balance of equities and public interest favor issuance of the requested injunctive relief and will be served by the promotion of ethical behavior, ensuring the compliance of orders issuing by the federal courts, and the protection of property rights. Rodriguez has no countervailing interest, as she paid no consideration for the real property.

47. The Court imposes a constructive trust over the Philbrook Way property for the benefit of the Plaintiffs. Texas courts may impose a constructive trust upon a party who receives property through fraud. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015). The equities favor this relief. Rodriguez paid no consideration for the property; the transfer was fraudulent; and preserving the property in trust is necessary to ensure Fox can seek satisfaction of its judgment against Arroyo.

48. In the alternative, based on the fraudulent nature of the transfer, the Court will enter a judgment against Rodriguez at Plaintiffs' election for the value of the Philbrook Way property in the amount of $5,100,000 pursuant to Tex. Bus. & Com. Code § 24.009(b)(1).

**I. Attorneys' Fees and Costs**

49. Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs incurred in this action at the trial level and on appeal pursuant to Tex. Bus. & Com. Code § 24.013.

50. The Court orders that Plaintiffs shall submit an affidavit supporting an award of attorneys' fees and expenses within 30 days of the issuance of the Court's issuance of its Findings of Fact and Conclusions of Law.

## III. RELIEF

Based on the foregoing Findings of Fact and Conclusions of Law, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant Laura Paola Arroyo Rodriguez as follows:

(a) A permanent injunction and judgment under Tex. Bus. & Com. Code §§ 24.008(a)(1) and (3) avoiding the September 2, 2025 transfer of the Philbrook Way property and reconveying title to Manuel Arroyo;

(b) An order prohibiting Rodriguez, Arroyo, and any person acting in concert with them from further transferring, conveying, or encumbering the Philbrook Way property absent court order;

(c) An order imposing a constructive trust over the Philbrook Way property for the benefit of the Plaintiffs;

(d) In the alternative, a judgment against Rodriguez for the value of the Philbrook Way property in the amount of $5,100,000 under Tex. Bus. & Com. Code § 24.009(b)(1);

(e) Reasonable and necessary attorneys' fees at the trial level and on appeal under Tex. Bus. & Com. Code§ 24.013;

(f) All costs of suit under Tex. Bus. & Com. Code § 24.013; and

(g) All other and further relief at law or in equity to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By: /s/ Marcus R. Tucker
Marcus R. Tucker
Federal Bar No. 12769
State Bar No. 20282360

1001 Fannin St., Ste. 2200
Houston, Texas 77002
Telephone: (713) 626-1386
Facsimile: (713) 626-1388
Email: marcus.tucker@phelps.com

**ATTORNEYS FOR PLAINTIFFS**

**OF COUNSEL:**

**PHELPS DUNBAR LLP**
D. Michael Hurst, Jr.**
MSB No. 99990
1905 Community Bank Way, Ste. 200
Flowood, MS 39232
Telephone: (601) 352-2300

***Admitted Pro Hac Vice*

**STEPTOE LLP**
Katherine A. Petti (CA Bar No. 339052)**
Christopher T. Berg (Bar No. 24082682)
633 W. Fifth Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 439-9543
kpetti@steptoe.com
cberg@steptoe.com

***Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2026, the foregoing Plaintiffs' Proposed Findings of Fact and Conclusions of Law was served on all counsel of record via the Court's CM/ECF electronic filing system, in accordance with the Federal Rules of Civil Procedure.

/s/ *Marcus R. Tucker*
Marcus R. Tucker