Exhibit F

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

FOX CORPORATION, FOX MEDIA, LLC, AND FOX SPORTS EN ESPAÑOL, LLC,

*Plaintiffs*

v.

LAURA PAOLA ARROYO RODRÍGUEZ,

*Defendant*

Civil Action No. 4:25-CV-4650

**DEFENDANT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant LAURA PAOLA ARROYO RODRÍGUEZ ("Rodríguez") files these findings of fact and conclusions of law as required by the Court.

## I. FINDINGS OF FACT

On January 20, 2025, Manuel Arroyo ("Mr. Arroyo"), was removed as president of Media Deportes Mexico, S. de R.L. de C.V ("MDM"). Escritura N. 15253.

In February 2025, Mr. Arroyo, the alleged debtor to Plaintiffs Fox Corporation, Fox Media LLC, and Sports En Español LLC ("Fox"), was **not** indebted to Fox.

Mr. Arroyo is a citizen of Mexico. Joint Pretrial Order ("PTO") ¶ 7e. He lives in Mexico City. Deposition of Paola Rodríguez ("PR"): p. 19, l. 1-5.

In February 2025, Mr. Arroyo told his sister Laura Paola Arroyo Rodríguez ("Ms. Rodríguez"), the Defendant herein, that he was giving her his Woodlands house. Deposition of Daniel Gervitz ("DG"): p. 22 l. 17-20. PR: p. 35, l. 3-17. Mr. Arroyo wanted his only sister, whom he loves, to have the house, and it was a family decision. PR: p. 52, l. 9-25; p. 55, l. 1-20. The house is: that real property with the legal description Woodlands Village of Carlton Woods 13, Block 1, Lot 10, with Property ID 300698, Geographic ID 9600-13-01000, Tax Office ID 9600-13-01000, and otherwise known as 3 Philbrook Way, Spring, Texas 77382-1377 (the "House"). Joint Pretrial Order ("PTO") ¶ 7a.

Ms. Rodríguez is a citizen of Mexico and a resident of Mexico City. PTO ¶ 7f-g.

Later in February 2025, Mr. Arroyo and Ms. Rodríguez contacted real estate agent Rebeca Valdez Chow ("Ms. Valdez"), who is a family friend, to assist them in transferring the House from Mr. Arroyo to Ms. Rodríguez. Deposition of Rebeca Valdez Chow ("RV"): p. 15, l. 17-20; p. 39, l.6-21. DG: p. 30 l.8-12. Ms. Valdez suggested to Mr. Arroyo that he hire Patricio Gutierrez, Esquire ("Mr. Gutierrez"), as his Texas attorney to prepare the deed for transfer and file it with the deed office of Montgomery County. RV: p. 12, l. 20-p. 13, l. 2.

In March 2025, Mr. Arroyo was **not** indebted to Fox.

In March 2025, Ms. Valdez spoke with Mr. Arroyo about transferring the House. RV: p. 19, l. 3-13. Also, in March, Mr. Gutierrez was contacted by Ms. Valdez to represent Mr. Arroyo in the transfer of the House to Ms. Rodríguez.

On March 10, 2025, Mr. Arroyo asked his sister, Ms. Rodríguez, to send him a copy of her passport to put the House in her name. PR: p. 57, l. 4-20; p. 58, l. 5-25. On March 20, 2025, Mr. Arroyo again asks his sister to send him her passport. PR: p. 62, l. 18-25.

By March 12, 2025, drafting of the deed had begun. Deposition of Patrico Gutierrez ("PG"): p. 25, l. 14-p. 26, l. 2.

March 23, 2025, Mr. Gutierrez learned the House was to be transferred to Mr. Arroyo's sister because of his health, and because of considerations regarding his age (estate planning associated with growing older). PG: p. 29, l. 15-24. Mr. Arroyo's desire to transfer the House to his sister was a part of his estate planning. PG: p. 42, l. 21-25.

In April 2025, Mr. Arroyo was **not** indebted to Fox.

Mr. Gutierrez's office prepares an engagement letter for Mr. Arroyo's signature to transfer the house to Ms. Rodríguez. PG: p. 35, l. 15-p. 36, l. 8.

On April 3, 2025, Mr. Arroyo again asks his sister for her passport and proof of address. PR: p. 65, l. 8-p. 66, l. 1.

On April 7, 2025, Mr. Arroyo again requests Ms. Rodríguez's passport and proof of address. She sent him a bank statement and the passport. PR: p. 68, l. 6-16.

On April 4, 2025, Mr. Arroyo signed an engagement letter and Action Plan for Mr. Gutierrez to prepare the deed, arrange for a virtual notary public to authenticate the deed execution, and to file the executed deed with the Montgomery County Deed Office. Gutierrez Law Firm Plan of Action.

By April 18, 2025, Mr. Gutierrez's office had drafted the deed and was making arrangements for a virtual notary. PG vol 2: p. 12, l. 6-13; p. 13, l. 9-24.

In May 2025, Mr. Arroyo was **not** indebted to Fox.

May 28, 2025, Mr. Arroyo contacted the Gutierrez firm to advise that he is ready to schedule the virtual notary for "next week." PG: p. 55, l. 9-17.

In June 2025, Mr. Arroyo was **not** indebted to Fox.

On June 5, 2025, an appointment was scheduled for June 9, 2025, for Mr. Arroyo to execute the deed via the virtual notary public, but due to a technical problem, the deed was not signed that day. RV: p. 47, l. 16-p. 48, l. 1.

In July 2025, Mr. Arroyo was **not** indebted to Fox.

There were multiple attempts to schedule the virtual notary for the execution of the deed, but it was difficult because of Mr. Arroyo's schedule. RV: p. 40, l. 5-. 41, l. 6. There were multiple attempts over the summer to execute the deed. RV: p. 59. L. 11-16.

Mr. Arroyo has a "very busy schedule," which is why the deed was not executed and notarized sooner. PG vol. 2: p. 17, l. 17-25.

In August 2025, Mr. Arroyo was **not** indebted to Fox.

In August, Ms. Valdez was aware Mr. Arroyo planned to transfer the House in August "as soon as possible." RV: p. 44, l. 20-24. Ms. Valdez advised the Gutierrez firm on August 11, 2025, that Mr. Arroyo wanted to sign the deed by the end of the month. PG: p. 65, l. 13-21.

On August 14, 2025, Fox sued Media Deportes Mexico, S. de R.L. de C.V. ("MDM") in the United States District Court for the Southern District of New York ("SDNY"): *Fox Corporation et al. v. Media Deportes Mexico*, Case No. 25-cv-6703 (S.D.N.Y.) (the "SDNY Case"). PTO ¶ 7h.

On August 20, 2025, Mr. Arroyo was **not** indebted to Fox. That same day, Ms. Valdez spoke with Mr. Arroyo about scheduling the virtual notary deed execution and notarization for "the end of the month." PG: p. 73, l. 11-21.

On August 29, 2025, the SDNY Case entered a Contempt Order holding Mr. Arroyo, a non-party to the SDNY Case, in contempt because the court found Mr. Arroyo was the president of MDM during August 2025. The Contempt Order imposed a $ 200,000-per-day fine against Mr. Arroyo and others, payable to the SDNY court clerk. *See* SDNY Case, ECF. No. 45. PTO ¶ 7o.

On that same date, August 29, 2025, Ms. Valdez sought "urgently" to have the House's deed signing completed that day, which is consistent with her understanding that Mr. Arroyo planned to transfer the House in August upon his return from traveling. RV: p. 44, l. 3-13; l. 20-24.

From September 1-9, 2025, Mr. Arroyo was **not** indebted to Fox.

On September 2, 2025, Mr. Arroyo transferred the House to Ms. Rodríguez by executing a Special Warranty Deed. PTO ¶ 7q. The Special Warranty Deed was recorded on September 3. PTO ¶ 7r.

On September 5, 2025, the SDNY court stayed the contempt order (ECF 45) until close of business on September 9, 2025. SDNY ECF 47.

On September 6, 2025, Fox allegedly sent by email to Mr. Arroyo the Order Holding Mexico Sports Distribution LLC, Grupo Lauman Holding, and Manuel Arroyo In Contempt, SDNY ECF No. 45.

On September 9, 2025, the SDNY court awarded Plaintiffs the sanctions previously payable to the SDNY court clerk. SDNY ECF 73. PTO ¶ 7v. This is the first date on which Fox was allegedly owed a debt by Mr. Arroyo.

On October 8, 2025, the Southern District of New York entered a final judgment for $5,800,000 against Mr. Arroyo, payable to Plaintiffs, for accumulated civil contempt sanctions. *See Fox Corporation, et al. v. Media Deportes Mexico, S. de R.L. de C.V.*, No. 12:25-cv-06703-JSR (S.D.N.Y.), ECF. No. 107. PTO ¶ 7w.

On November 10, 2025, the Court entered a preliminary injunction, ECF 22, voiding the September 2, 2025, deed. Per the order, the House is in Mr. Arroyo's name.

On November 18, 2025, Plaintiffs filed the SDNY judgment for registration in Texas. *See Fox Corporation et al. v. Manuel Arroyo,* No. 4:25mc-2271 (SDTX), ECF 1. PTO ¶ 7x.

In January 2026, Ms. Rodríguez paid the House's 2025 property taxes. DG: p. 16-18; PR: p. 106, l. 8-16.

Ms. Rodríguez did not, and does not, have any plans to sell the House. DG: p. 33, l. 2-9.

Mr. Arroyo waived his attorney-client privilege to allow Mr. Gutierrez to freely testify. PG vol 2: P. 57-p. 58, l. 8.

In the SDNY Case, MDM has not been served with process. Plaintiffs claim they have initiated, but not completed, service on Defendant MDM pursuant to the Hague. SDNY ECF 163 (Lee Decl.) ¶ 6.

MDM has not appeared in the SDNY Case. PTO ¶ 7i.

In the SDNY Case, Manuel Arroyo has not been served with process via the Hague. It is undisputed that the only "service" upon Mexican citizen Mr. Arroyo has been by way of email. SDNY Docket Sheet.

In the SDNY Case, the only attempted "service" upon Mr. Arroyo has been by general email, with no read receipt or delivery receipt requested. SDNY ECF 168 ¶ 34. No Hague Convention service has been attempted or carried out upon Mr. Arroyo. SDNY Docket Sheet.

Mr. Arroyo has not appeared in the SDNY Case. PTO ¶ 7j.

## II. CONCLUSIONS OF LAW

This case presents two challenges for Fox to prove. First, that the House was transferred by Mr. Arroyo to his sister with the intent to hinder, delay, and defraud Fox in violation of TEX. BUS. & COM. CODE § 24.005(a)(1). Second, whether the alleged debt by Mr. Arroyo to Fox is a valid and enforceable debt.

For Fox to proceed with its TUFTA claim against Mr. Arroyo, it must first have a claim, which "means a *right to payment or property*." (Emphasis supplied). Tex. Bus. &

Comm. C. § 24.002(3). When the House was transferred, Fox did not have a right to payment or property from Arroyo; the alleged debt was to the SDNY clerk. Thus, the August 29, 2025, SDNY order is not a basis for Fox's TUFTA claim because it did not confer a right upon Fox to payment or property.

Further, the August 29, 2025, SDNY contempt order was not known to Mr. Arroyo until it was sent to him eight days later on September 6, 2025. As of September 2, 2025, Mr. Arroyo could not intend to "hinder, delay, and defraud" Fox if he was unaware of the Fox "claim." Even then, there was no alleged debt owed by Mr. Arroyo to Fox because the fines were payable to the court clerk. Mr. Arroyo cannot "intend" to hinder, delay, and defraud Fox if Mr. Arroyo does not owe Fox a payment or property.

Fox argues that the badges of fraud show Mr. Arroyo's intent to hinder, delay, and defraud Fox because the transfer was to an insider, for less than fair value, and the transaction was concealed. The transfer of the House was to Mr. Arroyo's sister, and it was a gift. But the details and plans for the House's transfer were arranged and agreed upon more than eight months before any alleged debt by Mr. Arroyo to Fox. The badges, as markers of fraud, simply do not apply here because the plans to transfer the House were known and contemplated long before Fox even filed a lawsuit in the SDNY. "A fraudulent intent must be affirmatively shown and will not be presumed." *Sterquell v. Scott*, 140 SW3d 453, 460 (Tex. App.—Amarillo 2004, no pet.).

Likewise, Fox argues that the House transaction was concealed because Ms. Rodríguez, the grantee under the deed, did not sign the deed. In Texas, only a grantor's

signature to a deed is necessary to transfer real property. Tex. Prop. Code § 12.01. There is no concealment here; as a matter of law, Ms. Rodríguez was not a signatory to the deed transferring the House.

Also, Fox argues that Mr. Arroyo remained in control of the House because he continues to pay for the utilities and his personal items remain there. Yet, Ms. Rodriguez paid over $60,000 in property taxes on the House in January 2026. And this Court voided the deed to Ms. Rodríguez for the House; since at least November 10, 2025, Ms. Rodríguez has not had an interest in the House.

Fox cannot meet its burden of showing a claim was owed by Mr. Arroyo to Fox when the House was transferred to Ms. Rodríguez. Fox's claim did not arise from filing the SDNY lawsuit because Mr. Arroyo was not a party to that lawsuit. And the events leading to a "claim" on behalf of Fox did not occur until after the House was transferred.

Fox cannot meet its burden of showing Mr. Arroyo intended to hinder, delay, and defraud Fox by transferring the House because at the time of the transfer there was no claim owed Fox nor was Mr. Arroyo aware that even the SDNY clerk had a claim.

The badges of fraud, Fox argues, are literally pointless, since the plan to transfer the House had been known to and shared among Mr. Arroyo, his sister, his brother-in-law, his lawyer, and his real-estate agent since February 2025, seven months before the House was transferred. Also, it was known that in early August 2025, Mr. Arroyo planned and expected the House to be transferred to his sister by the end of August—before Fox's SDNY Case was even filed.

The party invoking jurisdiction bears the burden of establishing it; that burden does not shift to the party contesting it. *Luv N' Care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 469 (5th Cir. 2006). The party asserting that a nonparty is bound by a judgment likewise bears that burden. *Taylor v. Sturgell,* 553 U.S. 880, 884–85 (2008). Here, the burden to establish jurisdiction is on Fox.

The SDNY Case, in which the alleged debt by Mr. Arroyo to Fox arose, does not have personal jurisdiction over MDM, the sole defendant in the case. It is indisputable that MDM, a Mexican company, has not been served under the Hague Apostille Convention. Plaintiffs concede that they did not attempt to serve MDM under the Hague Service Convention until "October 2025" (SDNY ECF No. 163 ¶ 6), which is after the SDNY court entered the injunctions, contempt orders, and the judgment against Mr. Arroyo. To date, MDM remains unserved.

On August 14, 2025, the SDNY court entered a TRO against MDM (SDNY ECF 29). A "district court is powerless to proceed on a motion for preliminary injunction in the absence of personal jurisdiction." *Cleanspark, Inc., Discovery Growth Fund, LLC*, 485 F. Supp. 3d 494, 500 (S.D.N.Y. 2020). Where it is "not clearly established that the court ha[s] jurisdiction over" a party, an "injunction [i]s improperly entered," because a "court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *1963 v. Stein*, 897 F.2d 653, 658-59 (2d Cir. 1990) (quotations omitted); see also *Antsy Labs LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Complaint,* 2021 U.S. Dist. LEXIS

241185 *4; 2021 WL 5967613 (S.D.N.Y. 2021) ("due process requires that before the Court issues injunctive relief against a defendant, the Court must have personal jurisdiction over that defendant"). "If this Court lacked personal jurisdiction over these defendants, then the injunction would be void as to them." *SEC v. Capital Growth Co., S.A.* (Costa Rica), 391 F. Supp. 593, 600 (S.D.N.Y. 1974). MDM has not even been served by the SDNY court.

It is an agreed fact that MDM is a Mexican company and that Mr. Arroyo is a Mexican citizen.

Then, on August 29, the SDNY Court, upon motion by the Plaintiffs, entered contempt orders (SDNY ECF 45, 49 & 73) against MDM and non-parties Mexico Sports Distribution, LLC ("MSD"), Grupo Lauman Holding, and Mr. Arroyo, for allegedly violating the TRO and the Preliminary Injunction (SDNY ECF 47). Notably, the SDNY Court did not find Mr. Arroyo had done anything personally wrong other than his executive position with MDM. (SDNY ECF 73, p.5).

At the time the SDNY Court entered the contempt order, neither MDM nor Arroyo had been served, and they are still unserved.[1] In other words, when the contempt order was entered, the SDNY did not have personal jurisdiction over MDM or Arroyo, which is a

[1] In fact, the Hague Service Convention service on MDM, was not even begun until *after* the NY court entered its TRO (August 14-29, 2025), preliminary injunction (September 9, 2025), contempt order (August 29, 2025), and final judgment against Mr. Arroyo (October 8, 2025). Accordingly, at the time the NY court entered a $5,800,000 judgment against non-party Mr. Arroyo, the service on the lone defendant had not even begun.

requirement before holding a party in contempt. *See Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 n.2 (N.D. Ill. 2008); see also *United States v. Thompson*, 921 F.3d 82, 87-88 (2d Cir. 2019) "Contempt proceedings may move forward upon a showing of actual notice, but only so long as the court making the contempt finding already *has personal jurisdiction* over the" party to be held in contempt. *Id.* (Emphasis supplied).

The result of the SDNY not having obtained personal jurisdiction over MDM, the sole defendant, means that all "derivative" orders, including the contempt order and judgment against Arroyo, must be vacated. *Comverse, Inc. v. Am. Telecommc'ns., Inc. Chile S.A., 2009 U.S. Dist. LEXIS 14381, 2009 WL 464446, *2 n.4 (S.D.N.Y. Feb. 24, 2009) (citing New York State NOW v. Terry, 961 F.2d 390, 400 (2d Cir. 1992)). S*ee also e.g. *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*, 2025 U.S. Dist. LEXIS 216454 *4 (S.D.N.Y. Nov. 5, 2025). Specifically:

> "Without personal jurisdiction over a party, a court may not hold that party in contempt." *Cardell*, 2012 U.S. Dist. LEXIS 188295 at *32; 2012 WL 12932049; see also e.g. *Hinchliffe Sports Partners, LLC v. Football Is for the Fans Ltd.*, 2025 U.S. Dist. LEXIS 216454 *4 (S.D.N.Y. Nov. 5, 2025) ("a court must have personal jurisdiction over a party before holding that party in contempt"). **Only once personal jurisdiction has been established over a defendant can the issue of contempt by non-parties arise.** Even then, the court must have "personal jurisdiction" over non-parties before they can be held in contempt. *Comverse, Inc. v. Am. Telecomms., Inc. Chile*, 2009 U.S. Dist. LEXIS 14381 *8 n.4; 2009 WL 464446 (S.D.N.Y. 2009). (Emphasis supplied)

**This alone requires the TRO, preliminary injunction, contempt order, and judgment against Mr. Arroyo to be vacated.**

With respect to Mr. Arroyo, a Mexican citizen, personal jurisdiction requires compliance with the Hague Service Convention, which is mandatory in every case to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Mexico has objected to Article 10, so alternative service channels are unavailable, and service must proceed through the Central Authority under Article 5; service by mail or its electronic equivalent is permissible only where the receiving state has not objected. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017). Fox "served" Arroyo—located in Mexico—only by unilateral email, with no Central Authority process and no order under Rule 4(f)(3).

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Jonas v. Estate of Leven,* 116 F. Supp. 3d 314, 323-24 (S.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)). First, "the plaintiffs service of process upon the defendant must have been procedurally proper." There is no dispute that neither MDM nor Arroyo has been served under the Hague Apostille Convention.

The Second Circuit, where the SDNY resides, found that email service "is prohibited by the Hague Service Convention," and thus it is "improper under Rule 4(f)(3)." *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi,* 164 F.4th 164, 170; ("any method of service not approved by the [Hague Service] Convention is effectively prohibited under Rule 4(f)(3)"). The *Smart Study* case leaves no doubt regarding the jurisdictional

requirements for a United States District Court to exercise personal jurisdiction over a foreign party or a foreign non-party. For Mexican citizens, personal service is required under the Hague Service Convention—email is not an option.

Since the SDNY Court lacks personal jurisdiction over MDM and Mr. Arroyo, the injunction orders, contempt orders, and the final judgment against Mr. Arroyo are invalid.

The Defendant is entitled to attorneys' fees and costs under TUFTA, *see* TEX. BUS. & COM. CODE. §§ 24.013.

The Court should dismiss Fox's case against Ms. Rodríguez and award her attorneys fees and costs.

Dated: August 31, 2026.

Respectfully submitted,

By: /s/Steven R. Shaver
Steven R. Shaver
Texas Bar No. 18136550
sshaver@rrspllc.com
Marcos G. Ronquillo
Texas Bar No. 17226000
mgronquillo@rrspllc.com
Riney Ronquillo Soule PLLC
5420 LBJ Freeway, Suite 220
Dallas, Texas 75240
(214) 461-1206 (Telephone)
(214) 461-1210 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on August 31, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By: /s/Steven R. Shaver
Steven R. Shaver