# EXHIBIT 30A

PLAINTIFFS
4:25-cv-4650
EXHIBIT 48

PJCDMX
PODER JUDICIAL
CIUDAD DE MÉXICO

# Sistema Integral de Gestión Judicial
# PROMOCION

| | |
|---|---|
| ID DOCUMENTO: | 17743002138908 |
| JUZGADO: | Cuadragésimo Segundo de lo Civil |
| EXPEDIENTE: | 180/2025 |
| FECHA DE DOCUMENTO: | 2025-03-26 09:15:35 |
| FECHA DE RECEPCIÓN: | 2025-03-26 09:03 |
| COMENTARIOS: | 2 TES. NOT., 6 C.S., 3 ANEXOS. 5 TRASLADOS (NUEVO) |

* La presente hoja NO forma parte del expediente;
fue generada con motivo del proceso interno de digitalización.

PJCDMX
PODER JUDICIAL
CIUDAD DE MÉXICO

# Tribunal Superior de Justicia de la CDMX

| | |
|---|---|
| ID DOCUMENTO | 22967388 |
| ID APLICATIVO | 1 |
| ID MATERIA | C |
| MATERIA | CIVIL DE PROCESO ESCRITO |
| ID JUICIO | 152 |
| JUICIO | MEDIDAS CAUTELARES |
| ID JUZGADO | C42 |
| JUZGADO | JUZGADO 42 DE LO CIVIL |
| AÑO EXPEDIENTE | 2025 |
| NÚMERO EXPEDIENTE | 180 |
| ASUNTO | |
| ID TIPO EXPEDIENTE | INIC |
| TIPO EXPEDIENTE | INICIAL |
| ID SALA | |
| SALA | |
| NÚMERO DE TOCA | |
| AÑO DE TOCA | |
| TIPO DE DOCUMENTO | |
| FECHA DE DOCUMENTO | 2025-03-24 21:03:36.0 |
| ACTOR | MEDIA DEPORTES MEXICO S DE RL DE CV |
| DEMANDADO | FOX CORPORATION, FIX MEDIA LLC |

2 Test. Not
6 CS
3 Anexos
5 traslados

180/25 ORIGINAL

PJCDMX PODER JUDICIAL CIUDAD DE MÉXICO
RECIBIDO
24 MAR. 2025
NUMERO 27
OFICIALÍA DE PARTES COMÚN PARA JUZGADOS Y SALAS

**MEDIA DEPORTES MÉXICO, S. DE R.L. DE C.V. Y MEXICO SPORTS DISTRIBUTION, LLC.**
**VS**
**FOX CORPORATION, FOX MEDIA LLC, FOX CABLE NETWORK SERVICES, LLC Y CARLOS ENRIQUE MARTÍNEZ SÁNCHEZ.**
**SOLICITUD DE MEDIDAS CAUTELARES PREJUDICIALES**
**SECRETO**

PODER JUDICIAL DE LA CIUDAD DE MÉXICO
JUZGADO CUADRAGÉSIMO SEGUNDO CIVIL DE PROCESO ESCRITO
2025 MAR 26 A 9:07

**C. JUEZ DE LO CIVIL DE PROCESO ESCRITO DE LA CIUDAD DE MÉXICO, EN TURNO.**

**ROGELIO ARTURO ISLAS PÉREZ,** promoviendo en mi carácter de apoderado general para pleitos y cobranzas de Media Deportes México, S. de R.L. de C.V., con Registro Federal de Contribuyentes MDM191007M83, que en copia simple exhibo como **Anexo 1)**; personalidad que solicito se me reconozca al tenor del testimonio notarial que exhibo como **Anexo 2)** y que previo cotejo y compulsa que del mismo se haga, pido me sea devuelto; y de Mexico Sports Distribution, LLC, una sociedad constituida conforme a las leyes de Delaware, Estados Unidos de América, y que bajo protesta de decir verdad, manifiesto que no cuenta con Registro Federal de Contribuyentes; personalidad que solicito se me reconozca al tenor del testimonio notarial que exhibo como **Anexo 3)** y que previo cotejo y compulsa que del mismo se haga, pido me sea devuelto; señalo como domicilio para oír y recibir todo tipo de notificaciones de ambas sociedades, aún las personales, la casa marcada con el número 148 de la calle de Alejandro Dumas, Colonia Polanco III Sección, alcaldía Miguel Hidalgo, C.P. 11540, en la Ciudad de México; autorizo en términos del tercer párrafo del artículo 1069 del Código de Comercio, a los licenciados Paulo Jenaro Díez Gargari, con cédula profesional número 2357604; Carlos David Villasante Santoyo, con cédula profesional número 2613630; Mireya Martínez Gómez, con cédula profesional número 11082666; Alan Said López Ríos, con cédula profesional número 8360468; Rodrigo Bernardo Díez Gargari, con cédula profesional número 7173124 y Mitzi Alejandra Suárez Salazar, con cédula profesional número 13937429; a quienes desde este momento faculto para promover conjunta o separadamente en los términos que se mencionan en el precepto legal invocado, y en general, para ejercer cualquier acto procesal en interés de mis mandantes; asimismo, autorizo para oír y recibir notificaciones, imponerse de los autos, fotografiar las constancias y recoger documentos y valores, firmando en lo necesario, a los señores Paulo Díez Terroba, Santiago Díez Terroba, Jesús Emmanuel Meraz Gómez, Kevin Eduardo Basilio García, Rodolfo Arturo Villa Hernández, Paola Abigail Romero Toscano, Shania Nicole

INI///PC075
24032025 21:03:36
1267/24-03-2025
JUZGADO 42 DE LO CIVIL
152 MEDIDAS CAUTELARES
EXP: 180/2025

PJCDMX
PODER JUDICIAL
CIUDAD DE MÉXICO

| | | | |
|---|---|---|---|
| COPIAS DE TRASLADO | | | 5 |
| BILLETES DE DEPOSITO | | | |
| PAGARES | | | |
| CHEQUES | | | |
| RECIBOS | | | |
| FACTURAS | | | |
| CONTRATOS | | | |
| TESTIMONIOS NOTARIALES | | | 2 |
| COPIAS DE REGISTRO CIVIL | | | |
| COPIAS CERTIFICADAS | | | |
| COPIAS SIMPLES | | | 6 |
| SOBRES CERRADOS | | | |
| OTROS | | | 3 |
| TOTAL DE ANEXOS | | 1 | 1 |

PJCDMX
PODER JUDICIAL
CIUDAD DE MÉXICO
RECIBIDO
24 MAR. 2025
NUMERO 27
OFICIALÍA DE PARTES COMÚN
PARA JUZGADOS Y SALAS

Salvador Díaz, Fátima Fabiola Ramírez Mendoza, Catheryne Italia Mondragón Contreras Canchola e Ismael Olán Martínez, indistintamente; ante Usted respetuosamente expongo:

**MEDIDAS CAUTELARES**
**PREJUDICIALES**

Con fundamento en los artículos 1°, 5° y 17 de la Constitución Política de los Estados Unidos Mexicanos, el artículo 10 de la Declaración Universal de los Derechos del Hombre, el artículo 14.1 del Pacto Internacional de Derechos Civiles y Políticos; los artículos 8.1 y 25 de la Convención Americana sobre Derechos Humanos, y los artículos 384 y 388 del Código Federal de Procedimientos Civiles, de aplicación supletoria al Código de Comercio, en atención a la tesis jurisprudencial 1a./J. 27/2013(10a.); y con el propósito de que la sentencia definitiva que se emita en el juicio ordinario mercantil que entablarán mis representadas no sea un acto jurídico desprovisto de consecuencias, que vuelva ilusorio su derecho a un recurso judicial efectivo, respetuosamente pido a su Señoría se sirva dictar:

1. **La orden judicial, de naturaleza provisional, consistente en mantener la situación jurídica y de hecho que actualmente prevalece, consistente en el uso de manera continua e ininterrumpida por parte de Media Deportes México, S. de R.L. de C.V. y/o de Mexico Sports Distribution, LLC, en territorio nacional (*i.e.*, en la República Mexicana), de las marcas que se describen en el hecho 5 de esta solicitud de medidas cautelares; y**

2. **La orden judicial, de naturaleza provisional, por virtud de la cual se ordene a Fox Corporation y a Fox Media LLC, que se abstengan de realizar actos intimidatorios, ilícitos y/o contrarios a las buenas costumbres, que impidan o dificulten (o puedan impedir o dificultar) a Media Deportes México, S. de R.L. de C.V. y/o a Mexico Sports Distribution, LLC, el uso continuo e ininterrumpido de las precitadas marcas en territorio nacional (*i.e.*, en la República Mexicana); incluyendo, sin limitación, el uso indebido por parte de Fox Corporation, Tubi, Inc. y Fox Media LLC, en México, de las marcas que se describen en el hecho 5 de esta solicitud de medidas cautelares, o cualquiera que sea**

**similar en grado de confusión con las mismas (incluyendo, sin limitar, "Fox Deportes", que es una traducción de las marcas referidas).**

Con el apercibimiento a las presuntas demandadas de que, para el caso de desobediencia a las anteriores medidas cautelares, o de continuar realizando actos intimidatorios, ilícitos y/o contrarios a las buenas costumbres, se harán acreedoras a una medida de apremio.

Lo anterior, como **medidas cautelares prejudiciales,** es decir, previas a la acción de responsabilidad civil extracontractual que mis representadas plantearán en el plazo previsto por el artículo 1181 del Código de Comercio.

Fundan esta petición, los siguientes hechos y consideraciones de derecho:

**HECHOS**

**Antecedentes**

**1.-** Mis poderdantes Media Deportes México, S. de R.L. de C.V. (en adelante **"MDM"**) y Mexico Sports Distribution, LLC (en lo sucesivo **"FSM"**) son personas morales subsidiarias -indirectamente- de Grupo Lauman Holding, S. de R.L. de C.V. (en adelante **"Grupo Lauman"**) que actualmente operan el negocio conocido como *Fox Sports México*[1].

**2.-** El negocio de Fox Sports México consiste principalmente en la transmisión de eventos deportivos a través de canales de televisión restringida (es decir, de paga). Toda vez que dichos eventos son sintonizados por un gran número de personas, diversos anunciantes están interesados en contratar tiempos y espacios para transmitir mensajes comerciales en los canales de Fox Sports México. El negocio de Fox Sports México está integrado, principalmente, por los siguientes tipos de contratos:

- Contratos de licencia de derechos para la transmisión de eventos deportivos, al amparo de los cuales FSM paga a los titulares y/o dueños de los derechos para la transmisión de eventos deportivos (por ejemplo, equipos de fútbol, la liga de

[1] Para efectos del presente escrito, el término *"Fox Sports México"* debe ser entendido como el conjunto de activos que integran el negocio que actualmente es operado por MDM y FSM.

fútbol americano de los Estados Unidos de América o "NFL", la Fórmula 1, etc.), como contraprestación por el otorgamiento de una licencia para transmitir dichos eventos deportivos.

- Contratos de producción, para la producción y la generación de la señal internacional de los eventos deportivos objeto de los contratos de licencia de derechos, al amparo de los cuales MDM y/o FSM reciben un pago por la prestación de los referidos servicios.
- Contratos de distribución o afiliación, al amparo de los cuales los proveedores de servicio de televisión y audio restringidos (es decir, proveedores de televisión de paga que, en México incluyen, entre otros, a Sky, Totalplay e Izzi) pagan a FSM y/o a MDM una cantidad fija por cada suscriptor al servicio correspondiente.
- Contratos de publicidad, para la venta a terceros de tiempos y espacios para mensajes comerciales transmitidos en los canales de Fox Sports México.
- Contratos de talentos: contratos celebrados por FSM y/o MDM con comentaristas y analistas que agregan valor a su programación.

**3.-** Es relevante hacer una distinción conceptual que resulta fundamental para la adecuada comprensión de esta demanda. El negocio de Fox Sports México fue originalmente —antes del año 2019— propiedad de Twenty-First Century Fox, Inc. (en lo sucesivo **"21CF"**), una sociedad constituida de conformidad con las leyes del Estado de Delaware, Estados Unidos de América. 21CF era una corporación multinacional de medios de comunicación controlada por la familia Murdoch, que llegó a ser el cuarto mayor conglomerado de medios de comunicación de los Estados Unidos de América.

**4.-** En el año 2019, 21CF se fusionó con una subsidiaria de The Walt Disney Company (en adelante **"Disney"**). Algunos de los activos de 21CF, sin embargo, fueron excluidos de la operación, y fueron retenidos por los accionistas originales de 21CF (en particular, la familia Murdoch) mediante la creación de una nueva sociedad, que, en un principio, sería conocida como "*New Fox*" y que, finalmente, se constituyó con la denominación Fox Corporation (en adelante "**Fox Corp.**"). Es decir que los activos restantes, no incluidos en la venta a Disney, permanecieron bajo el control de Fox Corp., una nueva sociedad también controlada por la familia Murdoch. Entre los activos originalmente

transferidos a Disney, se encontraban los correspondientes al negocio de Fox Sports México.

**5.-** El 19 de marzo de 2019, al fusionarse con una subsidiaria de Disney, 21CF se convirtió en una subsidiaria controlada al 100% por Disney. En el contexto de esa adquisición, en esa misma fecha se celebró un Contrato de Licencia de Marcas entre Fox Corp. y 21CF (en adelante, el "**Contrato de Licencia Fox/Disney**"), por virtud del cual Fox Corp. otorgó a 21CF una licencia para usar ciertas marcas de las que era titular otra entidad integrante del grupo empresarial de Fox Corp., entre las que se encuentran las siguientes (a las que en este escrito se hace referencia como las "Marcas de Fox Sports":

Schedule A to License Assignment Agreement

| | Mark Name | Mark Image | International Classes | Country | Status | App No. | Registration Number | Owners |
|---|---|---|---|---|---|---|---|---|
| 1 | AGENDA FOX SPORTS | | 41 | Mexico | Registered | 1717649 | 1652939 | Fox Media LLC |
| 2 | CIRCUITO FOX SPORTS | | 41 | Mexico | Registered | 1436830 | 1449424 | Fox Media LLC |
| 3 | COPA FOX SPORTS KIDS | | 9 | Mexico | Registered | 1350927 | 1369012 | Fox Media LLC |
| 4 | COPA FOX SPORTS KIDS | | 38 | Mexico | Registered | 1350928 | 1369013 | Fox Media LLC |
| 5 | COPA FOX SPORTS KIDS | | 41 | Mexico | Registered | 1350930 | 1369014 | Fox Media LLC |
| 6 | FOX FIGHT CLUB | | 41 | Mexico | Registered | 1488645 | 1478480 | Fox Media LLC |
| 7 | FOX GOL MEXICO | | 41 | Mexico | Registered | 694259 | 867973 | Fox Media LLC |
| 8 | FOX SPORTS | | 16 | Mexico | Registered | 753483 | 915316 | Fox Media LLC |
| 9 | FOX SPORTS | | 41 | Mexico | Registered | 265869 | 636281 | Fox Media LLC |
| 10 | FOX SPORTS | | 38 | Mexico | Registered | 265870 | 636282 | Fox Media LLC |
| 11 | FOX SPORTS | | 9 | Mexico | Registered | 1535691 | 1525583 | Fox Media LLC |
| 12 | FOX SPORTS (Oval Two) | | 38 | Mexico | Registered | 1306552 | 1339943 | Fox Media LLC |
| 13 | FOX SPORTS (Oval Two) | | 41 | Mexico | Registered | 1306549 | 1339940 | Fox Media LLC |
| 14 | FOX SPORTS (Oval Two) | | 25 | Mexico | Registered | 1630071 | 1600775 | Fox Media LLC |
| 15 | FOX SPORTS + (Banner) | | 41 | Mexico | Registered | 1035021 | 1132836 | Fox Media LLC |
| 16 | FOX SPORTS + (Banner) | | 38 | Mexico | Registered | 1035022 | 1139645 | Fox Media LLC |
| 17 | FOX SPORTS 2 | | 38 | Mexico | Registered | 1299816 | 1338302 | Fox Media LLC |
| 18 | FOX SPORTS 2 | | 41 | Mexico | Registered | 1299817 | 1336214 | Fox Media LLC |
| 19 | FOX SPORTS 2 | | 38 | Mexico | Registered | 1306550 | 1339941 | Fox Media LLC |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 20 | FOX SPORTS 2 | | 41 | Mexico | Registered | 1306551 | 1339942 | Fox Media LLC |
| 21 | FOX SPORTS 3 | | 38 | Mexico | Registered | 1299818 | 1336215 | Fox Media LLC |
| 22 | FOX SPORTS 3 | | 41 | Mexico | Registered | 1299820 | 1336216 | Fox Media LLC |
| 23 | FOX SPORTS 3 | | 38 | Mexico | Registered | 1306556 | 1339945 | Fox Media LLC |
| 24 | FOX SPORTS 3 | | 41 | Mexico | Registered | 1306555 | 1339944 | Fox Media LLC |
| 25 | FOX SPORTS CANTERA | | 41 | Mexico | Registered | 1406690 | 1417195 | Fox Media LLC |
| 26 | FOX SPORTS PLAY | | 9 | Mexico | Registered | 1285315 | 1324838 | Fox Media LLC |
| 27 | FOX SPORTS PLAY | | 38 | Mexico | Registered | 1285316 | 1327158 | Fox Media LLC |
| 28 | FOX SPORTS PLAY | | 41 | Mexico | Registered | 1285318 | 1322027 | Fox Media LLC |
| 29 | FOX SPORTS PLAY | | 42 | Mexico | Registered | 1285320 | 1327374 | Fox Media LLC |
| 30 | FOX SPORTS RADIO | | 38 | Mexico | Registered | 1233187 | 1283912 | Fox Media LLC |
| 31 | FOX SPORTS RADIO | | 41 | Mexico | Registered | 1233191 | 1284787 | Fox Media LLC |
| 32 | LATITUD FOX (Grayscale) | | 41 | Mexico | Registered | 1860943 | 1770079 | Fox Media LLC |
| 33 | FOX PLAY | | 9 | Mexico | Registered | 1282827 | 1319645 | Fox Media LLC |
| 34 | FOX PLAY | | 38 | Mexico | Registered | 1282829 | 1319646 | Fox Media LLC |
| 35 | FOX PLAY | | 41 | Mexico | Registered | 1282831 | 1320075 | Fox Media LLC |
| 36 | FOX PLAY | | 42 | Mexico | Registered | 1282832 | 1320537 | Fox Media LLC |

**6.-** En México, la fusión entre Disney y 21CF quedó sujeta a la autorización, entre otros, del Instituto Federal de Telecomunicaciones (en lo sucesivo, el **"IFT"**).

Antes de la adquisición del negocio de 21CF, Disney ya tenía una participación relevante en el mercado de transmisión de eventos deportivos en la televisión de paga, a través del negocio conocido como ESPN. Por ello, para impedir una concentración de carácter monopólico, el IFT autorizó que Disney adquiriera los activos de 21CF, pero sujeto a la condición de que el negocio de Fox Sports México fuera desincorporado de la operación, es decir, que fuera vendido por Disney a un tercero independiente. Lo anterior consta en el Acuerdo

P/IFT/110319/122, aprobado por el Pleno del IFT el 11 de marzo de 2019 (la "**Resolución IFT 2019**"), que se exhibe en versión pública como **Anexo 4)**.

Bajo protesta de decir verdad, manifiesto que mis representadas no cuentan con dicha resolución en original, por lo cual, con fundamento en el artículo 1061 del Código de Comercio solicito se requiera al IFT para que la exhiba ante su Señoría, o bien, remita copia certificada de la misma, bajo apercibimiento que, de no hacerlo, se hará acreedor a una multa, de conformidad con lo dispuesto por el artículo 1067 Bis del Código de Comercio.

Adicionalmente, de conformidad con lo ordenado por el IFT, dicha desincorporación debía cumplir ciertas condiciones establecidas en la propia Resolución IFT 2019, entre las que se encontraba la consistente en otorgar al eventual comprador del negocio de Fox Sports México una licencia **gratuita** de **uso exclusivo** de las marcas relacionadas con Fox Sports México, durante un período de **por lo menos** 3 años.

**7**.- De conformidad con lo establecido en la condición 8.4.12.4 de la Resolución IFT 2019, una vez finalizada la venta del negocio de Fox Sports México, "*se ofrecerá el nombre 'Fox' al Comprador bajo una licencia de uso* ***gratuita exclusiva para contenidos deportivos*** *[...]*". La redacción de la Resolución IFT 2019 no deja lugar para la interpretación: la licencia que debía otorgarse al comprador del negocio de Fox Sports México (que, eventualmente, serían mis representadas), debía ser una licencia gratuita para el **uso exclusivo** de las Marcas de Fox Sports en el territorio de los Estados Unidos Mexicanos.

Que la exclusividad en el uso de las Marcas de Fox Sports en México fuera un requisito esencial para que el regulador autorizara la venta del negocio de Fox Sports México resulta evidente. Para que un potencial comprador estuviera interesado en adquirir el negocio, un elemento indispensable sería la posibilidad de ser la única persona autorizada para usar las Marcas de Fox Sports en México. La mera posibilidad de que un tercero (incluyendo a Fox Corp.) estuviera facultado para usar las Marcas Fox Sports México de manera simultánea al eventual comprador, habría sido suficiente para que ningún comprador hubiera estado interesado en adquirir el negocio.

Lo anterior se puede apreciar con toda claridad en la Resolución IFT 2019, en la que se da cuenta de los antecedentes que dieron lugar a las condiciones que, eventualmente, fueron efectivamente impuestas por el IFT. Entre dichos antecedentes, se señala que de manera previa a que el IFT

impusiera la condición de otorgar una licencia de uso exclusivo al eventual comprador del negocio de Fox Sports México, las partes en la concentración (Disney y 21CF) propusieron al IFT que la condición estuviera redactada de la siguiente manera: "*se ofrecerá el nombre "Fox" al (los) Comprador(es) bajo una licencia de uso gratuita no exclusiva para usar dicha marca [...]*". Sin embargo, el propio IFT rechazó la propuesta presentada por Disney y 21CF, e insistió en que el potencial comprador del negocio de Fox Sports México tendría que gozar del derecho al **uso exclusivo y gratuito** de la marca en el territorio de los Estados Unidos Mexicanos, por lo que, en la Resolución IFT 2019, la condición que fue efectivamente impuesta por el IFT incorporó como un elemento indispensable la exclusividad en el uso. Al respecto, a continuación se transcribe de manera textual lo manifestado por el IFT al respecto en la Resolución IFT 2019, que cobra especial relevancia en el contexto de este escrito:

> *"[...] en forma consistente con el Objeto de estas condiciones, se considera necesario adoptar medidas para que las Partes* ***no puedan afectar la viabilidad del negocio****, tras su Desincorporación.* ***Por ende, se determina necesario que la licencia de uso sea gratuita y exclusiva*** *[...]".*

Entre otras cosas, lo anterior significa que, en la apreciación del IFT (la cual comparten mis representadas), en caso de que la licencia otorgada en favor del eventual comprador del negocio de Fox Sports México no fuera una licencia de uso exclusivo de las marcas correspondientes en el territorio de los Estados Unidos Mexicanos, **entonces se afectaría la viabilidad del negocio de Fox Sports México (lo cual, dicho sea de paso, resultaba inaceptable para el IFT).**

**8.-** En la Resolución IFT 2019, el IFT reconoció de manera expresa que el hecho de que alguien distinto al eventual comprador del negocio de Fox Sports México (incluyendo cualquiera de las partes en la concentración) pudiera hacer uso de las Marcas de Fox Sports en México de manera simultánea a este último, afectaría negativamente a la viabilidad del negocio de Fox Sports México.

Lo anterior es particularmente importante para efectos de la presente solicitud de medidas cautelares y para la demanda que mis mandantes formularán toda vez que, como se narrará con todo detalle más adelante, entre otras formas en las que las futuras demandadas han causado daño ilícitamente a mis representadas, está la de utilizar en beneficio propio y sin derecho, desde

los primeros días del mes de enero de 2025, las Marcas de Fox Sports México durante el período de exclusividad concedido, en cumplimiento de una instrucción del IFT, en favor de MDM. Dicho uso, al violar la exclusividad establecida en favor de MDM, afecta la viabilidad del negocio de Fox Sports México, del que son propietarias mis representadas, MDM y FSM.

**9.-** En la Resolución IFT 2019, el IFT, de manera clara y expresa, condicionó la operación a través de la cual Disney adquirió los activos de 21CF a que se le otorgara al eventual comprador del negocio de Fox Sports México una licencia de uso **exclusivo** de las Marcas de Fox Sports en México. El IFT llegó a esa determinación, pues la propuesta original de 21CF y Disney (consistente en otorgar una licencia no exclusiva), resultaba inaceptable para dicho Instituto, pues habría vuelto inviable el negocio de Fox Sports México.

El 12 de enero de 2022, el Pleno del IFT emitió el Acuerdo P/IFT/120122/7, en el cual dicho IFT se pronunció respecto del cumplimiento de condiciones establecidas en la Resolución IFT 2019 (el "Acuerdo de Cumplimiento IFT"). Dicho acuerdo se emitió en respuesta al escrito de fecha 11 de noviembre de 2021, en el que Disney y 21CF notificaron al IFT que había ocurrido el cierre de la desincorporación del negocio de Fox Sports México, y que consideraban que se había satisfecho en su totalidad lo establecido en el numeral 8.4 de la Resolución IFT 2019.

En el Acuerdo de Cumplimiento IFT, dicho instituto manifestó que la obligación consistente en el otorgamiento al comprador del negocio de Fox Sports México —que, indirectamente, fue Grupo Lauman— de una licencia gratuita para el uso exclusivo de las Marcas de Fox Sports en el país, se había cumplido, con base en lo manifestado por Disney y 21CF. En efecto, en relación con la condición 8.4.12.4 de la Resolución IFT 2019 (la condición relativa al otorgamiento de la licencia referida), el instituto afirmó lo siguiente:

> *"Las obligaciones contenidas en los numerales 8.4.12.1 a 8.4.12.5* ***se estiman cumplidas****, pues de los Documentos de Cierre de la Operación de Desincorporación se desprende que Grupo Lauman adquirió la totalidad del Negocio a Desincorporar, con las precisiones, ajustes y modificaciones en algunos derechos de transmisión suscitados en el período que va desde la emisión de la Resolución hasta la presente fecha, y de las cuales que [sic] dieron cuenta los informes del Auditor Independiente".*

Las "precisiones, ajustes y modificaciones" a los que se refiere el Acuerdo de Cumplimiento IFT **no incluyen** modificación alguna a la exclusividad en el uso de las Marcas de Fox Sports en México, como lo ha reconocido el propio IFT tan recientemente como el 12 de febrero de 2025, en un oficio al que se hará referencia más adelante.

**Grupo Lauman adquiere Fox Sports México**

**10.-** Como resultado de ese proceso de desincorporación del negocio de Fox Sports México, el 10 de noviembre de 2021 Grupo Lauman Holding adquirió (indirectamente) el negocio de Fox Sports México de Disney, mediante la compra de las acciones de las hoy actoras: MDM y FSM. Por ello, desde el 10 de noviembre de 2021, el negocio de Fox Sports México es propiedad de Grupo Lauman Holding, a través de las hoy actoras, MDM y FSM.

**11.-** Así, el negocio de Fox Sports México ha operado ininterrumpidamente en el país desde el año 1999 hasta la fecha, bajo el control de distintos grupos empresariales:

- Antes del año 2019, el negocio de Fox Sports México operó bajo el control de 21CF, controlada, a su vez, por la familia Murdoch.

- Entre el año 2019 y el 2021, el negocio de Fox Sports México operó bajo el control de Disney.

- A partir del año 2021, el negocio de Fox Sports México opera (hasta la fecha) bajo el control de Grupo Lauman Holding.

**12.-** Para efectos de la presente solicitud de medidas cautelares de naturaleza prejudicial, es importante tener presente la distinción entre dos entidades con nombres similares, pero que son totalmente independientes entre sí desde el punto de vista corporativo:

- Por un lado, Fox Corp., una sociedad constituida de conformidad con la legislación del estado de Delaware, Estados Unidos de América, que cotiza en la bolsa de valores de Nueva York bajo la clave de pizarra "FOX", y que es actualmente una de las más grandes corporaciones

multinacionales con participación en el sector de los medios de comunicación; y

- Por el otro lado, Fox Sports México, un conjunto de activos que conforman un negocio que actualmente es propiedad (indirectamente) de Grupo Lauman Holding, a través de las hoy Actoras MDM y FSM, que son (o pueden ser) titulares o licenciatarios de los derechos para transmitir diversos eventos deportivos a través de la televisión de paga en territorio nacional.

**13.-** Como señalábamos, el negocio de Fox Sports México es propiedad (indirectamente) de Grupo Lauman; FSM y MDM son directamente propietarias y/o titulares de los activos que integran el negocio de Fox Sports México.

**Contrato de Licencia**

**14.-** En ese contexto, y en estricto cumplimiento de lo ordenado por el IFT en Resolución IFT 2019, el mismo 10 de noviembre de 2021, 21CF —para ese entonces, subsidiaria al 100% de Disney— y MDM celebraron un contrato de cesión de derechos (pero no de obligaciones), por virtud del cual 21CF cedió a MDM su derecho a utilizar las Marcas de Fox Sports en el territorio de los Estados Unidos Mexicanos.

No obstante que en el Contrato de Licencia Fox/Disney no se estableció que la licencia tenía el carácter exclusivo, en realidad la licencia otorgada en favor de mis representadas es -y no puede ser de otra manera- una licencia **de uso exclusivo**, pues ésa fue la condición establecida por el IFT y aceptada por las partes en la concentración, quienes confirmaron al regulador el cumplimiento de todas y cada una de las condiciones.

El 25 de julio de 2022, 21CF —subsidiaria al 100% de Disney— y MDM celebraron una modificación al contrato de cesión de derechos referido, por virtud del cual se especificó que la vigencia del contrato sería de 5 (cinco) años contados a partir del 10 de noviembre de 2021 (de manera conjunta con el contrato original de fecha 10 de noviembre de 2021, el "**Contrato de Cesión de Derechos de Licencia**").

Exhibo como **Anexo 5)**, una copia del Contrato de Cesión de Licencia y su traducción al español.

Bajo protesta de decir verdad, manifiesto que mis representadas no cuentan con el Contrato de Cesión celebrado el 10 de noviembre de 2021, en virtud de que un ejemplar de este documento fue exhibido ante el IFT, por lo cual, con fundamento en el artículo 1061 del Código de Comercio solicito se requiera al IFT para que lo exhiba ante su Señoría, o bien, lo exhiba en copia certificada, bajo apercibimiento que, de no hacerlo, se hará acreedor a una multa, de conformidad con el artículo 1067 Bis del Código de Comercio.

Asimismo, exhibo copia certificada del Convenio Modificatorio referido como **Anexo 5-A)**.

**15.-** De todo lo anterior se sigue que, al día de hoy, mi representada MDM es titular del derecho al uso **exclusivo** de las Marcas de Fox Sports en el territorio de los Estados Unidos Mexicanos, hasta por lo menos el 10 de noviembre de 2026, de conformidad con lo ordenado por el IFT, y con lo establecido en el Contrato de Cesión de Derechos de Licencia.

Que la vigencia del derecho **exclusivo** de mi representada a usar las Marcas Fox Sports en México no termina antes del 10 de noviembre de 2026 ha sido incluso **reconocido por el IFT** —la autoridad que ordenó la celebración del Convenio del Contrato de Cesión de Derechos de Licencia —. En efecto, en el escrito de fecha 12 de febrero de 2025, emitido por el IFT dentro del expediente UCE/CNC-003-2021, dicha autoridad reconoció lo siguiente:

> "…
> Quinto.- En su Escrito de Negativa de Respuesta, Grupo Lauman manifiesta que las condiciones u obligaciones de desincorporación ordenadas por el IFT en la Resolución P/IFT/110319/122 "ya se tuvieron por cumplidas," pues así lo reconoció en su Acuerdo P/IFT/120122/7 de fecha 12 de enero de 2022. Sin embargo, ello es incorrecto, pues, como se ha señalado, el fin último de las condiciones de desincorporación es **"preservar [la existencia del Negocio FSM] como un competidor viable."** Asimismo, conforme a esas decisiones emitidas por el IFT aún se encuentran vigentes las siguientes condiciones: i) la obligación de TWDC de no recomprar el Negocio FSM, la cual continuará vigente hasta el 10 de noviembre de 2031 -condición 8.4.8.2- y ii) el sublicenciamiento de **uso gratuito exclusivo de la marca "FOX" para contenidos deportivos** pactada entre TWDC y 21CF, a fin de que el comprador del negocio desincorporado (en este caso, Grupo Lauman) pudiera usar dicha marca por un periodo mínimo, el cual, derivado de las negociaciones entre TWDC/21CF y Grupo Lauman y conforme al Contrato de Cesión de Licencia presentado al IFT el 16 de marzo de

2022, **resultó ser de 5 (cinco) años, los cuales concluirían hasta el día 10 de noviembre de 2026, - condición 8.4.12.4.-...**"

Escrito electrónico con sello digital que se adjunta como **Anexo 6)**.

**Algunas conductas de Fox Corp. y Carlos Martínez para el reingreso de Fox Corp. al mercado de transmisión de eventos deportivos en México (limitadas —en este momento— a su ilegal intento de impedir a mi representadas el uso de las marcas de Fox Sports)**[2]

**16.-** A finales del año 2023, Fox Corp. le expresó a Grupo Lauman su intención de readquirir el negocio de Fox Sports México, para volver a participar en el mercado de transmisión de eventos deportivos en México. A partir de ese momento, Fox Corp. ha llevado a cabo una serie de conductas ilícitas con la finalidad de causarle daño a mis representadas, y poder reemplazarlas indebidamente en el mercado de transmisiones deportivas en México. Lo que Fox Corp. pretende es obtener ilícitamente la titularidad o propiedad de los activos de mis representadas, sin pagarles una contraprestación justa en condiciones de mercado. Dichas conductas ilícitas (y el daño que las mismas han causado a mis representadas) serán el objeto principal de la demanda que mis representadas presentarán en el momento oportuno. Por el momento, y por la urgencia de evitar que se afecte la viabilidad del negocio Fox Sports México y de proteger la viabilidad de mis representadas como negocios en marcha, basta hacer referencia al evento más reciente a través del cual Fox Corp., ha intentado lograr ilegalmente sus objetivos.

**17.-** El 3 de marzo de 2025, la directora financiera de Grupo Lauman (entre otras personas) recibió un correo electrónico enviado por Erin Eisner — Vicepresidente Senior de Litigio de Propiedad Industrial y General de Fox Corp.— desde la dirección erin.eisner@fox.com , al que se adjuntó una carta en la que Fox Corp. pretende dar por terminado anticipadamente el Contrato de Cesión de Derechos de Licencia; lo anterior a pesar de que Fox Corp. ni siquiera es parte en dicho contrato. En efecto, las únicas partes en el Contrato de Cesión de Derechos de Licencia son MDM y 21CF (que es una subsidiaria al 100% de Disney, y sin relación corporativa alguna con Fox Corp.).

[2] En la demanda que mis representadas presentarán en su oportunidad, se tratarán con detalle todas las conductas que los demandados han llevado a cabo de forma ilícita para reingresar al mercado mexicano, a través —entre otras cosas— de una serie de actos ejecutados con el fin de causar daño a mis representadas, demeritar el valor de sus activos y apropiarse de éstos sin pagar un precio justo de mercado por los mismos.

Por lo tanto, la supuesta notificación realizada por Fox Corp. carece de efecto jurídico alguno. Documento que se exhibe como **Anexo 7)**.

El 7 de marzo de 2025, un asesor externo de MDM respondió a la comunicación enviada por Fox Corp. mediante correo electrónico enviado desde la dirección pdiez@dgt.com.mx . En dicha respuesta, entre otras cosas, se precisó que el derecho de MDM al uso de las Marcas de Fox Sports en México es **exclusivo** y con una vigencia de por lo menos 5 (cinco) años contados a partir de la firma del Contrato de Cesión de Licencia. A la fecha de presentación de esta solicitud de medidas cautelares, MDM no ha recibido una respuesta de Fox Corp. al escrito referido. Documento que se exhibe como **Anexo 8)**.

**18.-** Lo que Fox Corp. pretende es lograr —a través de cualquier medio— que MDM deje de usar las marcas de Fox Sports en el territorio de México, para poder empezar a operar en nuestro país utilizando precisamente esas marcas, sobre cuyo uso MDM tiene un derecho exclusivo hasta por lo menos el 10 de noviembre de 2026. Al margen de la ineficacia e ilegalidad de la comunicación de la señora Erin Eisner, la misma es indudablemente un acto intimidatorio e ilícito, ejecutado de mala fe con el propósito de impedir -ilegalmente- que MDM utilice las referidas marcas en territorio nacional, en clara violación de los derechos contractuales de MDM al amparo del Convenio de Cesión de Derechos de Licencia y su Convenio Modificatorio, que repito, está vigente cuando menos hasta el 10 de noviembre de 2026.

**19.-** Adicionalmente, el 6 de marzo de 2025 diversos medios de comunicación publicaron un comunicado supuestamente elaborado y difundido por Fox Corp., en el que se dice que éste "canceló el acuerdo de licencia de Grupo Lauman para la marca Fox Sports". Como ya ha sido señalado con anterioridad, el derecho de mis representadas (y de MDM en particular) a utilizar las Marcas Fox Sports no deriva de ningún contrato celebrado con Fox Corp., sino de un contrato celebrado con 21CF (una subsidiaria al 100% de Disney). Por ello, Fox Corp. no está facultado para terminar anticipadamente el Convenio de Cesión de Derechos de Licencia ni su Convenio Modificatorio, pues ni siquiera es parte en ninguno de ellos. Por lo anterior, la supuesta notificación realizada por Fox Corp. no produce -ni puede producir- efecto jurídico alguno.

**20.-** A pesar de todo lo anterior, mis representadas tienen el temor fundado de que Fox Corp. persista en su afán de tratar de impedir que mis representadas utilicen las Marcas de Fox Sports en los Estados Unidos Mexicanos —no obstante que Fox Corp. no está facultada para impedirlo—.

Como se podrá apreciar con detalle en la demanda que mis representadas presentarán en su oportunidad, la intención de Fox Corp. consiste en lograr que mis representadas pierdan todos sus activos valiosos —entre ellos, el correspondiente al uso de las Marcas Fox Sports— para que el propio Fox Corp. pueda adquirirlos sin tener que pagar una contraprestación justa -en términos de mercado- a mis representadas. Lo anterior, junto con las conductas ilícitas desplegadas por Carlos Enrique Martínez Sánchez, Fox Cable y Fox Corp. que se describirán con detalle en la demanda que mis representadas presentarán en su momento, provocan en mis mandantes el temor fundado de que cualesquiera de los futuros demandados, o todos en conjunto, pretendan llevar a cabo actos que limiten, impidan, interfieran, obstaculicen o entorpezcan (o puedan limitar, impedir, interferir, obstaculizar o entorpecer) el uso normal por parte de MDM de las Marcas de Fox Sports en el territorio de México, lo que provoca que mis poderdantes se vean en la imperiosa necesidad de acudir a la presente solicitud de medidas cautelares de naturaleza prejudicial, a solicitar la conservación de sus legítimos derechos al amparo del Contrato de Cesión de Derechos de Licencia.

**DERECHO**

En lo que concierne a las medidas cautelares solicitadas, si bien el Código de Comercio no las prevé de manera expresa en su articulado, y aún cuando el artículo 1168 de dicho ordenamiento dispone que en los juicios de orden mercantil como el que se plantea, sólo proceden las "providencias precautorias" previstas en dicho numeral (retención de persona y retención de bienes), en términos de lo ordenado por la jurisprudencia por contradicción de tesis resuelta por la H. Primera Sala de la Suprema Corte de Justicia de la Nación que a continuación se transcribe, es factible que, para salvaguardar la situación de hecho existente, se puedan aplicar supletoriamente las medidas conservativas o de aseguramiento previstas en los artículos 384 a 388 del Código Federal de Procedimientos Civiles, pues a través de éstas, puede brindarse efectividad en la impartición de justicia; de ahí que lo aquí solicitado resulte procedente.

El criterio jurisprudencial referido es del tenor literal siguiente:

> "PROVIDENCIAS PRECAUTORIAS EN MATERIA MERCANTIL. CUANDO LA SOLICITUD DE LA MEDIDA NO SE FUNDA EN LOS CASOS QUE PREVÉ EL ARTÍCULO 1168 DEL CÓDIGO DE COMERCIO, LA RESTRICCIÓN CONTENIDA EN EL ARTÍCULO 1171 DE LA MISMA LEY PARA DICTARLAS, NO IMPIDE LA APLICACIÓN SUPLETORIA DE LAS MEDIDAS DE

ASEGURAMIENTO PREVISTAS EN LOS NUMERALES 384 A 388 DEL CÓDIGO FEDERAL DE PROCEDIMIENTOS CIVILES (ABANDONO PARCIAL DE LAS TESIS 1a. LXXIX/2007 Y 1a. LXXXI/2007). El artículo 1168 del Código de Comercio regula como medida cautelar las que denomina providencias precautorias, las cuales sólo pueden dictarse cuando exista temor de que: I) se ausente u oculte la persona contra quien deba entablarse o se haya entablado una demanda; II) se oculten o dilapiden los bienes sobre los que ha de ejercitarse una acción real, y III) se oculten o enajenen los bienes sobre los que ha de practicarse la diligencia, siempre que la acción sea personal y el deudor no tuviera otros bienes. Por su parte, el numeral 1171 del mismo ordenamiento prevé que no pueden dictarse otras providencias precautorias que las establecidas en el propio código y que exclusivamente serán, en caso de la citada fracción I, el arraigo de la persona y, en los casos de las mencionadas fracciones II y III, el secuestro de bienes. En ese sentido, si en el Código de Comercio el legislador solamente reguló y denominó expresamente y de manera completa y cerrada la medida cautelar que denominó providencias precautorias, entonces, cuando en un juicio mercantil se plantea la solicitud de que se dicte una medida cautelar con la finalidad de que se mantenga una situación de hecho existente, y ésta no se funda en alguna de las tres hipótesis mencionadas, es inconcuso que, por un lado, el juzgador estaría impedido para dictar una providencia precautoria de las previstas en el artículo 1168 señalado y, por otro, que al no poder establecer tal providencia precautoria, resultaría inaplicable la prohibición contenida en el diverso artículo 1171, dado que la anotada prohibición sólo tiene por objeto regular los términos y las condiciones para que opere la medida cautelar denominada providencias precautorias prevista en el referido artículo 1168, y en consecuencia, tal prohibición no puede ni debe entenderse extensiva a cualquier medida cautelar que resulte legalmente aplicable a la materia mercantil. En ese sentido, ante la solicitud de una medida cautelar con la finalidad de que se mantenga una situación de hecho, que no se funde en alguna de las tres hipótesis contenidas en el artículo 1168 del Código de Comercio, **sí sería aplicable supletoriamente en términos del artículo 1054 del mismo ordenamiento, el contenido conducente del Código Federal de Procedimientos Civiles, que prevé como medida cautelar las denominadas medidas de aseguramiento, establecidas en sus artículos 384 a 388**. Lo anterior conduce a esta Sala a apartarse parcialmente del criterio contenido en las tesis aisladas 1a. LXXIX/2007 y 1a. LXXXI/2007, en la parte que prevén la intención y el alcance del contenido restrictivo del artículo 1171 del Código de Comercio."[3]

Como lo ha reconocido la Suprema Corte de Justicia de la Nación, existen medidas cautelares que pueden ser dictadas en un juicio mercantil distintas a las designadas como "providencias precautorias". Las "providencias precautorias" previstas en el Código de Comercio son sólo una especie del

[3] Época: Décima. Registro: 2003884. Tipo de Tesis: Jurisprudencia. Instancia: Primera Sala. Materia (s): Civil. Fuente: Semanario Judicial de la Federación y su Gaceta. Tesis: 1a./J. 27/2013 (10a.), Libro XXI, junio de 2013, Tomo I, Pág. 552.

género de las "medidas cautelares". En ese sentido, se pueden dictar medidas cautelares que sean distintas a las "providencias precautorias", pues las únicas que están definidas limitativamente en el Código de Comercio son estas últimas, y no todas las medidas cautelares. Asimismo, debe destacarse que la función de los jueces va más allá de la mera aplicación de la ley, toda vez que los tribunales del Estado Mexicano deben analizar si la norma aplicable es acorde a la Constitución Federal o a los tratados internacionales en materia de derechos humanos, tal como lo estableció el Pleno de la Suprema Corte de Justicia de la Nación, con motivo del procedimiento instado para cumplir con las disposiciones de la Corte Interamericana de Derechos Humanos.

En ese sentido, las medidas que se solicitan son procedentes en términos de los hechos narrados en el capítulo respectivo y en virtud de lo que enseguida se expondrá.

Resulta de consabido derecho que la función de las medidas cautelares consiste en servir como paliativo por el tiempo que emplean los tribunales en resolver las controversias que se les plantean, con la finalidad de que la situación de las partes no empeore con motivo de la duración del proceso, a efecto de fungir como garantía provisional para que no se torne en ilusorio o imposible el cumplimiento de la eventual sentencia que se llegue a dictar en el procedimiento.

Así, en la Constitución Política de los Estados Unidos Mexicanos, se establece el derecho humano a una tutela judicial efectiva, al disponer, en su parte conducente:

> "Artículo 17. ...
>
> Toda persona tiene derecho a que se le administre justicia por tribunales que estarán expeditos para impartirla en los plazos y términos que fijen las leyes, **emitiendo sus resoluciones de manera pronta, completa e imparcial.** Su servicio será gratuito, quedando, en consecuencia, prohibidas las costas judiciales.
>
> ...
>
> Las leyes federales y locales establecerán los medios necesarios **para que se garantice la independencia de los tribunales y la plena ejecución de sus resoluciones."**

De la simple lectura que se haga al numeral transcrito, queda en evidencia que nuestra Carta Magna prevé que la autoridad jurisdiccional debe dictar sentencias que sean plenamente ejecutables, es decir, que sean eficaces,

que puedan ser ejecutadas o cumplimentadas desde el punto de vista práctico a fin de lograr una tutela real a los intereses de la parte prevaleciente en un juicio.

En ese sentido, se prevé la figura de las medidas cautelares como un mecanismo que tienda a preservar los derechos e intereses durante el juicio, con la finalidad de lograr que la sentencia definitiva que en su momento sea emitida, pueda tener eficacia.

De esta suerte, la tutela judicial efectiva no sólo comprende la del dictado de sentencias definitivas, sino que también se dicten medidas cautelares en aras de lograr que la sentencia que se dicte sea eficazmente ejecutada.

Sobre este aspecto, la Convención Americana sobre Derechos Humanos, en sus artículos 8° y 25, dispone:

> "Artículo 8. Garantías Judiciales
>
> 1.- Toda persona tiene derecho a ser oída, con las debidas garantías **y dentro de un plazo razonable**, por un juez o tribunal competente, independiente **e** imparcial, establecido con anterioridad por ley, en la sustanciación de cualquier acusación penal formulada contra ella, o para la determinación de sus derechos y obligaciones de orden civil, laboral, fiscal o de cualquier otro carácter".
>
> "Artículo 25. Protección Judicial
>
> 1. **Toda persona tiene derecho a un recurso sencillo y rápido o a cualquier otro recurso efectivo ante los jueces o tribunales competentes, que la ampare contra actos que violen sus derechos fundamentales reconocidos por la Constitución**, la ley o la presente convención, aun cuando tal violación sea cometida por personas que actúen en ejercicio de sus funciones oficiales.
>
> 2. Los Estados partes se comprometen:
>
> a) a garantizar que la autoridad competente prevista por el sistema legal del Estado decidirá sobre los derechos de toda persona que interponga tal recurso;
>
> b) a desarrollar las posibilidades del recurso judicial, y
>
> c) a **garantizar el cumplimiento, por las autoridades competentes, de toda decisión que se haya estimado procedente el recurso.**"

Entonces, la tutela judicial efectiva se encuentra elevada al rango de derecho fundamental.

La Corte Interamericana de Derechos Humanos determinó que el artículo 25 de la Convención Americana sobre Derechos Humanos, impone dos responsabilidades concretas al Estado. La primera, consagrar normativamente y asegurar la debida aplicación de recursos efectivos ante las autoridades competentes, que amparen a todas las personas bajo su jurisdicción contra actos que violen sus derechos fundamentales o que conlleven la determinación de los derechos y obligaciones de éstas (Caso Acevedo Jaramillo y otros vs. Perú). La segunda, garantizar los medios para ejecutar las respectivas decisiones y sentencias definitivas emitidas por tales autoridades competentes, de manera que se protejan efectivamente los derechos declarados o reconocidos (Caso Baena Ricardo y otros vs. Panamá).

Lo contrario supondría la negación misma del derecho involucrado. (Caso Acevedo Buendía y otros vs. Perú, Caso Acevedo Jaramillo y otros vs. Perú).

Como puede verse, la Corte Interamericana de Derechos Humanos, determinó el alcance del derecho fundamental a la tutela judicial efectiva, al concluir que los Estados se encuentran obligados a garantizar los medios para ejecutar las sentencias, de tal modo, que se realice una protección real de los derechos involucrados. En consecuencia, cualquier disposición que atente contra la efectiva tutela del derecho planteado, será contraria al artículo 25 de la Convención Americana sobre Derechos Humanos y, por ende, al artículo 17 de la Constitución Política.

Esto se traduce en que es obligación constitucional del Juzgador, garantizar la efectiva ejecución de una sentencia, a través de medidas cautelares, ya sea reguladas expresamente por el orden jurídico, o bien, aquellas ad hoc que el Juez estime necesarias para garantizar la tutela efectiva del derecho tutelado.

Todo lo anterior, encuentra sustento en la ejecutoria dictada por el Tercer Tribunal Colegiado en Materia Civil del Primer Circuito, en el expediente R.C. 253/2011, consultable en el sitio web del Consejo de la Judicatura Federal[4]; y lleva a concluir que en el caso concreto, aún y cuando algunas de las medidas cautelares que se solicitan no están reguladas específicamente por el Código de Comercio, éstas encuentran sustento en los artículos 1° y 17 de la Constitución Política, en cuanto tutelan el derecho fundamental a la tutela judicial efectiva, a la luz de que lo que se pide expresamente en este caso; lo

[4] http://www.dgepj.cjf.gob.mx/OUT/00270000107690540003003AST.PDF

que está expresamente regulado por el artículo 384 del Código Federal de Procedimientos Civiles, de aplicación supletoria:

> "Art. 384.- Antes de iniciarse el juicio, **o durante su desarrollo,** pueden decretarse todas las medidas **<u>necesarias para mantener la situación de hecho existente</u>**. Estas medidas se decretarán sin audiencia de la contraparte, y no admitirán recurso alguno. La resolución que niegue la medida es apelable."

Sobre lo anterior, también resulta aplicable la siguiente jurisprudencia:

> "MEDIDAS CAUTELARES O PROVIDENCIAS PRECAUTORIAS EN LOS JUICIOS MERCANTILES. SON INHERENTES AL DERECHO A LA JURISDICCIÓN, POR LO QUE LA LIMITACIÓN DE SU OTORGAMIENTO DEBE ATENDER A UNA INTERPRETACIÓN FUNCIONAL Y CONFORME DEL ARTÍCULO 1168 DEL CÓDIGO DE COMERCIO CON LOS ARTÍCULOS 1o. Y 17 CONSTITUCIONALES. En los juicios mercantiles se pueden decretar medidas cautelares o providencias precautorias para mantener una situación preexistente, en virtud de que este tipo de instrumentos son inherentes al derecho a la jurisdicción, al tener la finalidad de hacer eficaces las sentencias de los Jueces tal como está previsto en el artículo 17, párrafo séptimo, de la Constitución Política de los Estados Unidos Mexicanos, el cual dispone que: "Las leyes federales y locales establecerán los medios necesarios para que se garantice la independencia de los tribunales y la plena ejecución de sus resoluciones.". Así la reforma publicada en el Diario Oficial de la Federación el 10 de enero de 2014 a los artículos 1168 y 1171 del Código de Comercio, **no tuvo la intención de impedir que en los juicios mercantiles se decreten las medidas o providencias cautelares necesarias para hacer efectivo el cumplimiento de las sentencias, ya que su propósito se concretó a la interpretación de reglas claras y precisas que permitan a los acreedores obtener el cobro efectivo de sus créditos insolutos, mediante la radicación de personas o la retención de bienes**. De esta manera, el texto reformado del artículo 1168, primer párrafo, invocado, que establece: "En los juicios mercantiles únicamente podrán dictarse las medidas cautelares o providencias precautorias previstas en este Código y que son las siguientes: (...)", **no debe interpretarse con un criterio de simple literalidad**, pues resultaría ser prohibitivo frente al deber del Juez ordinario de conservar subsistente la materia del juicio, lo que, desde luego, vulneraría los derechos fundamentales reconocidos por los instrumentos internacionales firmados por el Estado Mexicano y por la Constitución Política de los Estados Unidos Mexicanos, de acuerdo con su artículo 1o.; no obstante, una interpretación funcional y conforme de aquel numeral da la pauta para advertir que se trata de una norma taxativa al prever dos supuestos aplicables a determinada situación de hecho, **lo cual, sin embargo, no restringe la posibilidad del juzgador de que en cumplimiento de su función en relación con el otorgamiento y procedencia de las diferentes medidas**

> **cautelares, deben adaptarse a las circunstancias y necesidades de cada caso, pues estas medidas deben ser flexibles incluso con posibilidad de modificación según se necesite en el procedimiento en que se emitan; además, al otorgarlas, debe fundarlas y motivarlas debidamente, así como en cuanto a las garantías que se exijan, a fin de evitar abusos de las partes que las soliciten. En tal virtud, tal interpretación es acorde con los derechos fundamentales a la tutela judicial efectiva y de acceso a la impartición de justicia reconocidos tanto por el artículo constitucional en comento, como por el precepto 25 de la Convención Americana sobre Derechos Humanos."[5]**

En suma, la limitante que estableció el legislador en el artículo 1171 del Código de Comercio, de ninguna manera restringe el derecho de mis representadas para solicitar cualquier otra medida de conservación tendiente a salvaguardar el bien objeto del litigio y, por consiguiente, atento a las jurisprudencias obligatorias antes invocadas, **es aplicable al caso el diverso numeral 384 del Código Federal de Procedimientos Civiles.**

Ahora bien, tal como se desprende de lo que ha sido señalado desde el apartado relativo a los hechos del presente escrito, en este caso se cumplen los requisitos de apariencia del buen derecho, temor fundado y peligro en la demora inherentes a toda medida cautelar, ya que:

<u>Apariencia del buen derecho</u>: Mis representadas exhiben con su demanda, originales o copias certificadas de los documentos que se exhiben como **Anexos 4)** a **8)** de este escrito.

De los referidos documentos se advierte *prima facie*, que MDM tiene un derecho irrestricto de usar las marcas descritas en esta solicitud hasta cuando menos el 10 de noviembre de 2026, al amparo del Convenio de Cesión de Derechos de Licencia, su Convenio Modificatorio, y las resoluciones del IFT; que la señora Erin Eisner no acreditó ser representante de Fox Corp., que Fox Corp. no está legitimada para dar por terminado el Convenio de Cesión de Derechos de Licencia (ni su Convenio Modificatorio), por no haberlo suscrito; ni existe ninguna cláusula del mismo que faculte a nadie —mucho menos a Fox Corp.—, a darlo por terminado mediante simple aviso por escrito.

Ahora, la verosimilitud del derecho es un presupuesto que condiciona la admisibilidad de la medida **<u>y apunta a una credibilidad objetiva</u>**

---

[5] Época: Décima Época. Registro: 2020903. Instancia: Plenos de Circuito. Tipo de Tesis: Jurisprudencia. Fuente: Gaceta del Semanario Judicial de la Federación. Libro 71, octubre de 2019, Tomo III. Materia(s): Constitucional, Civil, Civil. Tesis: PC.I.C. J/94 C (10a.). Página: 2979.

y seria que descarta una pretensión manifiestamente infundada, temeraria o muy cuestionable. Lo cual se justifica en razón de que las medidas cautelares, más que destinarse a hacer justicia, se dirigen a dar tiempo a ésta para cumplir eficazmente su objetivo.

En este caso, la apariencia del buen derecho está ligada con lo que se desprende de los documentos antes descritos, particularmente con las resoluciones del IFT con pleno valor probatorio, en relación con el Convenio de Cesión de Derechos de Licencia y su Convenio Modificatorio, que claramente aparece firmado por 21CF y no por Fox Corp.

Por lo tanto, debe suspenderse el efecto nocivo de cualquier pretensión por parte de Fox Corp. de dar por terminado el Convenio de Cesión de Derechos de Licencia y su Convenio Modificatorio, y su pretensión de impedir u obstaculizar el uso continuo e ininterrumpido de dichas marcas por parte de MDM en territorio nacional.

<u>Temor fundado:</u> En caso de que no se decreten las medidas cautelares que se piden a su Señoría, se corre el riesgo que los presuntos demandados generen más actos tendientes a impedir u obstaculizar el uso de las marcas por parte de MDM, por vías de hecho o bajo pretensiones cuasi jurídicas.

<u>Peligro en la demora:</u> Es necesaria la adopción urgente de la medida cautelar que se pide, considerando como se ha dicho, que cualesquiera de los futuros demandados pueden realizar actos que entorpezcan, limiten u obstaculicen el uso de las marcas por parte de MDM.

Al efecto, son aplicables los criterios siguientes:

> "SUSPENSIÓN. PARA RESOLVER SOBRE ELLA ES FACTIBLE, SIN DEJAR DE OBSERVAR LOS REQUISITOS CONTENIDOS EN EL ARTICULO 124 DE LA LEY DE AMPARO, HACER UNA APRECIACIÓN DE CARÁCTER PROVISIONAL DE LA INCONSTITUCIONALIDAD DEL ACTO RECLAMADO.- **La suspensión de los actos reclamados participa de la naturaleza de una medida cautelar, cuyos presupuestos son la apariencia del buen derecho y el peligro en la demora. El primero de ellos se basa en un conocimiento superficial dirigido a lograr una decisión de mera probabilidad respecto de la existencia del derecho discutido en el proceso. Dicho requisito aplicado a la suspensión de los actos reclamados, implica que, para la concesión de la medida, sin dejar de observar los requisitos contenidos en el artículo 124 de la Ley de Amparo, basta la comprobación de la**

**apariencia del derecho invocado por el quejoso, de modo tal que, según un cálculo de probabilidades, sea posible anticipar que en la sentencia de amparo se declarará la inconstitucionalidad del acto reclamado.** Ese examen encuentra además fundamento en el artículo 107, fracción X, constitucional, en cuanto establece que para el otorgamiento de la medida suspensional deberá tomarse en cuenta, entre otros factores, la naturaleza de la violación alegada, lo que implica que debe atenderse al derecho que se dice violado. Esto es, el examen de la naturaleza de la violación alegada no sólo comprende el concepto de violación aducido por el quejoso sino que implica también el hecho o acto que entraña la violación, considerando sus características y su trascendencia. En todo caso dicho análisis debe realizarse, sin prejuzgar sobre la certeza del derecho, es decir, sobre la constitucionalidad o inconstitucionalidad de los actos reclamados, ya que esto sólo puede determinarse en la sentencia de amparo con base en un procedimiento más amplio y con mayor información, teniendo en cuenta siempre que la determinación tomada en relación con la suspensión no debe influir en la sentencia de fondo, toda vez que aquélla sólo tiene el carácter de provisional y se funda en meras hipótesis, y no en la certeza de la existencia de las pretensiones, en el entendido de que deberá sopesarse con los otros elementos requeridos para la suspensión, porque si el perjuicio al interés social o al orden público es mayor a los daños y perjuicios de difícil reparación que pueda sufrir el quejoso, deberá negarse la suspensión solicitada, ya que la preservación del orden público o del interés de la sociedad están por encima del interés particular afectado. Con este proceder, se evita el exceso en el examen que realice el juzgador, el cual siempre quedará sujeto a las reglas que rigen en materia de suspensión."[6]

"SUSPENSIÓN EN EL AMPARO INDIRECTO. RELACIÓN DEL EFECTO RESTAURATIVO, PROVISIONAL Y ANTICIPADO QUE DEBE DÁRSELE EN TÉRMINOS DEL ARTÍCULO 147, SEGUNDO PÁRRAFO, DE LA LEY DE LA MATERIA, CON LA APARIENCIA DEL BUEN DERECHO Y EL PELIGRO EN LA DEMORA. De conformidad con el artículo 147, segundo párrafo, de la Ley de Amparo, vigente desde el 3 de abril de 2013, en los casos en que la suspensión sea procedente, atento a la naturaleza del acto reclamado, el órgano jurisdiccional ordenará que las cosas se mantengan en el estado que guarden y, de ser jurídica y materialmente posible, restablecerá provisionalmente al quejoso en el goce del derecho violado, mientras se dicta sentencia ejecutoria en el amparo. Así, del dictamen efectuado en el Senado de la República a la iniciativa de dicho ordenamiento, se estima que la disposición mencionada se originó porque, conforme a la práctica jurisdiccional basada en la Ley de Amparo de 1936, se reconocieron supuestos en los que no podía otorgarse la suspensión con un alcance eficaz y consistente con las premisas de evitar la consumación de las violaciones alegadas, tornándolas difícil o imposiblemente reparables, y de salvaguarda de la materia del amparo, si no se le daba un efecto restitutorio,

[6] Registro digital: 200136. Instancia: Pleno. Novena Época. Materia(s): Común. Tesis: P./J. 15/96. Fuente: Semanario Judicial de la Federación y su Gaceta. Tomo III, Abril de 1996, página 16. Tipo: Jurisprudencia.

provisional y anticipado, por encontrarse el acto reclamado ejecutado al momento en que se solicitaba la medida y a partir de un conocimiento superficial y de mera probabilidad de la violación invocada por la parte quejosa, que diera como resultado la credibilidad objetiva y seria que descartara una pretensión manifiestamente infundada, temeraria o cuestionable (apariencia del buen derecho), así como el peligro de que, de permanecer la ejecución del acto, se frustrara la pretensión deducida por consumarse la violación y se perdiera la materia del amparo (peligro en la demora); criterios que superaron los relativos a que la suspensión solamente debía tener efectos conservatorios y de que no era posible, al resolver sobre su concesión, abordar estudio alguno sobre la constitucionalidad del acto reclamado por ser esto último materia de la sentencia que resolviera el fondo del amparo. En estas condiciones, la previsión contenida en el segundo párrafo del artículo 147 citado, encuentra estrecha relación con el asomo provisional al fondo del asunto a que está obligado el juzgador, a fin de determinar la apariencia del buen derecho, a que se refieren los artículos 107, fracción X, de la Constitución Política de los Estados Unidos Mexicanos y 138 de su ley reglamentaria, pero, fundamentalmente, lleva a que se analice el peligro en la demora, dada la naturaleza de la medida cautelar que corresponde a la suspensión del acto reclamado en el juicio de amparo, en el entendido de que el análisis condigno a tal peligro, como se entendió en el dictamen inicialmente señalado, involucra una estimación de mera probabilidad de que, de no suspenderse el acto, las violaciones aducidas quedarán consumadas y se tornarán difícil o imposiblemente reparables, esto, en el aspecto sustantivo, y desaparecerá la materia del amparo, como consecuencia adjetiva del retardo en la paralización del acto. Por ello, cuando en la misma porción normativa que se analiza se condiciona el efecto restaurativo excepcional, provisional y anticipado que pueda darse a la suspensión del acto, a que su naturaleza revele que es jurídica y materialmente posible, en la determinación de estos últimos aspectos debe involucrarse el resolver si existe verdadero peligro de que de no darse a la suspensión el efecto referido, las violaciones aducidas se consumen, se tornen difícil o aun imposiblemente reparables en la sentencia de amparo y se pierda con ello la materia de fondo del juicio principal, en el entendido también de que esas expresiones constituyen elementos normativos y de control que el legislador previó, a fin de que el otorgar a la suspensión, excepcionalmente, un efecto restaurativo, provisional y anticipado, no resulte en una decisión arbitraria o susceptible al abuso, pues de ser así, sin que se advierta el peligro en la demora y el riesgo adjetivo de que desaparezca la materia del amparo, se desvirtuaría el propósito considerado por el legislador para prever dicha medida con el alcance excepcional descrito. Todo ello, desde luego, en el entendido de que, aunado a la apariencia del buen derecho y el peligro en la demora, es inexcusable que se demuestre la no afectación al interés social con el otorgamiento de la medida y el cumplimiento de los demás requisitos previstos en la Ley de Amparo, pues de existir esa afectación y ser mayor que la que resentiría la parte quejosa, según se aprecie de sus pretensiones, la suspensión sería improcedente e innecesario un análisis en cuanto al efecto más eficaz que habría de dársele, lo que no contradice la esencia de los criterios jurisprudenciales que orientaron la adopción del actual segundo párrafo del artículo 147 de la Ley de

Amparo, contenidos en las jurisprudencias P./J. 15/96 y P./J. 16/96, del Pleno de la Suprema Corte de Justicia de la Nación, emitidas con base en la Ley de Amparo actualmente abrogada, sino que, en términos del artículo sexto transitorio del ordenamiento de la materia en vigor, vistas en relación con los procesos legislativos originarios de la legislación actual, sirven de guía para determinar la naturaleza específica del juicio de ponderación sobre la apariencia del buen derecho y el peligro en la demora; sin embargo, su aplicabilidad no puede ser plena conforme a la legislación actual, porque, como se precisó, el Constituyente ordenó que se observaran mayores requisitos para normar el juicio de ponderación y el otorgamiento de la medida, con el propósito de evitar el abuso y controlar la discrecionalidad del Juez al proveer sobre su otorgamiento, con el fin de que esa discrecionalidad no resulte en arbitrariedad, con la consecuente lesión al interés social en el otorgamiento de la medida con un efecto excepcional, cuando esto no se justifica e, incluso, antes de la expedición de la ley en vigor, la propia Suprema Corte constriñó la aplicabilidad de aquellos criterios a la observancia de los requisitos del artículo 124 de la normativa abrogada y, en el imperio de la actual, debe regir el mismo principio de cumplimiento de todos y cada uno de los que deban satisfacerse para proveer sobre la medida cautelar."[7]

Es importante destacar que, con el otorgamiento de las medidas cautelares, no se prejuzga sobre los posibles derechos de los futuros demandados, por lo que sus acciones y medios de defensa quedan expeditos.

Alcance de las medidas: Las medidas solicitadas están perfectamente acotadas en el tiempo, pues deben permanecer en vigor únicamente hasta el momento en que se ponga fin al presente juicio mediante sentencia que haya causado ejecutoria y solo afectan a los presuntos demandados, y los eventuales daños y perjuicios que se ocasionen con motivo de dicha medida, quedarán cubiertos con la fianza que al efecto fije su Señoría.

Al efecto, son aplicables los criterios siguientes:

"SUSPENSIÓN. PARA RESOLVER SOBRE ELLA ES FACTIBLE, SIN DEJAR DE OBSERVAR LOS REQUISITOS CONTENIDOS EN EL ARTICULO 124 DE LA LEY DE AMPARO, HACER UNA APRECIACIÓN DE CARÁCTER PROVISIONAL DE LA INCONSTITUCIONALIDAD DEL ACTO RECLAMADO.- La suspensión de los actos reclamados **participa de la naturaleza de una medida cautelar, cuyos presupuestos son la apariencia del buen derecho y el peligro en la demora. El primero de ellos se basa en un conocimiento superficial dirigido a lograr una decisión de mera probabilidad respecto de la existencia dei derecho discutido en el proceso**. Dicho

[7] Registro digital: 2006949. Instancia: Tribunales Colegiados de Circuito. Décima Época. Materia(s): Común. Tesis: IV.2o.A.63 K (10a.). Fuente: Gaceta del Semanario Judicial de la Federación. Libro 8, Julio de 2014, Tomo II, página 1316. Tipo: Aislada

requisito aplicado a la suspensión de los actos reclamados, implica que, para la concesión de la medida, sin dejar de observar los requisitos contenidos en el artículo 124 de la Ley de Amparo, basta la comprobación de la apariencia del derecho invocado por el quejoso, de modo tal que, según un cálculo de probabilidades, sea posible anticipar que en la sentencia de amparo se declarará la inconstitucionalidad del acto reclamado. Ese examen encuentra además fundamento en el artículo 107, fracción X, constitucional, en cuanto establece que para el otorgamiento de la medida suspensional deberá tomarse en cuenta, entre otros factores, la naturaleza de la violación alegada, lo que implica que debe atenderse al derecho que se dice violado. Esto es, el examen de la naturaleza de la violación alegada no sólo comprende el concepto de violación aducido por el quejoso, sino que implica también el hecho o acto que entraña la violación, considerando sus características y su trascendencia. En todo caso dicho análisis debe realizarse, sin prejuzgar sobre la certeza del derecho, es decir, sobre la constitucionalidad o inconstitucionalidad de los actos reclamados, ya que esto sólo puede determinarse en la sentencia de amparo con base en un procedimiento más amplio y con mayor información, teniendo en cuenta siempre que la determinación tomada en relación con la suspensión no debe influir en la sentencia de fondo, toda vez que aquélla sólo tiene el carácter de provisional y se funda en meras hipótesis, y no en la certeza de la existencia de las pretensiones, en el entendido de que deberá sopesarse con los otros elementos requeridos para la suspensión, porque si el perjuicio al interés social o al orden público es mayor a los daños y perjuicios de difícil reparación que pueda sufrir el quejoso, deberá negarse la suspensión solicitada, ya que la preservación del orden público o del interés de la sociedad están por encima del interés particular afectado. Con este proceder, se evita el exceso en el examen que realice el juzgador, el cual siempre quedará sujeto a las reglas que rigen en materia de suspensión."[8]

"SUSPENSIÓN EN EL AMPARO INDIRECTO. RELACIÓN DEL EFECTO RESTAURATIVO, PROVISIONAL Y ANTICIPADO QUE DEBE DÁRSELE EN TÉRMINOS DEL ARTÍCULO 147, SEGUNDO PÁRRAFO, DE LA LEY DE LA MATERIA, CON LA APARIENCIA DEL BUEN DERECHO Y EL PELIGRO EN LA DEMORA. De conformidad con el artículo 147, segundo párrafo, de la Ley de Amparo, vigente desde el 3 de abril de 2013, en los casos en que la suspensión sea procedente, atento a la naturaleza del acto reclamado, el órgano jurisdiccional ordenará que las cosas se mantengan en el estado que guarden y, de ser jurídica y materialmente posible, restablecerá provisionalmente al quejoso en el goce del derecho violado, mientras se dicta sentencia ejecutoria en el amparo. Así, del dictamen efectuado en el Senado de la República a la iniciativa de dicho ordenamiento, se estima que la disposición mencionada se originó porque, conforme a la práctica jurisdiccional basada en la Ley de Amparo de 1936, se reconocieron supuestos en los que no podía otorgarse la

[8] Época: Novena Época. Registro: 917974. Instancia: Pleno. Tipo de Tesis: Jurisprudencia. Fuente: Apéndice 2000. Tomo VI, Común, Jurisprudencia SCJN. Materia(s): Común. Tesis: 440. Página: 374.

suspensión con un alcance eficaz y consistente con las premisas de evitar la consumación de las violaciones alegadas, tornándolas difícil o imposiblemente reparables, y de salvaguarda de la materia del amparo, si no se le daba un efecto restitutorio, provisional y anticipado, por encontrarse el acto reclamado ejecutado al momento en que se solicitaba la medida y a partir de un conocimiento superficial y de mera probabilidad de la violación invocada por la parte quejosa, que diera como resultado la credibilidad objetiva y seria que descartara una pretensión manifiestamente infundada, temeraria o cuestionable (apariencia del buen derecho), **así como el peligro de que, de permanecer la ejecución del acto, se frustrara la pretensión deducida por consumarse la violación y se perdiera la materia del amparo (peligro en la demora)**; criterios que superaron los relativos a que la suspensión solamente debía tener efectos conservatorios y de que no era posible, al resolver sobre su concesión, abordar estudio alguno sobre la constitucionalidad del acto reclamado por ser esto último materia de la sentencia que resolviera el fondo del amparo. En estas condiciones, la previsión contenida en el segundo párrafo del artículo 147 citado, encuentra estrecha relación con el asomo provisional al fondo del asunto a que está obligado el juzgador, a fin de determinar la apariencia del buen derecho, a que se refieren los artículos 107, fracción X, de la Constitución Política de los Estados Unidos Mexicanos y 138 de su ley reglamentaria, **pero, fundamentalmente, lleva a que se analice el peligro en la demora, dada la naturaleza de la medida cautelar que corresponde a la suspensión del acto reclamado en el juicio de amparo, en el entendido de que el análisis condigno a tal peligro, como se entendió en el dictamen inicialmente señalado, involucra una estimación de mera probabilidad de que, de no suspenderse el acto, las violaciones aducidas quedarán consumadas y se tornarán difícil o imposiblemente reparables, esto, en el aspecto sustantivo, y desaparecerá la materia del amparo, como consecuencia adjetiva del retardo en la paralización del acto.** Por ello, cuando en la misma porción normativa que se analiza se condiciona el efecto restaurativo excepcional, provisional y anticipado que pueda darse a la suspensión del acto, a que su naturaleza revele que es jurídica y materialmente posible, en la determinación de estos últimos aspectos debe involucrarse el resolver si existe verdadero peligro de que de no darse a la suspensión el efecto referido, las violaciones aducidas se consumen, se tornen difícil o aun imposiblemente reparables en la sentencia de amparo y se pierda con ello la materia de fondo del juicio principal, en el entendido también de que esas expresiones constituyen elementos normativos y de control que el legislador previó, a fin de que el otorgar a la suspensión, excepcionalmente, un efecto restaurativo, provisional y anticipado, no resulte en una decisión arbitraria o susceptible al abuso, pues de ser así, sin que se advierta el peligro en la demora y el riesgo adjetivo de que desaparezca la materia del amparo, se desvirtuaría el propósito considerado por el legislador para prever dicha medida con el alcance excepcional descrito. Todo ello, desde luego, en el entendido de que, aunado a la apariencia del buen derecho y el peligro en la demora, es inexcusable que se demuestre la no afectación al interés social con el otorgamiento de la medida y el cumplimiento de los demás requisitos previstos en la Ley de Amparo, pues de existir esa afectación y ser mayor que la que

resentiría la parte quejosa, según se aprecie de sus pretensiones, la suspensión sería improcedente e innecesario un análisis en cuanto al efecto más eficaz que habría de dársele, lo que no contradice la esencia de los criterios jurisprudenciales que orientaron la adopción del actual segundo párrafo del artículo 147 de la Ley de Amparo, contenidos en las jurisprudencias P./J. 15/96 y P./J. 16/96, del Pleno de la Suprema Corte de Justicia de la Nación, emitidas con base en la Ley de Amparo actualmente abrogada, sino que, en términos del artículo sexto transitorio del ordenamiento de la materia en vigor, vistas en relación con los procesos legislativos originarios de la legislación actual, sirven de guía para determinar la naturaleza específica del juicio de ponderación sobre la apariencia del buen derecho y el peligro en la demora; sin embargo, su aplicabilidad no puede ser plena conforme a la legislación actual, porque, como se precisó, el Constituyente ordenó que se observaran mayores requisitos para normar el juicio de ponderación y el otorgamiento de la medida, con el propósito de evitar el abuso y controlar la discrecionalidad del Juez al proveer sobre su otorgamiento, con el fin de que esa discrecionalidad no resulte en arbitrariedad, con la consecuente lesión al interés social en el otorgamiento de la medida con un efecto excepcional, cuando esto no se justifica e, incluso, antes de la expedición de la ley en vigor, la propia Suprema Corte constriñó la aplicabilidad de aquellos criterios a la observancia de los requisitos del artículo 124 de la normativa abrogada y, en el imperio de la actual, debe regir el mismo principio de cumplimiento de todos y cada uno de los que deban satisfacerse para proveer sobre la medida cautelar."[9]

## DOMICILIOS PARA NOTIFICAR LAS MEDIDAS CAUTELARES QUE SE PIDEN A LOS FUTUROS DEMANDADOS

**a)** A Fox Corporation: 1021 West Pico Blvd., 2121/12, Los Ángeles, California 90035, en los Estados Unidos de América;

**b)** A Fox Media, LLC: 1021 West Pico Blvd., 2121/12, Los Ángeles, California 90035, en los Estados Unidos de América;

**c)** A Fox Cable Network Services, LLC: 1021 West Pico Blvd., 2121/12, Los Ángeles, California 90035, en los Estados Unidos de América; y

**d)** Carlos Enrique Martínez Sánchez: 1021 West Pico Blvd., 2121/12, Los Ángeles, California 90035, en los Estados Unidos de América.

[9] Época: Décima Época. Registro: 2006949. Instancia: Tribunales Colegiados de Circuito. Tipo de Tesis: Aislada. Fuente: Gaceta del Semanario Judicial de la Federación. Libro 8, Julio de 2014, Tomo II. Materia(s): Común. Tesis: IV.2o.A.63 K (10a.). Página: 1316

Atendiendo a que el domicilio de las futuras demandadas se ubica fuera de la jurisdicción de ese H. Juzgado, con fundamento en l el artículo 1072 del Código de Comercio, atentamente solicito se gire atenta carta rogatoria con los insertos al C. Juez competente en Los Ángeles, California, Estados Unidos de América, para que por su conducto, se les emplace en el domicilio anteriormente proporcionado; solicitando desde ahora se conceda un plazo no menor a 30 días hábiles a mis representadas para exhibir las traducciones respectivas; y que la carta rogatoria respectiva se ponga a disposición de mis poderdantes, por conducto de cualesquiera personas autorizadas, para entregarla ante la Secretaría de Relaciones Exteriores.

**DOMICILIOS PARA NOTIFICAR**
**LAS PRESENTES MEDIDAS A TERCEROS**

Las conductas ilícitas de las futuras demandadas ocasionaron y siguen ocasionando daños y perjuicios a mis representadas; y adicionalmente, han provocado que los proveedores de televisión por cable y clientes principales de mis poderdantes se abstengan de pagarles las cantidades que legalmente les corresponden, por lo cual, atentamente solicito que las medidas cautelares que se decreten en este expediente, les sean notificadas a las siguientes personas morales, en los domicilios que se precisan:

| | |
|---|---|
| Telefonía por Cable S.A. de C.V. | Avenida Lázaro Cárdenas No. 1694, Colonia del Fresno, Ciudad de México |
| Cablemas Telecomunicaciones S.A. de C.V. | Avenida Vasco de Quiroga No. 2000, Colonia Santa Fe, Ciudad de México |
| Total Play Telecomunicaciones S.A.P.I. D | Avenida San Jerónimo No. 252, Colonia La Otra Banda, Ciudad de México |
| Amazon.com Services LLC | Boulevard Manuel Ávila Camacho No. 261, Piso 5, Colonia Polanco, Ciudad de México |
| Corporación Novavisión S. de RL de C.V. | Avenida Insurgentes Sur No. 694, Pisos 6°, 7°, 8° y 10°, Colonia del Valle Centro, Ciudad de México |
| Claro Video LLC | 9100 36th St. Suite 101, Doral, Florida, Estados Unidos de América. |
| Grupo W COM S.A. de C.V. | Galileo No. 50, Colonia Polanco IV Sección, Alcaldía Miguel Hidalgo, Ciudad de México |
| **Afiliados** | |
| Apple Store LLC | One Apple Park Way, Cupertino, California, 95014, Estados Unidos de America |
| Google Store LLC | 1600 Amphitheatre Pkwy, Mountain View California, 94043 Estados Unidos de América |
| Stripe LLC | Paseo de la Reforma 180, Colonia Juárez, Alcaldía Cuauhtémoc, Ciudad de México |
| ROKU LLC | 1701 Junction Court, Suite 100. San Jose California, Estados Unidos de América |
| **App** | |
| Radio Movil Dipsa S.A. de C.V. | Lago Zúrich No. 245 Edif Telcel Ampliación Granada, Alcaldía Miguel Hidalgo, Ciudad de México |

| | |
|---|---|
| Libros Foráneos S.A. de C.V. | Avenida Conscripto 311 Acceso 4 Caballeriza 6 D 102, Lomas De Sotelo, Ciudad de México |
| Soccer Media Solutions S.A. de C.V. | Juan Salvador Agraz No. 65, Piso 14-A, Colonia Santa Fe, Ciudad de México |
| Próximo Natal S.A.P.I de C.V. | Guillermo Gonzalez Camarena 800, Piso 4 Colonia Santa Fe, Ciudad de México |
| Wis Master Mexico S.A. de C.V. | Calle Lago Alberto 319 Piso 16, Alcaldía Miguel Hidalgo |

Atendiendo a que el domicilio de algunos de los terceros antes mencionados se ubica fuera de la jurisdicción de ese H. Juzgado, con fundamento en el artículo 1072 del Código de Comercio, atentamente solicito se gire atentas cartas rogatorias a los CC. Jueces competentes en dichos domicilios, para que por su conducto, se les notifique del auto que decrete las medidas cautelares que se piden en el domicilio anteriormente proporcionado; solicitando desde ahora se conceda un plazo no menor a 30 días hábiles a mis representadas para exhibir las traducciones respectivas; y que la carta rogatoria respectiva se ponga a disposición de mis poderdantes, por conducto de cualesquiera personas autorizadas, para entregarla ante la Secretaría de Relaciones Exteriores.

**PRUEBAS**

**1.- LA DOCUMENTAL**, consiste en copia simple de la versión pública de la Resolución IFT 2019, que se exhibe como **Anexo 4).**

Bajo protesta de decir verdad, manifiesto que mis representadas no cuentan con dicha resolución en original, por lo cual, con fundamento en el artículo 1061 del Código de Comercio solicito se requiera al IFT para que la exhiba ante su Señoría, o bien, remita copia certificada de la misma, bajo apercibimiento que, de no hacerlo, se hará acreedor a una multa, de conformidad con lo dispuesto por el artículo 1067 Bis del Código de Comercio.

Esta prueba la relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad de que se adopten las medidas cautelares precautorias que se piden y con la misma se acreditará su procedencia.

La razón por la que se estima que con esta prueba quedarán acreditados tales extremos, es que se trata del documento en el que consta que el IFT estableció como una condición necesaria para autorización de la concentración realizada entre 21CF y Disney, que se otorgara una licencia de uso **exclusivo y gratuito** al eventual comprador del negocio de Fox Sports México.

2.- **LA DOCUMENTAL,** consistente en copia del Contrato de Cesión de Derechos de Licencia celebrado el 10 de noviembre de 2021 y su respectiva traducción que se exhibe como **Anexo 5)** así como una copia certificada de su convenio modificatorio, de fecha 25 de julio de 2022, celebrado entre 21CF y MDM, y su respectiva traducción, que se exhiben conjuntamente como **Anexo 5-A).**

Bajo protesta de decir verdad, manifiesto que mis representadas no cuentan con el Contrato de Cesión celebrado el 10 de noviembre de 2021, en virtud de que un ejemplar de este documento fue exhibido ante el IFT, por lo cual, con fundamento en el artículo 1061 del Código de Comercio solicito se requiera al IFT para que lo exhiba ante su Señoría, o copia certificada del mismo, bajo apercibimiento que de no hacerlo, se hará acreedor a una multa de conformidad con lo dispuesto por el artículo 1067 Bis del Código de Comercio.

Estas pruebas las relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad de que se adopten las medidas cautelares precautorias que se piden y con las mismas se acreditará su procedencia.

La razón por la cual se estima que con estas pruebas quedarán acreditados tales extremos, es que se tratan de los documentos con los cuales se acredita que MDM es titular del derecho de uso **exclusivo** de las Marcas de Fox Sports en México, por lo menos hasta el 10 de noviembre de 2026, por virtud de la cesión realizada a su favor por 21CF, en cumplimiento de lo ordenado en la Resolución IFT 2019.

3.- **LA DOCUMENTAL,** consistente en el escrito de 12 de febrero de 2025, emitido por el IFT, que se exhibe como **Anexo 6)**.

Esta prueba la relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad de que se adopten las medidas cautelares precautorias que se piden y con la misma se acreditará su procedencia.

La razón por la cual se estima que con esta prueba quedarán acreditados tales extremos, es que se trata del documento con el cual se acredita que la vigencia del derecho de mi representada al uso exclusivo de las marcas de Fox Sports en México es por lo menos hasta el 10 de noviembre de 2026.

4.- **LA DOCUMENTAL,** consistente en la impresión del correo electrónico de 3 de marzo de 2025, que MDM recibió del Vicepresidente Senior de Litigio de Propiedad Industrial y General de Fox Corp, que se exhibe como **Anexo 7)**.

Esta prueba la relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad de que se adopten las medidas cautelares precautorias que se piden y con la misma se acreditará su procedencia.

La razón por la cual se estima que con esta prueba quedarán acreditados tales extremos, es que se trata del documento con el cual se acredita que Fox Corp. pretende indebidamente que MDM deje de usar las marcas de Fox Sports en el territorio de México (lo que constituye solo una de las muchas conductas de Fox Corp., sus afiliadas y Carlos Martínez, tendientes a causar ilícitamente daños a mis representadas, con la finalidad de obtener un beneficio).

5.- **LA DOCUMENTAL**, consistente en la impresión del correo electrónico del 7 de marzo de 2025, enviado por el asesor jurídico de MDM a la Vicepresidente Senior de Litigio de Propiedad Industrial y General de Fox Corp., en respuesta al correo electrónico referido en el numeral 3 anterior, que se exhibe como **Anexo 8).**

Esta prueba la relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad de que se adopten las medidas cautelares precautorias que se piden, y con la misma se acreditará su procedencia.

La razón por la que se estima que con esta prueba quedarán acreditados tales extremos, es que se trata del documento en el que consta que Fox Corp. sabe que el derecho de uso de las Marcas de Fox Sports en México del que es titular mi representada es un derecho de uso **exclusivo y gratuito**, con una vigencia de por lo menos 5 años a partir de la firma del Contrato de Cesión de Derechos de Licencia.

6.- **LA INSTRUMENTAL DE ACTUACIONES,** consistente en todo lo actuado en el presente juicio, en lo que favorezca a los intereses de mis representadas. Esta prueba la relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad la adopción de las medidas cautelares que se piden; y con la misma se acreditará su procedencia.

**7.- LA PRESUNCIONAL,** en su doble aspecto, legal y humana, en todo lo que favorezca a los intereses de mis representadas. Esta prueba la relaciono con todos y cada uno de los hechos de la presente solicitud, y con la necesidad la adopción de las medidas cautelares que se piden; y con la misma se acreditará su procedencia.

Por lo expuesto;

**A USTED C. JUEZ,** atentamente pido:

**PRIMERO.-** Reconocer la personalidad que ostento, en mi carácter de apoderado general para pleitos y cobranzas de Media Deportes México, S. de R.L. de C.V. y de Mexico Sports Distribution, LLC; en mérito de los instrumentos notariales que se exhiben con este escrito, solicitando su devolución previo cotejo y compulsa que se haga con las fotostáticas adjuntas.

**SEGUNDO.-** Por señalado el domicilio procesal que se indica y por autorizadas a las personas que se mencionan para los fines precisados.

**TERCERO.-** Decretar las medidas cautelares que se solicitan, fijando al efecto la garantía que legalmente corresponda.

Protesto lo necesario
Ciudad de México, a 24 de marzo de 2025

**ROGELIO ARTURO ISLAS PÉREZ**

**ANEXO 1**

## CÉDULA DE IDENTIFICACIÓN FISCAL

Hacienda
Secretaría de Hacienda y Crédito Público
SAT
SERVICIO DE ADMINISTRACIÓN TRIBUTARIA

MDM191007M83
Registro Federal de Contribuyentes

MEDIA DEPORTES MEXICO
Nombre, denominación o razón social

idCIF: 19110261946
VALIDA TU INFORMACIÓN FISCAL

## CONSTANCIA DE SITUACIÓN FISCAL

Lugar y Fecha de Emisión
**ALVARO OBREGON , CIUDAD DE MEXICO A 14 DE FEBRERO DE 2025**

MDM191007M83

### Datos de Identificación del Contribuyente:

| | |
|---|---|
| **RFC:** | MDM191007M83 |
| **Denominación/Razón Social:** | MEDIA DEPORTES MEXICO |
| **Régimen Capital:** | SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE |
| **Nombre Comercial:** | MEDIA DEPORTES MEXICO |
| **Fecha inicio de operaciones:** | 07 DE OCTUBRE DE 2019 |
| **Estatus en el padrón:** | ACTIVO |
| **Fecha de último cambio de estado:** | 07 DE OCTUBRE DE 2019 |

### Datos del domicilio registrado

| | |
|---|---|
| **Código Postal:**01210 | **Tipo de Vialidad:** CALLE |
| **Nombre de Vialidad:** GUILLERMO GONZALEZ CAMARENA | **Número Exterior:** 600 |
| **Número Interior:**PB | **Nombre de la Colonia:** SANTA FE |
| **Nombre de la Localidad:** ALVARO OBREGON | **Nombre del Municipio o Demarcación Territorial:** ALVARO OBREGON |
| **Nombre de la Entidad Federativa:** CIUDAD DE MEXICO | **Entre Calle:** AGUSTIN MANUEL CHAVEZ |
| **Y Calle:** JUAN SEGALE | |

### Actividades Económicas:

[redacted]

| Orden | Actividad Económica | Porcentaje | Fecha Inicio | Fecha Fin |
|---|---|---|---|---|
| 1 | Producción de programación de canales para sistemas de televisión por cable o satelitales, excepto a través de internet | 100 | 07/10/2019 | |

**Regímenes:**

| Régimen | Fecha Inicio | Fecha Fin |
|---|---|---|
| Régimen General de Ley Personas Morales | 07/10/2019 | |

**Obligaciones:**

| Descripción de la Obligación | Descripción Vencimiento | Fecha Inicio | Fecha Fin |
|---|---|---|---|
| Pago definitivo mensual de IVA. | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 07/10/2019 | |
| Declaración anual de ISR del ejercicio Personas morales. | Dentro de los tres meses siguientes al cierre del ejercicio. | 07/10/2019 | |
| Declaración de proveedores de IVA | A más tardar el último día del mes inmediato posterior al periodo que corresponda. | 07/10/2019 | |
| Pago provisional mensual de ISR personas morales régimen general | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 01/04/2020 | |
| Entero de retenciones mensuales de ISR por sueldos y salarios | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 01/06/2023 | |

Sus datos personales son incorporados y protegidos en los sistemas del SAT, de conformidad con los Lineamientos de Protección de Datos Personales y con diversas disposiciones fiscales y legales sobre confidencialidad y protección de datos, a fin de ejercer las facultades conferidas a la autoridad fiscal.

Si desea modificar o corregir sus datos personales, puede acudir a cualquier Módulo de Servicios Tributarios y/o a través de la dirección http://sat.gob.mx

"La corrupción tiene consecuencias ¡denúnciala! Si conoces algún posible acto de corrupción o delito presenta una queja o denuncia a través de: www.sat.gob.mx, denuncias@sat.gob.mx, desde México: (55) 8852 2222, desde el extranjero: + 55 8852 2222, SAT móvil o www.gob.mx/sfp".

Cadena Original Sello: ||2025/02/14|MDM191007M83|CONSTANCIA DE SITUACIÓN FISCAL|2000010888888800000031||

Sello Digital:
sKYXfosGvSx/BBB4HbBX7+cCBm67PBr6UYSKUVNww8bsdZv8Dwop8T3oRAGGKGPoOez4VJ78Yoy4xoIndXz
ovbr2tl56Kbfbmys+ldOJ0aLP0K9Gs+4JRHsQ/PmfNxR6ygb96JDHRCg++OgGLdXgTT6G1gS3QFrfw9MLl4r/pwA
=

PJCDMX PODER JUDICIAL CIUDAD DE MÉXICO
RECIBIDO
24 MAR. 2025
NUMERO 27
OFICIALÍA DE PARTES COMÚN PARA JUZGADOS Y SALAS





Contacto
Av. Hidalgo 77, col. Guerrero, C.P. 06300, Ciudad de México.
Atención telefónica desde cualquier parte del país:
MarcaSAT 55 627 22 728 y para el exterior del país
(+52) 55 627 22 728

ANEXO 2

**INSTRUMENTO PUBLICO QUE CONTIENE:**

La **PROTOCOLIZACION** del ACTA de la ASAMBLEA GENERAL de SOCIOS de la sociedad denominada **"MEDIA DEPORTES MEXICO", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** celebrada con fecha once de febrero del dos mil veinticinco.

INST. No.: 47,224
LIBRO: 1,791
FECHA: 19/Febrero/2025

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

N250

ANTONIO LÓPEZ AGUIRRE

PROTOCOLO ORDINARIO.----------------------------------------------------------------------

NUMERO CUARENTA Y SIETE MIL DOSCIENTOS VEINTICUATRO. ----------. NO REG

LIBRO MIL SETECIENTOS NOVENTA Y UNO. ----------------------------------------- HUSR

----- En la Ciudad de México, a los diecinueve días del mes de febrero del dos mil veinticinco, yo, el Licenciado Antonio López Aguirre, titular de la Notaría número doscientos cincuenta, hago constar: -----------------------------------------------------------------------------------

----- La **PROTOCOLIZACION** del ACTA de la ASAMBLEA GENERAL de SOCIOS de la sociedad denominada **"MEDIA DEPORTES MEXICO", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, celebrada con fecha once de febrero del dos mil veinticinco. ----------------------------------------------------------------

----- Que realizo a solicitud de la señora Lina Anahí Serrano Morales, en su calidad de Delegada Especial de dicha Asamblea, al tenor de los antecedentes y cláusulas siguientes:----------------

------------------------------------------ **ANTECEDENTES**: ---------------------------------------

----- **Primero**.- **CONSTITUCION**.- Por instrumento número ochenta y dos mil ciento ochenta y dos, pasado en esta Ciudad con fecha cuatro de octubre del dos mil diecinueve, ante el Licenciado Guillermo Oliver Bucio, titular de la Notaría número doscientos cuarenta y seis de la Ciudad de México, actuando como asociado en el protocolo de la Notaría número doscientos doce, de la que es titular el Licenciado Francisco I. Hugues Vélez, inscrito en el Registro Público de Comercio de esta Capital con fecha dieciséis de octubre del dos mil diecinueve, en el Folio Mercantil Electrónico número "N-2019083094" (N guion dos cero uno nueve cero ocho tres cero nueve cuatro), se constituyó "Media Deportes México", Sociedad de Responsabilidad Limitada de Capital Variable, con domicilio social en la Ciudad de México, duración indefinida, capital social variable, con un mínimo fijo de mil pesos, moneda nacional, máximo variable ilimitado y cláusula de admisión de extranjeros. De dicho instrumento copio, en lo conducente, lo que sigue: "….. ESTATUTOS SOCIALES….. ARTICULO TERCERO: OBJETO SOCIAL.- El objeto social de la Sociedad es: a).- Participar como socio, accionista o inversionista en toda clase de personas morales, mercantiles o de cualquier naturaleza, mexicanas o extranjeras, desde su incorporación o mediante la adquisición de acciones o partes sociales en personas morales constituidas, así como ejercitar los derechos corporativos y económicos derivados de dicha participación y comprar, votar, vender, transmitir, suscribir, mantener, usar, gravar, disponer, modificar o rematar bajo cualquir título toda clase de acciones, partes sociales y participaciones de toda clase de personas morales de conformidad con la legislación aplicable y según resulte necesario o conveniente para la realización del objeto social de la Sociedad; b).- Operar, comprar y distribuir señales de televisión por cable y si así lo autorizaren con posterioridad las disposiciones legales también mediante cualquier sistema conocido o por conocerse, obteniendo en su caso los permisos y autorizaciones correspondientes; c).- Licenciar, vender, administrar o distribuir señales, canales deportivos y/o contenidos para servicios de televisión y audio restringido y/o de radiodifusión, así como

distribución de publicidad, incluyendo prestación de servicios de producción deportiva; d).- Adquirir todos los equipos, instalaciones, bienes muebles y enseres necesarios para el cumplimiento del fin anterior; e).- Contratar, usar, arrendar, licenciar y, en general, celebrar cualquier otro acto con todo tipo de personas o empresas dedicadas a la compraventa y comercialización de programación, entretenimiento, espacios, publicidad, etcétera; f).- Prestar servicios como servidor central para proporcionar acceso a internet; g).- Transmitir todo tipo de contenidos audiovisuales a través de internet; h).- Administrar, manejar, comprar, vender, arrendar, subarrendar, adquirir y disponer cualesquier derechos de propiedad, uso y usufructo, a nombre propio o en beneficio de terceros, por cualquier título, respecto de bienes muebles e inmuebles, nacionales y extranjeros y participar como fideicomitente y fideicomisario en los fideicomisos necesarios para el cumplimiento del objeto social de la Sociedad; i).- Prestar y recibir todo tipo de servicios directa y/o indirectamente a través de terceros, a y con todo tipo de personas físicas y morales, incluyendo dependencias gubernamentales, dentro de México o en el extranjero, incluyendo, de manera enunciativa más no limitativa, servicios de personal relacionados con actividades tales como: ventas, ingeniería, reparación y/o mantenimiento, inspección, asesoría técnica, administración, consultoría, supervisión, control, salubridad, seguridad, contabilidad, finanzas, capacitación, investigación, operación, desarrollo y mensajería. j).- Abrir, administrar o cancelar cuentas bancarias y de inversión, así como cualquier otro tipo de cuentas de la Sociedad, ya sea nuevas o existentes, en los Estados Unidos Mexicanos o en el extranjero, incluyendo la facultad para girar en contra de las mismas y nombrar y remover a las personas autorizadas para girar en contra de ellas; k).- Emitir, suscribir, aceptar, endosar, avalar, adquirir, vender, permutar, gravar y, en general, suscribir toda clase de títulos de crédito y llevar a cabo cualquier tipo de operaciones de crédito y garantías; l).- Obtener y otorgar toda clase de financiamientos, préstamos o créditos, y emitir valores, bonos, fianzas, papel comercial, certificados de participación ordinaria y otros tipos de deuda, con o sin una garantía específica, ya sea como garante o aval o en cualquir otra capacidad, incluyendo como obligado solidario; m).- Adquirir, poseer, usar, registrar, renovar, ceder y disponer de toda clase de patentes, marcas, nombres comerciales, franquicias y todo tipo de derechos de propiedad industrial e intelectual; n).- Solicitar, obtener, negociar licenciar, ceder, usar, explotar y disponer de cualquier tipo de permiso, licencia, concesión y/o autorización emitidas por autoridades federales, estatales o municipales; y ñ).- En general, celebrar y llevar a cabo, dentro de México o en el extranjero, por su cuenta o por cuenta de terceros, con personas físicas o morales, incluyendo cualquier dependencia gubernamental, toda clase de contratos, convenios o actos, ya sean principales o auxiliares, civiles o mercantiles, o de cualesquiera otra naturaleza, según sea necesario o conveniente para la realización de su objeto social..... ARTICULO DECIMO CUARTO: ASAMBLEA DE SOCIOS.- La Asamblea de Socios es el órgano supremo de la Sociedad. Las Asambleas de Socios siempre se deberán reunir en el domicilio social, excepto en caso fortuito o fuerza mayor. Las Asambleas de Socios se reunirán para

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

N250

ANTONIO LÓPEZ AGUIRRE

resolver cualquiera de los asuntos previstos en el artículo 78 (setenta y ocho) de la Ley General de Sociedades Mercantiles, así como para resolver cualesquiera demás asuntos puestos a su consideración de acuerdo con estos estatutos sociales y las leyes aplicables.- ARTICULO DECIMO QUINTO: FUNCIONAMIENTO DE LA ASAMBLEA DE SOCIOS.- Una Asamblea Anual de Socios se deberá reunir por lo menos una vez al año dentro de los 4 (cuatro) meses siguientes a la clausura de cada ejercicio social, a fin de resolver los asuntos enumerados en el Orden del Día correspondiente, así como los asuntos siguientes: a).- Discusión sobre y, en su caso, aprobación o modificación del reporte del Consejo de Gerentes o del Gerente Unico, según sea el caso, en relación a los negocios y operaciones de la Sociedad durante el ejercicio social anterior, así como los estados financieros de la Sociedad durante el ejercicio social anterior; y b).- Nombramiento o remoción o ratificación de los miembros del Consejo de Gerentes o el Gerente Unico, según sea el caso, y de considerarse necesario, de los miembros del Comité de Vigilancia, de haberse nombrado este órgano, y aprobación de la compensación a pagarse a dichos miembros por el desempeño de sus cargos durante el ejercicio social en curso.- ARTICULO DECIMO SEXTO: CONVOCATORIAS A LAS ASAMBLEAS DE SOCIOS.- Las Asambleas de Socios podrán ser convocadas por el Gerente Unico, por el Consejo de Gerentes o a petición de los Socios que representen por los menos 33% (treinta y tres por ciento) del capital social.- Cada uno de los Socios deberá recibir una notificación por escrito de la convocatoria a Asamblea de Socios con por los (así) menos 15 (quince) días calendario de anticipación a la fecha en que se pretenda celebrar dicha Asamblea de Socios. La(s) persona(s) que convoquen a la Asamblea de Socios deberán conjuntamente con la notificación de la convocatoria, entregar a cada uno de los Socios, el orden del día, detallando los asuntos a ser tratados en dicha asamblea (en detalle razonable, mismo que no deberá incluir mención de asuntos denominados como "misceláneos" u "otros". Todos los requisitos de la convocatoria podrán ser renunciados por cualquier Socio presente (a su discreción) en la Asamblea de Socios respectiva.- La(s) persona(s) que convoquen a Asamblea General de Socios deberán publicar la convocatoria respectiva en el sistema electrónico establecido por la Secretaría de Economía y entregar personalmente o enviar (por correo con acuse de recibo vía facsímil con confirmación de transmisión) una copia por escrito y firmada de la convocatoria a Asamblea de Socios (la "Convocatoria") a cada uno de los Socios de la Sociedad a sus respectivos domicilios, de conformidad con lo establecido en el Libro de Registro de Socios, junto con una copia de toda aquella información y documentación que estará sujeta a considerción y discusión en la respectiva Asamblea de Socios; siempre y cuando la Convocatoria se entregue a los Socios por lo menos 8 (ocho) días antes de la fecha agendada para la celebración de la respectiva Asamblea de Socios.- Las Asambleas de Socios podrán reunirse sin convocatoria previa, si al momento de la votación se encuentra presente o representado el 100% (cien por ciento) del capital social de la Sociedad.- ARTICULO DECIMO SEPTIMO: ADMISION A ASAMBLEA DE SOCIOS.- Salvo resolución judicial en

contrario, sólo las personas físicas o morales, cuyos nombres estén inscritos en el Libro de Registro de Socios serán reconocidos como legítimos propietarios de las partes sociales para efectos de su asistencia a la Asamblea de Socios, y dicho registro será suficiente para ser admitidos a la Asamblea.- ARTICULO DECIMO OCTAVO: REPRESENTACION DE SOCIOS.- Los Socios podrán ser representados en las Asambleas por la persona o personas designadas mediante simple carta poder otorgada ante 2 (dos) testigos o mediante mandato otorgado conforme a la legislación vigente.- ARTICULO DECIMO NOVENO: PRESIDENTE Y SECRETARIO DE LA ASAMBLEA DE SOCIOS.- La Asamblea de Socios será presidida por la persona designada para tal efecto por la Asamblea. Así mismo, el Secretario de la Asamblea de Socios será quien designe la Asamblea. El Presidente de la Asamblea deberá designar a uno o más escrutadores quienes harán el recuento de los Socios presentes o representados en la Asamblea, las partes sociales propiedad de cada uno y el número de votos a que tiene derecho cada Socio, a fin de que el Presidente pueda declarar la legal instalación de la Asamblea.- ARTICULO VIGESIMO: QUORUM Y ASISTENCIA; VALIDEZ DE LAS RESOLUCIONES.- Para que la Asamblea de Socios se considere legalmente reunida, en primera convocatoria, deberá estar presente o representado por lo menos el 50% (cincuenta por ciento) de las partes sociales, y las resoluciones serán adoptadas por el voto favorable de los Socios que representen la mayoría del capital social. En caso de segunda o ulterior convocatoria, las Asambleas de Socios se considerarán legalmente reunidas cualquiera que sea el número de partes sociales representadas en la asamblea, y sus resoluciones serán adoptadas por el voto favorable de la mayoría de los presentes.- Las resoluciones que modifiquen los estatutos sociales serán adoptadas por el voto favorable de los Socios que representen, por lo menos, las tres cuartas partes del capital social. Las resoluciones que modifiquen el objeto social o las reglas que determinen un aumento en las obligaciones de los Socios deberán ser aprobadas por unanimidad de votos…..”. ------------------------------------------------------------------------

----- La compareciente declara que el antecedente relacionado es el único que se requiere y existe para el otorgamiento de este instrumento.--------------------------------------------------

----- **<u>Segundo</u>**.- **<u>CAPITAL SOCIAL VIGENTE</u>**.- La compareciente declara que por diversos aumentos y/o disminuciones a la parte variable, el capital social total al momento de la celebración de la Asamblea cuya acta se protocoliza, estaba representado por ciento cuarenta y tres millones doscientos setenta y cinco mil ochocientos diecisiete pesos, moneda nacional, de los que corresponden mil pesos, moneda nacional, a la parte fija. ------------------------------------

----- **<u>Tercero</u>**.- **<u>ACTA QUE SE PROTOCOLIZA</u>**.- La compareciente me exhibe el Acta de Asamblea General de socios de la sociedad denominada **"MEDIA DEPORTES MEXICO", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, celebrada con fecha once de febrero del dos mil veinticinco, junto con su lista de asistencia, mismas que protocolizo, agregándolas al apéndice de este instrumento, en un solo legajo marcado con la letra **"A"** y que a continuación transcribo íntegramente como sigue: -----------

----- "…..ASAMBLEA GENERAL DE SOCIOS. -----------------------------------------------------

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

N250

ANTONIO LÓPEZ AGUIRRE

----- MEDIA DEPORTES MEXICO, S. DE R.L. DE C.V. ----------------------------------------

----- 11 DE FEBRERO DE 2025 ----------------------------------------

----- En la Ciudad de México, domicilio social de "MEDIA DEPORTES MEXICO", S. DE R.L. DE C.V. (la "Sociedad") siendo las 10:00 horas del día 11 de febrero de 2025 (dos mil veinticinco), en las oficinas de la misma, se reunieron la totalidad de los socios de la Sociedad, con el objeto de celebrar una Asamblea General de Socios (la "Asamblea"). --------------------

----- Presidencia y Secretaría ----------------------------------------

----- En cumplimiento de lo dispuesto por los estatutos sociales vigentes de la Sociedad (los "Estatutos Sociales"), los socios por unanimidad de votos nombraron presidenta de la Asamblea a la señora Gabriela Montaño Zúñiga y actuó como secretaria la señora Shaní Mizrahi Villarruel. ----------------------------------------

----- Escrutadora ----------------------------------------

----- A continuación, en términos de lo dispuesto por los Estatutos Sociales el Presidente designó como escrutadora a la señora Lina Anahí Serrano Morales, quien estando presente y después de aceptar su cargo, examinó el Libro de Registro de Socios de la Sociedad y elaboró la lista de asistencia, y en la cual hizo constar y certificó que se encontraban presentes o representadas las partes sociales equivalentes al 100% (cien por ciento) en que está distribuido el capital social suscrito y pagado de la Sociedad, según se hace constar en la lista de asistencia que se agrega al legajo de la presente acta como Anexo "A". ----------------------------------------

----- Para tal efecto y en cumplimiento a lo dispuesto por el Artículo 41 del Código de Comercio, se lista a continuación: ----------------------------------------

| SOCIOS | PARTES SOCIALES | CAPITAL FIJO | CAPITAL VARIABLE |
|---|---|---|---|
| Altener, S.A. de C.V. | 1 | $990.00 | $141,843,059.00 |
| RFC: ALT1606094T9 | | | |
| Rep. por: Shaní Mizrahi Villarruel | | | |
| Grupo Lauman Holding, S. de R.L. de C.V. | 1 | $10.00 | $1,432,758.00 |
| RFC: GLH141118J93 | | | |
| Rep. por: Gabriela Montaño Zúñiga | | | |
| TOTAL: | 2 | $1,000.00 | $143,275,817.00 |

----- LEGALIDAD ----------------------------------------

----- En virtud de la certificación anterior y con fundamento en lo dispuesto por el Artículo Décimo Sexto de los Estatutos Sociales, y toda vez que estaba representado el 100% (cien por ciento) del capital social suscrito y pagado de la Sociedad, la Presidenta declaró legalmente instalada la Asamblea y válidos todos y cada uno de los acuerdos que en ella se adopten, pese no haberse realizado convocatoria previa, con lo cual estuvieron de acuerdo los presentes en la Asamblea por tratarse de una Asamblea totalitaria. ----------------------------------------

----- Acto seguido, la Presidenta instruyó a la Secretaria para que diera lectura al Orden del Día, que habría de desahogarse en la presente Asamblea, de la siguiente manera: ---------------------

------------------------------------------ ORDEN DEL DIA ------------------------------------------

----- I.- Propuesta, discusión y en su caso, aprobación para el Otorgamiento de Poderes en favor de los señores Rogelio Arturo Islas Pérez, Juan Colín Domínguez y Román Israel Gómez Castruita. Resoluciones al respecto; ------------------------------------------------------------

----- II.- Designación de delegados especiales que formalicen las resoluciones de la Asamblea. Resoluciones al respecto. ---------------------------------------------------------------------

----- Una vez leído el Orden del Día objeto de la Asamblea, fue aprobado por unanimidad de votos de los socios presentes, por lo cual se procedió al desahogo de ésta, conforme a lo siguiente: ---------------------------------------------------------------------------------

----- I.- "Propuesta, discusión y en su caso, aprobación para el Otorgamiento de Poderes en favor de los señores Rogelio Arturo Islas Pérez, Juan Colín Domínguez y Román Israel Gómez Castruita. Resoluciones al respecto;" ------------------------------------------------------------

----- PUNTO UNO. En desahogo del Primer punto del Orden del Día, la Presidenta de la Asamblea expuso a los presentes la necesidad y conveniencia de otorgar los siguientes poderes y facultades a las siguientes personas y en los términos que se indican: --------------------------

----- En favor de los señores Rogelio Arturo Islas Pérez, Juan Colín Domínguez y Román Israel Gómez Castruita para que lo ejerciten de manera conjunta o separada e indistintamente con las siguientes facultades y en los términos siguientes: ----------------------------------------------

----- PODER GENERAL para pleitos y cobranzas, con todas las facultades generales y aún con las especiales, que de acuerdo con la ley requieran poder o cláusula especial, pero sin que se comprenda la facultad de hacer cesión de bienes, en los términos del párrafo primero del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y sus correlativos de los demás Códigos Civiles de los Estados de la República Mexicana y el Código Civil Federal. ----------------------------------------------------------------------------------

----- De manera enunciativa y no limitativa se mencionan entre otras facultades las siguientes:

----- i.- Para intentar y desistirse de toda clase de procedimientos, inclusive amparo. -----------

----- ii.- Para transigir. ----------------------------------------------------------------------

----- iii.- Para comprometer en árbitros. ---------------------------------------------------------

----- iv.- Para absolver y articular posiciones. -------------------------------------------------

----- v.- Para recusar. ------------------------------------------------------------------------

----- vi.- Para recibir pagos. -----------------------------------------------------------------

----- vii.- Para presentar denuncias y querellas en materia penal y para desistirse de ellas cuando lo permita la ley. ------------------------------------------------------------------------

----- viii.- Para hacer posturas y pujas en remate. -------------------------------------------

----- Después de las deliberaciones respectivas, la Asamblea, por unanimidad de votos, tomó la siguiente: ---------------------------------------------------------------------------------

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

N250

ANTONIO LÓPEZ AGUIRRE

------------------------------------------- RESOLUCION -------------------------------------------

----- UNICA.- Se aprueba otorgar en favor de los señores Rogelio Arturo Islas Pérez, Juan Colín Domínguez y Román Israel Gómez Castruita para que lo ejerciten de manera conjunta o separada e indistintamente con las siguientes facultades y en los términos siguientes: ----------

----- PODER GENERAL para pleitos y cobranzas, con todas las facultades generales y aún con las especiales, que de acuerdo con la ley requieran poder o cláusula especial, pero sin que se comprenda la facultad de hacer cesión de bienes, en los términos del párrafo primero del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y sus correlativos de los demás Códigos Civiles de los Estados de la República Mexicana y el Código Civil Federal. ----------------------------------------------------------------------------------------

----- De manera enunciativa y no limitativa se mencionan entre otras facultades las siguientes:

----- i.- Para intentar y desistirse de toda clase de procedimientos, inclusive amparo. -----------

----- ii.- Para transigir. ----------------------------------------------------------------------------

----- iii.- Para comprometer en árbitros. -----------------------------------------------------------

----- iv.- Para absolver y articular posiciones. ---------------------------------------------------

----- v.- Para recusar. ------------------------------------------------------------------------------

----- vi.- Para recibir pagos. ------------------------------------------------------------------------

----- vii.- Para presentar denuncias y querellas en materia penal y para desistirse de ellas cuando lo permita la ley. ---------------------------------------------------------------------------------

----- viii.- Para hacer posturas y pujas en remate. ----------------------------------------------

----- II.- "Designación de delegados especiales que formalicen las resoluciones de la Asamblea. Resoluciones al respecto." ---------------------------------------------------------------------

----- PUNTO DOS.- Dentro del Segundo y último punto del Orden del Día, se acordó designar por unanimidad de votos de los socios presentes, como Delegadas Especiales a las señoras Lina Anahí Serrano Morales y Gabriela Montaño Zúñiga, para que conjunta o separadamente: (a) Comparezcan ante el Notario Público de su elección a consignar los acuerdos tomados en la presente Asamblea y a la protocolización del Acta correspondiente a la misma; (b) Inscriban en el Registro Público de Comercio correspondiente el testimonio notarial respectivo; y (c) Lleven a cabo todos aquellos actos necesarios o convenientes, a fin de dar pleno vigor y efecto a las resoluciones adoptadas por esta Asamblea. --------------------------------------------------------

----- Antes de dar por terminada la Asamblea, ésta fue suspendida por el tiempo necesario para redactar la presente acta, la cual, una vez leída, fue aprobada por todos los que en ella intervinieron y firmada para constancia por el Presidente (así) y Secretario (así). ---------------

----- Presidente.- Una firma.- Gabriela Montaño Zúñiga.- Secretario.- Una firma.- Shaní Mizrahi Villarruel.....". ------------------------------------------------------------------------

----- LISTA DE ASISTENCIA DE LOS SOCIOS DE MEDIA DEPORTES MEXICO, S. DE R.L. DE C.V., QUE ASISTIERON A LA ASAMBLEA GENERAL DE SOCIOS CELEBRADA A LAS 10:00 HORAS DEL DIA 10 DE FEBRERO DE 2025. -----------------

----- SOCIOS ------------ PARTES ----------------- CAPITAL ----------------- CAPITAL --------
--------------------------- SOCIALES ------------------ FIJO -------------------- VARIABLE -------
----- Una firma. -------------------------------------------------------------------------------------------
----- Altener, S.A. de C.V. ------ 1 ------------------------ $990.00 ---------- $141,843,059.00 ---
----- RFC: ALT1606094T9 ---------------------------------------------------------------------------
----- Rep. por: Shaní Mizrahi Villarruel ---------------------------------------------------------
----- Una firma. -------------------------------------------------------------------------------------------
----- Grupo Lauman Holding, S. – 1 ---------------------- $10.00 ----------- $1,432,758.00 ------
----- de R.L. de C.V. ------------------------------------------------------------------------------------
----- RFC: GLH141118J93 ---------------------------------------------------------------------------
----- Rep. por: Gabriela Montaño Zúñiga ---------------------------------------------------------
----- TOTAL: ----------------------- 2 ---------------------- $1,000.00 ------- $143,275,817.00 ---
----- La Suscrita designada Escrutador para esta Asamblea, CERTIFICA: -------------------------
----- Que todas las partes sociales que integran el capital social de MEDIA DEPORTES MEXICO, S. DE R.L. DE C.V. se encontraban representadas y fueron votadas en la forma arriba indicada. ------------------------------------------------------------------------------------------
----- Ciudad de México, a 10 de febrero de 2025 ------------------------------------------------
----- Una firma.- Lina Anahí Serrano Morales.- Escrutador (así)…..”. ----------------------------
----- La compareciente protesta la vigencia de su cargo y declara que el Acta y la lista de asistencia que en este acto se protocolizan, la información contenida en las mismas y las firmas que aparecen en ellas son auténticas y corresponden a las personas a quienes se les atribuyen, que las socias acreditaron la titularidad de sus respectivas partes sociales, que las representantes de las mismas acreditaron debidamente su personalidad, misma que no tuvieron impedimento legal o estatutario para ejercer y el suscrito Notario hace constar que no tuvo indicios de su falsedad. ---------------------------------------------------------------------------------------------------
----- EXPUESTO LO ANTERIOR, se otorgan las siguientes: -----------------------------------
------------------------------------------ **CLAUSULAS**: -------------------------------------------
---- **PRIMERA**.- A solicitud de la compareciente, QUEDA PROTOCOLIZADA el ACTA DE LA ASAMBLEA GENERAL de SOCIOS de la sociedad denominada **“MEDIA DEPORTES MEXICO”, SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE**, de fecha diez de febrero del dos mil veinticinco, junto con su lista de asistencia y que han quedado transcritas íntegramente en el antecedente **tercero** del presente instrumento, para lo cual se tienen aquí por íntegramente reproducidas como si a la letra se insertasen.-------
----- **SEGUNDA**.- EN CONSECUENCIA, la señora Lina Anahí Serrano Morales, en su calidad de Delegada Especial de la Asamblea cuya Acta ha quedado protocolizada conforme a la cláusula anterior, FORMALIZA el **OTORGAMIENTO** de **PODERES** de la Sociedad en favor de los señores **ROGELIO ARTURO ISLAS PEREZ, JUAN COLIN DOMINGUEZ** y **ROMAN ISRAEL GOMEZ CASTRUITA**, para que los ejerciten en los términos,

LIC. ANTONIO LÓPEZ AGUIRRE ESTADOS UNIDOS MEXICANOS NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

N250

ANTONIO LÓPEZ AGUIRRE

condiciones y con el cúmulo de facultades que han quedado establecidos en el acta que por este instrumento se protocoliza. ----------------------------------------------------------------------------

-------------------------------- **OBLIGACIONES Y/O AVISOS**: ----------------------------------

----- **Primero**.- **REGISTRO FEDERAL DE CONTRIBUYENTES**.- La compareciente para cumplir con lo dispuesto por el artículo veintisiete del Código Fiscal de la Federación, me exhibe las Cédulas de Identificación Fiscal de las socias de la sociedad, mismas que agrego al apéndice del presente instrumento en un solo legajo marcado con la letra **"B"**.-------------------

----- **Segundo**.- **LEY DE INVERSION EXTRANJERA**.- La misma compareciente declara que la sociedad por la que comparece no está obligada a inscribirse en el Registro Nacional de Inversiones Extranjeras ---------------------------------------------------------------------------------

----- YO, EL NOTARIO, DOY FE: I.- De que me identifiqué plenamente como Notario ante la compareciente; II.- De que tuve a la vista el(los) documento(s) y/o testimonio(s) y/o copia(s) certificada(s) y/o cotejada(s) que me fue(ron) presentado(s) por la compareciente para la elaboración de este instrumento mismo(s) que declara es(son) auténtico(s) y que fue(ron) obtenido(s) de forma lícita habiendo cumplido con todos los requisitos legales que para cada caso se requieran, liberando al suscrito Notario de cualquier responsabilidad que pudiera surgir al respecto; III.- De que la compareciente se identificó con el documento oficial que me fue exhibido cuya copia se agrega al apéndice de este instrumento marcada con la letra **"C"**, a quien conceptúo con capacidad legal para este acto, por no haber observado en ella manifestaciones de incapacidad natural y no haber tenido noticias de que esté sujeta a incapacidad civil; IV.- De que le advertí de las penas en que incurren quienes declaran con falsedad ante Notario o exhiben documentos apócrifos o alterados en los términos de las disposiciones legales aplicables así como de que es responsable directa de la legitimidad y autenticidad de los documentos que exhibió y que sus declaraciones se consideran hechas bajo protesta de decir verdad; V.- De que a través del Aviso de Privacidad a que se refiere la Ley Federal de Protección de Datos Personales en Posesión de los Particulares, informé a la compareciente cuáles son los datos personales necesarios para el otorgamiento del presente instrumento y los fines para los cuales éstos se recaban, manifestando su consentimiento con el tratamiento de los mismos; VI.- De que enteré a la compareciente que cualquier copia certificada o testimonio que de este instrumento se expida, por razones de seguridad, guarda y custodia se destruirán pasados cinco años desde su fecha de expedición, en tanto que, cualesquier documentos, incluidos escrituras de antecedentes, relacionados con el presente instrumento, se destruirán pasados dos años desde la fecha de firma del mismo; situación y plazos con los que la compareciente manifestó su conformidad, liberando al suscrito Notario de cualquier responsabilidad al respecto; VII.- De que manifestó por sus generales, ser mexicana por nacimiento, originaria de esta Ciudad, nacida el cuatro de marzo de mil novecientos setenta y seis, soltera, abogada y con domicilio en calle Guillermo González Camarena número seiscientos, planta baja, colonia Santa Fe, código postal cero mil doscientos diez, Demarcación Alvaro Obregón, en esta Ciudad; VIII.- De que todas

las menciones relativas al Distrito Federal asentadas en este instrumento, se entenderán hechas a la Ciudad de México; y IX.- De que leído este instrumento a la misma otorgante, a quien le hice saber su derecho a leerlo personalmente y a quien ilustré el valor, consecuencias y alcance legales de su contenido, manifiesta su comprensión plena y conformidad; estampando su huella digital y firma el día diecinueve de febrero del mismo año, en que autorizo definitivamente.- Doy fe. ------------------------------------------------------------------------------------------------

----- HUELLA DIGITAL Y FIRMA DE LA SEÑORA LINA ANAHI SERRANO MORALES.- FIRMA DEL NOTARIO.- El sello de autorizar. -------------------------------------

----- Las notas complementarias se harán en documento por separado que se agrega al apéndice de este instrumento marcado con la letra "D". ----------------------------------------------------

-------------------------------------------- INSERCION: --------------------------------------------

----- ARTICULO DOS MIL QUINIENTOS CINCUENTA Y CUATRO DEL CODIGO CIVIL PARA EL DISTRITO FEDERAL. -----------------------------------------------------------------

----- "En todos los poderes generales para pleitos y cobranzas, bastará que se diga que se otorgan con todas las facultades generales y las especiales que requieran cláusula especial conforme a la Ley, para que se entiendan conferidos sin limitación alguna. -----------------------------------

----- En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter para que el apoderado tenga toda clase de facultades administrativas. -----------------

----- En los poderes generales, para ejercer actos de dominio, bastará que se den con ese carácter, para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos. -------------------------------------

----- Cuando se quisieren limitar, en los tres casos antes mencionados, las facultades de los apoderados, se consignarán las limitaciones o los poderes serán especiales. --------------------

----- Los Notarios insertarán este artículo en los testimonios de los poderes que otorguen". ----

---------------- EN LAS HOJAS SUBSECUENTES SE REPRODUCEN LOS -----------------

------------------------- DEMAS DOCUMENTOS DEL APENDICE ----------------------------

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

[redacted]

CEDULA DE IDENTIFICACION FISCAL

HACIENDA
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

SAT
SERVICIO DE ADMINISTRACIÓN TRIBUTARIA

ALT1606094T9
Registro Federal de Contribuyentes

ALTENER
Nombre, denominación o razón social

idCIF: 16060209234
VALIDA TU INFORMACIÓN FISCAL

HACIENDA
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

SAT
SERVICIO DE ADMINISTRACIÓN TRIBUTARIA

## CONSTANCIA DE SITUACIÓN FISCAL

Lugar y Fecha de Emisión
**BENITO JUAREZ , CIUDAD DE MEXICO A 17 DE MAYO DE 2021**

ALT1606094T9

B

**Datos de Identificación del Contribuyente:**

| | |
|---|---|
| **RFC:** | ALT1606094T9 |
| **Denominación/Razón Social:** | ALTENER |
| **Régimen Capital:** | SOCIEDAD ANONIMA DE CAPITAL VARIABLE |
| **Nombre Comercial:** | |
| **Fecha inicio de operaciones:** | 09 DE JUNIO DE 2016 |
| **Estatus en el padrón:** | ACTIVO |
| **Fecha de último cambio de estado:** | 09 DE JUNIO DE 2016 |

**Datos de Ubicación:**

| | |
|---|---|
| **Código Postal:**03100 | **Tipo de Vialidad:** CALLE |
| **Nombre de Vialidad:** SANTA BARBARA | **Número Exterior:** 15 |
| **Número Interior:** | **Nombre de la Colonia:** DEL VALLE |
| **Nombre de la Localidad:** BENITO JUAREZ | **Nombre del Municipio o Demarcación Territorial:** BENITO JUAREZ |
| **Nombre de la Entidad Federativa:** CIUDAD DE MEXICO | **Entre Calle:** SAN BERNARDINO |
| **Y Calle:** CONCEPCION BEISTEGUI | |



GOBIERNO DE MÉXICO

CONAMER Comisión Nacional de Mejora Regulatoria

**Contacto**
Av. Hidalgo 77, col. Guerrero, c.p. 06300, Ciudad de México.
Atención telefónica: 627 22 728 desde la Ciudad de México,
o 01 (55) 627 22 728 del resto del país.
Desde Estados Unidos y Canadá 1 877 44 88 728.
*denuncias@sat.gob.mx*

11

[redacted]

**Actividades Económicas:**

| Orden | Actividad Económica | Porcentaje | Fecha Inicio | Fecha Fin |
|---|---|---|---|---|
| 1 | Suministro de energía eléctrica a los consumidores finales | 100 | 09/06/2016 | |

**Regímenes:**

| Régimen | Fecha Inicio | Fecha Fin |
|---|---|---|
| Régimen General de Ley Personas Morales | 09/06/2016 | |

**Obligaciones:**

| Descripción de la Obligación | Descripción Vencimiento | Fecha Inicio | Fecha Fin |
|---|---|---|---|
| Pago definitivo mensual de IVA. | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 09/06/2016 | |
| Declaración anual de ISR del ejercicio Personas morales. | Dentro de los tres meses siguientes al cierre del ejercicio. | 09/06/2016 | |
| Declaración de proveedores de IVA | A más tardar el último día del mes inmediato posterior al periodo que corresponda. | 09/06/2016 | |
| Declaración informativa anual de clientes y proveedores de bienes y servicios. Impuesto sobre la renta. | A más tardar el 15 de febrero del año siguiente | 09/06/2016 | |
| Pago provisional mensual de ISR personas morales régimen general | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 01/04/2017 | |

**Sus datos personales son incorporados y protegidos en los sistemas del SAT, de conformidad con los Lineamientos de Protección de Datos Personales y con diversas disposiciones fiscales y legales sobre confidencialidad y protección de datos, a fin de ejercer las facultades conferidas a la autoridad fiscal.**

**Si desea modificar o corregir sus datos personales, puede acudir a cualquier Módulo de Servicios Tributarios y/o a través de la dirección http://sat.gob.mx**

**"La corrupción tiene consecuencias ¡denúnciala! Si conoces algún posible acto de corrupción o delito presenta una queja o denuncia a través de: www.sat.gob.mx, denuncias@sat.gob.mx, desde México: 01 (55) 8852 2222, desde el extranjero: 1 844 28 73 803, SAT móvil o www.gob.mx/sfp".**

**Cadena Original Sello:** ||2021/05/17|ALT1606094T9|CONSTANCIA DE SITUACIÓN FISCAL|200001088888800000031||

**Sello Digital:** MLiv1Rybd86Qpfd/4OYHxxTEWUsq0+b2OOhuO/bbQXzQeLhUTvPWaoYqR5lPx0NWpJKbgSzK/JVAuAFz/XGuUkVr7AZa1YhS//oSH8GbxCVJsSm1DiBvXlqj5ADvURIUHkRYxKgfh9ns5NJrQJb6N11L8GlrsXxMJkKrCdiZl8Q=



GOBIERNO DE MÉXICO

Contacto
Av. Hidalgo 77, col. Guerrero, c.p. 06300, Ciudad de México.
Atención telefónica: 627 22 728 desde la Ciudad de México,
01 (55) 627 22 728 del resto del país.
Desde Estados Unidos y Canadá 1 877 44 88 728.
denuncias@sat.gob.mx

12

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

[redacted]

## CÉDULA DE IDENTIFICACIÓN FISCAL

HACIENDA
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

SAT
SERVICIO DE ADMINISTRACIÓN TRIBUTARIA

GLH141118J93
Registro Federal de Contribuyentes

GRUPO LAUMAN HOLDING
Nombre, denominación o razón social

idCIF: 15070160806
VALIDA TU INFORMACIÓN FISCAL

## CONSTANCIA DE SITUACIÓN FISCAL

Lugar y Fecha de Emisión
**ALVARO OBREGON , CIUDAD DE MEXICO A 15 DE MAYO DE 2023**

GLH141118J93

### Datos de Identificación del Contribuyente:

| | |
|---|---|
| **RFC:** | GLH141118J93 |
| **Denominación/Razón Social:** | GRUPO LAUMAN HOLDING |
| **Régimen Capital:** | SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE |
| **Nombre Comercial:** | GRUPO LAUMAN HOLDING |
| **Fecha inicio de operaciones:** | 18 DE NOVIEMBRE DE 2014 |
| **Estatus en el padrón:** | ACTIVO |
| **Fecha de último cambio de estado:** | 18 DE NOVIEMBRE DE 2014 |

### Datos del domicilio registrado

| | |
|---|---|
| **Código Postal:**01219 | **Tipo de Vialidad:** CALLE |
| **Nombre de Vialidad:** GUILLERMO GONZALEZ CAMARENA | **Número Exterior:** 600 |
| **Número Interior:** | **Nombre de la Colonia:** LOMAS DE SANTA FE |
| **Nombre de la Localidad:** | **Nombre del Municipio o Demarcación Territorial:** ALVARO OBREGON |
| **Nombre de la Entidad Federativa:** CIUDAD DE MEXICO | **Entre Calle:** CALLE VASCO DE QUIROGA |
| **Y Calle:** CALLE ERNESTO DOMINGUEZ AGUIRRE | |

### Actividades Económicas:



HACIENDA
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

SAT
SERVICIO DE ADMINISTRACIÓN TRIBUTARIA

**Contacto**
Av. Hidalgo 77, col. Guerrero, C.P. 06300, Ciudad de México.
Atención telefónica desde cualquier parte del país:
MarcaSAT 55 627 22 728 y para el exterior del país
(+52) 55 627 22 728

[redacted]

| Orden | Actividad Económica | Porcentaje | Fecha Inicio | Fecha Fin |
|---|---|---|---|---|
| 1 | Otros intermediarios de comercio al por mayor | 100 | 18/11/2014 | |

**Regímenes:**

| Régimen | Fecha Inicio | Fecha Fin |
|---|---|---|
| Régimen General de Ley Personas Morales | 18/11/2014 | |

**Obligaciones:**

| Descripción de la Obligación | Descripción Vencimiento | Fecha Inicio | Fecha Fin |
|---|---|---|---|
| Pago definitivo mensual de IVA. | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 18/11/2014 | |
| Declaración de proveedores de IVA | A más tardar el último día del mes inmediato posterior al periodo que corresponda. | 18/11/2014 | |
| Declaración anual de ISR del ejercicio Personas morales. | Dentro de los tres meses siguientes al cierre del ejercicio. | 18/11/2014 | |
| Pago provisional mensual de ISR personas morales régimen general | A más tardar el día 17 del mes inmediato posterior al periodo que corresponda. | 01/04/2015 | |

**Sus datos personales son incorporados y protegidos en los sistemas del SAT, de conformidad con los Lineamientos de Protección de Datos Personales y con diversas disposiciones fiscales y legales sobre confidencialidad y protección de datos, a fin de ejercer las facultades conferidas a la autoridad fiscal.**

**Si desea modificar o corregir sus datos personales, puede acudir a cualquier Módulo de Servicios Tributarios y/o a través de la dirección http://sat.gob.mx**

**"La corrupción tiene consecuencias ¡denúnciala! Si conoces algún posible acto de corrupción o delito presenta una queja o denuncia a través de: www.sat.gob.mx, denuncias@sat.gob.mx, desde México: (55) 8852 2222, desde el extranjero: + 55 8852 2222, SAT móvil o www.gob.mx/sfp".**

**Cadena Original Sello:** ||2023/05/15|GLH141118J93|CONSTANCIA DE SITUACIÓN FISCAL|200001088888800000031||

**Sello Digital:** jISzPhXR6qRK9bkUCjHeqG1jQolEuRIDft2XxVka1zzpVl1Jx2dOJiqr5IE7ix2tS0kRUGodTz9hzjO/ulZeWl18PuiX+oVYNLpcF+2TsVDGJa8JPsdLrxPNm22Mx5LXzH77r2CYrcu+0pzR/aylaFDDgAkQS9aCS3ud9Dn3EE0=

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

C






Directorio INE   Transmisiones en vivo

INE
Instituto Nacional Electoral

# ¿Está vigente tu credencial?

Tema: **INICIO** / RESULTADO

**CENTRO DE AYUDA**

SÍ VIGENTE

Consulta el **Sistema Conóceles para la elección de Integrantes del Poder Judicial de la Federación** para conocer la identidad, perfil e información curricular de las personas candidatas juzgadoras que participan en la Elección Extraordinaria 2024-2025.

| | |
|---|---|
| CIC | 142051103 |
| Clave de elector | SRMRLN76030409M300 |
| Número de emisión | 2 |
| Distrito Federal | 10 |
| Distrito Local | 5 |
| Número OCR | 5129004294614 |
| Año de registro | 1994 |
| Año de emisión | 2016 |

Fecha de actualización de la información: 18 de febrero del 2025 23:56

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MEXICO

N250

ANTONIO LÓPEZ AGUIRRE

EXPIDO ESTE **QUINTO TESTIMONIO EN SU ORDEN,** EN **DIECISIETE** PAGINAS UTILES, INCLUIDAS LAS COPIAS DE LOS DOCUMENTOS QUE OBRAN EN SU APENDICE Y QUE POR LEY DEBAN REPRODUCIRSE, PARA **"MEDIA DEPORTES MEXICO", SOCIEDAD DE RESPONSABILIDAD LIMITADA DE CAPITAL VARIABLE,** A TITULO DE **CONSTANCIA.**- DOY FE.- CIUDAD DE MEXICO, A **DIECINUEVE DE FEBRERO DEL DOS MIL VEINTICINCO**.

HUAR/bov*

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MEXICO

PJCDMX
PODER JUDICIAL
CIUDAD DE MEXICO
RECIBIDO
24 MAR. 2025
NUMERO 27
OFICIALÍA DE PARTES COMÚN
PARA JUZGADOS Y SALAS

**ANEXO 3**

**INSTRUMENTO PUBLICO QUE CONTIENE:**

El **PODER GENERAL** que otorga la sociedad denominada **"MEXICO SPORTS DISTRIBUTION LLC"**, en favor de los señores **ROGELIO ARTURO ISLAS PEREZ, JUAN COLIN DOMINGUEZ** y **ROMAN ISRAEL GOMEZ CASTRUITA.**

INST. No.: 47,225
LIBRO: 1,791
FECHA: 19/FEB/2025

LIC. ANTONIO LÓPEZ AGUIRRE NOTARÍA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

N250

ANTONIO LÓPEZ AGUIRRE

PROTOCOLO ORDINARIO. ------------------------------------------------------------------

NUMERO CUARENTA Y SIETE MIL DOSCIENTOS VEINTICINCO. ----------- NO REG

LIBRO MIL SETECIENTOS NOVENTA Y UNO. ------------------------------------ HUSR

----- En la Ciudad de México, a los diecinueve días del mes de febrero del dos mil veinticinco, yo, el Licenciado Antonio López Aguirre, titular de la Notaría número doscientos cincuenta, hago constar el **PODER GENERAL** que otorga la sociedad denominada **"MEXICO SPORTS DISTRIBUTION LLC"**, representada por su Apoderada General, señora Shaní Mizrahi Villarruel, en favor de los señores **ROGELIO ARTURO ISLAS PEREZ, JUAN COLIN DOMINGUEZ** y **ROMAN ISRAEL GOMEZ CASTRUITA**, al tenor de la siguiente: ---------------------------------------------------------------------------------

------------------------------------ **CLAUSULA UNICA**: ------------------------------------------

----- **"MEXICO SPORTS DISTRIBUTION LLC"**, representada como al principio se indicó, otorga en favor de los señores **ROGELIO ARTURO ISLAS PEREZ, JUAN COLIN DOMINGUEZ** y **ROMAN ISRAEL GOMEZ CASTRUITA**, para que lo ejerciten conjunta o INDIVIDUALMENTE, **PODER GENERAL** para **PLEITOS Y COBRANZAS**, con todas las facultades generales y aun las especiales que requieran poder o cláusula especial conforme a la ley, en los términos del primer párrafo del artículo dos mil quinientos cincuenta y cuatro del Código Civil para el Distrito Federal y sus correlativos de los Códigos Civiles de las demás Entidades de los Estados Unidos Mexicanos y del Código Civil Federal. De manera enunciativa más no limitativa se mencionan entre otras facultades, pero sin que se comprenda la de hacer cesión de bienes, las siguientes: ---------------------------------------------------

----- a) Intentar y desistir de toda clase de procedimientos, inclusive amparo;--------------------

----- b) Transigir; ---------------------------------------------------------------------------------

----- c) Comprometer en árbitros; ---------------------------------------------------------------

----- d) Absolver y articular posiciones; --------------------------------------------------------

----- e) Recusar; ------------------------------------------------------------------------------------

----- f) Recibir pagos; y ----------------------------------------------------------------------------

----- g) Presentar denuncias y querellas en materia penal y para desistirse de ellas cuando lo perimita la ley. -------------------------------------------------------------------------------------

---------------------------------------**PERSONALIDAD**: ----------------------------------------

----- La señora SHANI MIZRAHI VILLARRUEL, la acredita con segundo testimonio del instrumento número setenta y tres mil ciento treinta y cuatro, pasado en esta Ciudad con fecha veinticuatro de noviembre del dos mil veintidós, ante el Licenciado Guillermo Carranco Romero, titular de la Notaría número cincuenta y cinco de la Ciudad de México, del que una copia cotejada por mí, agrego al apéndice de este instrumento marcada con la letra **"A"**; y declara que la representación que ostenta y por la que actúa está vigente en sus términos y que su representada tiene capacidad legal. -------------------------------------------------------------

----- **LEY DE INVERSION EXTRANJERA**.- La misma compareciente declara que la sociedad por la que comparece no está obligada a inscribirse en el Registro Nacional de Inversiones Extranjeras.--------------------------------------------------------------------------------

----- YO, EL NOTARIO, DOY FE: I.- De que me identifiqué plenamente como Notario ante

la compareciente; II.- De que tuve a la vista el(los) documento(s) y/o testimonio(s) y/o copia(s) certificada(s) y/o cotejada(s) que me fue(ron) presentado(s) por la compareciente para la elaboración de este instrumento mismo(s) que declara es(son) auténtico(s) y que fue(ron) obtenido(s) de forma lícita habiendo cumplido con todos los requisitos legales que para cada caso se requieran, liberando al suscrito Notario de cualquier responsabilidad que pudiera surgir al respecto; III.- De que la compareciente se identificó con el documento oficial que me fue exhibido cuya copia se agrega al apéndice de este instrumento marcada con la letra **"B"**, a quien conceptúo con capacidad legal para este acto por no haber observado en ella manifestaciones de incapacidad natural y no haber tenido noticias de que esté sujeta a incapacidad civil; IV.- De que le advertí de las penas en que incurren quienes declaran con falsedad ante Notario y de que todas sus declaraciones se consideran hechas bajo protesta de decir verdad; V.- De que a través del Aviso de Privacidad a que se refiere la Ley Federal de Protección de Datos Personales en Posesión de los Particulares, informé a la compareciente cuáles son los datos personales necesarios para el otorgamiento del presente instrumento y los fines para los cuales éstos se recaban, manifestando su consentimiento con el tratamiento de los mismos; VI.- De que manifestó por sus generales, ser mexicana por nacimiento, originaria de esta Ciudad, nacida el diecinueve de octubre de mil novecientos ochenta y nueve, soltera, licenciada en contaduría y con domicilio en calle Guillermo González Camarena número seiscientos, planta baja, colonia Santa Fe, código postal cero mil doscientos diez, Demarcación Alvaro Obregón, en esta Ciudad; VII.- De que todas las menciones relativas al Distrito Federal asentadas en este instrumento, se entenderán hechas a la Ciudad de México; y VIII.- De que leído este instrumento a la misma otorgante, a quien le hice saber su derecho a leerlo personalmente y a quien ilustré el valor, consecuencias y alcance legales de su contenido, manifiesta su comprensión plena y conformidad; estampando su huella digital y firma el día veinte de febrero del mismo año, en que autorizo definitivamente.- Doy fe. --------

----- HUELLA DIGITAL Y FIRMA DE LA SEÑORA SHANI MIZRAHI VILLARRUEL.- FIRMA DEL NOTARIO.- El sello de autorizar. ------------------------------------------------

----- Las notas complementarias se harán en docnmento por separado que se agrega al apéndice de este instrumento marcado con la letra "C". ------------------------------------------

------------------------------------------ INSERCION: ------------------------------------------

----- ARTICULO DOS MIL QUINIENTOS CINCUENTA Y CUATRO DEL CODIGO CIVIL PARA EL DISTRITO FEDERAL. -----------------------------------------------------

----- "En todos los poderes generales para pleitos y cobranzas, bastará que se diga que se otorgan con todas las facultades generales y las especiales que requieran cláusula especial conforme a la Ley, para que se entiendan conferidos sin limitación alguna. -------------------

----- En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter para que el apoderado tenga toda clase de facultades administrativas. -----------------

----- En los poderes generales, para ejercer actos de dominio, bastará que se den con ese carácter, para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos. ---------------------------

----- Cuando se quisieren limitar, en los tres casos antes mencionados, las facultades de los

LIC. ANTONIO LÓPEZ AGUIRRE NOTARÍA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

N250

ANTONIO LOPEZ AGUIRRE

apoderados, se consignarán las limitaciones o los poderes serán especiales. ----------------------
---- Los Notarios insertarán este artículo en los testimonios de los poderes que otorguen". -----
------------------ EN LAS HOJAS SUBSECUENTES SE REPRODUCEN LOS -----------------
------------------------------- DOCUMENTOS DEL APENDICE ---------------------------------

NOTARÍA 55
GUILLERMO
CARRANCO ROMERO

73134

A

-------------------LIBRO MIL SEISCIENTOS VEINTE -----------------

--------INSTRUMENTO SETENTA Y TRES MIL CIENTO TREINTA Y CUATRO-----

- - - - CIUDAD DE MÉXICO, a veinticuatro de noviembre de dos mil veintidós. ------------------------------------------------

- - - - GUILLERMO CARRANCO ROMERO, titular de la Notaría número CINCUENTA Y CINCO de la Ciudad de México, hago constar: -----------

- - - - **LA PROTOCOLIZACIÓN DE UN DOCUMENTO OTORGADO EN EL EXTRANJERO REDACTADO EN IDIOMAS INGLÉS Y ESPAÑOL** que contiene los poderes que la sociedad de nacionalidad **ESTADOUNIDENSE** denominada **"MÉXICO SPORTS DISTRIBUTION LLC"**, sociedad constituida conforme a las leyes del Estado de Delaware, Estados Unidos de América, otorgó en favor de los señores **GERARDO MANUEL RAMÍREZ ORNELAS**, **LUIS ROBLES SANTAMARINA**, **ÁNGEL FABRICIO ESCALANTE SÁNCHEZ**, **JOSÉ JUAN SÁNCHEZ NAVARRETE**, **ISRAEL ERNESTO SAHAGÚN MORALES**, **PABLO MANUEL RAMÍREZ BLUMENKRON**, **GERARDO RAMÍREZ BLUMENKRON**, **GERARDO FUNTANET BRUNEL**, **FERNANDA MORALES ARREOLA**, **JOSÉ MARÍA ZÚÑIGA BARAJAS**, **EDGAR MADRID SOTO**, **JOSÉ EDUARDO RIVERA ROSAS**, **GABRIEL GUTIÉRREZ CORNEJO**, **LUIS MANUEL DOMÍNGUEZ ORTIZ**, **GERARDO ZAMBITO MADRIGAL**, **ENRIQUE FLORES FRANCO**, **JOSÉ ENRIQUE URUÑUELA LÓPEZ**, **SHANÍ MIZRAHI VILLARRUEL**, **ALEJANDRO MAYORGA REA**, **ROMÁN ISRAEL GÓMEZ CASTRUITA** y **JUAN COLÍN DOMÍNGUEZ**, con la amplitud de facultades que en el mismo se establecen y que más adelante se precisan; protocolización que realizo a solicitud del señor **ALEJANDRO MAYORGA REA**, en su carácter de apoderado de dicha sociedad, de conformidad con los siguientes antecedente y cláusulas: -----------

-----------------------**A N T E C E D E N T E** ---------------------

- - - - ÚNICO.- El señor **ALEJANDRO MAYORGA REA**, me presenta para su protocolización un documento otorgado en el extranjero, redactado en idiomas **inglés y español**, que contiene los poderes que con fecha diecisiete de noviembre de dos mil veintidós, otorgó la sociedad de nacionalidad estadounidense denominada **"MÉXICO SPORTS DISTRIBUTION LLC"**, sociedad constituida conforme a las leyes de Estado de Delaware, Estados Unidos de América. ---------------------------------------

- - - - El citado documento se encuentra debidamente **apostillado**.--

- - - - De **dicho documento** se desprende que la sociedad de nacionalidad estadounidense denominada **"MÉXICO SPORTS DISTRIBUTION LLC"**, representada por el señor Román Israel Gómez Castruita, en su carácter de representante de dicha sociedad, y en ejercicio de las facultades que le fueron conferidas, otorgó en favor de los señores **GERARDO MANUEL RAMÍREZ ORNELAS**, **LUIS ROBLES SANTAMARINA**, **ÁNGEL FABRICIO ESCALANTE SÁNCHEZ**, **JOSÉ JUAN SÁNCHEZ NAVARRETE**, **ISRAEL ERNESTO SAHAGÚN MORALES**, **PABLO MANUEL RAMÍREZ BLUMENKRON**, **GERARDO RAMÍREZ BLUMENKRON**, **GERARDO FUNTANET BRUNEL**, **FERNANDA MORALES ARREOLA**, **JOSÉ MARÍA ZÚÑIGA BARAJAS**, **EDGAR MADRID SOTO**, **JOSÉ EDUARDO RIVERA ROSAS**, **GABRIEL GUTIÉRREZ CORNEJO**, **LUIS MANUEL DOMÍNGUEZ ORTIZ**, **GERARDO ZAMBITO MADRIGAL**, **ENRIQUE FLORES FRANCO**, **JOSÉ ENRIQUE URUÑUELA LÓPEZ**,

**SHANÍ MIZRAHI VILLARRUEL, ALEJANDRO MAYORGA REA, ROMÁN ISRAEL GÓMEZ CASTRUITA** y **JUAN COLÍN DOMÍNGUEZ**, los poderes que más adelante se relacionan. --------------------------------------------------------

- - - - De **la parte redactada en idioma en español de dicho documento** transcribo lo que es del tenor siguiente: ------------------------

---------------------------"..**PODER OTORGADO POR** ------------------

-----------------------**MEXICO SPORTS DISTRIBUTION LLC** ------------

En la ciudad de San Diego, California, Estados Unidos de América, el 17 de noviembre de 2022, ante mí, R. Marina Collins, Notario Público de y para el Condado de San Diego, Estados Unidos de América, compareció el señor Román Israel Gómez Castruita (el "**Compareciente**"), quien por sus generales manifestó tener la siguiente nacionalidad, edad, estado civil, ocupación y domicilio:… …y declara: Que comparece en este acto en nombre y representación de **MEXICO SPORTS DISTRIBUTION LLC**, una sociedad constituida conforme a las leyes del Estado de Delaware, Estados Unidos de América (en lo sucesivo, la "Poderdante") para otorgar y conferir los siguientes poderes y facultades: ---------------------------------------------

**A.** En favor de los señores Gerardo Manuel Ramírez Ornelas, Luis Robles Santamarina, Ángel Fabricio Escalante Sánchez, José Juan Sánchez Navarrete, Israel Ernesto Sahagún Morales, Pablo Manuel Ramírez Blumenkron, Gerardo Ramírez Blumenkron, Gerardo Funtanet Brunel, Fernanda Morales Arreola, José María Zúñiga Barajas, Edgar Madrid Soto, José Eduardo Rivera Rosas, Gabriel Gutiérrez Cornejo, Luis Manuel Domínguez Ortiz, Gerardo Zambito Madrigal y Enrique Flores Franco (los "Apoderados A"), para ser ejercido de manera conjunta o separada, un poder general para pleitos y cobranzas, sin limitación alguna, incluyendo todas las facultades generales y las especiales que conforme a la ley requieran poder o cláusula especial, en los términos del primer párrafo del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, entre ellas aquellas a las que se refiere el artículo 2587 de dicho Código Civil para el Distrito Federal (hoy Ciudad de México), incluyendo, enunciativa y no limitativamente, la de desistirse del juicio de amparo, la de denunciar hechos delictuosos y presentar querellas y desistirse de ellas, constituirse en coadyuvante del Ministerio Público, constituir a la Sociedad como parte en dichos procedimientos, otorgar el perdón legal así como transigir, comprometer en árbitros y absolver y articular posiciones. Los Apoderados A no cuentan con facultades de sustitución por lo que las facultades que se les otorga por el presente poder no son transferibles a cualquier otra persona o entidad. -----------------

**B.** En favor de José Enrique Uruñuela López, Shaní Mizrahi Villarruel y Alejandro Mayorga Rea (los "Apoderados B"): (i) para ser ejercido

NOTARÍA 55
GUILLERMO
CARRANCO ROMERO



de manera conjunta o separada, un poder general para pleitos y cobranzas, sin limitación alguna, incluyendo todas las facultades generales y las especiales que conforme a la ley requieran poder o cláusula especial, en los términos del primer párrafo del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, entre ellas aquellas a las que se refiere el artículo 2587 de dicho Código Civil para el Distrito Federal (hoy Ciudad de México), incluyendo, enunciativa y no limitativamente, la de desistirse del juicio de amparo, la de denunciar hechos delictuosos y presentar querellas y desistirse de ellas, constituirse en coadyuvante del Ministerio Público, constituir a la Sociedad como parte en dichos procedimientos, otorgar el perdón legal así como transigir, comprometer en árbitros y absolver y articular posiciones, (ii) para ser ejercido de manera conjunta o separada, poder general para actos de administración en los términos del párrafo segundo del artículo 2554 del del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, poder que podrá ser ejercido de manera individual, y (iii) para ser ejercido de manera conjunta con cualquier otro Apoderado B, poder general para actos de dominio, en los términos del tercer párrafo del artículo 2554 del del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos. ---------------------------------------------------

Adicionalmente, Shaní Mizrahi Villarruel tendrá poder para abrir, cerrar, modificar y operar cuentas bancarias y de inversión y para designar a las personas que girarán cheques en y operarán las mismas, de conformidad con lo establecido en el artículo noveno de la Ley General de Títulos y Operaciones de Crédito. ----------------------

Los Apoderados B contarán con facultades de sustitución por lo que las facultades que se les otorga por el presente poder podrán ser transferibles a cualquier otra persona o entidad. ----------------

En favor de Román Israel Gómez Castruita y Juan Colín Domínguez (los "Apoderados C"): (i) para ser ejercido de manera conjunta o separada, un poder general para pleitos y cobranzas, sin limitación alguna, incluyendo todas las facultades generales y las especiales que conforme a la ley requieran poder o cláusula especial, en los términos del primer párrafo del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, entre ellas aquellas a las que se refiere el artículo 2587 de dicho Código Civil para el Distrito Federal (hoy Ciudad de México), incluyendo, enunciativa y no limitativamente, la de desistirse del

juicio de amparo, la de denunciar hechos delictuosos y presentar querellas y desistirse de ellas, constituirse en coadyuvante del Ministerio Público, constituir a la Sociedad como parte en dichos procedimientos, otorgar el perdón legal así como transigir, comprometer en árbitros y absolver y articular posiciones, y (ii) para ser ejercido de manera conjunta o separada, poder general para actos de administración en los términos del párrafo segundo del artículo 2554 del del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, poder que podrá ser ejercido de manera individual ------------------------

Los Apoderados C no cuentan con facultades de sustitución por lo que las facultades que se les otorga por el presente poder no son transferibles a cualquier otra persona o entidad. ------------------

**D.** Cualquiera de los mencionados Apoderados A, Apoderados B o Apoderados C, indistintamente, quedan igualmente facultados para protocolizar el presente documento para su uso en los Estados Unidos Mexicanos. ----------------------------------------------------

El idioma español que aparece en este instrumento es la traducción autorizada del idioma inglés que también aparece en este instrumento, en todas sus partes. ----------------------------------------------

El texto del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México), y de los artículos correlativos de los Códigos Civiles de los que integran los Estados Unidos Mexicanos se transcribe a continuación: ---------------------------------------------------

"*ARTICULO 2554. En todos los poderes generales para pleitos y cobranzas bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran cláusula especial conforme a la ley, para que se entiendan conferidos sin limitación alguna.--*

*En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter para que el apoderado tenga toda clase de facultades administrativas. -----------------------------------*

*En los poderes generales para ejercer actos de dominio, bastará que se den con ese carácter para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos. ---------------*

*Cuando se quisieren limitar, en los tres casos antes mencionados, las facultades de los apoderados, se consignarán las limitaciones, o los poderes serán especiales. -------------------------------------------*

*Los notarios insertarán este artículo en los testimonios de los poderes que otorguen."* -------------------------------------------

MEXICO SPORTS DISTRIBUTION LLC…". ---------------------------------

- - - - De la traducción de la apostilla de dicho documento, transcribo lo que es del tenor siguiente: -------------------------------------

-------------------------"…**Estado de California** ------------------

7

NOTARÍA 55
GUILLERMO
CARRANCO ROMERO

5

73134

-------------------------**Secretario de Estado** ------------------
Este Certificado no es válido para su uso en ningún lugar dentro de los Estados Unidos de América, sus territorios o posesiones.-------
---------------------------------**APOSTILLE** -------------------------
-------------------(Convention de La Haye du 5 octobre 1961)------
**1. País:**----------------------Estados Unidos de América-----------
**El presente documento público** ------------------------------------
**2. ha sido firmado por**---------*Ernest J. Dronenburg, Jr.*-----------
**3. quien actúa en calidad de** *Asesor/Registrador/Secretario del Condado* ---------------------------------------------------------
**4. y está revestido del sello / timbre de** *Condado de San Diego, Estado de California* -------------------------------------------
---------------------------**Certificado** -------------------------
**5. en**--------------Sacramento, California ------------------------
-----------------------------------**6. el día** *21 de noviembre de 2022*
**7. por**---------el Secretario de Estado, Estado de California-------
**8. bajo el número** *58299* ----------------------------------------
**9. Sello / timbre:**----------------------**10. Firma:** [Firma ilegible]
[Sello que reza: "EL ---------------------------------------------
GRAN SELLO DEL ----------------------------------------------------
ESTADO DE CALIFORNIA"] --------------------------------------------
[Aparece texto en el idioma inglés] -------------------------------
[Aparece texto en el idioma francés] ------------------------------
Esta Apostilla certifica únicamente la autenticidad de la firma, la calidad en que el signatario del documento haya actuado y, en su caso, la identidad del sello o timbre del que el documento público esté revestido. ----------------------------------------------------
Esta Apostilla no certifica el contenido del documento para el cual se expidió. -------------------------------------------------------
Esta Apostilla se puede verificar en la dirección siguiente: apostille.search.sos.ca.gov/ -------------------------------------
Este certificado no constituye una Apostilla en virtud del Convenio de La Haya de 5 de octubre de 1961 cuando se presenta en un país que no es parte del Convenio. En estos casos, el certificado debe ser presentado a la sección consular de la misión que representa a ese país. ------------------------------------------------------------
Formato de la Sec/Estado NP-40 SAC (rev. 01/2021) ----------------
[Sello que reza: "OFICINA DEL SECRETARIO DE ESTADO"] --------------
[Sello que reza: "EL-------CONDADO DE SAN DIEGO-------Sello que reza: MOTIVO MÁS NOBLES ES------Ernest J. Dronenburg Jr.---"SECRETARIO DEL EL BIEN PÚBLICO |-----ASESOR/REGISTRADOR/SECRETARIO DEL---CONDADO | CONDADO DE SAN-----------------CONDADO--------------CONDADO DE SAN-DIEGO"]--------------------www.sdarcc.com-------------DIEGO, CA.]
**OFICINA DEL ASESOR**-------------------------**OFICINA DEL REGISTRADOR/**
1600 Pacific Highway, Suite 103--------------**SECRETARIO DEL CONDADO**-

San Diego, CA 92101-------------------1600 Pacific Highway, Suite 103
(619) 236-3771 *Fax (619) 557-4056---(619) 238-8158 *Fax (619) 557-4
------------------------------------------155 ----------------------
ESTADO DE CALIFORNIA--------)-----------CERTIFICADO DE VERIFICACIÓN
----------------------------)------------FIRMA DEL NOTARIO PÚBLICO-
CONDADO DE SAN DIEGO--------) ------------------------------------
Yo, Ernest J. Dronenburg. Jr. Asesor/Registrador/Secretario del Condado del Condado de San Diego, Estado de California, teniendo por ley un Sello, CERTIFICO POR EL PRESENTE DOCUMENTO que: R. MARINA COLLINS cuyo nombre aparece en el reconocimiento, prueba o declaración jurada, era en el momento de tomar dicho reconocimiento, prueba o declaración jurada, un Notario Público activo en y para el Condado de San Diego, en el Estado de California. El sello que en el aparece es aparentemente el sello de dicho Notario Público, y la firma que en el aparece es aparentemente la firma de dicho Notario Público.--
-------------EN TESTIMONIO DE LO CUAL he firmado y colocado Mi Sello
---------------Oficial, el cual es el Sello del Asesor/Registrador
------------------/Secretario del Condado. ------------------------
------------------DE FECHA: 17 de noviembre de 2022 ---------------
[Sello que reza: "ASESOR /-------[Firma ilegible] -----------------
REGISTRADOR / SECRETARIO---------Ernest J. Dronenburg Jr.----------
DEL CONDADO | CONDADO DE---------Asesor/Registrador/Secretario del-
SAN DIEGO, CA"]------------------Condado --------------------------
---------------------------------Por: [Firma ilegible] ------------
---------------------------------DANIELLE DOON, Secretario Adjunto-
-----------------------------------------[Sello que reza: "OFICINA DEL
-----------------------------------------SECRETARIO DE ESTADO"]--
CC510 (09/24/13)…" -----------------------------------------------
- - - - El citado documento debidamente **apostillado**, así como de la traducción de esta última, los agrego al apéndice en el legajo correspondiente a este instrumento marcados con la letra "**A**".------
- - - - Expuesto lo anterior, se otorgan las siguientes:-----------
-------------------------**C L Á U S U L A S** ---------------------
- - - - **PRIMERA**.- A solicitud del señor **ALEJANDRO MAYORGA REA**, en su carácter de apoderado de **"MÉXICO SPORTS DISTRIBUTION LLC"**, y en cumplimiento a lo establecido en el artículo ciento cuarenta y tres de la Ley del Notariado para la Ciudad de México, queda protocolizado **el texto en idioma español** a que se refiere el antecedente único del presente instrumento, documento que se tiene por reproducido en la presente cláusula como si literalmente se insertase. --------------
- - - - **SEGUNDA**.- Según consta en el documento que ha quedado protocolizado en la cláusula anterior, la sociedad de nacionalidad estadounidense denominada **"MÉXICO SPORTS DISTRIBUTION LLC"**, sociedad constituida conforme a las leyes del Estado de Delaware, Estados Unidos de América, otorgó a favor de los señores **GERARDO MANUEL**

NOTARÍA 55
GUILLERMO
CARRANCO ROMERO



**RAMÍREZ ORNELAS, LUIS ROBLES SANTAMARINA, ÁNGEL FABRICIO ESCALANTE SÁNCHEZ, JOSÉ JUAN SÁNCHEZ NAVARRETE, ISRAEL ERNESTO SAHAGÚN MORALES, PABLO MANUEL RAMÍREZ BLUMENKRON, GERARDO RAMÍREZ BLUMENKRON, GERARDO FUNTANET BRUNEL, FERNANDA MORALES ARREOLA, JOSÉ MARÍA ZÚÑIGA BARAJAS, EDGAR MADRID SOTO, JOSÉ EDUARDO RIVERA ROSAS, GABRIEL GUTIÉRREZ CORNEJO, LUIS MANUEL DOMÍNGUEZ ORTIZ, GERARDO ZAMBITO MADRIGAL, ENRIQUE FLORES FRANCO, JOSÉ ENRIQUE URUÑUELA LÓPEZ, SHANÍ MIZRAHI VILLARRUEL, ALEJANDRO MAYORGA REA, ROMÁN ISRAEL GÓMEZ CASTRUITA** y **JUAN COLÍN DOMÍNGUEZ**, el poder que ha quedado transcrito en el documento otorgado en el extranjero, relacionado en el antecedente único del presente instrumento, y que por esta escritura se protocoliza. ----------------------------------------------------

- - - - **TERCERA.**- El compareciente se somete a los Tribunales de la Ciudad de México, para la interpretación y cumplimiento del contenido del presente instrumento. ----------------------------------------

- - - - **CUARTA.**- Los gastos y honorarios que se causen con motivo de la presente escritura serán por cuenta de la sociedad de nacionalidad **estadounidense**, denominada **"MÉXICO SPORTS DISTRIBUTION LLC"**.--------

-------------**ARTÍCULO DOS MIL QUINIENTOS CINCUENTA Y CUATRO** ----

- - - - "En todos los poderes generales para pleitos y cobranzas, bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran cláusula especial conforme a la ley, para que se entiendan conferidos sin limitación alguna. ---------------------------------------------------

- - - - En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter, para que el apoderado tenga toda clase de facultades administrativas. ----------------------

- - - - En los poderes generales para ejercer actos de dominio, bastará que se den con ese carácter para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos. --

- - - - Cuando se quisieren limitar, en los tres casos antes mencionados las facultades de los apoderados, se consignarán las limitaciones o los poderes serán especiales. ------------------

- - - - Los notarios insertarán este artículo en los testimonios de los poderes que otorguen.". ---------------------------------

------------------------**P E R S O N A L I D A D** ---------------

- - - - El señor **ALEJANDRO MAYORGA REA**, acredita la legal existencia y capacidad de la sociedad de nacionalidad estadounidense denominada **"MÉXICO SPORTS DISTRIBUTION LLC"**, y su carácter de apoderado de dicha sociedad, con el documento que ha quedado protocolizado. -----------------------------------------

- - - - Bajo protesta de decir verdad, el señor **ALEJANDRO MAYORGA REA**, manifiesta que la personalidad con la que comparece conserva

íntegro su vigor, que no le ha sido revocada ni en forma alguna modificada y que su representada tiene capacidad legal. ---------

-----------------------G E N E R A L E S----------------------

- - - - Por sus generales el compareciente manifestó ser mexicano, originario de esta ciudad, donde nació el día dieciocho de julio de mil novecientos ochenta y cuatro, casado, abogado, con domicilio en calle Guillermo González Camarena número seiscientos, planta baja, colonia Santa Fe, en Álvaro Obregón, código postal número cero mil docientos diez, en esta ciudad, con Clave Única de Registro de Población "MARA840718HDFYXL02" (MARA OCHO CUATRO CERO SIETE UNO OCHO HDFYXL CERO DOS), y se identifica con credencial para votar número "DOS CERO UNO CINCO CERO CUATRO SIETE SIETE SIETE UNO NUEVE TRES DOS", expedida por el Instituto Nacional Electoral, misma que en copia cotejada por mí con su original, marcada con la letra "B", agrego al apéndice en el legajo correspondiente a la presente escritura. -----------------------

----------------------**AVISO DE PRIVACIDAD**---------------------

- - - - Que en términos de lo dispuesto por los artículos ocho y diecisiete de la Ley Federal de Protección de Datos Personales en Posesión de los Particulares, el compareciente manifiesta conocer el aviso de privacidad a que se refiere la mencionada ley, mismo que se encuentra exhibido en diversas áreas públicas de la notaría y que se encuentra a su disposición para ser consultado en cualquier momento en la página de internet "55notaria.com", por lo que con la firma del presente instrumento, el compareciente manifiesta su consentimiento expreso con el tratamiento de sus datos personales. -------------------------------------------

- - - - **YO, EL NOTARIO, CERTIFICO: I.**- Que ante el compareciente me identifiqué plenamente como notario. **II.**- Que lo relacionado e inserto concuerda fielmente con los originales a que me remito y tuve a la vista. **III.**- Que advertí al compareciente de las penas en que incurren quienes declaran falsamente ante notario. **IV.**- Que el compareciente me acreditó su identidad como lo asenté en sus generales. **VI.**- Que el citado compareciente tiene a mi juicio capacidad legal. **VII.**- Que hice saber al compareciente que tiene derecho a leer el presente instrumento. **VIII.**- Que leí al mismo este instrumento, explicándole su valor, consecuencias y alcances legales, a lo que manifestó su comprensión plena. **IX.**- Que manifestó su conformidad y firmó el día de su fecha en unión del suscrito Notario quien AUTORIZA DEFINITIVAMENTE ESTE INSTRUMENTO, POR NO HABER IMPEDIMENTO LEGAL PARA ELLO.- DOY FE. ------------

GCR/SYGM/. ----------------------------------------------------

ALEJANDRO MAYORGA REA.- FIRMA.- GUILLERMO CARRANCO ROMERO.- FIRMA.- EL SELLO DE AUTORIZAR. --------------------------------

LIC. ANTONIO L... NOTARIA No. 250 DE LA CIUDAD DE ...

GUILLERMO CARRANCO ROMERO ESTADOS UNIDOS MEXICANOS NOTARIA 55 CIUDAD DE MÉXICO

NOTARÍA 55
GUILLERMO
CARRANCO ROMERO



73134

- - - - ES SEGUNDO TESTIMONIO QUE SE EXPIDE PARA LOS SEÑORES **GERARDO MANUEL RAMÍREZ ORNELAS, LUIS ROBLES SANTAMARINA, ÁNGEL FABRICIO ESCALANTE SÁNCHEZ, JOSÉ JUAN SÁNCHEZ NAVARRETE, ISRAEL ERNESTO SAHAGÚN MORALES, PABLO MANUEL RAMÍREZ BLUMENKRON, GERARDO RAMÍREZ BLUMENKRON, GERARDO FUNTANET BRUNEL, FERNANDA MORALES ARREOLA, JOSÉ MARÍA ZÚÑIGA BARAJAS, EDGAR MADRID SOTO, JOSÉ EDUARDO RIVERA ROSAS, GABRIEL GUTIÉRREZ CORNEJO, LUIS MANUEL DOMÍNGUEZ ORTIZ, GERARDO ZAMBITO MADRIGAL, ENRIQUE FLORES FRANCO, JOSÉ ENRIQUE URUÑUELA LÓPEZ, SHANÍ MIZRAHI VILLARRUEL, ALEJANDRO MAYORGA REA, ROMÁN ISRAEL GÓMEZ CASTRUITA** Y **JUAN COLÍN DOMÍNGUEZ**, EN SU CARÁCTER DE APODERADOS.- LE CORRESPONDE SER EL SEGUNDO EN SU ORDEN DE EXPEDICIÓN.- VA EN NUEVE PÁGINAS.- CIUDAD DE MÉXICO, A VEINTICUATRO DE NOVIEMBRE DE DOS MIL VEINTIDÓS.- DOY FE. -----

EXP.22-0462
GCR/poa*

GUILLERMO CARRANCO ROMERO ESTADOS UNIDOS MEXICANOS NOTARIA 55 CIUDAD DE MÉXICO

# State of California
## Secretary of State

This Certificate is not valid for use anywhere within the United States of America, its territories or possessions.

**APOSTILLE**
(Convention de La Haye du 5 octobre 1961)

| | | | |
|---|---|---|---|
| **1. Country:** Pays / País: | United States of America | | |
| **This public document** Le présent acte public / El presente documento público | | | |
| **2. Has been signed by** a été signé par ha sido firmado por | *Ernest J. Dronenburg, Jr.* | | |
| **3. acting in the capacity of** agissant en qualité de quien actúa en calidad de | *Assessor/Recorder/County Clerk* | | |
| **4. bears the seal / stamp of** est revêtu du sceau / timbre de y está revestido del sello / timbre de | *County of San Diego, State of California* | | |
| **Certified** Attesté / Certificado | | | |
| **5. at** à / en | Sacramento, California | **6.the** le / el día | *21st day of November 2022* |
| **7. by** par / por | Secretary of State, State of California | | |
| **8. N°** sous n° bajo el número | *58299* | | |
| **9. Seal / stamp:** Sceau / timbre: Sello / timbre: | | **10. Signature:** Signature: Firma: | |

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears.
This Apostille does not certify the content of the document for which it was issued.
To verify the issuance of this Apostille, see: apostille-search.sos.ca.gov/.
**This certificate does not constitute an Apostille under the Hague Convention of 5 October 1961, when it is presented in a country which is not a party to the Convention. In such cases, the certificate should be presented to the consular section of the mission representing that country.**

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire de l'acte a agi et, le cas échéant, l'identité du sceau ou timbre dont cet acte public est revêtu.
Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise.
Cette Apostille peut être vérifiée à l'adresse suivante: apostille-search.sos.ca.gov/.
**Ce certificat ne constitue pas une Apostille en vertu de la Convention de La Haye du 5 Octobre 1961, lorsque présenté dans un pays qui n'est pas partie à cette Convention. Dans ce cas, le certificat doit être présenté à la section consulaire de la mission qui représente ce pays.**

Esta Apostilla certifica únicamente la autenticidad de la firma, la calidad en que el signatario del documento haya actuado y, en su caso, la identidad del sello o timbre del que el documento público esté revestido.
Esta Apostilla no certifica el contenido del documento para el cual se expidió.
Esta Apostilla se puede verificar en la dirección siguiente: apostille-search.sos.ca.gov/.
**Este certificado no constituye una Apostilla en virtud del Convenio de La Haya de 5 de octubre de 1961 cuando se presenta en un país que no es parte del Convenio. En estos casos, el certificado debe ser presentado a la sección consular de la misión que representa a ese país.**

Sec/State Form NP-40 SAC (rev. 01/2021)

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

# COUNTY OF SAN DIEGO

Ernest J. Dronenburg, Jr.

ASSESSOR/RECORDER/COUNTY CLERK

www.sdarcc.com


ASSESSOR'S OFFICE
1600 Pacific Highway, Suite 103
San Diego, CA 92101
(619) 236-3771 * Fax (619) 557-4056

RECORDER/COUNTY CLERK'S OFFICE
1600 Pacific Highway, Suite 260
San Diego, CA 92101
(619) 238-8158 * Fax (619) 557-4155


| | | |
|---|---|---|
| STATE OF CALIFORNIA | } | CERTIFICATE OF VERIFICATION |
| | } | NOTARY PUBLIC SIGNATURE |
| COUNTY OF SAN DIEGO | } | |

I, Ernest J. Dronenburg, Jr., Assessor/Recorder/County Clerk of the County of San Diego, State of California, having by law a Seal, DO HEREBY CERTIFY that: R. MARINA COLLINS whose name appears on the attached acknowledgment, proof or affidavit, was at the time of taking said acknowledgement, proof or affidavit, an active Notary Public in and for the County of San Diego, in the State of California. The seal affixed thereto appears to be the seal of said Notary Public, and the signature thereon appears to be the signature of said Notary Public.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed My Official Seal, which is the Seal of the Assessor/Recorder/County Clerk.

DATED: November 17, 2022

ASSESSOR / RECORDER / COUNTY CLERK * SAN DIEGO COUNTY, CA *

Ernest J. Dronenburg, Jr.

Ernest J. Dronenburg, Jr.

County Assessor/Recorder/Clerk

By: ______________

DANIELLE DOON, Deputy Clerk

CC610 (09/24/13)

**POWER OF ATTORNEY GRANTED BY MEXICO SPORTS DISTRIBUTION LLC**

In the city of San Diego, California, United States of America, on November 17, 2022 before me, R. Marina Collins, Notary Public for and in the State of San Diego, United States of America, appeared Mr. Román Israel Gómez Castruita (the "Appearing Party"), who stated that his citizenship, age, marital status, occupation and address are as follows:

| | | |
|---|---|---|
| (1) | Citizenship: | Mexican |
| (2) | Age: | 46 years old |
| (3) | Marital Status: | Married |
| (4) | Occupation: | Employed |
| (5) | Address: | Puerta de Bilbao 12, Bosque de Esmeralda, Atizapan de Zaragoza, Estado de México, México. |

and states: That he comes at this time on legal behalf and in the name of **MEXICO SPORTS DISTRIBUTION LLC**, a limited liability company formed under the laws of the State of Delaware, United States of America (hereinafter, "Principal") to grant and confer the following powers of attorney: .

A. In favor of Gerardo Manuel Ramírez Ornelas, Luis Robles Santamarina, Ángel Fabricio Escalante Sánchez, José Juan Sánchez Navarrete, Israel Ernesto Sahagún Morales, Pablo Manuel Ramírez Blumenkron, Gerardo Ramírez Blumenkron, Gerardo Funtanet Brunel, Fernanda Morales Arreola, José María Zúñiga Barajas, Edgar Madrid Soto, José Eduardo Rivera Rosas, Gabriel Gutiérrez Cornejo, Luis Manuel Domínguez Ortiz, Gerardo Zambito Madrigal and Enrique Flores Franco (hereinafter, the "Attorneys in Fact A"), to be exercised jointly or severally, a general power-of-attorney for lawsuits and collections, without any limitation, including all the general powers and special powers that require a special power or clause in

**PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC**

En la ciudad de San Diego, California, Estados Unidos de América, el 17 de noviembre de 2022, ante mí, R. Marina Collins, Notario Público de y para el Condado de San Diego, Estados Unidos de América, compareció el señor Román Israel Gómez Castruita (el "Compareciente"), quien por sus generales manifestó tener la siguiente nacionalidad, edad, estado civil, ocupación y domicilio:

| | | |
|---|---|---|
| (1) | Nacionalidad: | Mexicana |
| (2) | Edad: | 46 años |
| (3) | Estado Civil: | Casado |
| (4) | Ocupación: | Empleado |
| (5) | Domicilio: | Puerta de Bilbao 12, Bosque de Esmeralda, Atizapan de Zaragoza, Estado de México, México. |

y declara: Que comparece en este acto en nombre y representación de **MEXICO SPORTS DISTRIBUTION LLC**, una sociedad constituida conforme a las leyes del Estado de Delaware, Estados Unidos de América (en lo sucesivo, la "Poderdante") para otorgar y conferir los siguientes poderes y facultades:

A. En favor de los señores Gerardo Manuel Ramírez Ornelas, Luis Robles Santamarina, Ángel Fabricio Escalante Sánchez, José Juan Sánchez Navarrete, Israel Ernesto Sahagún Morales, Pablo Manuel Ramírez Blumenkron, Gerardo Ramírez Blumenkron, Gerardo Funtanet Brunel, Fernanda Morales Arreola, José María Zúñiga Barajas, Edgar Madrid Soto, José Eduardo Rivera Rosas, Gabriel Gutiérrez Cornejo, Luis Manuel Domínguez Ortiz, Gerardo Zambito Madrigal y Enrique Flores Franco (los "Apoderados A"), para ser ejercido de manera conjunta o separada, un poder general para pleitos y cobranzas, sin limitación alguna, incluyendo todas las facultades generales y las especiales que conforme a la ley requieran poder o cláusula

LIC. ANTONIO LÓPEZ AGUIRRE NOTARÍA No. 250 DE LA CIUDAD DE MÉXICO



accordance with law, in terms of the first paragraph of article 2554 of the (Mexican) Federal District (Mexico City) Civil Code and its corresponding articles in the Civil Codes for the other States of the United Mexican States, including those set forth in article 2587 of such (Mexican) Federal District (Mexico City) Civil Code, including without limitation, to relinquish the "amparo" process and draw up and file criminal claims, denunciations and accusations and withdraw thereof, to assist with the Attorney General in criminal proceedings, to constitute the Company as a civil party in such proceedings, to grant legal pardon, as well as to settle, arbitrate and articulate and answer depositions.

The authority granted to the Attorneys in Fact A by this power of attorney is not transferable to any other party or entity.

**B.** In favor of José Enrique Uruñuela López, Shaní Mizrahi Villarruel and Alejandro Mayorga Rea (hereinafter, the "Attorneys in Fact B"): (i) to be exercised jointly or severally, a general power-of-attorney for lawsuits and collections, without any limitation, including all the general powers and special powers that require a special power or clause in accordance with law, in terms of the first paragraph of article 2554 of the (Mexican) Federal District (Mexico City) Civil Code and its corresponding articles in the Civil Codes for the other States of the United Mexican States, including those set forth in article 2587 of such (Mexican) Federal District (Mexico City) Civil Code, including without limitation, to relinquish the "amparo" process and draw up and file criminal claims, denunciations and accusations and withdraw thereof, to assist with the Attorney General in criminal proceedings, to constitute the Company as a civil party in such proceedings, to grant legal pardon, as well as to settle, arbitrate and articulate and answer depositions, (ii) to be exercised jointly or severally a general power-of-attorney for acts of administration in terms of the second paragraph of article 2554 of the (Mexican) Federal District (Mexico City) Civil Code and its correlative provisions in the Civil Codes of the states of the United Mexican States, and (iii) to be exercised jointly with another Attorney in Fact B,

especial, en los términos del primer párrafo del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, entre ellas aquellas a las que se refiere el artículo 2587 de dicho Código Civil para el Distrito Federal (hoy Ciudad de México), incluyendo, enunciativa y no limitativamente, la de desistirse del juicio de amparo, la de denunciar hechos delictuosos y presentar querellas y desistirse de ellas, constituirse en coadyuvante del Ministerio Público, constituir a la Sociedad como parte en dichos procedimientos, otorgar el perdón legal así como transigir, comprometer en árbitros y absolver y articular posiciones.

Los Apoderados A no cuentan con facultades de sustitución por lo que las facultades que se les otorga por el presente poder no son transferibles a cualquier otra persona o entidad.

**B.** En favor de José Enrique Uruñuela López, Shaní Mizrahi Villarruel y Alejandro Mayorga Rea (los "Apoderados B"): (i) para ser ejercido de manera conjunta o separada, un poder general para pleitos y cobranzas, sin limitación alguna, incluyendo todas las facultades generales y las especiales que conforme a la ley requieran poder o cláusula especial, en los términos del primer párrafo del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, entre ellas aquellas a las que se refiere el artículo 2587 de dicho Código Civil para el Distrito Federal (hoy Ciudad de México), incluyendo, enunciativa y no limitativamente, la de desistirse del juicio de amparo, la de denunciar hechos delictuosos y presentar querellas y desistirse de ellas, constituirse en coadyuvante del Ministerio Público, constituir a la Sociedad como parte en dichos procedimientos, otorgar el perdón legal así como transigir, comprometer en árbitros y absolver y articular posiciones, (ii) para ser ejercido de manera conjunta o separada, poder general para actos de administración en los términos del párrafo segundo del artículo 2554 del del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades

general power-of-attorney for acts of ownership in terms of the third paragraph of article 2554 (two thousand five hundred and fifty four) of the (Mexican) Federal District (Mexico City) Civil Code and its correlative provisions in the Civil Codes of the states of the United Mexican States.

federativas de los Estados Unidos Mexicanos, poder que podrá ser ejercido de manera individual, y (iii) para ser ejercido de manera conjunta con cualquier otro Apoderado B, poder general para actos de dominio, en los términos del tercer párrafo del artículo 2554 del del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos.

Additionally, Shaní Mizrahi Villarruel will have power to open, close, modify and operate bank and investment accounts and to appoint the individuals who will sign the checks of and operate the same, in accordance with article nine of the (Mexican) General Negotiable Instruments and Credit Operations' Act.

Adicionalmente, Shaní Mizrahi Villarruel tendrá poder para abrir, cerrar, modificar y operar cuentas bancarias y de inversión y para designar a las personas que girarán cheques en y operarán las mismas, de conformidad con lo establecido en el artículo noveno de la Ley General de Títulos y Operaciones de Crédito.

The authority granted to the Attorneys in Fact B by this power of attorney is transferable to any other party or entity.

Los Apoderados B contarán con facultades de sustitución por lo que las facultades que se les otorga por el presente poder podrán ser transferibles a cualquier otra persona o entidad

C. In favor of Román Israel Gómez Castruita and Juan Colín Domínguez (hereinafter, the "Attorneys in Fact C"): (i) to be exercised jointly or severally, a general power-of-attorney for lawsuits and collections, without any limitation, including all the general powers and special powers that require a special power or clause in accordance with law, in terms of the first paragraph of article 2554 of the (Mexican) Federal District (Mexico City) Civil Code and its corresponding articles in the Civil Codes for the other States of the United Mexican States, including those set forth in article 2587 of such (Mexican) Federal District (Mexico City) Civil Code, including without limitation, to relinquish the "amparo" process and draw up and file criminal claims, denunciations and accusations and withdraw thereof, to assist with the Attorney General in criminal proceedings, to constitute the Company as a civil party in such proceedings, to grant legal pardon, as well as to settle, arbitrate and articulate and answer depositions, and (ii) to be exercised jointly or severally a general power-of-attorney for acts of administration in terms of the second paragraph of article 2554 of the (Mexican) Federal District (Mexico City) Civil Code and its correlative provisions in the Civil Codes of the states of the United Mexican States.

En favor de Román Israel Gómez Castruita y Juan Colín Domínguez (los "Apoderados C"): (i) para ser ejercido de manera conjunta o separada, un poder general para pleitos y cobranzas, sin limitación alguna, incluyendo todas las facultades generales y las especiales que conforme a la ley requieran poder o cláusula especial, en los términos del primer párrafo del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, entre ellas aquellas a las que se refiere el artículo 2587 de dicho Código Civil para el Distrito Federal (hoy Ciudad de México), incluyendo, enunciativa y no limitativamente, la de desistirse del juicio de amparo, la de denunciar hechos delictuosos y presentar querellas y desistirse de ellas, constituirse en coadyuvante del Ministerio Público, constituir a la Sociedad como parte en dichos procedimientos, otorgar el perdón legal así como transigir, comprometer en árbitros y absolver y articular posiciones, y (ii) para ser ejercido de manera conjunta o separada, poder general para actos de administración en los términos del párrafo segundo del artículo 2554 del del Código Civil para el Distrito Federal (hoy Ciudad de México) y de sus correlativos en los

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO



The authority granted to the Attorneys in Fact C by this power of attorney is not transferable to any other party or entity.

D. Any of such Attorneys in Fact A, Attorneys in Fact B or Attorneys in Fact C are further empowered to formalize this document for use in the United Mexican States.

The Spanish language which appears in this instrument is the authorized translation of the English language which also appears in this instrument, in all of its parts.

The text of article 2,554 of the Federal District (Mexico City) Civil Code and the corresponding articles in the Civil Codes for the States of the United Mexican States is hereby transcribed:

"*ARTICLE 2,554. In all general powers of attorney for lawsuits and collections it shall be sufficient to state that the power is granted with all the general and the special faculties which require a special clause in accordance with law, in order that they may be considered as conferred without any limitation.*

*In general powers of attorney to administer property, it shall be sufficient to state that they are granted with that character in order for the attorney-in-fact to have all kinds of administrative powers.*

*In general powers of attorney to exercise acts of ownership, it shall be sufficient that they be granted with that character in order for the attorney-in-fact to have all powers of ownership, both with respect to property and in order to take all kinds of steps to defend it.*

*If in the three cases above-mentioned, should it be desired to limit the powers of the attorneys-in-fact, the limitations shall be set out, or the powers shall be special powers of attorney.*

*Notaries shall insert this article in the notarial*

Códigos Civiles de las demás entidades federativas de los Estados Unidos Mexicanos, poder que podrá ser ejercido de manera individual.

Los Apoderados C no cuentan con facultades de sustitución por lo que las facultades que se les otorga por el presente poder no son transferibles a cualquier otra persona o entidad.

**D.** Cualquiera de los mencionados Apoderados A, Apoderados B o Apoderados C, indistintamente, quedan igualmente facultados para protocolizar el presente documento para su uso en los Estados Unidos Mexicanos.

El idioma español que aparece en este instrumento es la traducción autorizada del idioma inglés que también aparece en este instrumento, en todas sus partes.

El texto del artículo 2554 del Código Civil para el Distrito Federal (hoy Ciudad de México), y de los artículos correlativos de los Códigos Civiles de los que integran los Estados Unidos Mexicanos se transcribe a continuación:

"*ARTICULO 2554. En todos los poderes generales para pleitos y cobranzas bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran cláusula especial conforme a la ley, para que se entiendan conferidos sin limitación alguna.*

*En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter para que el apoderado tenga toda clase de facultades administrativas.*

*En los poderes generales para ejercer actos de dominio, bastará que se den con ese carácter para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos.*

*Cuando se quisieren limitar, en los tres casos antes mencionados, las facultades de los apoderados, se consignarán las limitaciones, o los poderes serán especiales.*

*Los notarios insertarán este artículo en los*

5

*copies of powers of attorney which they authorize.*"

MEXICO SPORTS DISTRIBUTION LLC

By: ______________________
Name: Román Israel Gómez Castruita
Title: Member of the Board

*testimonios de los poderes que otorguen.*"

MEXICO SPORTS DISTRIBUTION LLC

Por: ______________________
Nombre: Román Israel Gómez Castruita
Cargo: Miembro del Consejo

GUILLERMO CARRANCO ROMERO NOTARÍA 55 CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS



LIC. GUILLERMO CARRANCO ROMERO NOTARIA 65 CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

## NOTARIAL CERTIFICATION

In order to comply with the provisions of the Protocol on Uniformity of Powers of Attorney which are to be Utilized Abroad which has been signed and ratified by the United States of America and the United Mexican States, the undersigned,

---------A T T E S T S --------

**1.** That Mr. Román Israel Gómez Castruita (hereinafter the "Appearing Party") stated that he acknowledges as his signature which appears on the attached power of attorney.

**2.** That the Appearing Party identified himself to me based on presentation of satisfactory evidence.

**3.** That the records of MEXICO SPORTS DISTRIBUTION LLC which was shown to me, certifies as to the authority of the Appearing Party as Member of the Board of MEXICO SPORTS DISTRIBUTION LLC.

**4.** That the Appearing party represents MEXICO SPORTS DISTRIBUTION LLC on whose behalf the Appearing Party acts, and that such authority is legal and enough to grant the powers of attorney.

**5.** Based on the Certificate of Formation dated as of August 27, 2019, which was shown to me, MEXICO SPORTS DISTRIBUTION LLC is duly organized and legally exists on the date of execution of this document; that the acts for which said power of attorney has been executed are included within the authorized activities of MEXICO SPORTS DISTRIBUTION LLC, a limited liability company in the United States of America.

**6.** That the Appearing Party stated before me, that his authority has not been modified, nor limited, nor revoked.

## CERTIFICACIÓN NOTARIAL

Para dar cumplimiento con las disposiciones del Protocolo sobre Uniformidad del Régimen Legal de los Poderes suscrito y ratificado por los Estados Unidos de América y los Estados Unidos Mexicanos, quien suscribe,

--------C E R T I F I C A---------

**1.** Que el señor Román Israel Gómez Castruita (en lo sucesivo el "Compareciente") reconoció como suya la firma que aparece en el poder anterior.

**2.** Que el Compareciente se identificó plenamente ante mí.

**3.** Que tuve a la vista los registros de MEXICO SPORTS DISTRIBUTION LLC en los que se hace constar que el Compareciente es el miembro del Consejo de MEXICO SPORTS DISTRIBUTION LLC.

**4.** Que el Compareciente representa a MEXICO SPORTS DISTRIBUTION LLC en cuyo nombre y representación actúa el Compareciente y que dicha representación es legítima y suficiente para otorgar los poderes.

**5.** Con base en el Certificado de Formación de fecha 27 de agosto de 2019 que tuve a la vista, se hace constar que MEXICO SPORTS DISTRIBUTION LLC está debidamente constituida y legalmente existente en la fecha de otorgamiento de este poder; que los actos para los cuales este poder fue otorgado están incluidos dentro del objeto social de MEXICO SPORTS DISTRIBUTION LLC, una sociedad de responsabilidad limitada (*LLC*) con sede en los Estados Unidos de América.

**6.** Que el Compareciente me manifestó que las facultades con que comparece no le han sido modificadas, ni limitadas, ni revocadas.

7. That I read this instrument to the Appearing Party and explained its content to him. Once the Appearing Party stated his agreement with the contents of this document, he ratified it, and signed it before me on this date.

7. Que leí el presente documento al Compareciente y le expliqué su contenido. Una vez que el Compareciente manifestó su conformidad con el contenido del presente documento, lo ratificó y firmó ante mí, en esta fecha.

The undersigned notary attests that the Appearing Party, Román Israel Gómez Castruita, identified himself to me on the basis of satisfactory evidence and personally appeared before me with the necessary legal capacity and faculties, as evidenced with the documents submitted, to execute this certification and the power of attorney related hereto.

Yo, la suscrito notario certifico que el Compareciente, Román Israel Gómez Castruita, se identificó plenamente ante mí, y tiene la capacidad legal y facultades suficientes, como se deriva de la documentación comprobatoria presentada, para otorgar la certificación y el poder que antecede.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss:
COUNTY OF SAN DIEGO )

On November 17, 2022, before me, R. Marina Collins, Notary Public, personally appeared Román Israel Gómez Castruita, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

R. MARINA COLLINS
Notary Public - California
San Diego County
Commission # 2370276
My Comm. Expires Aug 9, 2025

[signature]
Notary Public

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

GUILLERMO CARRANCO ROMERO NOTARÍA DE CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

## Estado de California

### Secretario de Estado

Este Certificado no es válido para su uso en ningún lugar dentro de los Estados Unidos de América, sus territorios o posesiones.

**APOSTILLE**

(Convention de La Haye du 5 octobre 1961)

**1. País:** Estados Unidos de América

**El presente documento público**

**2. ha sido firmado por** *Ernest J. Dronenburg, Jr.*

**3. quien actúa en calidad de** *Asesor/Registrador/Secretario del Condado*

**4. y está revestido del sello / timbre de** *Condado de San Diego, Estado de California*

**Certificado**

**5. en** Sacramento, California **6. el día** *21 de noviembre de 2022*

**7. por** el Secretario de Estado, Estado de California

**8. bajo el número** *58299*

**9. Sello / timbre:** **10. Firma:** [Firma ilegible]

[Sello que reza: "EL GRAN SELLO DEL ESTADO DE CALIFORNIA"]

[Aparece texto en el idioma inglés]

[Aparece texto en el idioma francés]

Esta Apostilla certifica únicamente la autenticidad de la firma, la calidad en que el signatario del documento haya actuado y, en su caso, la identidad del sello o timbre del que el documento público esté revestido.

Esta Apostilla no certifica el contenido del documento para el cual se expidió.

Esta Apostilla se puede verificar en la dirección siguiente: apostille.search.sos.ca.gov/

Este certificado no constituye una Apostilla en virtud del Convenio de La Haya de 5 de octubre de 1961 cuando se presenta en un país que no es parte del Convenio. En estos casos, el certificado debe ser presentado a la sección consular de la misión que representa a ese país.

Formato de la Sec/Estado NP-40 SAC (rev. 01/2021)

[Sello que reza: "OFICINA DEL SECRETARIO DE ESTADO"]

SURO CARCAÑO PERITO TRADUCTOR TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX DIRECTUM TRANSLATIONS

22

[Sello que reza: "EL MOTIVO MÁS NOBLE ES EL BIEN PÚBLICO | CONDADO DE SAN DIEGO"]

# CONDADO DE SAN DIEGO

Ernest J. Dronenburg. Jr.
**ASESOR/REGISTRADOR/SECRETARIO DEL CONDADO**
www.sdarcc.com

Sello que reza: "SECRETARIO DEL CONDADO | CONDADO DE SAN DIEGO, CA"]

**OFICINA DEL ASESOR**
1600 Pacific Highway, Suite 103
San Diego, CA 92101
(619) 236-3771 *Fax (619) 557-4056

**OFICINA DEL REGISTRADOR/SECRETARIO DEL CONDADO**
1600 Pacific Highway, Suite 103
San Diego, CA 92101
(619) 238-8158 *Fax (619) 557-4155

ESTADO DE CALIFORNIA )
)
CONDADO DE SAN DIEGO )

CERTIFICADO DE VERIFICACIÓN
FIRMA DEL NOTARIO PÚBLICO

Yo, Ernest J. Dronenburg. Jr. Asesor/Registrador/Secretario del Condado del Condado de San Diego, Estado de California, teniendo por ley un Sello, CERTIFICO POR EL PRESENTE DOCUMENTO que: R. MARINA COLLINS cuyo nombre aparece en el reconocimiento, prueba o declaración jurada, era en el momento de tomar dicho reconocimiento, prueba o declaración jurada, un Notario Público activo en y para el Condado de San Diego, en el Estado de California. El sello que en el aparece es aparentemente el sello de dicho Notario Público, y la firma que en el aparece es aparentemente la firma de dicho Notario Público.

EN TESTIMONIO DE LO CUAL he firmado y colocado Mi Sello Oficial, el cual es el Sello del Asesor/Registrador/Secretario del Condado.

DE FECHA: 17 de noviembre de 2022

[Sello que reza: "ASESOR / REGISTRADOR / SECRETARIO DEL CONDADO | CONDADO DE SAN DIEGO, CA"]

[Firma ilegible]
Ernest J. Dronenburg. Jr.
Asesor/Registrador/Secretario del Condado

Por: [Firma ilegible]
DANIELLE DOON, Secretario Adjunto

[Sello que reza: "OFICINA DEL SECRETARIO DE ESTADO"]

CC510 (09/24/13)

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

23

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

| | |
|---|---|
| [Aparece texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma inglés] | [Aparece texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma español] |

GUILLERMO CARRANCO ROMERO
ESTADOS UNIDOS MEXICANOS
NOTARÍA 60 CIUDAD DE MÉXICO

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

24

2

| [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma inglés] | [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma español] |
|---|---|
| | |

GUILLERMO CARRANCO ROMERO
ESTADOS UNIDOS MEXICANOS
NOTARIA 66 CIUDAD DE MÉXICO

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

25

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARÍA No. 250 DE LA CIUDAD DE MÉXICO

GUILLERMO CARRANCO ROMERO
ESTADOS UNIDOS MEXICANOS
NOTARÍA 55 CIUDAD DE MÉXICO



| [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma inglés] | [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma español] |
| --- | --- |
| | |

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

| [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma inglés] | [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma español] |
|---|---|
| | |

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

27

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MÉXICO



GUILLERMO CARRANCO ROMERO
ESTADOS UNIDOS MEXICANOS
NOTARIA 56 CIUDAD DE MÉXICO

| | |
|---|---|
| [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma inglés] | [Continúa texto de **PODER OTORGADO POR MEXICO SPORTS DISTRIBUTION LLC** en el idioma español] |

MEXICO SPORTS DISTRIBUTION LLC
Por: [Firma ilegible]
Nombre: Román Israel Gómez Castruita
Cargo: Miembro del Consejo

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

GUILLERMO CARRANCO ROMERO
ESTADOS UNIDOS MEXICANOS
NOTARÍA 66 CIUDAD DE MÉXICO

6

| [Aparece texto de **CERTIFICACIÓN NOTARIAL** en el idioma inglés] | [Aparece texto de **CERTIFICACIÓN NOTARIAL** en el idioma español] |
| --- | --- |
| | |

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX
DIRECTUM TRANSLATIONS

LIC. ANTONIO LÓPEZ AGUIRRE NOTARIA No. 250 DE LA CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS



GUILLERMO CARRANCO ROMERO NOTARÍA 66 CIUDAD DE MÉXICO ESTADOS UNIDOS MEXICANOS

| [Continúa texto de **CERTIFICACIÓN NOTARIAL** en el idioma inglés] | [Continúa texto de **CERTIFICACIÓN NOTARIAL** en el idioma español] |
|---|---|
| | |

Un notario público u otro funcionario que llene este certificado verifica únicamente la identidad de la persona que firmó el documento al que se adjunta este certificado, y no la veracidad, exactitud o validez de dicho documento.

ESTADO DE CALIFORNIA )
) ss:
CONDADO DE SAN DIEGO )

El día 17 de noviembre de 2022 ante mí, R. Marina Collins, Notario Público, compareció personalmente Román Israel Gómez Castruita, quién me demostró, sobre la base de evidencia satisfactoria, ser la(s) persona(s) cuyo nombre(s)aparece(n) suscrito(s) en el presente instrumento y quien(es) me reconoció/reconocieron haberlo firmado en su(s) capacidad(es) autorizada(s), y que mediante su(s) firma(s) en el instrumento la(s) persona(s), o la entidad en nombre de la cual actuó(aron) la(s) persona(s), firmó(aron) el instrumento.

Certifico bajo PENA DE PERJURIO de acuerdo con las leyes del Estado de California que el párrafo anterior es verdadero y correcto.

EN TESTIMONIO DE LO CUAL firmo y coloco mi sello oficial.

[Sello que reza: "NNA 1 | EL GRAN SELLO DEL ESTADO DE CALIFORNIA| R. MARINA COLLINS | Notario Público - California, Condado de San Diego | Comisión # 2370276 | Mi Comisión Vence el 9 de Agosto de 2025"]

[Firma ilegible]

Notario Público

DAVID SURO CARCAMO PERITO TRADUCTOR TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX DIRECTUM TRANSLATIONS

TRADUCCIÓN CERTIFICADA

El suscrito perito **David Suro Cárcamo**, autorizado por el **H. Tribunal Superior de Justicia de la Ciudad de México** para ejercer como **Perito Traductor** del idioma español e inglés, conforme se establece en el Acuerdo **16-44/2020**, publicado en el ***Boletín Judicial**, Órgano Oficial del Tribunal Superior de Justicia de la Ciudad de México* **el 8 de marzo de 2021**, No. **11**, **Tomo CC**, registrado en la *Lista de Peritos Auxiliares de la Administración de Justicia* con el **No. 186**, **CERTIFICO** al estampar mi sello y firma autógrafa en cada foja traducida, que el presente documento que consiste en 09 ( -nueve- ) foja(s), es una traducción fiel, completa y fidedigna a mi leal saber y entender del documento fuente que tuve a la vista.
Ciudad de México a 23 de Noviembre de 2022.

DIRECTUM TRANSLATIONS

DAVID SURO CÁRCAMO PERITO TRADUCTOR TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX DIRECTUM TRANSLATIONS

91

LIC. ANTONIO LÓPEZ AGUIRRE
ESTADOS UNIDOS MEXICANOS
NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

B

GUILLERMO CARRANCO ROMERO
ESTADOS UNIDOS MEXICANOS
NOTARIA 65 CIUDAD DE MÉXICO







32

B

PASAPORTE Passport
13602323

Estados Unidos Mexicanos



P MEX G32554181

MIZRAHI VILLARRUEL

SHANI

MEXICANA

19 10 1989

F DISTRITO FEDERAL

13 12 2018 13 12 2028

CUAJIMALPA

P<MEXMIZRAHI<VILLARRUEL<<SHANI<<<<<<<<<<<<<<<
G325541819MEX8910196F2812139<<<<<<<<<<<<<<02

33

LIC. ANTONIO LÓPEZ AGUIRRE ESTADOS UNIDOS MEXICANOS NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

N250

ANTONIO LÓPEZ AGUIRRE

EXPIDO ESTE **QUINTO TESTIMONIO** EN SU ORDEN, EN **TREINTA Y CUATRO** PAGINAS UTILES, DENTRO DE LAS QUE SE INCLUYEN EN SU CASO, COPIAS DE LOS DOCUMENTOS QUE OBRAN EN SU APENDICE Y QUE POR LEY DEBAN REPRODUCIRSE, PARA LOS SEÑORES **ROGELIO ARTURO ISLAS PEREZ**, **JUAN COLIN DOMINGUEZ** y **ROMAN ISRAEL GOMEZ CASTRUITA** A TITULO DE **APODERADOS**.- DOY FE.- CIUDAD DE MEXICO, A **VEINTE DE FEBRERO DEL DOS MIL VEINTICINCO**.

HUSR/bov*

LIC. ANTONIO LÓPEZ AGUIRRE ESTADOS UNIDOS MEXICANOS NOTARIA No. 250 DE LA CIUDAD DE MÉXICO

TJCDMX PODER JUDICIAL CIUDAD DE MÉXICO
RECIBIDO
24 MAR. 2025
NUMERO 27
OFICIALÍA DE PARTES COMÚN PARA JUZGADOS Y SALAS