**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| FOX CORPORATION, FOX MEDIA, LLC, AND FOX SPORTS EN ESPAÑOL, LLC,<br><br>*Plaintiffs*<br><br>v.<br><br>MANUEL ARROYO,<br><br>*Defendant* | Civil Action No. 4:25-mc-02271 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' EXPEDITED MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**

Plaintiffs Fox Corporation, Fox Media, LLC, and Fox Sports En Español, LLC, (the "Plaintiffs" or "Fox") Motion to Compel, Dkt 14, (the "Motion") is designed to inflame rather than deal with Fox's failure to follow the Court's order on limited discovery and the actual facts and law. Fox is literally asking the Court to rewrite the Order's scope of discovery and the number of allowed interrogatories and requests for production.



PLAINTIFFS
4:25-cv-4650
EXHIBIT 50

## TABLE OF CONTENTS

A. Introduction . . . . . . . . . . 4

B. The Oath . . . . . . . . . . 5

C. Deceptive . . . . . . . . . . 6

D. The Relationship . . . . . . . . . 8

E. Arroyo's Documents Relating to His Relationship with MSD . . 10

F. Arroyo's Documents Relating to His Relationship with MSD Through Entities He Controls . . . . . . . . . . 10

G. Boilerplate Objections . . . . . . . . 11

H. Adequate Representation . . . . . . . . 12

I. Specific Discovery . . . . . . . . . 14

J. Scope of Discovery . . . . . . . . . 15

K. Without Waiving the Foregoing . . . . . . . 20

L. What Fox Does Not Challenge . . . . . . . 20

M. Timeliness . . . . . . . . . . 23

N. Exhibits . . . . . . . . . . 28

O. Conclusion . . . . . . . . . . 28

## TABLE OF CITATIONS OF CASES, STATUTES, RULES, AND OTHER AUTHORITIES CASES

*Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 259; 2001 U.S. Dist. LEXIS 6166 ** (M.D. N.C. 2001)* . . . . . 25

*Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156-57; 2009 U.S. Dist. LEXIS 30970 **; 73 Fed. R. Serv. 3d (Callaghan) 427; 2009 LX 55289 (S.D.TX 2009) . . . . . . . . . . 25

*Estates at Kirby Limited Partnership v. Nola Poboys Texas, LLC,* 2023 U.S. Dist. LEXIS 72267 *12; 2023 WL 3035378 (S.D. TX 2023) . . . . . . 14

*Greer v. Lowes Home Ctrs,. Inc.,* 2006 U.S. Dist. LEXIS 5405 *5-6; 2006 WL 220823 (W.D. La. 2006) . . . . . . . . 25

*Harper Macleod Solicitors v. Keaty & Keaty,* 260 F.3d 389, 397 (5th Cir. 2001) 14

*In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487-88 (2d Cir. 2013) 25

*Mitchell Law Firm, L.P. v. Bessie Jeanne Worthy Revocable Trust*, 8 F.4th 417, 420 (5th Cir. 2021) . . . . . . . . 13

*RE/Max Int'l, Inc. v. Trendsetter Realty, LLC,* 2008 U.S. Dist. LEXIS 38101 (SDTX 2008)

*Winograd v. Fowler,* 184 F.3d 816, (5th Cir. 1999) . . . . . 14

## STATUTES

28 U.S.C. § 1746 . . . . . . . . 5

## RULES

Rule 33(b)(4): . . . . . . . . . 25

Rule 60(b)(4) . . . . . . . . . 12-14, 28

## A. Introduction

1. On March 27, 2026, the Court entered a "limited discovery" order, Dkt 13, (the "Order"). The Order's scope of discovery allowed Fox to inquire into the (a) nature of the relationship between Defendant Manuel Arroyo (the "Defendant" or "Arroyo") and Mexico Sports Distribution, LLC ("MSD") and (b) the facts and circumstances of Arroyo's receipt of e-mail service and notice of the SDNY proceedings. The quantity was limited to five interrogatories and fifteen requests for production.

2. Discovery related to Arroyo receiving certain emails is satisfied.

3. Fox's Motion focuses on the first discovery issue related to the nature of the relationship between Arroyo and MSD. The Discovery from Fox deserves scrutiny because Fox actually seeks very little information regarding Arroyo's actual relationship to MSD; rather, Fox's discovery seeks general discovery of MSD and from: "Altener, S.A. de C.V., Grupo Lauman Holding, S. de R.L. de C.V., Media Deportes Mexico, S. de R.L. de C.V., [15] FOX SPORTS MEXICO, Comtelsat, S.A. de C.V., or AFFILIATES," none of whom are parties to the SDNY case. Obviously, Fox is seeking discovery to assist it in the SDNY case.

4. Fox's discovery was sent to Arroyo at 6:47 PM (seven days and two hours after the Court entered the Order) on Good Friday, April 3, 2026. The discovery consisted of **54** interrogatories and **134** requests for production (the "Discovery").

5. Arroyo's First Amended Responses to Discovery are attached hereto as Exhibits A and B.

### B. The Oath

6. Arroyo's oath regarding his answers to the interrogatories has been provided to Fox and is attached hereto as Exhibit C. The oath took some time to coordinate because, in part, Arroyo's Mexico City counsel, who is coordinating communication with Arroyo, was traveling for the past two weeks in London, Spain, and Morocco. Also, Fox was told on April 20 and 22, 2025, that Arroyo was providing his oath and that Mexico City counsel was out of the country, but that we would provide the oath.

7. Further, Arroyo requests that the Court be mindful that Arroyo has complications that Fox does not have, such as different languages, different countries, different cultures, different holidays, and different legal systems. These differences create timeliness issues, but despite these additional challenges, Arroyo has made efforts to fully comply within the 14 days allowed by the Order.

8. Fox claims they cannot rely upon Arroyo's answers to Interrogatories without the oath, which they now have. We understand Fox's concern; Fox Counsel C. Berg has filed numerous declarations in the SDNY case that were not made "under penalty of perjury," a requirement for a declaration. 28 U.S.C. § 1746; *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487-88 (2d Cir. 2013). Specifically, these deficient declarations were relied upon by Judge Rakoff in important and relevant decisions to this case: SDNY Dkt 109, in support of Fox's contempt motion, SDNY Dkt 114, in support of enforcing judgment against Arroyo, and SDNY Dkt 132, in support of contempt. Unlike the SDNY case, Fox has Arroyo's oath on the interrogatory answers. It is unlikely Fox will advise the SDNY that numerous declarations in support of the contempt orders

and the judgment, the same ones before this Court, should not have been considered as evidence, which would result in the contempt orders and judgment being withdrawn.

**C. Deceptive**

9. Fox claims Arroyo is the president of MSD, but does so in a deceptive manner, because the truth is a problem. Fox stated: "Arroyo's representation that he gave up his role as MSD's president in January 2025 is false, as MSD's own submissions in the SDNY Action make clear." Mtn p.8. What makes Fox's claim deceptive is that Fox plays tricks to make their claim about Arroyo. Here it is:

> On September 12, 2025, MSD's Chief Financial Officer filed a declaration in support of MSD's motion to set aside the SDNY's contempt order against it. SDNY Action, ECF No. 77 (Camacho Declaration). Exhibit K to that declaration was a "true and correct copy of MSD's current Amended and Restated Limited Liability Company Agreement." . . . *Id.* ¶ 16. That LLC agreement shows that Manuel Arroyo is MSD's president. . . SDNY Action, ECF No. 77-30 at 10. Taken together, *the declaration of MSD's CFO* and MSD's LLC agreement establish that Arroyo was President of MSD as of September 12, 2025—the date of the declaration of MSD's CFO which provided sworn testimony that the LLC agreement that accompanied the declaration was the current agreement. (Emphasis supplied) Mtn p. 8-9.

Fox makes it sound like MSD's CFO declared Arroyo was MSD's president as of September 12, 2025. In fact, the declaration does not even mention Arroyo, nor does it identify MSD's president.

10. Fox also claims that the MSD LLC Agreement shows Arroyo was MSD's president as of September 12, 2025. Again, no, it does not. This may explain why Fox did not attach SDNY Dkt 77 (Camacho Declaration) and 77-30 (MSD LLC Agreement). See SDNY Dkt. 77 and 77-30 attached hereto as Exhibits D and E, respectively.

11. The MSD LLC Agreement shows on Schedule B that, as of November 10, 2021, Arroyo was the president of MSD. But that is nearly four years before September 12, 2025. As stated in Arroyo's answer to interrogatories, Arroyo was no longer the president of MSD as of January 17, 2025. Attached hereto as Exhibit F is the MSD notification of removal stating that Arroyo is no longer an officer or director of MSD, effective on January 17, 2025, which was seven months before the Fox SDNY lawsuit began. Altener S.A. de C.V. legal representative Alejandro Mayorga Rea executed a notice that stated:

> In accordance with what is set forth in the MSD Bylaws, the sole "member" of MSD is Altener, which owns 100% of the Entity's capital. In addition, in terms of the provisions of clause 15 of the MSD Bylaws, the "member" is empowered to revoke the appointments of the directors and/or administrators (to whom said bylaws refer to as "officers") of MSD at any time.
>
> In regard to the preceding, in this act, and in exercise of the power referred to in the previous paragraph, Altener notifies you that, effective from the date of signing this document, the appointment of Manuel Arroyo Rodríguez ("MAR") as an "officer" of MSD has been revoked. Therefore, as of this date, MAR will not occupy any position in the administration and/or management of MSD (neither that of "officer" nor of "president," nor any other), nor will he retain any power to legally bind MSD.

12. Fox's argument became more ridiculous when it argued that because Arroyo did not mention in a prior response that he was not MSD's president, it must mean he is MSD's president. Mtn p. 9.

13. Fox continued to defy reason by claiming: "Arroyo's self-serving representation that he stopped serving as MSD's President in January 2025 is belied by the record, including MSD's own representations in the SDNY Action." Mtn p. 10. As shown, MSD did not represent that Arroyo was MSD's president on September 12, 2025; that was fabricated by Fox. Further, it is not "self-serving" to state the truth.

### D. The Relationship

14. Fox's issue is that Arroyo's Discovery response did not fit the desired Fox narrative. In the SDNY, Fox portrayed Arroyo as the president of the lone-defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM"), to sanction Arroyo under the contempt order and, eventually, the judgment filed in this Court. But Arroyo was not the president of MDM. See Defendant's Response to Fox's Motion to Stay ¶ 2, Dkt 9.

15. Likewise, in this case, Fox portrayed Arroyo as the president of MSD so they could argue that MSD was representing Arroyo, even though Arroyo was never served or appeared in the SDNY. That position is also problematic because if MSD did represent Arroyo, which they did not, then you would have expected MSD to file an appeal to protect Arroyo, but they did not—an appeal was filed, but not on behalf of Arroyo. Further, Fox's analysis is missing the possibility of a conflict between MSD and Arroyo.

16. Arroyo has answered Fox's legitimate discovery, which is governed by the Order. Arroyo answered that he has an indirect interest in MSD. Specifically, Arroyo owns 99% of Grupo Lauman Holding, S. de R.L. de C.V., which in turn owns 95% of Altener, S.A. de C.V. Altener is MSD's sole member. Arroyo also clarified his relationship to MSD by stating that he does not have voting rights; only Altener does. Arroyo lacks the authority to direct or control the management, operations, or decision-making of MSD, as his interest in MSD is indirect. Since January 2025, Arroyo has no longer served as the president of MSD. See answers to Interrogatory Nos. 1 and 2 and Exhibit F.

17. These answers by Arroyo are consistent with MSD's LLC Agreement, Exhibit E, wherein in section 14 of the Agreement it states: "management of the Company shall be vested in the Member, and those persons appointed by the Member pursuant to Section 15 hereof, if any." We have already discussed that MSD vested management in the persons identified on Schedule B.

18. Section 15 states, in pertinent part:

> The Member may, from time to time as it deems advisable, appoint officers of the Company (each an "Officer") and assign in writing titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member deems otherwise, the assignment of such title shall constitute the delegation to such person the authorities and duties that are normally associated with that office as commonly used for officers of a business corporation formed under the Delaware General Corporation Law . . . The initial Officers are listed on Schedule B attached hereto, which may be amended from time to time by the Member.

The Agreement clearly delegates the management of MSD to the appointed officers, not Altener nor Grupo Laumann. As previously discussed, Schedule B sets forth the officers, of whom Arroyo is no longer one. Therefore, Arroyo has not been responsible for MSD's management since at least January 17, 2025.

19. And, as previously discussed, Arroyo's management authority over MSD was revoked: "the appointment of Manuel Arroyo Rodríguez ("MAR") as an "officer" of MSD has been revoked. Therefore, as of this date, MAR will not occupy any position in the administration and/or management of MSD (neither that of "officer" nor of "president," nor any other), nor will he retain any power to legally bind MSD." See Exhibits F and G.

### E. Arroyo's Documents Relating to His Relationship with MSD

20. The documents relating to Arroyo's relationship with MSD from January 1, 2025, have been produced; they consist of the LLC Agreement, which Fox has had since September 12, 2025, and the Notification of Removal dated January 17, 2025.

21. Arroyo has also responded to RFPs Nos. 1-2, "none" related to the request as it pertains to MSD.

### F. Arroyo's Documents Relating to His Relationship with MSD Through Entities He Controls

22. There is a lot to unpack in Fox's claim above. First, there is the naked fact that Fox is just bloviating without any authority or any facts; Fox wants to wish it into existence. Fox has the LLC Agreement that shows MSD has appointed directors and officers to manage it, and that the sole member is Altener. Arroyo has testified in the interrogatory answers that he has a direct interest in Grupo Laumann and that Grupo Laumann owns 95% of Altener. But none of that gets around the fact that the management of MSD is controlled by its directors and officers, not Altener.

23. The more direct issue for Fox is that the Order does not give them the latitude to luxuriate in never-ending discovery from MSD, Altener, Grupo Laumann, and all of their alleged affiliates. The discovery only allowed five interrogatories and fifteen requests for production. The current discovery propounded by Fox totals 54 interrogatories and 134 requests for production. Fox's Motion never adequately addresses this problem.

### G. Boilerplate Objections

24. Fox does not provide much in the way of showing what objections by Arroyo constitute boilerplate objections. You might say Fox's argument is boilerplate. Regardless, Arroyo's objections were specific. For example:

> Defendant objects to this Request as being overly broad and unduly burdensome because the Court's order states that *Fox may only inquire into the nature of the relationship between Defendant and MSD. The interrogatory is seeking "the complete control and ownership structure of" MSD, which is beyond the scope of the Order.*
>
> Defendant objects to this Request as being overly broad and unduly burdensome because *the Court's order states that Fox may only inquire into the nature of the relationship between Defendant and MSD. The interrogatory is seeking information concerning MSD's "parents, subsidiaries, and any AFFILIATES," which is beyond the scope of the Order.*
>
> Defendant objects to this Interrogatory as being overly broad and unduly burdensome to the extent it seeks *"each and every"* in that it would require Defendant to search for every single document related to the subject matter of this Interrogatory, regardless of the relevance to any claim or defense in this case.
>
> Defendant also objects to this Interrogatory because it is unduly burdensome and/or places an undue expense on Defendant that substantially outweighs any likely benefit to Plaintiffs, taking into consideration the needs of the case, the amount in controversy, the parties' resources, *the importance of the jurisdictional issues at stake in this litigation, and the importance of the information sought in resolving the jurisdictional issues in this lawsuit*. See Fed. R. Civ. P. 26(b)(2)(iii).
>
> Defendant objects to this Request as being overly broad and unduly burdensome *because the Court's order states that Fox may only inquire into the nature of the relationship between Defendant and MSD. The interrogatory is seeking information concerning "any indirect INTEREST YOU have or had in Mexico Sports Distribution, LLC through INTERESTS in Altener, S.A. de C.V., Grupo Lauman Holding, S. de R.L. de C.V., Media Deportes Mexico, S. de R.L. de C.V., FOX SPORTS MEXICO, Comtelsat, S.A. de C.V., or AFFILIATES," which is beyond the scope of the Order.*

> Defendant objects to this Request because it *exceeds the number of permitted interrogatories allowed by the Order.* [The number of discovery requests was kept count of in the request itself—so this objection appears general, it is actually specific because of the discovery count in the request.
>
> Defendant objects to this Request as being not proportional to the needs of the case, overly broad and unduly burdensome to the extent it seeks *"all documents and communications"* in that it would require Defendant to search for every single document related to the subject matter of this Request, regardless of the relevance to any claim or defense in this case. Defendant also objects to this Request because it is unduly burdensome and/or places an undue expense on Defendant that substantially outweighs any likely benefit to Plaintiffs, taking into consideration the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in this litigation, and the importance of the requested documents in resolving the issues in this lawsuit. See Fed. R. Civ. P. 26(b)(2)(iii).
>
> Defendant objects to this Request as being overly broad and unduly burdensome *because the Court's order states that Fox may only inquire into the nature of the relationship between Defendant and MSD. The request is seeking general information concerning MSD and the SDNY action.*
>
> *The meaning of "indirectly" is not directly defined in Plaintiff's Definitions but appears to be ownership "as sole owner or jointly with others, either of record or beneficially, including as a partner (general or limited), limited liability member, fiduciary, equity or debt holder, or demand deposit holder."*

Arroyo's objections were not boilerplate.

### H. Adequate Representation Discovery

25. Plaintiffs argued that jurisdictional discovery was necessary to confirm that "Arroyo was adequately represented by MSD [in the SDNY] when it litigated the same issues relevant to" Arroyo's Rule 60(b)(4) motion and, thus, Arroyo should be estopped from re-litigating those issues. Mtn p. 11. This is Fox's res judicata defense, which does not apply to a Rule 60(b)(4) motion.

26. The point of Rule 60(b)(4) is to void an invalid judgment. If the judgment is invalid, it cannot support a res judicata defense. In a case in which a judgment is void and properly vacated under Rule 60(b)(4), the lack of the court's jurisdiction "robbed its judgment of preclusive effect." *Mitchell Law Firm, L.P. v. Bessie Jeanne Worthy Revocable Trust*, 8 F.4th 417, 420 (5th Cir. 2021).

27. Fox claims that because the SDNY court entered an order permitting email service on a Mexican citizen, Arroyo, that service was proper. Fox's reasoning is that because another SDNY non-party, MSD, a Delaware company, made an appearance and various arguments before the SDNY, Arroyo's jurisdictional objection as a Mexican citizen is barred by res judicata if he was adequately represented. Apparently, Fox plans to make a novel argument that MSD could have represented Aroyo but did not or did not competently. This is not res judicata.

28. Fox uses its res judicata argument as a pretense to discover Arroyo's attorney-client privileged documents, to harass Arroyo with discovery (one example, 54 interrogatories and 134 requests for production), and to discover information not related to Arroyo's relationship with MSD or to the alleged service of the SDNY documents on Arroyo. Arroyo has completely provided all legitimate discovery, along with information about who controls MSD.

29. Arroyo has shown that Fox's res judicata argument is not well taken for several reasons. One significant reason is that the registration court, the Court here, is not bound by the rendering court's findings on jurisdiction:

> We decline to extend full faith and credit principles to cases like this one involving the enforcement of a federal judgment by another federal court. We begin our analysis by reiterating the power of a court of registration to inquire into the jurisdiction of the rendering court before enforcing the rendering court's judgment. *See 22 Indus*., 629 F.2d at 732 ("When, in an enforcement proceeding, the validity

> of the judgment is questioned on this ground [lack of personal jurisdiction], the enforcing court has the inherent power to void the judgment[.]" (citing *Baldwin*, 283 U.S. 522 at 525)).
>
> *Harper Macleod Solicitors v. Keaty & Keaty,* 260 F.3d 389, 397 (5th Cir. 2001).

30. Res judicata in jurisdiction cases is not typically applicable unless the challenging party was before the court "when the order in question was entered and had notice of it and had a full and fair unimpeded opportunity to challenge it, and the court's jurisdiction, by appeal. . . . Thus, '[t]he question is not whether the issue of subject matter was actually litigated, but instead whether the parties had the opportunity to raise the question.'" *Winograd v. Fowler,* 184 F.3d 816, (5th Cir. 1999). Here, Arroyo had no opportunity to raise the question of jurisdiction in the SDNY.

31. A Rule 60(b)(4) challenge is to void an invalid judgment. As the cited law shows, an invalid judgment does not have a preclusive, or res judicata, effect: "the 2019 Order was not rendered by a court of competent jurisdiction, and such, has no *res judicata* effect." (Emphasis in original) *Estates at Kirby Limited Partnership v. Nola Poboys Texas, LLC,* 2023 U.S. Dist. LEXIS 72267 *12; 2023 WL 3035378 (S.D. TX 2023).

**i. Specific Discovery**

32. RFP No. 3, per Fox's Motion, p. 14: "seeks documents and communications relating to Arroyo's involvement with *the present action, and a separate action in this district* in which Plaintiffs challenge Arroyo's fraudulent transfer of real property to evade judgment enforcement." That is not within the Order's scope of discovery.

33. RFP No. 4, "seeks documents and communications relating to ***any*** interest Arroyo has in MSD, directly or indirectly." First, Arroyo has answered this in his interrogatory answers. The real issue is Fox's argument, which is not fact based: Arroyo's "interest empowers him to exercise exclusive control over the entities between him and MSD—and thus over MSD itself." This has already been shown not to be true. MSD is under the management of officers and directors who control MSD's actions. "The notion that Arroyo lacks practical control over MSD is a fiction. Because he exercises control of MSD through his interactions with intermediary entities." Again, this argument is simply made up. Fox wants Arroyo in control over MSD but the documents say otherwise.

34. FRP Nos. 7-8, seeks "documents and communications relating to Arroyo's relationship with Fox Sports Mexico." Fox then makes, again, another wish that it offers as fact: "plainly relevant to Arroyo's relationship with MSD because MSD's existence is inextricable from Fox Sports Mexico." There is no proof that MSD's existence is inextricable from what Fox describes as "Fox Sports Mexico." Fox Sports Mexico is not a legal entity; it is a tradename at best. Fox finishes this argument with the confounding statement: "Arroyo's interactions with Fox Sports Mexico are therefore indistinguishable from his interactions with MSD." This is just made up, and Fox provides no support other than its breathless, conclusory claims.

### J. Scope of Discovery

35. Unfortunately, Fox's discovery greatly exceeds the Order's scope of discovery. Fox is seeking information about six other entities, Fox's trademarks, this lawsuit, the suit against Arroyo's sister, MSD's assets, among other discovery that is beyond the defined scope of

discovery. Again, keeping in mind why discovery was permitted, Fox claimed it required "limited discovery" to defend the alleged service of process on Arroyo in support of the SDNY Judgment.

36. Fox's interrogatories (Nos. 2, 4) and requests for production (Nos. 1-4, 8, 14) seek information concerning "[1] Altener, S.A. de C.V., [2] Grupo Lauman Holding, S. de R.L. de C.V., [3] Media Deportes Mexico, S. de R.L. de C.V., [4] FOX SPORTS MEXICO, [5] Comtelsat, S.A. de C.V., and [6] AFFILIATES." These discovery requests seek answers about seven different entities, which grossly multiply the number of interrogatories and requests for production sought by each request. This is not within the scope of discovery, nor is it reasonably calculated to lead to admissible evidence regarding MSD's relationship with Arroyo. Arroyo has fully produced discovery concerning his relationship with MSD and Fox has had MSD's LLC Agreement since at least last September.

37. Aside from the voluminous discovery in excess of the Order's stated limitations and the non-MSD entities that were not included in the Order's scope of discovery, Fox exceeds the scope of discovery in other ways. Interrogatory No. 3 seeks information about whom Arroyo may communicate with related to the SDNY case. This is not within the scope of discovery, nor is it reasonably calculated to lead to admissible evidence regarding MSD's relationship with Arroyo or to the alleged service on Arroyo of the SDNY documents.

38. Interrogatory No. 4 seeks "any titles, positions, and roles YOU hold, or have held, including the responsibilities, authority, and reporting structure associated with it, and the dates when those positions were held, . . . Altener, S.A. de C.V., Grupo Lauman Holding, S. de R.L. de C.V., Media Deportes Mexico, S. de R.L. de C.V., FOX SPORTS MEXICO,

and Comtelsat, S.A. de C.V.," This is not within the scope of discovery nor is it reasonably calculated to lead to admissible evidence regarding MSD's relationship with Arroyo or to the alleged service of the SDNY papers on Arroyo. MSD's LLC Agreement sets forth that MSD is managed by its officers and directors, not Altener, not Grupo Laumann, and not by Arroyo since January 2025.

39. Interrogatory No. 5 seeks "any INTEREST YOU have in the FOX SPORTS TRADEMARKS, including when such an interest began, ended, or is expected to end." Trademarks are not within the scope of discovery, nor is it calculated to lead to admissible evidence regarding MSD's relationship with Arroyo or to the alleged service of the SDNY papers on Arroyo.

40. The requests for production seek documents that are not even remotely connected to the defined scope of discovery, much less reasonably calculated to lead to admissible evidence regarding MSD's relationship with Arroyo:

41. No. 3 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO the TEXAS ACTIONS."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MDS or the receipt of email from Christopher Berg.

42. No. 7 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR title, role, responsibilities, authority, or involvement in the management, direction, or CONTROL of FOX SPORTS MEXICO."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MDS or the receipt of email from Christopher Berg. Fox claims that because MSD is one of the owners of Fox Sports Mexico, a

non-party here and in the SDNY case, Fox is entitled to discovery regarding the tradename Fox Sports Mexico. A position that makes no sense.

43. No. 8 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO any INTEREST YOU have or had in FOX SPORTS MEXICO."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MSD or the receipt of email from Christopher Berg. Arroyo has already fully disclosed his relationship with MSD. Fox Sports Mexico, tradename, is not within the scope of discovery per the Order.

44. No. 9 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR INTEREST in any trademarks that contain the word 'Fox,' including any of the FOX SPORTS TRADEMARKS."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MDS or the receipt of email from Christopher Berg.

45. No. 10 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO YOU authorizing, directing, participating in, or CONTROLLING litigation RELATED TO any trademarks that contain the word 'Fox,' including any of the FOX SPORTS TRADEMARKS, in Mexico or the United States, including in the SDNY ACTION."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MDS or the receipt of email from Christopher Berg. It is also a bald request for attorney-client records.

46. No. 12 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO the transfer of any ASSETS to or from Mexico Sports Distribution, LLC."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MSD or the

receipt of email from Christopher Berg. However, in the SDNY, Fox is claiming MSD has moved assets, which is not an issue before this Court or contemplated by the Order as discoverable.

47. No. 13 requests "All DOCUMENTS and COMMUNICATIONS RELATING TO any publication, article, or media coverage concerning the SDNY ACTION, including the PRESS RELEASE."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MDS, or the receipt of emails from Christopher Berg.

48. No. 14 requests "DOCUMENTS sufficient to show all assets, compensation, monies, property, or any other benefit received by YOU from Mexico Sports Distribution, LLC."—This has nothing to do with service in the SDNY lawsuit, discovery relating to Arroyo's relationship with MDS or the receipt of email from Christopher Berg. Regardless, Arroyo answered none and he has shown that he was not an officer or director during the relevant time period.

49. These enumerated discovery requests are not arguably within the Court's Order's definition of the scope of discovery. And, not only is the discovery sought beyond the scope, it is beyond the pale of good faith discovery. Fox is seeking discovery about communications in this case and another case in Texas. What does that have to do with an SDNY jurisdiction issue? Fox also asks for MSD's assets. Fox also asks about media publications. These last two are potential issues in the SDNY, but have nothing to do with jurisdiction. But Fox asked anyway, knowing that their discovery was in bad faith.

### K. Without Waiving the Foregoing

50. Fox does not like that Arroyo attempted to show what was being provided and whether a response was withheld based on an objection(s). Arroyo has amended his discovery responses by removing the non-waiver of objection language. See Exhibits A and B.

### L. What Fox Does Not Challenge

51. First, Fox addresses its outrageous volume of discovery sent to Arroyo in a conclusory side-swipe fashion. Claiming that Arroyo considered each "clarifying instruction" as an interrogatory/request. Fox did not provide clarifying instructions. Fox sought excessive discovery through multiple interrogatories/requests, which it now claims were just instructions.

52. The Order limited discovery to five interrogatories and fifteen requests for production. Yet, Fox sent 54 interrogatories and 138 requests for production. Arroyo's responses tracked Fox's individual/discrete subpart discovery by indicating parenthetical numbers within the individual discovery. For example, Fox reached five interrogatories by Interrogatory No. 1, as follows:

> **1.** Describe the complete [1] control and [2] ownership structure of Mexico Sports Distribution, LLC, including YOUR direct or indirect ownership, [3] voting rights, and [4] authorities to direct or control the management, operations, or decision-making of Mexico Sports Distribution, LLC, its [5] parents, subsidiaries, and any AFFILIATES thereof, including any changes thereto, if any, since January 1, 2025.

Arroyo fully answered Interrogatory No. 1, which was a five-part interrogatory, based on its discrete subparts. In fact, Arroyo also answered Interrogatories Nos. 2, 3, and 4 related to his alleged relationship with MSD, which together exceed five answered interrogatories.

53. Interrogatory No. 2 shows that Fox is not merely providing helpful instructions in its quest for a single answer.

> **2.** [6] Describe each and every INTEREST YOU have or had in Mexico Sports Distribution, LLC—including [7] voting rights, [8] ownership interest, [9] right to receive compensation or distributions, or [10] debt obligations—directly or indirectly, [11] including any indirect INTEREST YOU have or had in Mexico Sports Distribution, LLC through INTERESTS in [12] Altener, S.A. de C.V., [13] Grupo Lauman Holding, S. de R.L. de C.V., [14] Media Deportes Mexico, S. de R.L. de C.V., [15] FOX SPORTS MEXICO, Comtelsat, S.A. de C.V., or [16] AFFILIATES thereof—and the [17] manner in which YOU held that INTEREST(s), the dates it was held, and any changes thereto since January 1, 2025.

The interrogatory starts with asking about "interest" in MSD (Fox defined "interest" as including "any power, authority, responsibility, or obligations related to any ENTITY, as well as any legal, equitable, beneficial, or contingent direct or indirect interest in any ASSET" [the definition of "interest" alone creates 3-6 discovery requests]. Voting rights are different from ownership interests, which are different from the right to receive compensation, and different from debt obligations. Then the interrogatory moves on to require "any power, authority, responsibility, or obligations related to any ENTITY, as well as any legal, equitable, beneficial, or contingent direct or indirect interest in any ASSET" in (1) Altener, S.A. de C.V., (2) Grupo Lauman Holding, S. de R.L. de C.V., (3) Media Deportes Mexico, S. de R.L. de C.V., (4) FOX SPORTS MEXICO, (5) Comtelsat, S.A. de C.V., or (6) AFFILIATES.

54. Fox reached fifteen requests for production in Request No. 1:

> 1. [1] All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR title, [2] role, [3] responsibilities, [4] authority, or involvement in the [5] management, [6] direction, [7] operation, or [8] CONTROL of Mexico Sports Distribution, LLC or its AFFILIATES, including without limitation, Media Deportes Mexico, S. de R.L. de C.V., [9-16] Altener S.A. de C.V., [17-24] Comtelsat, S.A. de C.V., [25-32] FOX SPORTS MEXICO, and [33-40] Grupo Lauman Holding, S. de. R.L. de C.V.

55. Arroyo has fully and completely answered all legitimate discovery within the scope of discovery defined by the Order. Arroyo has provided information about his relationship with MSD since January 2025 (which is only indirect ownership and no management position), and he has provided the emails he received from Fox's counsel regarding the SDNY.

Another example of the burdensome discovery is:

> 3. All DOCUMENTS and COMMUNICATIONS RELATING TO the TEXAS ACTIONS, including YOUR COMMUNICATIONS with Mexico Sports Distribution, LLC or its AFFILIATES, including without limitation, Media Deportes Mexico, S. de R.L. de C.V., Altener S.A. de C.V., Comtelsat, S.A. de C.V., FOX SPORTS MEXICO, and Grupo Lauman Holding, S. de. R.L. de C.V., or any attorney, agent, employee, or representative acting on behalf of Mexico Sports Distribution, LLC or its AFFILIATES.

What does providing Fox with information about the Texas cases have to do with the SDNY jurisdiction issue or Arroyo's relationship with MSD? We understand that Fox would like Arroyo to provide inside information on this case and the other Texas case, but that is privileged and should never have been asked.

56. Likewise, Arroyo should not have to produce a privilege log for discovery that clearly should never have been asked because it is an outright request for attorney-client privileged material. Specifically, Fox sued MDM on August 15, 2025, in the SDNY; Fox's discovery is seeking information specifically from the initiation of litigation forward. The expense and burden for an otherwise unnecessary privilege log should not be incurred to satisfy Fox's vanity and illegitimate discovery requests. If the Court finds a privilege log is warranted, Arroyo requests that same relate only to Arroyo acting through MSD and only before August 15, 2025.

57. Arroyo has provided evidence that Arroyo was not an officer or director of MSD after January 2025. And, as shown above, the MSD LLC Agreement states that all responsibility, authority, involvement, management, direction, operation, and control are delegated to its directors and officers, which does not include Arroyo.

58. Also, Fox does not address RFP Nos. 9-11. These Fox requests had nothing to do with the Order's limited discovery, as well as several others. But the point is, they asked Arroyo to provide irrelevant documents anyway. RFP No. 9 had to do with trademark ownership; and RFP No. 10 had to do with any litigation of Fox trademarks. RFP No. 11 sought Arroyo's documents authorizing MSD to participate in the SDNY, the answer provided was none.

**M. Timeliness**

59. Fox complains that the Arroyo Response to Discovery was untimely because it was received on April 20, 2026, not April 17, 2026. April 18-19 was a weekend.

60. On April 6, 2026, when the Discovery was first reviewed by the undersigned, the first substantive action was to calculate the answer date and docket the same. The undersigned calculated 14 days, which landed on Saturday, April 18; thus, Monday, April 20, 2026, was the docketed answer date; it was entered in the undersigned's calendar, the case's firm calendar, and the client was advised of the same.

61. The initial Discovery response was drafted the week of April 6 (first draft done that day and shared with the client), which included objections and preliminary answers/responses to

the Discovery. On April 9, 2026, the undersigned met with the client's Mexico City counsel in Dallas, Texas, and discussed the answers and responses to the Discovery.

62. On April 10, 2026, another draft of Discovery answers/responses/objections was sent to the client for review.

63. On Wednesday, April 15, 2026, Mexico City counsel emailed that additional discovery answers/responses would be provided later that day or the next. That afternoon, the undersigned replied that "this weekend or early Monday is good." Again, the belief was that the Discovery was due on April 20, 2026.

64. On April 20, 2026, the final answers and responsive documents were received, the Discovery responses were revised, and the Discovery responses were served on Fox's counsel.

65. Fox claims the Discovery was due on April 17th, not the 20th. Fox appears to be correct in its date calculation.

66. The untimeliness of the Discovery response was based on a mistake in calculating the due date. The calculation that led to April 20 as the due date was a mistake, inadvertent, and not in bad faith.

67. The general rule is that untimely objections are waived. However:

> "waiver is not automatic; this Court has discretion to determine whether good cause exists to preclude waiver. One factor frequently considered is whether the party that failed to object timely to the request for production of documents acted in bad faith. *See, e.g., RE/MAX,* 2008 U.S. Dist. LEXIS 38101, 2008 WL 2036816, at *5 ("Courts examine the circumstances behind the failure to file a timely response to determine 'whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance'; consider subsequent actions by the party to ascertain whether

> 'it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner'; and take into account any resulting prejudice and the need to preserve the integrity of the rule; and may consider any lesser appropriate sanction. [citations omitted]"); *Scaturro v. Warren and Sweat Mfg. Co., Inc*., 160 F.R.D. 44, 46 (M.D. Pa. 1995)("Rule 34 does not by its terms provide that objections will be deemed waived; rather a waiver appears to be more in the nature of a sanction for egregious conduct."); *Ritacca v. Abbott Laboratories,* 203 F.R.D. 332, 335 (D.C. Ill. 2001)("*Acknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver*."). (Emphasis supplied)
>
> *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C*., 258 F.R.D. 149, 156-57; 2009 U.S. Dist. LEXIS 30970 **; 73 Fed. R. Serv. 3d (Callaghan) 427; 2009 LX 55289 (S.D.TX 2009).
>
> Rule 33(b)(4): Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

68. There is no bad faith here, just a "one-day" mistake in calculating the due date, which resulted in a single business-day delay. In a similarly situated case, the district court found that a "mere four days (including a weekend)" did not waive the responding party's objections. *Greer v. Lowes Home Ctrs,. Inc*., 2006 U.S. Dist. LEXIS 5405 *5-6; 2006 WL 220823 (W.D. La. 2006).

69. Another case found a 30 day delay to be excusable:

> the Court finds that this violation was not egregious because there has not been a history of delay or other bad faith, that defendants acted quickly in making their position known concerning the confidentiality of documents, and defendants promptly filed a motion for a protective order. Plaintiffs have not been substantially hindered or delayed as a result of defendants' initial failure to set out the privilege objection in the discovery responses.
>
> *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.,* 200 F.R.D. 255, 259; 2001 U.S. Dist. LEXIS 6166 ** (M.D. N.C. 2001).

70. The *Enron* court reviewed a multi-factor test to determine whether good faith exists and a waiver should be denied:

> "(1) the length of the delay or failure to particularize; (2) the reason for the delay or failure to particularize; (3) whether there was any dilatory or bad faith action on the part of the party that failed to raise the objection properly; (4) whether the party seeking discovery has been prejudiced by the failure; (5) whether the document production request was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party." *Hall v. Sullivan,* 231 F.R.D. at 474. Regarding the fifth factor, the court noted that it may be "assisted by the cost-benefit balancing factors identified in Rule 26(b)(2)." Id. at n. 2.
>
> *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C*., 258 F.R.D. at 157.

71. Factor (1) the length of the delay: Three days, including a weekend. This was an inadvertent mistake in calculating the due date; it is not evidence of defiance or a strategy of noncompliance.

72. Factor (2) the reason for the delay: A simple one-day miscalculation of the due date, which landed on a Saturday, resulting in the following Monday as the due date.

73. Factor (3) whether there was any dilatory or bad faith action on the part of the party that failed to raise the objection properly: None. In fact, the Discovery response was in fileable condition by Wednesday, April 15th.

74. Factor (4) whether the party seeking discovery has been prejudiced by the failure: there is no prejudice to Fox. Fox makes two arguments that Fox claims support prejudice. Mtn p. 23. Fox notes the Court's 45-day deadline, which has now been stayed, and Arroyo supported the same. The second is Fox's claim: "despite Plaintiffs' prompt effort to complete discovery within

that period." Plaintiff was not prompt. The discovery at issue was served more than seven days after the Court entered the Order, and it was sent after business hours on Good Friday—these are signs of dirty tricks, not promptness.

75. Factor (5) whether the document production request was properly framed and not excessively burdensome: the Fox Discovery was not properly framed. The Discovery Order limited the interrogatories to five; Fox asked 54 interrogatories. The Discovery Order limited the requests for production to fifteen; Fox had 134 requests. Further, the Discovery was limited by Order to Arroyo's relationship with MSD and to service of the SDNY papers on Arroyo, but Fox sought information on other companies, entities, and even non-entities: "Altener, S.A. de C.V., Grupo Lauman Holding, S. de R.L. de C.V., Media Deportes Mexico, S. de R.L. de C.V., FOX SPORTS MEXICO, Comtelsat, S.A. de C.V., or AFFILIATES." Fox has also sought clearly privileged material, discovery of trademarks, assets, the current litigation, another lawsuit in the SDTX, and other irrelevant issues discussed in the body of this response.

76. In a case cited by Fox, *RE/Max Int'l, Inc. v. Trendsetter Realty, LLC,* 2008 U.S. Dist. LEXIS 38101 (SDTX 2008), the court found that despite a delay of 101 days in responding to discovery: "Some courts have allowed untimely discovery objections even in the absence of a good-cause showing. The basis is a court's 'discretion to decline to compel production of requested documents even if a timely objection has not been made '. . . when the request far exceeds the bounds of fair discovery." *Id.* at *17-18. The *RE/Max* court also found:

> the court refused to compel responses to improper discovery requests despite the fact that more than a year had passed since the requests had been made, finding that the requests far exceeded the bounds of fair discovery. The court refused to compel

> discovery of three categories of requests: first, a request for "all documents concerning oral communications defendants had respecting plaintiffs' finances," because "plaintiffs have cast a wide net that is guaranteed to snare privileged material"
>
> *Id.* at *18-19.

77. As shown herein, Fox has done the same by casting a wide net that guarantees privileged material will be snared. Further, the definition of “fair discovery” in this instance has been defined by the Court’s Order, which did not contemplate the discovery of assets, trademarks, financial information, other litigation, unrelated parties, among other irrelevant topics.

78. Factor (6) whether waiver would impose an excessively harsh result on the defaulting party: yes. As shown in response to factor 5, a waiver would subject Arroyo to 54 interrogatories, not five; 134 requests, not fifteen, and discovery of numerous companies, which is outside the scope of the discovery as defined in the Order. Like the response to five above, the voluminous Fox discovery into issues beyond the Court’s Order is excessively harsh and would reward Fox for its abusive discovery as detailed herein.

**N. Exhibits**

79. All exhibits attached hereto are true and correct copies of the originals and incorporated herein by reference.

**O. Conclusion**

80. The Court should deny Fox’s Motion. Fox has abused the Court’s Order by seeking discovery well outside the boundaries of what is necessary to establish Arroyo’s relationship to MSD and service of the SDNY papers on Arroyo. Arroyo has provided the Notification of Removal

showing Arroyo is no longer the president of MSD. He also provided the same information in answer to interrogatories. He has pointed out that the MSD Agreement, which Fox has had since September 12, 2025, shows Arroyo is not managing or otherwise governing MSD. Arroyo has fully complied with the Court's Order on the limited discovery.

81. Fox's claim of res judicata is not applicable in a Rule 60(b)(4) challenge to the validity of a judgment. Regardless of whether discovery shows Arroyo did not exercise control over MSD (which is what it shows) or whether, as Fox argues, Arroyo had control, it is irrelevant to this Court's future analysis of jurisdiction. If the SDNY did not have jurisdiction, then the judgment against Arroyo is invalid, and an invalid judgment has no res judicata effect. The discovery into Arroyo's alleged control over MSD's counsel is not relevant.

82. Following the resolution of this discovery dispute, the Order allows Fox to take Arroyo's deposition for five hours. As shown herein, Fox has already abused the boundaries of the limited discovery order, and as clarified in this Response, the inquiry into the permitted discovery is limited. Arroyo requests that the Court amend the Order for Arroyo's deposition to no more than 30 minutes.

Dated: May 4, 2026.

Respectfully submitted,

By: /s/Steven R. Shaver
Steven R. Shaver
Texas Bar No. 18136550
sshaver@rrspllc.com
Marcos G. Ronquillo
Texas Bar No. 17226000
mgronquillo@fjrpllc.com

Riney Ronquillo Soule PLLC
5420 LBJ Freeway, Suite 220
Dallas, Texas 75240
(214) 461-1206 (Telephone)
(214) 461-1210 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I certify that on May 4, 2026, I electronically filed the foregoing using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

By: /s/Steven R. Shaver
Steven R. Shaver

**28 USC § 1746 DECLARATION OF STEVEN R. SHAVER**

I declare under penalty of perjury that the foregoing facts set forth in the Response ¶ ¶ 4, 6-8, 15, 16, 20, 60-66, 68, 71-73 are true and correct. Further, that all exhibits are true and correct. Executed on May 4, 2026.

By: /s/ Steven R. Shaver
Steven R. Shaver