UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOX CORPORATION, et al.,<br><br>Plaintiffs,<br><br>-v-<br><br>MEDIA DEPORTES MEXICO, S. de R.L. de C.V.,<br><br>Defendant. | 25-cv-6703 (JSR)<br><br>OPINION & ORDER |

JED S. RAKOFF, U.S.D.J.:

On September 19, 2025, following a two-day evidentiary hearing, the Court entered a "bottom-line" Order denying the motion of non-party Mexico Sports Distribution LLC ("MSD") to set aside for want of personal jurisdiction the Court's Order of August 29, 2025, holding MSD and two other non-parties in civil contempt. See ECF No. 95. This Opinion sets forth the reasons for the Court's September 19 Order.[1]

I. Procedural History

Plaintiffs Fox Corporation, Fox Media LLC, and Fox Sports En Español LLC commenced this action on August 14, 2025. Plaintiffs' Complaint arises out of alleged breaches of an agreement under which a Fox Corporation affiliate assigned to defendant Media Deportes Mexico, S. de R.L. de C.V. ("MDM"), a license to broadcast sporting

[1] For the avoidance of doubt, the Court's September 19 Order and this Opinion concern only MSD's arguments that the Court lacks personal jurisdiction over it. As the parties have already been notified, the Court will hold a further evidentiary hearing on September 26, 2025, to consider any other objections that MSD may wish to raise to the Court's Order holding it in civil contempt.

PLAINTIFFS
4:25-cv-4650
EXHIBIT 53

events in Mexico using certain trademarks (the "Fox Sports Trademarks" or "Fox Sports Marks"). See ECF No. 1. According to the Complaint, MDM breached the license agreement by pursuing and obtaining, in the courts of Mexico, an injunction barring plaintiffs Fox Corporation and Fox Media LLC and certain of their affiliates from, among other things, using the Fox Sports Trademarks in Mexico. See generally id. On August 14, 2025, the Court entered a Temporary Restraining Order ("TRO") enjoining MDM "and anyone acting in concert with [it] . . . from (1) using the Fox Sports Trademarks in Mexico; (2) using the U.S. Fox Sports marks in the United States; (3) pursuing any legal or regulatory action relating to the Fox Sports Trademarks in Mexico, including seeking to enforce the injunction issued on March 26, 2025 by Civil Department 42 of the Superior Court of Justice of Mexico City; and (4) taking any action to disrupt, hinder, or undermine Fox's business relationships with" seventeen named affiliates. ECF No. 29 at 10.

On August 29, 2025, plaintiffs filed emergency motions requesting that the Court hold MDM and third-parties MSD, Grupo Lauman Holding, S. de R.L. de C.V. ("Grupo Lauman"), and Manuel Arroyo in civil contempt for violating the TRO. See ECF Nos. 42, 43. As relevant here, plaintiffs asserted that MDM and MSD had violated the TRO by moving in Mexico, on August 22, 2025, for the entry of a second injunction against Fox Corporation, Fox Media LLC, and their affiliates and by not discontinuing their use of the Fox Sports Trademarks. See ECF No. 42 at 2, 4-5. On August 27, 2025, the Superior Court of Justice of

Mexico City issued the second injunction that MDM and MSD requested. That injunction prohibited Fox Corporation, Fox Media LLC, and their affiliates from "using the name 'Fox' for the broadcast in Mexico of any sports content (including, but not limited to, the broadcast in Mexico of any sporting event)." ECF No. 42-1, Ex. B at 2.[2] On August 29, 2025, the Court held a telephonic hearing on plaintiffs' emergency motions. That same day, after the hearing, the Court (1) modified the TRO to prohibit MDM "and anyone acting in concert with [it]" from, among other things, "seeking to enforce the injunction dated August 27, 2025 (published on August 28, 2025) by Civil Department 42 of the Superior Court of Justice of Mexico City," see ECF No. 41 at 2; (2) issued an Order imposing civil contempt sanctions on MDM effective September 6, 2025, see ECF No. 44; and (3) issued a separate Order imposing civil contempt sanctions on MSD, Grupo Lauman, and Arroyo, also effective September 6, 2025, see ECF No. 45.

On September 5, 2025, MSD appeared in this action and moved to set aside the Court's Order of August 29, 2025, as against it. See ECF No. 46.[3] MSD's motion was based on two grounds: lack of personal

---

[2] Like many documents discussed in this Opinion, this injunction was originally issued in Spanish. A machine-translated version was provided to the Court and is quoted here. See ECF No. 42-1, Ex. B. Except to the extent that the translation of any Spanish-language document was contested at the aforementioned evidentiary hearing, the Court quotes in this Opinion from machine-translated documents without identifying them as such.

[3] MDM, Grupo Lauman, and Arroyo have not appeared in this action. On September 5, 2025, the Court stayed the effectiveness of the civil contempt order it imposed on Grupo Lauman and Arroyo until the close

jurisdiction and insufficient service of process. See generally id. At a hearing held on September 5, 2025, MSD's counsel agreed to accept service, thereby leaving only the alleged lack of personal jurisdiction as a basis for MSD's motion. Following the hearing on September 5, 2025, the Court issued a further Order staying the effect of the civil contempt sanctions it had imposed on MSD and scheduling an evidentiary hearing on MSD's motion. See ECF No. 48. The Court held that evidentiary hearing on September 18 and 19, 2025, and, as noted, issued its "bottom-line" order denying MSD's motion on September 19, 2025. See ECF No. 95.

## II. Factual Findings

At the evidentiary hearing held on September 18 and 19, 2025, the Court received documents into evidence and heard the arguments of counsel. The Court also heard, but on plaintiffs' motion ultimately excluded, testimony from an expert witness proffered by MSD. Based on the evidence presented at the hearing and the arguments of counsel, the Court finds that plaintiffs have established, by a preponderance of the evidence, the following facts bearing on the Court's exercise of personal jurisdiction over MSD.

---

of business on September 9, 2025. See ECF No. 47. On September 9, 2025, the Court lifted that stay of effectiveness and modified the civil contempt sanctions to be payable to plaintiffs rather than to the Clerk of Court. See ECF No. 73 at 7-8. Among other things, the Court further enjoined MDM, Grupo Lauman, and Arroyo from transferring, conveying, or dissipating any of their assets located in the United States. See id. at 8.

MDM is a Mexican entity that is organized as a "sociedad de responsabilidad limitada de capital variable," a corporate form that is analogous to the limited liability company. See PX 112, ECF No. 13-3 at 0003.[4] MDM is a limited liability company organized under the laws of Delaware. Id. MDM and MSD jointly operate the business known as "Fox Sports Mexico." Id. at 0006. Manuel Arroyo is the president of MSD, see DX 55, ECF No. 77-30, and Arroyo also identifies himself as, among other things, president of "Fox Sports Mexico," chief executive officer and owner of Grupo Lauman, and director general and president of the editorial board of the periodical El Financiero, see PX 167, ECF No. 42-1 at 1-2. In proceedings before the Superior Court of Justice of Mexico City, MDM and MSD are represented by the same counsel and have made joint filings. See PX 112 at 0003, 0006; PX 130, ECF No. 42-1 at 5-7.

On March 11, 2019, Mexico's Federal Institute of Telecommunications (Instituto Federal de Telecomunicaciones, or "IFT") issued a formal resolution concerning a proposed transaction by which The Walt Disney Company ("TWDC") intended to acquire certain assets

---

[4] For the convenience of the reader, the Court cites to exhibits received into evidence at the hearing held on September 18 and 19, 2025, both by exhibit number and by docket entry, where available. To the extent that the Court received exhibits that were subject to objections but did not resolve those objections at the hearing, the Court hereby overrules those outstanding objections. Moreover, to the extent that this Opinion relies on documents previously filed in this action that are subject to evidentiary objections, the Court hereby overrules those objections as well.

of Twenty-First Century Fox, Inc. ("21CF" or "TFCF"). See PX 137, ECF No. 77-1 at 7. The IFT is a Mexican telecommunications regulator "whose purpose is the efficient development of radio broadcasting and telecommunications" and that has the authority to "process, evaluate[,] and resolve" matters affecting economic competition in the telecommunications and broadcasting sectors. Id. at 16. In its resolution, the IFT approved the proposed transaction subject to a series of conditions, including one relevant to MSD's motion. In section 8.4.12.4 of the resolution, the IFT provided that the transaction between TWDC and TFCF would not include "trademarks and trade names or service marks or names" for sports broadcasting that contain the name "Fox." See PX 140, ECF No. 77-4 at 42-43. Instead, the IFT required that a license for the use of the name "Fox," for purposes of sports broadcasting, be offered to a future purchaser. See id. The IFT described that license, in Spanish, as one "de uso gratuita exclusiva para contenidos deportivos." PX 144, ECF No. 77-8 at 43. While the parties dispute whether this provision means an exclusive license for sports content or a license exclusively for sports content, and while it may be necessary to resolve that dispute at a future stage of this litigation, at this juncture the Court need not decide which translation of the Spanish is correct.

On May 21, 2021, an Equity Purchase Agreement was executed between Fox Sports Mexico Distribution LLC and TFCF Latin American Channel LLC, both subsidiaries of TFCF, and Altener, S.A. de C.V., a subsidiary

of Grupo Lauman. See PX 110, ECF No. 12-26; PX 157 at 48.[5] As relevant here, the Equity Purchase Agreement (the original of which was in English) provided that the parties would enter into a License Assignment Agreement "in connection with the assignment of licenses held by 21CF and certain of its Subsidiaries in respect of certain trademarks and domain names," including the Fox Sports Marks, "substantially in the form attached hereto as Exhibit B." See PX 110 at 0012. Appended to the Equity Purchase Agreement at Exhibit B was a model License Assignment Agreement, which included three provisions pertinent to MSD's motion. First, Section 2.1(e) of the model License Assignment Agreement provided that Fox Corporation would grant "a non-exclusive . . . irrevocable and royalty-free license" to use certain trademarks. Id. at 0099 (emphasis added). Next, Section 12.1 of the model License Assignment Agreement provided that the agreement "shall be binding upon and shall inure to the benefit of the parties hereto and their permitted successors and assigns," including "Affiliates" of the parties to whom rights, interests, or obligations under the agreement could be assigned, "provided . . . that [any] such Affiliate agrees to be bound by all of the terms, conditions[,] and provisions contained" in the License Assignment Agreement." Id. at 0108-0109. Finally, Section 12.3 of the model License Assignment Agreement

---

[5] At the evidentiary hearing, the Court unsealed the portions of PX 110, ECF No. 12-26, that are relevant to this discussion. The balance of PX 110 remains under seal.

provided as follows:

> This Agreement shall be governed by, and construed in accordance with, the Laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof. Each Party irrevocably consents to the exclusive jurisdiction, forum[,] and venue of the Commercial Division of the Supreme Court of the State of New York, New York County and the United States District Court for the Southern District of New York over any and all claims, disputes, controversies[,] or disagreements between the Parties or any of their respective successors and assigns under or related to this Agreement.

Id. at 0109.

On June 7, 2021, the IFT approved the Equity Purchase Agreement, "including its ancillary agreements and annexes." PX 157 at 2. On November 10, 2021, MDM and TFCF executed a License Assignment Agreement that was substantially similar to the model agreement that was appended to the Equity Purchase Agreement and approved by the IFT. See PX 103, ECF No. 11-27 at 1, 10-11. An exhibit to the executed License Assignment Agreement, which was expressly incorporated into it by reference, contained assignment, choice-of-law, and forum-selection provisions that were identical to those in the model agreement. See id. at 2, 28-29.

On March 24, 2025, MDM and MSD, represented by the same counsel, jointly sought preliminary injunctive relief against Fox Corporation, Fox Media LLC, and certain of their affiliates in the Superior Court of Justice of Mexico City. See PX 112. Specifically, MDM and MSD requested (1) an order maintaining "the continuous and uninterrupted use" of the Fox Sports Marks by MDM and MSD; and (2) an order

restraining Fox Corporation, Fox Media LLC, and their affiliates "from performing intimidating, unlawful[,] and/or contrary to good customs acts, which prevent or hinder (or may prevent or hinder)" MDM or MSD "from the continuous and uninterrupted use" of the Fox Sports Marks "in national territory (i.e., in the Republic of Mexico)." Id. at 0005. The filing submitted by MDM and MSD described them as joint operators of "the business known as Fox Sports Mexico," which "consists primarily of broadcasting sporting events on pay television channels." Id. at 0006. In support of their request for injunctive relief, MDM and MSD cited the IFT's March 2019 resolution and argued that it required that "a free license for the exclusive use of" the Fox Sports Marks be granted "in the territory of the United Mexican States." See id. at 0008-0016. The Superior Court of Justice entered the requested injunction on March 26, 2025. See PX 111, ECF No. 13-1.

On July 15, 2025, Fox Corporation submitted a request to the IFT seeking confirmation that, "pursuant to section 8.4.12.4 of the [IFT's 2019 resolution], the parties involved in the acquisition . . . offered and granted Grupo Lauman a non-exclusive, royalty-free license to use the Fox Sports Trademarks in Mexico solely for the operation of the Fox Sports Mexico Business." PX 107, ECF No. 11-53 at 0005 (emphasis added). Fox Corporation also sought confirmation that it could "use the Fox Sports Trademarks for a new sports channel intended to be launched in Mexico." Id. In response, the IFT cited its 2019 and 2021 resolutions and wrote that "there is no need to issue a confirmation

of the requests made by Fox . . . as they do not require an interpretation of the decisions issued by the [IFT]. In fact, Fox Corp[.], TFCF, and Grupo Lauman designed and implemented the compliance with section 8.4.12.4 of Resolution TWDC/TFCF through the License Agreement and the Sublicense Agreement, establishing its scope and assuming rights and obligations in accordance with their particular interests." Id. at 0011. The IFT continued: "Thus, Fox Corp[.] is instructed to comply with the decisions issued by the IFT . . . , as well as with the terms agreed upon between Fox Corp[.], TFCF, and Grupo Lauman in the Sublicence Agreement and the License Agreement, respectively." Id.

As described in Section I supra, plaintiffs filed their Complaint in this action on August 14, 2025, and the Court's TRO issued on that same date. On August 18, 2025, a press release was published under the heading "Fox Sports Mexico / Grupo Lauman" and attributed to MDM. See PX 118, ECF No. 36-2. The press release asserted, among other things, that "MDM, a company part of the Lauman Group, currently owns and holds the exclusive right to use the 'FOX' brands associated with . . . the broadcast of sporting events in Mexico"; that "MDM has never submitted to the jurisdiction and competence of the federal courts of the United States of America"; that "[f]oreign courts are not -- and should not be used as -- courts of appeal for decisions validly issued by national courts"; and that "MDM (Fox Sports Mexico) will continue to defend its rights before all competent bodies." Id. The press

release was published by or in El Financiero, a publication of which Arroyo represents himself to be director general and president of the editorial board. See PX 119, ECF No. 36-3; PX 167.

On August 22, 2025, MDM and MSD jointly moved in the Superior Court of Justice of Mexico City for an extension of that court's injunction of March 26, 2025. See PX 130. Under the proposed extension, the injunction would prohibit Fox Corporation, Fox Media LLC, and their affiliates "from using the name 'Fox' for the broadcast in Mexico of any sports content." Id. at 5. MDM and MSD again cited the IFT's 2019 resolution in support of their request. See id. at 6-7. Notably, MDM and MSD requested that the extended injunction prohibit the use of the "name 'Fox,' by itself or accompanied by any other words or distinctive signs," not simply the use of the Fox Sports Trademarks. See id. at 5. The Superior Court of Justice of Mexico City issued the expanded injunction on August 27, 2025. See PX 132.

Meanwhile, Fox Cable Network Services LLC, which was among the entities subject to the March 26, 2025, injunction of the Superior Court of Justice of Mexico City, appealed the injunction's entry. See DX 49, ECF No. 77-24. On September 9, 2025, the appellate court confirmed the entry of that injunction. See id. at 21.

## III. Personal Jurisdiction

The foregoing factual findings informed the Court's determination that it may exercise personal jurisdiction over MSD and that, accordingly, MSD's motion to set aside the Order imposing civil

contempt sanctions on it for lack of personal jurisdiction must be denied.[6] Below, the Court sets forth three bases for exercising personal jurisdiction over MSD: (1) MSD's participation with MDM in the joint venture known as "Fox Sports Mexico"; (2) MSD's conduct that was intended to aid and abet MDM's violation of the Court's TRO; and (3) MSD's contacts with New York and the substantive reasonableness of exercising personal jurisdiction over it. The Court concludes that, even though certain facts may support more than one of these bases for the Court's exercise of personal jurisdiction over MSD, each basis for exercising personal jurisdiction is independent and legally sufficient unto itself.

A. Joint Venture with MDM

In a diversity action such as this, personal jurisdiction is generally "determined by the law of the forum in which the court sits." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Under New York law, it is long established that jurisdiction over a non-resident principal may be established where the principal's agent engages in sufficient contacts with the forum state to create jurisdiction. See id. at 365-66 (collecting cases). As relevant here,

---

[6] As the Court noted, see supra Section I, MSD initially moved that the Order imposing civil contempt sanctions on it also be set aside for allegedly insufficient service of process. Because MSD's counsel accepted service at a hearing held on September 5, 2025, the Court's Order of September 19, 2025, did not reach that prong of MSD's motion. For the avoidance of doubt, the Court hereby denies as moot the prong of MSD's motion related to service of process.

because "joint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venturer an agent of the others," a showing of joint control of a business enterprise may be sufficient to establish personal jurisdiction. Id. at 366. "[I]n determining whether a joint venture exists for jurisdictional purposes[,] courts have focused on the realities of the relationship in question rather than the formalities of agency law." Itel Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd., 116 F.R.D. 477, 480 (S.D.N.Y. 1987) (cleaned up); see also USHA Holdings, LLC v. Franchise India Holdings Ltd., 11 F. Supp. 3d 244, 267 (E.D.N.Y. 2014) (holding, with regard to defendants that are part of the same corporate structure, that "[t]he standard for piercing the corporate veil for purposes of personal jurisdiction" is "less stringent" than the standard for doing so for purposes of imposing liability).

Here, the evidence plainly indicates that MDM and MSD are joint venturers in the "business known as Fox Sports Mexico." PX 112 at 0006. First, they have admitted as much before the courts of Mexico, where they have filed joint pleadings and been represented by the same counsel. Id. at 0003; see also id. at 0006 n.1 ("[T]he term 'Fox Sports Mexico' should be understood as the set of assets that make up the business currently operated by MDM and [MSD]."). Second, MDM and MSD operate as joint venturers within the same corporate umbrella. They are both indirect subsidiaries of Grupo Lauman, which, along with "Fox Sports Mexico," is one of the authors of the August 18, 2025, press

release published by or in El Financiero. See id. at 0006; PX 118. The chief executive of Grupo Lauman, the president of "Fox Sports Mexico," and the president of MSD are all the same person: Manuel Arroyo. See PX 167; DX 55. Moreover, at the evidentiary hearing, MSD's counsel repeatedly referred to it as a "non-operational" entity that exists to hold certain contracts that are necessary for the operation of "Fox Sports Mexico." Third, despite MSD's claims to the contrary, there is no evidence before the Court that MSD's interests are meaningfully independent of those of MDM or "Fox Sports Mexico." In fact, MDM and MSD jointly sought injunctive relief in the courts of Mexico authorizing their "continuous and uninterrupted use" of the Fox Sports Trademarks and preventing Fox Corporation, Fox Media LLC, and their affiliates from using those marks. See PX 112 at 0005. Nowhere in the joint filings that MDM and MSD submitted in Mexico does it appear that MSD has acted to vindicate any rights it may hold independent of MDM. See PX 112, PX 130.

Because MDM and MSD are joint venturers in "Fox Sports Mexico," they are each the principal and each the agent of the other. See CutCo Indus., 806 F.2d at 366. Thus, when MDM "irrevocably" submitted itself to the "exclusive jurisdiction, forum[,] and venue" of this Court "over any and all claims, disputes, controversies[,] or disagreements between" itself and certain Fox entities "under or related to" the License Assignment Agreement, see PX 103 at 0029, MDM also bound its joint venturer, principal, and agent, MSD. And because the ultimate

dispute between plaintiffs and MDM concerns whether the license assigned under that agreement is exclusive or non-exclusive, the dispute both arises "under" and is "related to" the agreement and, therefore, is subject to the agreement's forum-selection clause.

MDM and MSD are, moreover, "legally identified" with each other, although the Court need not reach this further conclusion in order to exercise personal jurisdiction over MSD as MDM's joint venturer. The Second Circuit recently reaffirmed its longstanding teaching that, in the context of determining whether a court may exercise personal jurisdiction over a non-party that violates an injunction such as the TRO at issue here, such a non-party "must either be 'legally identified' with the enjoined party or 'abet' the enjoined party's violation of the injunction." Havens v. James, 76 F.4th 103, 111 (2d Cir. 2023).[7] "[S]hared legal identity requires a legal relationship, not simply some mutual assistance and shared goals." Id. at 121 n.20. Thus, courts in this District have held that parties that are "substantially intertwined" because of shared ownership or control can be "legally identified." E.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018); Marshall v. Blasters, Drillrunners & Miners Union, Loc. 29, Laborers' Int'l Union of N. Am., AFL-CIO-CLC, No. 78 Civ. 4619, 1980 WL 2150, at *3 (S.D.N.Y. Apr. 14, 1980); cf. Patsy's Brand, Inc. v. I.O.B. Realty, Inc., No.

[7] The Court discusses the "aiding and abetting" theory of jurisdiction over a nonparty in Section III.B infra.

99 Civ. 10175, 2025 WL 2374881, at *6 (S.D.N.Y. Aug. 15, 2025).

Here, MDM and MSD are substantially intertwined to the point of being legally identifiable. As the Court has already discussed, MDM and MSD are indirect subsidiaries of the same ultimate parent, Grupo Lauman; share common leadership in Grupo Lauman's chief executive, Arroyo, who is also president of MSD and "Fox Sports Mexico"; have filed joint pleadings and are represented by the same counsel in the courts of Mexico; have, either in their own names or that of their joint venture "Fox Sports Mexico," authored joint statements in the press; and do not appear to have asserted independent legal interests in their dispute with plaintiffs. For these reasons, the Court concludes that MDM and MSD have a "legal relationship" that plainly exceeds a pledge of "mutual assistance" or the existence of "shared goals." See Havens, 76 F.4th at 121 n.20. Thus, because MDM submitted to the Court's jurisdiction by executing the License Assignment Agreement and MDM and MSD are legally identifiable, the Court may exercise personal jurisdiction over MSD.[8]

---

[8] At the evidentiary hearing, counsel for plaintiffs asserted that the Court could also exercise personal jurisdiction over MSD because it is MDM's assignee under Section 12.1 of the License Assignment Agreement. Under that agreement, MDM has the right to assign any of its "rights, interests[,] or obligations," even without receiving a counter-party's consent, so long as it makes the assignment to one of its "Affiliates" and so long as the affiliate "agrees to be bound by all of the terms, conditions[,] and provisions contained herein." See PX 103 at 0028-0029. While the agreement's definition of "Affiliate" appears to apply to MSD, see id. at 0013, there is no evidence before the Court that MDM made any assignment to MSD.

B. Aiding and Abetting

Separate from jurisdiction that arises out of a relationship of agency or legal identification is jurisdiction that flows from a non-party's having aided or abetted an enjoined party's violation of a court order. The Second Circuit has held that exercising jurisdiction over such non-parties is proper because, at bottom, "[a]iding and abetting a party is not acting independently" of that party. E.g., Eli Lilly & Co. v. Gottstein, 617 F.3d 186, 193 (2d Cir. 2010). "This is so despite the [non-party's] absence of other contacts with the forum." Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC, No. 16 Civ. 6805, 2018 WL 11389637, at *3 (S.D.N.Y. Aug. 20, 2018) (collecting cases).[9]

To subject a non-party to personal jurisdiction for aiding and abetting the violation of an injunction, "a court must first conclude

[9] The Second Circuit's caselaw on this issue is, in the Court's respectful view, somewhat inconsistent. Some older cases holding that a non-party that acts in concert with an enjoined party must satisfy the usual tests for personal jurisdiction in order for a court to exercise personal jurisdiction over that non-party, e.g., Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd., 869 F.2d 34, 39-40 (2d Cir. 1989), appear to have been silently abrogated by more recent cases, e.g., Eli Lilly, 617 F.3d at 195; Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134-38 (2d Cir. 2014). And although the court in Gucci America expressed concern with regard to the exercise of specific personal jurisdiction over a foreign non-party, see 768 F.3d at 137-38, the Circuit did not express such hesitation in affirming the exercise of specific personal jurisdiction over a domestic non-party like MSD, at least in a non-precedential order, see Absolute Nevada, LLC v. Baer, No. 21-50, 2022 WL 350255, at *1-2 (2d Cir. Feb. 7, 2022). In view of the current, not entirely pellucid state of the law, a Second Circuit opinion resolving these inconsistencies would be very helpful to district courts.

that the party subject to the court's mandate committed contempt." Havens, 76 F.4th at 112 (cleaned up). It "must next conclude that the challenged action of the nonparty was taken for the benefit of, or to assist, a party subject to the decree in violating the injunction." Id. This inquiry concerns "the actuality of concert or participation, without regard to the motives that prompt the concert or participation." Id. at 114. A non-party's intent may be inferred from the "certain, or substantially certain," consequences of its actions. Cf. SEC v. U.S. Env't, Inc., 155 F.3d 107, 111 (2d Cir. 1998).

Here, both inquiries are satisfied. First, the Court has already found that MDM "clearly acted in civil contempt of the Temporary Restraining Order by refusing to cease using the trademarks identified in the Temporary Restraining Order and by pursuing the injunction dated August 27, 2025, by the Civil Department 42 of the Superior Court of Justice of Mexico City." ECF No. 44 at 1; see also ECF No. 43 (plaintiffs' brief requesting imposition of civil contempt sanctions and attaching relevant documentation).

Second, a preponderance of the evidence amply supports a finding that MSD acted to benefit or assist MDM in violating the Court's TRO.

As an initial matter, the Court observes that MDM and MSD jointly moved in Mexico for the expanded injunction a mere four days after MDM, Grupo Lauman, and "Fox Sports Mexico" published a press release denying that United States courts have jurisdiction over the dispute between plaintiffs and MDM. Compare PX 118 (press release dated August

18, 2025) with PX 130 (motion for expanded injunction dated August 22, 2025). That press release, in turn, was issued a mere four days after this Court's TRO issued on August 14, 2025. See ECF No. 29. The most plausible inference from this sequence of events is that MDM and MSD sought the expanded injunction in retaliation for plaintiffs' having sought and obtained a TRO against MDM from this Court. Because plaintiffs named only MDM as a defendant in this action, MSD's participation in a joint request for a retaliatory injunction could only have been for the purpose of benefiting or assisting MDM.

Next, no evidence supports MSD's contention that it was somehow required to engage in litigation in Mexico in order "to comply with the IFT's constitutionally authorized orders." See ECF No. 76 at 22-26. To the contrary, the IFT's communication of July 15, 2025, clearly stated the IFT's position that "Fox Corp[.], TFCF, and Grupo Lauman" "designed and implemented" the License Assignment Agreement -- including, at least by implication, that agreement's provisions concerning the grant of a non-exclusive license -- in compliance with the IFT's requirements. See PX 107 at 11. Considering the IFT's statement that its previous rulings do not require interpretation and the fact that MSD was not a party to any of the IFT's relevant rulings, the Court is perplexed by MSD's assertion that it was under obligation to litigate before the Superior Court of Justice of Mexico City.[10]

---

[10] Plaintiffs contend that, even had MSD been obligated to vindicate the IFT's orders in court, the injunction that MDM and MSD sought on

Thus, because MSD was under no obligation to litigate in Mexico, it is more than plausible that MSD's decision to litigate was for the purpose of benefitting or assisting MDM in violating the TRO.

Moreover, as the Court discussed in Section III.A supra, there is no evidence that MSD, a Delaware limited liability company that has no employees and exists to hold contracts necessary to the operation of "Fox Sports Mexico," has any relevant interests that are independent of those of MDM or "Fox Sports Mexico." This, too, supports a finding that MSD's conduct was intended to benefit or assist MDM in violating the TRO.

For all these reasons, the Court concludes that it may exercise personal jurisdiction over MSD because MSD aided and abetted MDM's violation of the Court's TRO by taking actions that were intended to benefit or assist MDM.

---

August 22, 2025, sought relief far more expansive than that to which MDM was entitled under even the most favorable reading of the IFT's decisions. See ECF No. 88 at 10-11. That is, plaintiffs argue that the IFT's decisions addressed only the use of the Fox Sports Trademarks, yet MDM and MSD sought an injunction prohibiting even the use of the word "Fox" in connection with any sports broadcasts. See PX 130 at 5 ("The requested measure shall include the prohibition of the use of the name 'Fox,' either alone or accompanied by other words or distinctive sights, whenever it is used in the broadcast of sports content (including sporting events) in the national territory."). However, because the relevant condition of the IFT's 2019 resolution concerned "trademarks and trade names or service marks or names that contain the name 'Fox,'" PX 140 at 42, rather than just the Fox Sports Trademarks, the Court cannot agree with plaintiffs that the injunction that MDM and MSD sought exceeded the scope of the IFT's resolution. That does not mean, of course, that MDM or MSD did not violate the TRO in seeking that injunction.

C. Minimum Contacts

The Court may also exercise personal jurisdiction over MSD because MSD has sufficient relevant contacts with New York and because the exercise of personal jurisdiction over it "comports with traditional notions of fair play and substantial justice." See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996). This basis for exercising jurisdiction presents closer calls than the other two.[11]

Plaintiffs contend that MSD has purposefully directed its activities at New York in two respects. First, plaintiffs argue, MSD's having aided and abetted MDM's violation of the Court's TRO was "designed to have purpose and effect in the forum." See Shaoxing Bon Textiles Co., 2018 WL 11389637, at *3 (quoting SEC v. Homa, 514 F.3d 661, 675 (7th Cir. 2008)). The Court agrees. As the Court discussed in Section III.B supra, MSD had no reason for continuing to litigate in Mexico other than to benefit or assist MDM in violating the Court's TRO. Hence, even though MSD's conduct occurred in Mexico, that conduct was aimed at the circumvention of the Court's TRO and, thus, was intended to have an effect in New York.

Second, plaintiffs contend, MSD also has sufficient contacts with New York because the website of "Fox Sports Mexico," MSD's joint

---

[11] The following analysis concerns only the exercise of specific personal jurisdiction over MSD. No party argues that MSD is subject to general personal jurisdiction in New York. See ECF No. 76 at 21; ECF No. 88 at 3.

venture with MDM, is accessible from New York. Moreover, plaintiffs have presented evidence that, even though the website of "Fox Sports Mexico" was inaccessible from the United States on August 18, 2025, shortly after the Court's TRO issued, that website was once again accessible no later than September 8, 2025. See ECF No. 88 at 5-6. Although the Court finds this timing curious, the Court is unconvinced, on the record before it, that the mere operation of the "Fox Sports Mexico" website is a sufficient basis for the exercise of personal jurisdiction. Numerous courts in this Circuit have properly declined to exercise personal jurisdiction over the operator of a merely "passive," that is, non-interactive, website. See, e.g., A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 567-70 (E.D.N.Y. 2011); Gosain v. State Bank of India, 689 F. Supp. 2d 571, 583 (S.D.N.Y. 2010).[12]

Because the Court concludes that the actions that MSD took to assist MDM in its violation of the Court's TRO (but not MSD's participation in the operation of the "Fox Sports Mexico" website)

---

[12] Plaintiffs have not provided documentary evidence showing that the website of "Fox Sports Mexico" is sufficiently interactive to justify the exercise of personal jurisdiction. Although plaintiffs have submitted screenshots of certain "Fox Sports Mexico" social media accounts, which appear to indicate that users may interact with "Fox Sports Mexico" through those accounts, plaintiffs have not provided documentary evidence specifically showing that those accounts are accessible from New York. Moreover, the caselaw makes clear that even the "existence of an interactive website that is accessible in New York" is not always "sufficient to exercise personal jurisdiction." E.g., Romero v. 88 Acres Foods, Inc., 580 F. Supp. 3d 9, 15 (S.D.N.Y. 2022).

constitute sufficient minimum contacts with New York, it turns to consider whether the exercise of personal jurisdiction over MSD would be substantively reasonable. In the Second Circuit, courts employ a five-factor test for substantive reasonableness, considering the burden on the party over whom jurisdiction is to be exercised, the interest of the forum state, the interest of the plaintiff, the interest of the judicial system in an efficient resolution of the controversy, and the states' shared interest in furthering public policy. See Metro. Life Ins. Co., 84 F.3d at 568.

Here, these factors all weigh in favor of the exercise of personal jurisdiction over MSD. As to burden, MSD argues that it would be burdensome to litigate in New York because it has "no presence" here. ECF No. 76 at 27. Not only is MSD's assertion belied by the fact that it has employed excellent counsel in the proceedings to date, but also the record before the Court appears to suggest that MSD has "no presence" anywhere. MSD is, as its counsel repeatedly stated at the evidentiary hearing, a non-operational entity without employees. It would plainly be inequitable for that fact to defeat the exercise of personal jurisdiction over MSD anywhere in the United States.

New York and plaintiffs each have a strong interest in the exercise of personal jurisdiction over MSD because the gravamen of the dispute between plaintiffs and MDM concerns the enforcement of a forum selection clause requiring disputes to be decided under New York law and in New York courts. See PX 113 at 0029. "As a matter of both

federal law and New York law, there is a strong public policy of enforcing forum-selection clauses." Forbes IP (HK) Ltd. v. Media Business Generators, S.A. de C.V., No. 23 Civ. 11168, 2024 WL 1743109, at *5 (S.D.N.Y. Apr. 23, 2024) (quoting Willis Re Inc. v. Herriott, 550 F. Supp. 3d 68, 98 (S.D.N.Y. 2021)). For their part, plaintiffs bargained for the clause that they are seeking to enforce and thus have an interest in litigating in New York rather than Mexico.

Finally, the judicial system has an exceedingly strong interest in ensuring that court orders are carried out rather than violated. Public policy strongly supports this objective as well.

Thus, because MSD's conduct with reference to the Court's TRO has created sufficient contacts with New York and because exercising personal jurisdiction over MSD is consistent with substantive justice, the Court holds that it may exercise such jurisdiction.

## IV. Conclusion

For all the foregoing reasons, the Court concludes that MSD's motion to set aside, on the basis of lack of personal jurisdiction, the Court's Order holding it in civil contempt must be denied. In circumstances such as those here, where a United States entity has aided and abetted the violation of an Order of this Court by its partner in a joint venture and where the partner, a foreign entity, has declined to appear, "exercising jurisdiction is fair and just because the authority to force compliance is necessary to the proper enforcement and supervision of a court's injunctive authority and

offends no precept of due process." See Shaoxing Bon Textiles Co., 2018 WL 11389637, at *3 (cleaned up).

SO ORDERED.

New York, New York
September 23, 2025

JED S. RAKOFF, U.S.D.J.